# 25-914-cv

## United States Court of Appeals

*for the*

### Second Circuit

JEFFERIES STRATEGIC INVESTMENTS, LLC,
LEUCADIA ASSET MANAGEMENT HOLDINGS LLC,

*Plaintiffs-Appellees,*

– v. –

GEORGE WEISS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
### Volume 2 of 5 (Pages A-254 to A-505)

SCOTT BALBER
MICHAEL P. JONES
DANIEL GOMEZ
HERBERT SMITH FREEHILLS
   KRAMER NEW YORK LLP
*Attorneys for Plaintiffs-Appellees*
200 Park Avenue, 16th Floor
New York, New York 10166
(917) 542-7810

BRIAN A. KATZ
PETER M. SARTORIUS
DANIEL M. STONE
OLSHAN FROME WOLOSKY LLP
*Attorneys for Defendant-Appellant*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

CP COUNSEL PRESS    (800) 4-APPEAL • (382243)

i

# TABLE OF CONTENTS

**Page**

United States District Court Docket Entries .............. A-1

Notice of Removal, by Defendant, dated
June 7, 2024 ............................................................ A-12

Exhibit A to Notice -
Summons and Complaint in the New York State
Supreme Court Matter *Jefferies Strategic
Investments, LLC and Leucadia Asset
Management Holdings LLC v. George Weiss*
("New York State Matter"), dated May 6, 2024 .... A-17

Order Regulating Proceedings, by the Honorable
Alvin K. Hellerstein, dated October 11, 2024 ....... A-39

Answer to Complaint, dated October 25, 2024 ......... A-40

Notice of Motion, by Defendant, for an Order
Granting Summary Judgment, dated
November 5, 2024 .................................................. A-52

Memorandum of Law, by Defendant, in Support of
Motion, dated November 5, 2024 ......................... A-54

Statement of Material Facts, by Defendant, in
Support of Motion, dated November 5, 2024 ........ A-83

Declaration of Defendant George Weiss, in Support
of Motion, dated November 5, 2024 ..................... A-97

Declaration of Jeffrey Dillabough, in Support of
Motion, dated November 5, 2024 ......................... A-104

Exhibit 1 to Foregoing Documents -
Draft Forbearance Agreement, dated
February 1, 2024 .................................................... A-112

ii

**Page**

Exhibit 2 to Foregoing Documents -
Email from Jeffrey Dillabough to Sonia Han
Levovitz, dated February 12, 2024 ........................ A-120

Exhibit 3 to Foregoing Documents -
Forbearance Agreement, dated February 12, 2024    A-123

Exhibit 4 to Foregoing Documents -
Redlined Forbearance Agreement, dated
February 11, 2024 .................................................. A-136

Exhibit 5 to Foregoing Documents -
Email from Scott Balber to Jeffrey Dillabough,
dated February 12, 2024 ........................................ A-150

Exhibit 6 to Foregoing Documents -
Email from Nick Daraviras to
jvisser@hweiss.com, dated February 17, 2024 ..... A-155

    Attached to Email -
    (i) Draft Redacted Complaint............................ A-156

Exhibit 7 to Foregoing Documents -
Email from Scott Balber to Tracy Kelstadt, dated
March 26, 2024 ...................................................... A-183

    Attached to Email -
    (i) Draft Complaint ........................................... A-184

Notice of Motion, by Plaintiffs, for an Order
Granting Summary Judgment, dated
November 5, 2024 .................................................. A-209

Table of Contents of Documents Related to
Plaintiffs' Motion for Summary Judgment, dated
November 5, 2024 .................................................. A-211

Declaration of Scott S. Balber, for Plaintiffs, in
Support of Motion, dated November 5, 2024 ........ A-215

iii

**Page**

Exhibit 1 to Balber Declaration -
Declaration of Nicholas Daraviras, in the United
State Bankruptcy Court for the Southern District
of New York Matter *In Re: Weiss Multi-Strategy
Advisers LLC, et al.*, dated August 22, 2024 ......... A-221

    Exhibit A to Daraviras Declaration -
    Strategic Relationship Agreement, dated
    May 1, 2018 ....................................................... A-228

    Exhibit B to Daraviras Declaration -
    Note Purchase Agreement, dated
    December 3, 2019 ............................................... A-254

    Exhibit C to Daraviras Declaration -
    Note, dated January 13, 2020............................. A-291

    Exhibit D to Daraviras Declaration -
    Note, dated December 3, 2019............................ A-294

    Exhibit E to Daraviras Declaration -
    Assignment and Assumption Agreement, dated
    December 1, 2021 ............................................... A-297

    Exhibit F to Daraviras Declaration -
    Note Purchase Agreement, dated
    December 1, 2021 ............................................... A-301

    Exhibit G to Daraviras Declaration -
    Note, dated September 21, 2022 ........................ A-330

    Exhibit H to Daraviras Declaration -
    Notice of Optional Redemption ......................... A-333

    Exhibit I to Daraviras Declaration -
    Forbearance Agreement, dated
    February 12, 2024 .............................................. A-335

iv

**Page**

Exhibit J to Daraviras Declaration -
UCC Financing Statement ................................. A-349

Exhibit K to Daraviras Declaration -
Copy of Spreadsheet .......................................... A-351

Exhibit L to Daraviras Declaration -
Invoices Reflecting Attorneys' Fees ................. A-356

Exhibit 2 to Balber Declaration -
Chapter 11 Voluntary Petition for Non-Individual,
in the Bankruptcy Matter, dated April 29, 2024,
with Exhibits ............................................................. A-360

Exhibit 3 to Balber Declaration -
Chapter 11 Voluntary Petition for Non-Individual
in the United States Bankruptcy Court for the
Southern District of New York Matter *In Re:
GWA, LLC*, dated April 29, 2024, with Exhibits.... A-370

Exhibit 4 to Balber Declaration -
Chapter 11 Voluntary Petition for Non-Individual
in the United States Bankruptcy Court for the
Southern District of New York Matter *In Re:
OGI, LLC,* dated April 29, 2024 ........................... A-380

Exhibit 5 to Balber Declaration -
Chapter 11 Voluntary Petition for Non-Individual
in the United States Bankruptcy Court for the
Southern District of New York Matter *In Re:
Weiss Special Operations LLC*, dated
April 29, 2024 ....................................................... A-390

Exhibit 6 to Balber Declaration -
Declaration of Pierce Archer, in the United State
Bankruptcy Court for the Southern District of
New York Matter *In Re: Weiss Multi-Strategy
Advisers LLC, et al.*, dated April 30, 2024 ............. A-400

v

**Page**

Exhibit 7 to Balber Declaration -
Declaration Under Penalty of Perjury for Non-
Individual Debtors, with Exhibits, in the United
States Bankruptcy Court for the Southern District
of New York Matter *In Re: Weiss Multi-Strategy
Advisers LLC, et al.*, dated June 11, 2024.............. A-449

Exhibit 8 to Balber Declaration -
Declaration Under Penalty of Perjury for Non-
Individual Debtors, with Exhibits, in the United
States Bankruptcy Court for the Southern District
of New York Matter *In Re: GWA, LLC*, dated
June 11, 2024 ........................................................ A-453

Exhibit 9 to Balber Declaration -
Declaration Under Penalty of Perjury for Non-
Individual Debtors, with Exhibits, in the United
States Bankruptcy Court for the Southern District
of New York Matter *In Re: OGI, LLC*, dated
June 11, 2024 ........................................................ A-455

Exhibit 10 to Balber Declaration -
Declaration Under Penalty of Perjury for Non-
Individual Debtors, with Exhibits, in the United
States Bankruptcy Court for the Southern District
of New York Matter *In Re: OGI, LLC*, dated
June 11, 2024 ........................................................ A-457

Exhibit 11 to Balber Declaration -
Chapter 11 Voluntary Petition for Non-Individual,
with Exhibits, in the United States Bankruptcy
Court for the Southern District of New York
Matter *In Re: Weiss Multi-Strategy Funds LLC*,
dated June 19, 2024 ............................................... A-459

vi

**Page**

Exhibit 12 to Balber Declaration -
Global Notes, Methodology and Specific
Disclosures Regarding WMSF's Schedules of
Assets and Liabilities and Statement of Financial
Affairs, in the United States Bankruptcy Court
for the Southern District of New York Matter *In
Re: Weiss Multi-Strategy Funds LLC*, filed
June 28, 2024 ........................................................ A-461

Exhibit 13 to Balber Declaration -
Complaint to Avoid and Recover Avoidable
Transfers, in the United States Bankruptcy Court
for the Southern District of New York Matter
*GWA, LLC et al. v. Jefferies Strategic
Investments, LLC et al.* ("Adversary
Proceeding"), dated April 29, 2024 ...................... A-484

Exhibit 14 to Balber Declaration -
First Amended Complaint in the Adversary
Proceeding, dated June 25, 2024 .......................... A-506

Exhibit 15 to Balber Declaration -
Memorandum of Law, by Plaintiffs, in Support of
Partial Motion, in the Adversary Proceeding,
dated July 16, 2024 ................................................ A-541

Exhibit 16 to Balber Declaration -
Memorandum of Law, by Plaintiffs, in
Opposition to Motion, in the Adversary
Proceeding, dated August 6, 2024 ........................ A-571

Exhibit 17 to Balber Declaration -
Transcript of Proceedings held before the
Honorable Martin Glenn, in the Adversary
Proceeding, dated September 11, 2024.................. A-601

Exhibit 18 to Balber Declaration -
BrokerCheck Report for George Allen Weiss........ A-671

vii

                                                                    **Page**

Local Rule 56.1 Statement in Support of Plaintiffs'
    Motion for Summary Judgment, dated
        November 5, 2024 ................................................. A-680

Memorandum of Law, by Plaintiffs, in Support of
    Motion for Summary Judgment, dated
        November 5, 2024 ................................................. A-689

Memorandum of Law, by Defendant, in Opposition
    to Motion for Summary Judgment, dated
        November 22, 2024 ................................................. A-705

Defendant's Response to Plaintiffs' Local Rule 56.1
    Statement, dated November 22, 2024.................... A-741

Declaration of Brian A. Katz, for Defendant, in
    Opposition to Motion for Summary Judgment,
        dated November 22, 2024...................................... A-754

    Exhibit A to Katz Declaration -
    Reply in Support of Partial Motion to Dismiss
    First Amended Complaint in the Adversary
    Proceeding, dated August 16, 2024 ...................... A-756

    Exhibit B to Katz Declaration -
    Order of the Honorable Martin Glenn in the
    Adversary Proceeding, dated September 24, 2024    A-771

    Exhibit C to Katz Declaration -
    Examiner's Report of Christopher K. Kiplok, in
    the Adversary Proceeding, dated
    November 21, 2024 ................................................. A-847

Local Rule 56.1 Counterstatement of Material Facts
    in Opposition to Plaintiffs' Motion for Summary
        Judgment, dated November 22, 2024 .................... A-931

viii

**Page**

Memorandum of Law, by Plaintiffs, in Opposition
to Defendant's Motion for Summary Judgment,
dated November 22, 2024 .................................... A-983

Reply Memorandum of Law, by Defendant, in
Further Support of Motion for Summary
Judgment, dated December 4, 2024 ...................... A-1006

Reply, by Defendant, to Plaintiff's Local Rule 56.1
Counterstatement .................................................. A-1030

Reply Memorandum of Law, by Plaintiffs, in
Further Support of Motion for Summary
Judgment, dated December 4, 2024 ...................... A-1082

Opinion and Order of the Honorable Alvin K.
Hellerstein, dated March 12, 2025 ...................... A-1108

Judgment, dated March 12, 2025 .............................. A-1117

Attachment to Judgment -
(i) United States District Court for the Southern
District of New York Appeal Instructions and
Forms .................................................................... A-1118

Notice of Motion, by Defendant, for an Order
Granting Reconsideration of and/or Amending
and Altering the Order and Judgment, dated
March 26, 2025 .................................................... A-1128

Memorandum of Law, by Defendant, in Support of
Motion for Reconsideration, dated
March 26, 2025 .................................................... A-1130

Notice of Motion, by Plaintiffs, for an Order
Correcting Omission in Judgment, dated
March 26, 2025 .................................................... A-1146

ix

**Page**

Exhibit A to Notice -
Proposed Corrected Judgment ............................... A-1148

Exhibit B to Notice -
Plaintiffs' Calculation of Pre-Judgment Interest
and Total Amounts Owed ...................................... A-1150

Memorandum of Law, by Plaintiffs, in Support of
Motion to Correct Judgment, dated
March 26, 2025 ...................................................... A-1156

Memorandum of Law, by Plaintiffs, in Opposition
to Motion for Reconsideration, dated
April 9, 2025 .......................................................... A-1163

Memorandum of Law, by Defendant, in Opposition
to Motion to Correct Judgment, dated
April 9, 2025 .......................................................... A-1178

Notice of Appeal, by Defendant, dated April 10,
2025, with Opinion and Order, Appealed From .... A-1191

Reply Memorandum of Law, by Defendant, in
Further Support of Motion for Reconsideration,
dated April 16, 2025 .............................................. A-1202

Reply Memorandum of Law, by Plaintiffs, in
Further Support of Motion to Correct Judgment,
dated April 16, 2025 .............................................. A-1213

Order of the Honorable Alvin K. Hellerstein, dated
May 15, 2025 ......................................................... A-1224

Order of the Honorable Alvin K. Hellerstein, dated
May 16, 2025 ......................................................... A-1226

Amended Order of the Honorable Alvin K.
Hellerstein, dated May 20, 2025 ........................... A-1229

Corrected Judgment, dated May 21, 2025 ................. A-1232

x

**Page**

Attachment to Judgment -
(i) United States District Court for the Southern
District of New York Appeal Instructions and
Forms ........................................................................  A-1233

Amended Notice of Appeal, by Defendant, dated
May 22, 2025 ........................................................  A-1243

Exhibit 1 to Amended Notice -
Opinion and Order of the Honorable Alvin K.
Hellerstein, dated March 12, 2025.........................  A-1245

Exhibit 2 to Amended Notice -
Order of the Honorable Alvin K. Hellerstein,
dated May 15, 2025 ...............................................  A-1254

Exhibit 3 to Amended Notice -
Amended Order of the Honorable Alvin K.
Hellerstein, dated May 20, 2025............................  A-1256

# Exhibit B

A-255

GWA, LLC

$50,000,000 OF Notes

_____

NOTE PURCHASE AGREEMENT

_____

Dated December 3, 2019

TABLE OF CONTENTS

SECTION                    HEADING                                                      PAGE

SECTION 1.        AUTHORIZATION OF NOTES .................................................................1

SECTION 2.        SALE AND PURCHASE OF NOTES ..........................................................1

SECTION 3.        CLOSINGS ........................................................................................1

SECTION 4.        CONDITIONS TO CLOSING...................................................................2

    SECTION 4.1.     REPRESENTATIONS AND WARRANTIES.............................................2
    SECTION 4.2.     PERFORMANCE; NO DEFAULT ........................................................2
    SECTION 4.3.     PURCHASE PERMITTED BY APPLICABLE LAW, ETC ..............................2
    SECTION 4.4.     ADDITIONAL WEISS EQUITY INVESTMENTS .......................................3
    SECTION 4.5.     PAYMENT OF SPECIAL COUNSEL FEES ..............................................3
    SECTION 4.6.     FUNDING INSTRUCTIONS ...............................................................3
    SECTION 4.7.     PROCEEDINGS AND DOCUMENTS .....................................................3
    SECTION 4.8.     INVESTOR WITHDRAWAL ...............................................................4
    SECTION 4.9.     INVESTMENT MANAGEMENT AGREEMENT AMENDMENT.......................4

SECTION 5.        REPRESENTATIONS AND WARRANTIES OF THE COMPANY......................4

    SECTION 5.1.     ORGANIZATION; POWER AND AUTHORITY ..........................................4
    SECTION 5.2.     AUTHORIZATION, ETC....................................................................4
    SECTION 5.3.     COMPLIANCE WITH LAWS, OTHER INSTRUMENTS, ETC........................5
    SECTION 5.4.     GOVERNMENTAL AUTHORIZATIONS, ETC ..........................................5
    SECTION 5.5.     LITIGATION; OBSERVANCE OF AGREEMENTS, STATUTES AND ORDERS ..5
    SECTION 5.6.     PRIVATE OFFERING BY THE COMPANY ..............................................5
    SECTION 5.7.     USE OF PROCEEDS..........................................................................6
    SECTION 5.8.     STATUS UNDER CERTAIN STATUTES ..................................................6
    SECTION 5.9.     INVESTMENT MANAGEMENT AGREEMENT/STRATEGIC RELATIONSHIP
                     MANAGEMENT AGREEMENT REPRESENTATIONS ...................................6

SECTION 6.        REPRESENTATIONS OF THE INVESTOR .................................................6

    SECTION 6.1.     PURCHASE FOR INVESTMENT ..........................................................6

SECTION 7.        TERMS OF THE NOTES .......................................................................7

    SECTION 7.1.     MATURITY ...................................................................................7
    SECTION 7.2.     OPTIONAL REDEMPTION ................................................................7
    SECTION 7.3.     TRIGGER REDEMPTION...................................................................7
    SECTION 7.4.     MATURITY; SURRENDER, ETC .........................................................7
    SECTION 7.5.     PURCHASE OF NOTES .....................................................................7
    SECTION 7.6.     PAYMENT DUE ON NON-BUSINESS DAYS ...........................................8

SECTION 8.        AFFIRMATIVE COVENANTS ................................................................8

SECTION 8.1.     COMPLIANCE WITH LAWS .................................................8
SECTION 8.2.     LIMITED LIABILITY COMPANY EXISTENCE, ETC ..................8
SECTION 8.3.     ADDITIONAL NOTIFICATION RIGHTS .................................8

SECTION 9.     EVENTS OF DEFAULT .................................................9

SECTION 10.     REMEDIES ON DEFAULT, ETC .................................................9

SECTION 10.1.     ACCELERATION.................................................9
SECTION 10.2.     OTHER REMEDIES .................................................10
SECTION 10.3.     NO WAIVERS OR ELECTION OF REMEDIES, EXPENSES, ETC ................10

SECTION 11.     REGISTRATION; EXCHANGE; SUBSTITUTION OF NOTES.................10

SECTION 11.1.     REGISTRATION OF NOTES .................................................10
SECTION 11.2.     TRANSFER AND EXCHANGE OF NOTES .................................11
SECTION 11.3.     REPLACEMENT OF NOTES .................................................11

SECTION 12.     PAYMENTS ON NOTES .................................................11

SECTION 12.1.     PLACE OF PAYMENT.................................................11
SECTION 12.2.     PAYMENT BY WIRE TRANSFER .................................11

SECTION 13.     EXPENSES, ETC .................................................12

SECTION 13.1.     TRANSACTION EXPENSES.................................................12
SECTION 13.2.     CERTAIN TAXES .................................................12
SECTION 13.3.     SURVIVAL .................................................13

SECTION 14.     SURVIVAL OF REPRESENTATIONS AND WARRANTIES; ENTIRE AGREEMENT ............13

SECTION 15.     AMENDMENT AND WAIVER .................................................13

SECTION 15.1.     REQUIREMENTS.................................................13
SECTION 15.2.     SOLICITATION OF HOLDERS OF THE NOTES .................13
SECTION 15.3.     BINDING EFFECT, ETC.................................................14
SECTION 15.4.     NOTES HELD BY COMPANY, ETC .................................14
SECTION 15.5.     NOTICES.................................................14

SECTION 16.     CONFIDENTIAL INFORMATION .................................................15

SECTION 17.     MISCELLANEOUS .................................................15

SECTION 17.1.     SUCCESSORS AND ASSIGNS.................................................15
SECTION 17.2.     SEVERABILITY .................................................15
SECTION 17.3.     CONSTRUCTION, ETC .................................................15
SECTION 17.4.     COUNTERPARTS.................................................16
SECTION 17.5.     GOVERNING LAW.................................................16
SECTION 17.6.     JURISDICTION AND PROCESS; WAIVER OF JURY TRIAL ................16

SCHEDULE A          —    Defined Terms

SCHEDULE 1          —    Form of Note

INVESTOR SCHEDULE   —    Information Relating to the Investor

EXHIBIT A           —    Certificate of December Additional Weiss Equity Investment

EXHIBIT B           —    Certificate of January Additional Weiss Equity Investment

A-259

**GWA, LLC**
**Weiss Multi-Strategy Advisers LLC**
**320 Park Avenue**
**20th Floor**
**New York, New York 10022**

$50,000,000 of Notes

**December 3, 2019**

TO:
JFG Funding LLC
520 Madison Avenue
New York, New York 10022

Ladies and Gentlemen:

GWA, LLC, a Connecticut limited liability company (the "**Company**") and Weiss Multi-Strategy Advisers LLC, a Delaware limited liability company ("**WMSA**") agree with JFG Funding LLC, a Delaware limited liability company (the "**Investor**") as follows:

**Section 1.    AUTHORIZATION OF NOTES.**

The Company will authorize the issue and sale of $50 million aggregate principal amount of its Notes (the "**Notes**"). The Notes shall be substantially in the form set out in Schedule 1. Certain capitalized and other terms used in this Agreement are defined in Schedule A and, for purposes of this Agreement, the rules of construction set forth in Section 17.3 shall govern.

**Section 2.    SALE AND PURCHASE OF NOTES.**

Subject to the terms and conditions of this Agreement, the Company will issue and sell to the Investor and the Investor will purchase from the Company: (i) at the December Closing provided for in Section 3, a Note in the principal amount of $31.25 million at the purchase price of 100% of the principal amount thereof (the "**December Note**"); and (ii) at the January Closing provided for in Section 3, a Note in the principal amount of $18.75 million at the purchase price of 100% of the principal amount thereof (the "**January Note**").

**Section 3.    CLOSINGS.**

The sale and purchase of the December Note to be purchased by the Investor shall occur at the offices of Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019, at 10:00 a.m., New York City time, at a closing (the "**December Closing**") on December 3, 2019. The sale and

A-260

purchase of the January Note to be purchased by the Investor shall occur at the offices of Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019, at 10:00 a.m., New York City time, at a closing (the "**January Closing**") on January 13, 2020. At the December Closing, the Company will deliver to the Investor the December Note to be purchased in the form of a single Note dated the date of the December Closing and registered in the Investor's name (or in the name of its nominee), against delivery by the Investor to the Company or its order of immediately available funds in the amount of the purchase price therefor by wire transfer of immediately available funds for the account of the Company to account number ▮▮▮▮▮ at U.S. Trust/Bank of America, ABA Number ▮▮▮▮, attention: Rob Roseen.  At the January Closing, the Company will deliver to the Investor the January Note to be purchased in the form of a single Note dated the date of the January Closing and registered in the Investor's name (or in the name of its nominee), against delivery by the Investor to the Company or its order of immediately available funds in the amount of the purchase price therefor by wire transfer of immediately available funds for the account of the Company to account number ▮▮▮▮▮ at U.S. Trust/Bank of America, ABA Number ▮▮▮▮, attention: Rob Roseen. If at the Applicable Closing the Company shall fail to tender the Note to be delivered to the Investor as provided above in this Section 3, or any of the conditions specified in Section 4 shall not have been fulfilled to the Investor's satisfaction, the Investor shall, at its election, be relieved of all further obligations under this Agreement, without thereby waiving any rights the Investor may have by reason of such failure by the Company to tender such Note(s) or any of the conditions specified in Section 4 not having been fulfilled to the Investor's satisfaction.

**Section 4.**    CONDITIONS TO CLOSING.

The Investor's obligation to purchase and pay for the Note to be sold to the Investor at the Applicable Closing is subject to the fulfillment to the Investor's satisfaction, prior to or at the Applicable Closing, of the following conditions:

**Section 4.1.    Representations and Warranties**.  The representations and warranties of the Company and WMSA in this Agreement shall be correct when made and at the Applicable Closing.

**Section 4.2.    Performance; No Default**.  The Company and WMSA shall have performed and complied with all agreements and conditions contained in this Agreement required to be performed or complied with by it prior to or at the Applicable Closing, including in respect of the January Closing, not have breached any post-closing obligations of this Agreement in respect of the December Closing.  Before and after giving effect to the issue and sale of the Notes (and the application of the proceeds thereof as contemplated by Section 5.7), no Default or Event of Default shall have occurred and be continuing.

**Section 4.3.    Purchase Permitted By Applicable Law, Etc.**  On the date of each Applicable Closing, the Investor's purchase of the Note shall (a) be permitted by the laws and regulations of each jurisdiction to which the Investor is subject, (b) not violate any applicable law or regulation (including Regulation T, U or X of the Board of Governors of the Federal Reserve System), (c) not subject the Investor to any tax, penalty or liability under or pursuant to any applicable law or regulation, which law or regulation was not in effect on the date hereof and (d)

would not cause any adverse regulatory, tax, legal or accounting effect on the Investor or its Affiliates, including any regulatory prohibition on the Company or any of its Subsidiaries retaining or transacting with Affiliates of the Investor in a manner consistent with its Ordinary Course of Business.

**Section 4.4.   Additional Weiss Equity Investments**.  (a) On or before the date of the December Closing,  (i) the members of the Company shall contribute $12.5 million in the aggregate to the Company in exchange for additional Interests as defined in and subject to the terms of the Company Agreement on terms and conditions reasonably satisfactory to the Investor (the "**December Additional Weiss Equity Investment**"), (ii) a Senior Financial Officer of the Company shall deliver to the Investor a certificate in the form set forth on Exhibit A indicating that the December Additional Weiss Equity Investment has been made and (iii) a Senior Financial Officer of the Company shall deliver to the Investor evidence demonstrating that the December Additional Weiss Equity Investment has been made; and

(b)   On or before the date of the January Closing,  (i) the members of the Company shall contribute $7.5 million in the aggregate to the Company in exchange for additional Interests as defined in and subject to the terms of the Company Agreement on terms and conditions reasonably satisfactory to the Investor (the "**January Additional Weiss Equity Investment**"), (ii) a Senior Financial Officer of the Company shall deliver to the Investor a certificate in the form set forth on Exhibit B indicating that the January Additional Weiss Equity Investment has been made and (iii) a Senior Financial Officer of the Company shall deliver to the Investor evidence demonstrating that the January Additional Weiss Equity Investment has been made.

**Section 4.5.   Payment of Special Counsel Fees**.  Without limiting Section 13.1, the Company shall have paid on or before the December Closing the fees, charges and disbursements of Sidley Austin LLP, the Investor's special counsel, to the extent reflected in a statement of such counsel rendered to the Company on the December Closing.  If there are additional special counsel fees subsequent to the December Closing but prior to the January Closing, the Company shall pay such amounts prior to the January Closing to the extent reflected in a statement of such counsel rendered to the Company on the January Closing.

**Section 4.6.   Funding Instructions**.  At least one Business Day prior to the date of the Applicable Closing, the Investor shall have received written instructions signed by a Responsible Officer on letterhead of the Company confirming the information specified in Section 3 including (i) the name and address of the transferee bank, (ii) such transferee bank's ABA number and (iii) the account name and number into which the purchase price for the Note is to be deposited.

**Section 4.7.   Proceedings and Documents**.  All limited liability company and other proceedings in connection with the transactions contemplated by this Agreement and all documents and instruments incident to such transactions shall be satisfactory to the Investor and its special counsel, and the Investor and its special counsel shall have received all such counterpart originals or certified or other copies of such documents as the Investor or such special counsel may reasonably request.

**Section 4.8.   Account Withdrawal**.   Jefferies Strategic Investments, LLC (f/k/a Leucadia Funding LLC), an affiliate of the Investor ("**JSI**"), shall have been permitted to withdraw (i) $31.25 million from the Account on the date of the December Closing notwithstanding the Lock-Up Period (the "**December Account Withdrawal**") and (ii) $18.75 million from the Account on the date of the January Closing notwithstanding the Lock-Up Period (the "**January Account Withdrawal**"). As a result of each of the December Account Withdrawal and the January Account Withdrawal, the Notional Value of the Account shall be reduced correspondingly. WMSA acknowledges and agrees that each of the December Account Withdrawal and the January Account Withdrawal (i) shall not be deemed to be a breach of the Investment Management Agreement, (ii) shall not result in the end of a Performance Period or the calculation and payment of a Performance Fee, notwithstanding Section 1.1 of Schedule D of the Investment Management Agreement, (iii) shall not result in any adjustment of the Revenue Share Percentage, notwithstanding Section 9(ccc) of the Strategic Relationship Agreement, and (iv) shall not otherwise affect the Investor's rights under the Investment Management Agreement or the Strategic Relationship Agreement.

**Section 4.9.   Investment Management Agreement Amendment**.   Following the December Closing, Section 10.5(b) of the Investment Management Agreement shall have been amended and restated in its entirety by deleting such Section and replacing such Section with the following:

"(b)     upon the second anniversary of the funding of the Account, the Client may withdraw 50% of any amounts in the Account above the Adjusted Initial Notional Value of the Account on or about the Effective Date resulting from the appreciation of the Account, upon at least thirty (30) days' written notice to the Manager. "Adjusted Initial Notional Value" means the initial Notional Value of the Account *minus* any withdrawals contemplated and authorized by the Note Purchase Agreement; or"

**Section 5.       REPRESENTATIONS AND WARRANTIES OF THE COMPANY AND WMSA**.

Each of the Company and WMSA represents, warrants and agrees as to the Investor as of each of the December Closing and the January Closing that:

**Section 5.1.   Organization; Power and Authority**.   The Company is a Connecticut limited liability company duly organized, validly existing and in good standing under the laws of its jurisdiction, and is in good standing in each jurisdiction in which such qualification is required by law, other than those jurisdictions as to which the failure to be so qualified or in good standing could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.  The Company has the limited liability company power and authority to own or hold under lease the properties it purports to own or hold under lease, to transact the business it transacts and proposes to transact, to execute and deliver this Agreement and the Notes and to perform the provisions hereof and thereof.

**Section 5.2.   Authorization, Etc.**   This Agreement and the Notes have been duly authorized by all necessary limited liability company action on the part of the Company, and this Agreement constitutes, and upon execution and delivery thereof the Notes will constitute, a legal,

valid and binding obligation of the Company, enforceable against the Company, in accordance with its terms, except as such enforceability may be limited by (i) applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and (ii) general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

Section 5.3.    **Compliance with Laws, Other Instruments, Etc.**  The execution, delivery and performance by the Company of this Agreement and the Notes will not (i) contravene, result in any breach of, or constitute a default under, or result in the creation of any Lien in respect of any property of the Company or any Subsidiary under, any indenture, mortgage, deed of trust, loan, purchase or credit agreement, lease, limited liability company agreement or other charter documents, regulations or by-laws, or any other agreement or instrument to which the Company or any Subsidiary is bound or by which the Company or any Subsidiary or any of their respective properties may be bound or affected, (ii) conflict with or result in a breach of any of the terms, conditions or provisions of any order, judgment, decree or ruling of any court, arbitrator or Governmental Authority applicable to the Company or any Subsidiary or (iii) violate any provision of any statute or other rule or regulation of any Governmental Authority applicable to the Company or any Subsidiary. For the avoidance of doubt, the Investor hereby gives its consent to the issuance of the Notes pursuant to Section 2(a)(iv) of the Strategic Relationship Agreement.

Section 5.4.    **Governmental Authorizations, Etc.**    No consent, approval or authorization of, or registration, filing or declaration with, any Governmental Authority is required in connection with the execution, delivery or performance by the Company of this Agreement or the Notes.

Section 5.5.    **Litigation; Observance of Agreements, Statutes and Orders**.  (a) There are no actions, suits, investigations or proceedings pending or, to the best knowledge of the Company, threatened against or affecting the Company or any Subsidiary or any property of the Company or any Subsidiary in any court or before any arbitrator of any kind or before or by any Governmental Authority that could, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

(b)    Neither the Company nor any Subsidiary is (i) in default under any agreement or instrument to which it is a party or by which it is bound, (ii) in violation of any order, judgment, decree or ruling of any court, any arbitrator of any kind or any Governmental Authority or (iii) in violation of any applicable law, ordinance, rule or regulation of any Governmental Authority (including Environmental Laws and the USA PATRIOT Act), which default or violation could, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

Section 5.6.    **Private Offering by the Company**.  Neither the Company nor anyone acting on its behalf has offered the Notes or any similar Securities for sale to, or solicited any offer to buy the Notes or any similar Securities from, or otherwise approached or negotiated in respect thereof with, any Person other than the Investor, which has been offered the Notes at a private sale for investment.  Neither the Company nor anyone acting on its behalf has taken, or will take, any action that would subject the issuance or sale of the Notes to the registration requirements of

section 5 of the Securities Act or to the registration requirements of any Securities or blue sky laws of any applicable jurisdiction.

Section 5.7.  **Use of Proceeds**.  Each of the Company and WMSA covenants that (a) The Company will apply the proceeds of the sale of the Notes hereunder and each of the December Additional Weiss Equity Investment and the January Additional Weiss Equity Investment to invest in OGI Associates, LLC ("**OGI**"), a subsidiary of the Company. Following such investment in OGI, such amounts may not be withdrawn by the Company except to (i) fund the Company's operating expenses that are incurred in the Ordinary Course of Business, (ii) make capital investments on terms and conditions reasonably satisfactory to the Investor, (iii) repurchase the Notes pursuant to their terms or (iv) fund an Authorized Partner Withdrawal, subject to the condition that the Company provide the Investor with 5 Business Days' prior notice written notice of any such Authorized Partner Withdrawal for so long as the Notes are outstanding. For the avoidance of doubt, the capital investments referred to in Section 5.7(a)(ii) will be subject to the prior written approval of the Investor.

(b)    No part of the proceeds from the sale of the Notes hereunder will be used, directly or indirectly, for the purpose of buying or carrying any margin stock within the meaning of Regulation U of the Board of Governors of the Federal Reserve System (12 CFR 221), or for the purpose of buying or carrying or trading in any Securities under such circumstances as to involve the Company in a violation of Regulation X of said Board (12 CFR 224) or to involve any broker or dealer in a violation of Regulation T of said Board (12 CFR 220).  As used in this Section, the terms "**margin stock**" and "**purpose of buying or carrying**" shall have the meanings assigned to them in said Regulation U.

Section 5.8.  **Status under Certain Statutes**.  Neither the Company nor any Subsidiary is subject to regulation, or will, following the issuance and sale of the Notes pursuant to this Agreement, be subject to regulation under the Investment Company Act of 1940, the Public Utility Holding Company Act of 2005, the ICC Termination Act of 1995, or the Federal Power Act.

Section 5.9.  **Additional Representations**.  (a) All of the representations and warranties that it has made pursuant to the Investment Management Agreement or the Strategic Relationship Agreement, as applicable, are true and correct, (b) there has not been any breach of its obligations, covenants, representations or warranties that has not previously been disclosed to JSI under the Investment Management Agreement or the Strategic Relationship Agreement, as applicable, and (c) all information that it has provided to JSI in connection with (i) the Investment Management Agreement or the Strategic Relationship Agreement or (ii) the negotiation of this Agreement, the issuance and sale of the Notes and any transactions related to the foregoing is true, accurate and correct in all material respects.

Section 6.    REPRESENTATIONS OF THE INVESTOR.

Section 6.1.  **Purchase for Investment**.  The Investor represents that it is purchasing the Notes for its own account or for one or more separate accounts maintained by it, *provided* that the disposition of the Investor's property shall at all times be within the Investor's control.  The Investor understands that the Notes have not been registered under the Securities Act and may be

resold only if registered pursuant to the provisions of the Securities Act or if an exemption from registration is available, except under circumstances where neither such registration nor such an exemption is required by law, and that the Company is not required to register the Notes.

**Section 7.    TERMS OF THE NOTES.**

**Section 7.1.    Maturity**.  (i) The December Note will mature on December 3, 2024 (the "**December Maturity Date**"), subject to Optional Redemption by the Company or the Investor and Trigger Redemption by the Investor; and (ii) the January Note will mature on January 13, 2025 (the "**January Maturity Date**"), subject to Optional Redemption by the Company or the Investor and Trigger Redemption by the Investor. Unless the December Note shall have been previously redeemed via an Optional Redemption or a Trigger Redemption, on the December Maturity Date the Company will pay the Investor the Redemption Payment and the December Note will cease to be outstanding upon payment in full thereof.  Unless the January Note shall have been previously redeemed via an Optional Redemption or a Trigger Redemption, on the January Maturity Date the Company will pay the Investor the Redemption Payment and the January Note will cease to be outstanding upon payment in full thereof.

**Section 7.2.    Optional Redemption**.  Each of the Company and the Investor shall have the right to redeem each Note, in whole but not in part, on each applicable Optional Redemption Date (an "**Optional Redemption**") by at least 10 calendar days' prior written notice to the other party prior to the applicable Optional Redemption Date, and the Company will pay the Investor the Redemption Payment on the applicable Optional Redemption Date and the applicable Note will cease to be outstanding upon payment in full thereof.

**Section 7.3.    Trigger Redemption**.  The Investor shall have the right to redeem the Notes, in whole but not in part, at any time following the occurrence of either (a) Cause by prior written notice to the Company at any time or (b) a Members Equity Event by at least 10 calendar days' prior written notice to the Company (any such redemption, a "**Trigger Redemption**").  If the Notes are redeemed pursuant to a Trigger Redemption, the Company will pay the Investor the Redemption Payment on the date specified by the Investor in the applicable notice (the "**Trigger Redemption Date**") and the Notes will cease to be outstanding upon payment in full thereof.

**Section 7.4.    Maturity; Surrender, Etc.**  In the case of each Optional Redemption, Trigger Redemption or maturity pursuant to this Section 7, the Redemption Payment shall become due and payable on the applicable Optional Redemption Date, Trigger Redemption Date or Applicable Maturity Date, as applicable.  From and after such date, unless the Company shall fail to pay such Redemption Payment when so due and payable, interest on such Redemption Payment shall not accrue.  Any Note paid in full shall be surrendered to the Company and cancelled and shall not be reissued.

**Section 7.5.    Purchase of Notes**.  The Company will not, and will not permit any Affiliate, to purchase, redeem, prepay or otherwise acquire, directly or indirectly, the outstanding Notes except upon the payment of the Notes in accordance with this Agreement and the Notes. The Company will promptly cancel the Notes acquired by it or any Affiliate pursuant to any

payment of the Notes pursuant to this Agreement and no Notes may be issued in substitution or exchange for any such Note.

**Section 7.6.    Payment Due on Non-Business Days**.  Anything in this Agreement or the Notes to the contrary notwithstanding, any payment of the Redemption Payment on the Notes that is due on a date that is not a Business Day shall be made on the next succeeding Business Day and shall include the additional days elapsed in the computation of the Redemption Payment payable on such next succeeding Business Day.

**Section 8.    AFFIRMATIVE COVENANTS**.

The Company covenants that so long as each Note is outstanding:

**Section 8.1.    Compliance with Laws**.  The Company will, and will cause each of its Subsidiaries to, comply with all laws, ordinances or governmental rules or regulations to which each of them is subject (including ERISA, Environmental Laws and the USA PATRIOT Act) and will obtain and maintain in effect all licenses, certificates, permits, franchises and other governmental authorizations necessary to the ownership of their respective properties or to the conduct of their respective businesses, in each case to the extent necessary to ensure that non-compliance with such laws, ordinances or governmental rules or regulations or failures to obtain or maintain in effect such licenses, certificates, permits, franchises and other governmental authorizations could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

**Section 8.2.    Limited Liability Company Existence, Etc.**  The Company will at all times preserve and keep its limited liability company existence in full force and effect.  The Company will at all times preserve and keep in full force and effect the organizational existence of each of its Subsidiaries (unless merged into the Company or a Wholly Owned Subsidiary) and all rights and franchises of the Company and its Subsidiaries unless, in the good faith judgment of the Company, the termination of or failure to preserve and keep in full force and effect such organizational existence, right or franchise could not, individually or in the aggregate, have a Material Adverse Effect.

**Section 8.3.    Additional Notification Rights**.  The Company shall notify the Investor promptly in writing if it has reason to believe that the Members Equity as of any given day would be or is equal to or less than (a) $25 million or (b) $10 million, in each case, calculated as if the Notes had been redeemed in full as of such day.  For purposes of clarity, the Company's obligation to give notice to the Investor pursuant to clause (a) shall be triggered on each day when the Members Equity falls from an amount higher than $25 million to an amount equal to or lower than $25 million (*i.e.*, there is no obligation to provide notice to the Investor if the Members Equity previously fell to an amount equal or lower than $25 million and then continued on subsequent days to not exceed $25 million until either (i) it equaled or exceeded $25 million on a subsequent day or (ii) fell to or less than $10 million in accordance with clause (b) above).

**Section 9.**    **EVENTS OF DEFAULT**.

An "**Event of Default**" shall exist if any of the following conditions or events shall occur and be continuing:

(a)    the Company defaults in the payment of the Redemption Payment on any Note when the same becomes due and payable; or

(b)    (i) the Company defaults in the performance of or compliance with any other term contained in this Agreement or any Note or (ii) any representation or warranty made in writing by or on behalf of the Company or by any officer of the Company in this Agreement, the Investment Management Agreement or the Strategic Relationship Agreement or any writing furnished in connection with the transactions contemplated hereby proves to have been false or incorrect in any material respect on the date as of which it was made; or

(c)    the Company or any Subsidiary (i) is generally not paying, or admits in writing its inability to pay, its debts as they become due, (ii) files, or consents by answer or otherwise to the filing against it of, a petition for relief or reorganization or arrangement or any other petition in bankruptcy, for liquidation or to take advantage of any bankruptcy, insolvency, reorganization, moratorium or other similar law of any jurisdiction, (iii) makes an assignment for the benefit of its creditors, (iv) consents to the appointment of a custodian, receiver, trustee or other officer with similar powers with respect to it or with respect to any substantial part of its property, (v) is adjudicated as insolvent or to be liquidated, or (vi) takes limited liability company action for the purpose of any of the foregoing; or

(d)    a court or other Governmental Authority of competent jurisdiction enters an order appointing, without consent by the Company or any of its Subsidiaries, a custodian, receiver, trustee or other officer with similar powers with respect to it or with respect to any substantial part of its property, or constituting an order for relief or approving a petition for relief or reorganization or any other petition in bankruptcy or for liquidation or to take advantage of any bankruptcy or insolvency law of any jurisdiction, or ordering the dissolution, winding-up or liquidation of the Company or any of its Subsidiaries, or any such petition shall be filed against the Company or any of its Subsidiaries and such petition shall not be dismissed within 60 days; or

(e)    any event occurs with respect to the Company or any Subsidiary which, under the laws of any jurisdiction, is analogous to any of the events described in Section 9(b).

**Section 10.**    **REMEDIES ON DEFAULT, ETC.**

**Section 10.1.  Acceleration**.  (a)  If an Event of Default with respect to the Company described in Section 9(a), (c), (d) or (e) (other than an Event of Default described in clause (i) of Section 9(c) or described in clause (vi) of Section 9(c) by virtue of the fact that such clause encompasses clause (i) of Section 9(c) has occurred), the Notes shall automatically become immediately due and payable.

(b)      If any other Event of Default has occurred and is continuing, any holder of the Notes may at any time at its option, by notice to the Company, declare the Notes to be immediately due and payable.

Upon the Notes becoming due and payable under this Section 10.1, whether automatically or by declaration, the Notes will forthwith mature and the Redemption Payment, plus any interest accrued thereon at the Default Rate, shall all be immediately due and payable, in each and every case without presentment, demand, protest or further notice, all of which are hereby waived.

**Section 10.2.  Other Remedies**.  If any Default or Event of Default has occurred and is continuing, and irrespective of whether the Notes have become or have been declared immediately due and payable under Section 10.1, the holders of the Notes at the time outstanding may proceed to protect and enforce the rights of such holders by an action at law, suit in equity or other appropriate proceeding, whether for the specific performance of any agreement contained herein or in the Notes, or for an injunction against a violation of any of the terms hereof or thereof, or in aid of the exercise of any power granted hereby or thereby or by law or otherwise. Nothing set forth in this Agreement shall have any effect on any of the remedies available to JSI pursuant to the Investment Management Agreement or the Strategic Relationship Agreement.

**Section 10.3.  No Waivers or Election of Remedies, Expenses, Etc.**  No course of dealing and no delay on the part of any holder of the Notes in exercising any right, power or remedy shall operate as a waiver thereof or otherwise prejudice such holder's rights, powers or remedies. No right, power or remedy conferred by this Agreement or any Note upon any holder thereof shall be exclusive of any other right, power or remedy referred to herein or therein or now or hereafter available at law, in equity, by statute or otherwise.  Without limiting the obligations of the Company under Section 13, the Company will pay to each holder of a Note, on demand, such further amount as shall be sufficient to cover all costs and expenses of such holder incurred in any enforcement or collection under this Section 10, including reasonable attorneys' fees, expenses and disbursements.  This Section 10.3 shall also be deemed to apply to the JSI's rights under the Strategic Relationship Agreement and the Investment Management Agreement.

**Section 11.      REGISTRATION; EXCHANGE; SUBSTITUTION OF NOTES**.

**Section 11.1.  Registration of Notes**.  The Company shall keep at its principal executive office a register for the registration and registration of transfers of the Notes.  The name and address of each holder of the Notes, each transfer thereof and the name and address of each transferee of the Notes shall be registered in such register.  If any holder of the Notes is a nominee, then (a) the name and address of the beneficial owner of the Notes shall also be registered in such register as an owner and holder thereof and (b) at any such beneficial owner's option, either such beneficial owner or its nominee may execute any amendment, waiver or consent pursuant to this Agreement. Prior to due presentment for registration of transfer, the Person in whose name the Notes shall be registered shall be deemed and treated as the owner and holder thereof for all purposes hereof, and the Company shall not be affected by any notice or knowledge to the contrary.

**Section 11.2.  Transfer and Exchange of Notes**.  (a) Upon surrender of a Note to the Company at the address and to the attention of the designated officer (all as specified in Section 15.5(iii)), for registration of transfer or exchange (and, in the case of a surrender for registration of a transfer accompanied by a written instrument of transfer, duly executed by the registered holder of the Note or such holder's attorney duly authorized in writing and accompanied by the relevant name, address and other information for notices of each transferee of such Note or part thereof), within 2 Business Days thereafter, the Company shall execute and deliver, at the Company's expense (except as provided below), a new Note (as requested by the holder thereof) in exchange therefor, in an aggregate principal amount equal to the unpaid principal amount of the surrendered Note.  The new Note shall be payable to such Person as such holder may request and shall be substantially in the form of Schedule 1.  The new Note shall be dated the date of the surrendered Note.  The Company may require payment of a sum sufficient to cover any stamp tax or governmental charge imposed in respect of any such transfer of a Note.  The Notes shall not be transferred in denominations of less than $1 million.

(b)      For the avoidance of doubt, transfer of a Note by the Investor or a transferee to any Affiliate thereof will not be subject to the consent of the Company or WMSA.

**Section 11.3.  Replacement of Notes**.  Upon receipt by the Company at the address and to the attention of the designated officer (all as specified in Section 15.5(iii)) of evidence reasonably satisfactory to it of the ownership of and the loss, theft, destruction or mutilation of a Note, and

(a)      in the case of loss, theft or destruction, of indemnity reasonably satisfactory to it (*provided* that if the holder of such Note is, or is a nominee for, the Investor) such Person's own unsecured agreement of indemnity shall be deemed to be satisfactory, or

(b)      in the case of mutilation, upon surrender and cancellation thereof,

within 2 Business Days thereafter, the Company, at its own expense shall execute and deliver, in lieu thereof, a new Note, dated the date of such lost, stolen, destroyed or mutilated Note.

**Section 12.      PAYMENTS ON NOTES**.

**Section 12.1.  Place of Payment**.  Subject to Section 12.2, payments of the Redemption Payment becoming due and payable on the Notes shall be made in New York, New York at the principal office of WMSA in such jurisdiction.  The Company may at any time, by notice to the holders of the Notes, change the place of payment of the Notes so long as such place of payment shall be either the principal office of WMSA in such jurisdiction or the principal office of a bank or trust company in such jurisdiction.

**Section 12.2.  Payment by Wire Transfer**.  So long as the Investor or its nominee shall be the holder of the Notes, and notwithstanding anything contained in Section 12.1 or in such Note to the contrary, the Company will pay all sums becoming due on such Note for the Redemption Payment and all other amounts becoming due hereunder by the method and at the address specified for such purpose below the Investor's name in the Investor Schedule, or by such other method or

at such other address as the Investor shall have from time to time specified to the Company in writing for such purpose, without the presentation or surrender of such Note or the making of any notation thereon, except that upon written request of the Company made concurrently with or reasonably promptly after payment or prepayment in full of the Note, the Investor shall surrender such Note for cancellation, reasonably promptly after any such request, to the Company at its principal executive office or at the place of payment most recently designated by the Company pursuant to Section 12.1.  Prior to any sale or other disposition of the Note held by the Investor or its nominee, the Investor will surrender such Note to the Company in exchange for a new Note pursuant to Section 11.2.

**Section 13.    EXPENSES, ETC.**

**Section 13.1.    Transaction Expenses**.  Whether or not the transactions contemplated hereby are consummated, the Company will pay all costs and expenses (including attorneys' fees of a special counsel and, if reasonably required by the Required Holder, local or other counsel) incurred by the Investor in connection with such transactions and in connection with any amendments, waivers or consents under or in respect of this Agreement, the Notes, the Investment Management Agreement and the Strategic Relationship Agreement (whether or not such amendment, waiver or consent becomes effective), including: (a) the costs and expenses incurred in enforcing or defending (or determining whether or how to enforce or defend) any rights under this Agreement or the Notes or in responding to any subpoena or other legal process or informal investigative demand issued in connection with this Agreement or the Notes, or by reason of being a holder of the Notes and (b) the costs and expenses, including financial advisors' fees, incurred in connection with the insolvency or bankruptcy of the Company or any Subsidiary or in connection with any work out or restructuring of the transactions contemplated hereby and by the Notes.

The Company will pay, and will save the Investor harmless from, (i) all claims in respect of any fees, costs or expenses, if any, of brokers and finders (other than those, if any, retained by the Investor or other holder in connection with its purchase of the Notes), (ii) any and all wire transfer fees that any bank or other financial institution deducts from any payment under such Note to such holder or otherwise charges to a holder of the Notes with respect to a payment under such Note and (iii) any judgment, liability, claim, order, decree, fine, penalty, cost, fee, expense (including reasonable attorneys' fees and expenses) or obligation resulting from the consummation of the transactions contemplated hereby, including the use of the proceeds of the Notes by the Company.

**Section 13.2.    Certain Taxes**.  (a) The Company agrees to pay all stamp, documentary or similar taxes or fees which may be payable in respect of the execution and delivery or the enforcement of this Agreement or the execution and delivery (but not the transfer) or the enforcement of the Notes in the United States or any other jurisdiction where the Company has assets or of any amendment of, or waiver or consent under or with respect to, this Agreement or of the Notes, and to pay any value added tax due and payable in respect of reimbursement of costs and expenses by the Company pursuant to this Section 13, and will save each holder of the Notes, to the extent permitted by applicable law, harmless against any loss or liability resulting from

-12-

nonpayment or a delay in payment of any such tax or fee required to be paid by the Company hereunder.

(b)    The Company and the Investor agree to treat each Note as a prepaid derivative financial contract issued by the Company to the Investor for U.S. federal income tax purposes.  The parties shall report income and expense in accordance with the "wait and see" method of accounting.

**Section 13.3.  Survival**.  The obligations of the Company under this Section 13 will survive the payment or transfer of the Notes, the enforcement, amendment or waiver of any provision of this Agreement, the Notes, and the termination of this Agreement.

**Section 14.    SURVIVAL OF REPRESENTATIONS AND WARRANTIES; ENTIRE AGREEMENT**.

All representations and warranties contained herein shall survive the execution and delivery of this Agreement and the Notes, the purchase or transfer by the Investor of the Notes or a portion thereof or interest therein and the payment of the Notes, and may be relied upon by any subsequent holder of the Notes, regardless of any investigation made at any time by or on behalf of the Investor or any other holder of the Notes.  All statements contained in any certificate or other instrument delivered by or on behalf of the Company pursuant to this Agreement shall be deemed representations and warranties of the Company under this Agreement.  Subject to the preceding sentence, this Agreement, the Notes, the Investment Management Agreement and the Strategic Relationship Agreement embody the entire agreement and understanding between the JSI and the Company and supersede all prior agreements and understandings relating to the subject matter hereof.

**Section 15.    AMENDMENT AND WAIVER**.

**Section 15.1.  Requirements**.  This Agreement and the Notes may be amended, and the observance of any term hereof or of the Notes may be waived (either retroactively or prospectively), only with the written consent of the Company, WMSA and the Required Holder.

**Section 15.2.  Solicitation of Holders of the Notes**.

(a)    *Solicitation*.  The Company will provide any holders of the Notes with sufficient information, sufficiently far in advance of the date a decision is required, to enable such holders to make an informed and considered decision with respect to any proposed amendment, waiver or consent in respect of any of the provisions hereof or of the Notes.  The Company will deliver executed or true and correct copies of each amendment, waiver or consent effected pursuant to this Section 15 to the holders of the Notes promptly following the date on which it is executed and delivered by, or receives the consent or approval of, the requisite holders of the Notes.

(b)    *Payment*.  The Company will not, directly or indirectly, pay or cause to be paid any remuneration, whether by way of supplemental or additional interest, fee or otherwise, or grant any security or provide other credit support, to a holder of the Notes as consideration for or as an inducement to the entering into by such holder of any waiver or amendment of any of the terms

and provisions hereof or the Notes unless such remuneration is concurrently paid, or security is concurrently granted or other credit support concurrently provided, on the same terms, ratably to the holders of the Notes, even if such holders did not consent to such waiver or amendment.

(c)      *Consent in Contemplation of Transfer*.  Any consent given pursuant to this Section 15 by a holder of a Note that has transferred or has agreed to transfer a Note to (i) the Company, (ii) any Subsidiary or any other Affiliate or (iii) any other Person in connection with, or in anticipation of, such other Person acquiring, making a tender offer for or merging with the Company and/or any of its Affiliates, in each case in connection with such consent, shall be void and of no force or effect, except solely as to such holder, and any amendments effected or waivers granted or to be effected or granted that would not have been or would not be so effected or granted but for such consent shall be void and of no force or effect except solely as to such holder.

**Section 15.3.  Binding Effect, Etc.**  Any amendment or waiver consented to as provided in this Section 15 is binding upon a holder and upon each future holder of a Note and upon the Company without regard to whether such Note has been marked to indicate such amendment or waiver.  No such amendment or waiver will extend to or affect any obligation, covenant, agreement, Default or Event of Default not expressly amended or waived or impair any right consequent thereon.  No course of dealing between the Company and any holder of a Note and no delay in exercising any rights hereunder or under a Note shall operate as a waiver of any rights of the holder of such Note.

**Section 15.4.  Notes Held by Company, Etc.**  Solely for the purpose of determining whether the holders of the requisite percentage of the aggregate principal amount of the Notes then outstanding approved or consented to any amendment, waiver or consent to be given under this Agreement or the Notes, or have directed the taking of any action provided herein or the Notes to be taken upon the direction of the holders of a specified percentage of the aggregate principal amount of the Notes then outstanding, the Notes directly or indirectly owned by the Company or any of its Affiliates shall be deemed not to be outstanding.

**Section 15.5.  Notices**.

All notices and communications provided for hereunder shall be in writing and sent (a) by telecopy if the sender on the same day sends a confirming copy of such notice by an internationally recognized overnight delivery service (charges prepaid), or (b) by registered or certified mail with return receipt requested (postage prepaid), or (c) by an internationally recognized overnight delivery service (charges prepaid).  Any such notice must be sent:

(i)      if to the Investor or its nominee, to the Investor or nominee at the address specified for such communications in the Investor Schedule, or at such other address as the Investor or nominee shall have specified to the Company in writing,

(ii)      if to any other holder of a Note, to such holder at such address as such other holder shall have specified to the Company in writing, or

(iii)    if to the Company, to the Company at its address set forth at the beginning hereof to the attention of Jeffrey Dillabough, or at such other address as the Company shall have specified to the holder of a Note in writing.

Notices under this Section 15 will be deemed given only when actually received.

**Section 16.    CONFIDENTIAL INFORMATION.**

Any information regarding the Notes and the related transactions described in this Agreement will be treated as "Confidential Information" per the Strategic Relationship Agreement.

**Section 17.    MISCELLANEOUS.**

**Section 17.1.  Successors and Assigns**.  All covenants and other agreements contained in this Agreement by or on behalf of any of the parties hereto bind and inure to the benefit of their respective successors and assigns (including any subsequent holder of a Note) whether so expressed or not, except that the Company and WMSA may not assign or otherwise transfer any of its rights or obligations hereunder or under the Notes without the prior written consent of the Investor.  Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto and their respective successors and assigns permitted hereby) any legal or equitable right, remedy or claim under or by reason of this Agreement.

**Section 17.2.  Severability**.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall (to the full extent permitted by law) not invalidate or render unenforceable such provision in any other jurisdiction.

**Section 17.3.  Construction, Etc**.  Each covenant contained herein shall be construed (absent express provision to the contrary) as being independent of each other covenant contained herein, so that compliance with any one covenant shall not (absent such an express contrary provision) be deemed to excuse compliance with any other covenant.  Where any provision herein refers to action to be taken by any Person, or which such Person is prohibited from taking, such provision shall be applicable whether such action is taken directly or indirectly by such Person.

Defined terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation."  The word "will" shall be construed to have the same meaning and effect as the word "shall."  Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein) and, for purposes of the Notes, shall also include any such note issued in substitution therefor pursuant to Section 11, (b) subject to Section 17.1,

-15-

any reference herein to any Person shall be construed to include such Person's successors and assigns, (c) the words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (d) all references herein to Sections and Schedules shall be construed to refer to Sections of, and Schedules to, this Agreement, and (e) any reference to any law or regulation herein shall, unless otherwise specified, refer to such law or regulation as amended, modified or supplemented from time to time.

**Section 17.4. Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.  Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto.

**Section 17.5. Governing Law**.  This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the law of the State of New York, excluding choice-of-law principles of the law of such State that would permit the application of the laws of a jurisdiction other than such State.

**Section 17.6. Jurisdiction and Process; Waiver of Jury Trial**.  (a) The Company irrevocably submits to the non-exclusive jurisdiction of any New York State or federal court sitting in the Borough of Manhattan, the City of New York, over any suit, action or proceeding arising out of or relating to this Agreement or a Note.  To the fullest extent permitted by applicable law, the Company irrevocably waives and agrees not to assert, by way of motion, as a defense or otherwise, any claim that it is not subject to the jurisdiction of any such court, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

(b)    The Company agrees, to the fullest extent permitted by applicable law, that a final judgment in any suit, action or proceeding of the nature referred to in Section 17.6(a) brought in any such court shall be conclusive and binding upon it, subject to rights of appeal, as the case may be, and may be enforced in the courts of the United States of America or the State of New York (or any other courts to the jurisdiction of which it or any of its assets is or may be subject) by a suit upon such judgment.

(c)    The Company consents to process being served by or on behalf of any holder of a Note in any suit, action or proceeding of the nature referred to in Section 17.6(a) by mailing a copy thereof by registered, certified, priority or express mail (or any substantially similar form of mail), postage prepaid, return receipt or delivery confirmation requested, to it at its address specified in Section 15.5 or at such other address of which such holder shall then have been notified pursuant to said Section.  The Company agrees that such service upon receipt (i) shall be deemed in every respect effective service of process upon it in any such suit, action or proceeding and (ii) shall, to the fullest extent permitted by applicable law, be taken and held to be valid personal service upon and personal delivery to it.  Notices hereunder shall be conclusively presumed received as evidenced by a delivery receipt furnished by the United States Postal Service or any reputable commercial delivery service.

-16-

(d)      Nothing in this Section 17.6 shall affect the right of any holder of a Note to serve process in any manner permitted by law, or limit any right that any holder of a Note may have to bring proceedings against the Company in the courts of any appropriate jurisdiction or to enforce in any lawful manner a judgment obtained in one jurisdiction in any other jurisdiction.

(e)      The parties hereto hereby waive trial by jury in any action brought on or with respect to this Agreement, the Notes or any other document executed in connection herewith or therewith.

*   *   *   *   *

If you are in agreement with the foregoing, please sign the form of agreement on a counterpart of this Agreement and return it to the Company, whereupon this Agreement shall become a binding agreement between you, the Company and WMSA.

Very truly yours,

GWA, LLC

By _____
Name: Jay Tucher
Title: COO

Weiss Multi-Strategy Advisers LLC

By _____
Name: Jay Tucher
Title: COO

This Agreement is hereby
accepted and agreed to as
of the date hereof.

JFG Funding LLC

By _____
Name:
Title:

-18-

If you are in agreement with the foregoing, please sign the form of agreement on a counterpart of this Agreement and return it to the Company, whereupon this Agreement shall become a binding agreement between you, the Company and WMSA.

Very truly yours,

GWA, LLC

By _____
Name:
Title:

Weiss Multi-Strategy Advisers LLC

By _____
Name:
Title:

This Agreement is hereby
accepted and agreed to as
of the date hereof.

JFG Funding LLC

By _____
Name:    Nick Daraviras
Title:    Authorized Person

-18-

### DEFINED TERMS

As used herein, the following terms have the respective meanings set forth below or set forth in the Section hereof following such term:

"**Account**" shall have the meaning given to it in the Investment Management Agreement.

"**Affiliate**" means, at any time, and with respect to any Person, any other Person that at such time, directly or indirectly through one or more intermediaries Controls, or is Controlled by, or is under common Control with, such first Person, and, with respect to the Company, shall include any Person beneficially owning or holding, directly or indirectly, 10% or more of any class of voting or equity interests of the Company or any Subsidiary or any Person of which the Company and its Subsidiaries beneficially own or hold, in the aggregate, directly or indirectly, 10% or more of any class of voting or equity interests. Unless the context otherwise clearly requires, any reference to an "Affiliate" is a reference to an Affiliate of the Company.

"**Agreement**" means this Note Purchase Agreement, including all Schedules and Exhibits attached to this Agreement.

"**Applicable Closing**" means the December Closing with respect to the December Note and the January Closing with respect to the January Note.

"**Applicable Maturity Date**" means the December Maturity Date with respect to the December Note and the January Maturity Date with respect to the January Note.

"**Authorized Partner Withdrawal**" shall have the meaning given to it in the Strategic Relationship Agreement.

"**Business Day**" means any day other than a Saturday, a Sunday or a day on which commercial banks in New York, New York, are required or authorized to be closed.

"**Cause**" shall have the meaning given to it in the Investment Management Agreement.

"**Code**" means the Internal Revenue Code of 1986 and the rules and regulations promulgated thereunder from time to time.

"**Company**" is defined in the first paragraph of this Agreement.

"**Company Agreement**" means the Second Amended and Restated Operating Agreement of the Company dated as of July 15, 2008.

"**Confidential Information**" is defined in Section 16.

"**Control**" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting

securities, by contract or otherwise; and the terms "**Controlled**" and "**Controlling**" shall have meanings correlative to the foregoing.

"**December Account Withdrawal**" is defined in Section 4.8.

"**December Additional Weiss Equity Investment**" is defined in Section 4.4.

"**December Closing**" is defined in Section 3.

"**December Maturity Date**" is defined in Section 7.1.

"**December Note**" is defined in Section 3.

"**Default**" means an event or condition the occurrence or existence of which would, with the lapse of time or the giving of notice or both, become an Event of Default.

"**Default Rate**" means the sum of (a) the Prime Rate, as published in H.15, or another electronic source used for displaying that rate, opposite the heading "Bank prime loan" plus (b) 5%. If the Prime Rate cannot be determined as described above, JSI shall determine the Prime Rate in a commercially reasonable manner.

"**Environmental Laws**" means any and all federal, state, local and foreign statutes, laws, regulations, ordinances, rules, judgments, orders, decrees, permits, concessions, grants, franchises, licenses, agreements or governmental restrictions relating to pollution and the protection of the environment or the release of any materials into the environment, including those related to Hazardous Materials.

"**ERISA**" means the Employee Retirement Income Security Act of 1974 and the rules and regulations promulgated thereunder from time to time in effect.

"**Event of Default**" is defined in Section 9.

"**Governmental Authority**" means

    (a)    the government of

        (i)    the United States of America or any state or other political subdivision thereof, or

        (ii)    any other jurisdiction in which the Company or any Subsidiary conducts all or any part of its business, or which asserts jurisdiction over any properties of the Company or any Subsidiary, or

    (b)    any entity exercising executive, legislative, judicial, regulatory or administrative functions of, or pertaining to, any such government.

A-280

"**H.15**" means statistical release of H.15, available through the website of the Board of Governors of the Federal Reserve System, at http://www.federalreserve.gov/releases/h15, or any successor site or publication.

"**Hazardous Materials**" means any and all pollutants, toxic or hazardous wastes or other substances that might pose a hazard to health and safety, the removal of which may be required or the generation, manufacture, refining, production, processing, treatment, storage, handling, transportation, transfer, use, disposal, release, discharge, spillage, seepage or filtration of which is or shall be restricted, prohibited or penalized by any applicable law, including asbestos, urea formaldehyde foam insulation, polychlorinated biphenyls, petroleum, petroleum products, lead-based paint, radon gas or similar restricted, prohibited or penalized substances.

"**holder**" means, with respect to the Notes, the Person in whose name such Note is registered in the register maintained by the Company pursuant to Section 11.1, *provided*, *however*, that if such Person is a nominee, then for the purposes of Sections 10, 15.2 and 15.5 and any related definitions in this Schedule A, "holder" shall mean the beneficial owner of such Note whose name and address appears in such register.

"**Interest**" shall have the meaning given to it in the Company Agreement.

"**Investment Management Agreement**" means the Investment Management Agreement dated as of May 1, 2018 between WMSA and JSI.

"**Investor**" is defined in Section 2.

"**January Account Withdrawal**" is defined in Section 4.8.

"**January Additional Weiss Equity Investment**" is defined in Section 4.4.

"**January Closing**" is defined in Section 3.

"**January Maturity Date**" is defined in Section 7.1.

"**January Note**" is defined in Section 3.

"**JSI**" is defined in Section 4.8.

"**Lien**" means, with respect to any Person, any mortgage, lien, pledge, charge, security interest or other encumbrance, or any interest or title of any vendor, lessor, lender or other secured party to or of such Person under any conditional sale or other title retention agreement, upon or with respect to any property or asset of such Person (including in the case of stock, stockholder agreements, voting trust agreements and all similar arrangements).

"**Lock-Up Period**" shall have the meaning given to it in the Investment Management Agreement.

A-3

"**Material**" means material in relation to the business, operations, affairs, financial condition, assets, properties or prospects of the Company and its Subsidiaries, taken as a whole.

"**Material Adverse Effect**" means a material adverse effect on (a) the business, operations, affairs, financial condition, assets or properties of the Company or any of its Subsidiaries, (b) the ability of the Company to perform its obligations under this Agreement and the Notes or (c) the validity or enforceability of this Agreement or the Notes.

"**Members Equity"** means the member's equity of the Company.

"**Members Equity Event**" shall be deemed to have occurred if, on any day, the Members Equity is equal to or less than $10 million, calculated as if the Notes had been redeemed in full as of such day.

"**Notes**" is defined in Section 1.

"**Notional Value**" shall have the meaning given to it in the Investment Management Agreement.

"**OGI**" is defined in Section 5.7.

"**Optional Redemption**" is defined in Section 7.2.

"**Optional Redemption Date**" means (i) with respect to the December Note, monthly, on the last calendar day of each month, beginning the third anniversary of the December Closing; and (ii) with respect to the January Note, monthly, on the last calendar day of each month, beginning the third anniversary of the January Closing.

"**Ordinary Course of Business**" shall have the meaning given to it in the Strategic Relationship Agreement.

"**Redemption Payment**" will, for each Note, track the return in the Account from the Applicable Closing to the applicable Optional Redemption Date, Trigger Redemption Date or Applicable Maturity Date, as applicable, calculated as follows:

Initial Principal Amount x (1 + Account Return)

*where:*

"**Account Return**" means (Final Account Value – Initial Account Value) divided by Initial Account Value, as adjusted to take into account any additional contributions to or withdrawals from the Account;

"**Final Account Value**" means the Notional Value of the Account on the applicable Optional Redemption Date or Trigger Redemption Date or the Applicable Maturity Date, disregarding the effect of any withdrawals since, in the

case of the December Note, the December Account Withdrawal, and, in the case of the January Note, the January Account Withdrawal;

"**Initial Account Value**" means, (i) with respect to the December Note, the Notional Value of the Account on the December Closing, after giving effect to the December Account Withdrawal; and (ii) with respect to the January Note, the Notional Value of the Account on the January Closing, after giving effect to the January Account Withdrawal; and

"**Initial Principal Amount**" means (i) with respect to the December Note, $31.25 million; and (ii) with respect to the January Note, $18.75 million.

If there is any dispute regarding the Initial Account Value or the Final Account Value, such dispute shall be resolved pursuant to the dispute resolution provisions set forth in Schedule D, Paragraph 1.5 of the Investment Management Agreement.

"**Performance Fee**" shall have the meaning given to it in the Investment Management Agreement.

"**Person**" means an individual, partnership, corporation, limited liability company, association, trust, unincorporated organization, business entity or Governmental Authority.

"**property**" or "**properties**" means, unless otherwise specifically limited, real or personal property of any kind, tangible or intangible, choate or inchoate.

"**Investor Schedule**" means the Investor Schedule to this Agreement listing the Investor of the Notes and including its notice and payment information.

"**Required Holder**" means (i) with respect to the December Note at any time on or after the December Closing, the holder of 100% in principal amount of the December Note at the time outstanding; and (ii) with respect to the January Note at any time on or after the January Closing, the holder of 100% in principal amount of the January Note at the time outstanding.

"**Responsible Officer**" means any Senior Financial Officer and any other officer of the Company with responsibility for the administration of the relevant portion of this Agreement.

"**Revenue Share Percentage**" has the meaning given to it in the Strategic Relationship Agreement.

"**Securities**" or "**Security**" shall have the meaning specified in section 2(1) of the Securities Act.

"**Securities Act**" means the Securities Act of 1933 and the rules and regulations promulgated thereunder from time to time in effect.

"**Senior Financial Officer**" means the chief financial officer, principal accounting officer, treasurer or comptroller of the Company.

"**Strategic Relationship Agreement**" the Strategic Relationship Agreement dated as of May 1, 2018 by and between LAM Holding LLC and the Company, which agreement has been assigned by LAM Holding LLC to Jefferies Asset Management Holdings LLC pursuant to an Assignment and Assumption Agreement dated as of October 18, 2018.

"**Subsidiary**" means, as to any Person, any other Person in which such first Person or one or more of its Subsidiaries or such first Person and one or more of its Subsidiaries owns sufficient equity or voting interests to enable it or them (as a group) ordinarily, in the absence of contingencies, to elect a majority of the directors (or Persons performing similar functions) of such second Person, and any partnership or joint venture if more than a 50% interest in the profits or capital thereof is owned by such first Person or one or more of its Subsidiaries or such first Person and one or more of its Subsidiaries (unless such partnership or joint venture can and does ordinarily take major business actions without the prior approval of such Person or one or more of its Subsidiaries). Unless the context otherwise clearly requires, any reference to a "Subsidiary" is a reference to a Subsidiary of the Company.

"**Trigger Redemption**" is defined in Section 7.3.

"**Trigger Redemption Date**" means the date specified by Investor in the applicable notice delivered to the Company to effectuate a Trigger Redemption. If a Trigger Redemption Date is not a date on which the Notional Value of the Account would otherwise be calculated, WMSA shall, at its own expense, calculate the Notional Value of the Account on such Trigger Redemption Date.

"**USA PATRIOT Act**" means United States Public Law 107-56, Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001 and the rules and regulations promulgated thereunder from time to time in effect.

"**Wholly Owned Subsidiary**" means, at any time, any Subsidiary, all of the equity interests (except directors' qualifying shares) and voting interests of which are owned by any one or more of the Company and the Company's other Wholly Owned Subsidiaries at such time.

"**WMSA**" has the meaning given to it in the first paragraph of this Agreement.

A-6

A-284

**THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR IN ANY OTHER JURISDICTION. THE SECURITIES REPRESENTED HEREBY MAY NOT BE OFFERED, SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER APPLICABLE SECURITIES LAWS UNLESS OFFERED, SOLD OR TRANSFERRED PURSUANT TO AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THOSE LAWS.**

**NOTE**

**GWA, LLC**

**$50,000,000 OF NOTES**

No. 1                                                                                                    **[\*], 20[\*]**
$[\*]

FOR VALUE RECEIVED, the undersigned, **GWA, LLC** (herein called the "**Company**"), a Connecticut limited liability company, hereby promises to pay to JFG Funding LLC, or registered assigns, the Redemption Payment on the applicable Optional Redemption Date or Trigger Redemption Date or the Applicable Maturity Date, with interest (computed on the basis of a 360-day year of 12 30-day months), to the extent permitted by law, on any overdue payment of Redemption Payment at a rate per annum from time to time equal to the Default Rate.

Payment of the Redemption Amount with respect to the Note is to be made in lawful money of the United States of America at New York, New York or at such other place as the Company shall have designated by written notice to the holder of the Note as provided in the Note Purchase Agreement referred to below.

The Note (herein called the "**Note**") is issued pursuant to the Note Purchase Agreement, dated December 3, 2019 (as from time to time amended, the "**Note Purchase Agreement**"), by and among the Company, Weiss Multi-Strategy Advisers LLC and JFG Funding LLC and is entitled to the benefits thereof.  The holder of the Note will be deemed, by its acceptance hereof, to have agreed to the confidentiality provisions set forth in Section 16 of the Note Purchase Agreement.  Unless otherwise indicated, capitalized terms used in the Note shall have the respective meanings ascribed to such terms in the Note Purchase Agreement.

The Note is a registered Note and, as provided in the Note Purchase Agreement, upon surrender of the Note for registration of transfer accompanied by a written instrument of transfer

SCHEDULE 1
(to Note Purchase Agreement)

duly executed, by the registered holder hereof or such holder's attorney duly authorized in writing, a new Note for a like principal amount will be issued to, and registered in the name of, the transferee.  Prior to due presentment for registration of transfer, the Company may treat the Person in whose name this Note is registered as the owner hereof for the purpose of receiving payment and for all other purposes, and the Company will not be affected by any notice to the contrary.

**This Note is not subject to prepayment.**

If an Event of Default occurs and is continuing, the Redemption Payment of the Note may be declared or otherwise become due and payable in the manner, at the price and with the effect provided in the Note Purchase Agreement.

The Note shall be construed and enforced in accordance with, and the rights of the Company and the holder of the Note shall be governed by, the law of the State of New York, excluding choice-of-law principles of the law of such State that would permit the application of the laws of a jurisdiction other than such State.

**GWA, LLC**

By _____

    **Name:**
    **Title:**

SCHEDULE 1
(to Note Purchase Agreement)

## GWA, LLC

### INFORMATION RELATING TO THE INVESTOR

| NAME AND ADDRESS OF THE INVESTOR | PRINCIPAL AMOUNT OF NOTES TO BE PURCHASED |
|---|---|
| JFG FUNDING LLC<br>520 Madison Avenue<br>New York, NY 10022 | $31,250,000 of December Note<br><br>$18,750,000 of January Note |

(1) All payments by wire transfer of immediately available funds to:

Bank of New York
1 Wall Street, New York, NY 10005
ABA: ███████
Account #: ███████
Account Name: Jefferies LLC
For Benefit Of: JFG Funding LLC
For Further Credit To: 113-00156

with sufficient information to identify the source and application of such funds.

(2) All notices of payments and written confirmations of such wire transfers:

JFG Funding LLC
520 Madison Avenue, New York, NY 10022
Attn: Rocco Nittoli/Michelle Lehman
Email: rnittoli@jefferies.com/
michelle.lehman@jefferies.com
Tel: 212.358.6540 / 212.284.2598

(3) All other communications:
JFG Funding LLC
520 Madison Avenue New York, NY 10022
Attn: General Counsel

(4) U.S. Tax Identification Number: 13-2615557

INVESTOR SCHEDULE
(to Note Purchase Agreement)

A-287

Certificate of December Additional Weiss Equity Investment

**December Additional Weiss Equity Investment Certificate
(the "Certificate")**

**December 3, 2019**

This Certificate is being delivered pursuant to Section 4.4 of the Note Purchase Agreement (the "**Note Purchase Agreement**") dated as of December 3, 2019 (the "**Effective Date**"), by and among: GWA, LLC, a Connecticut limited liability company (the "**Company**"), Weiss Multi-Strategy Advisers LLC, a Delaware limited liability company and JFG Funding LLC, a Delaware limited liability company (the "**Investor**"). All capitalized terms used but not defined in this Certificate shall have the meanings set forth in the Note Purchase Agreement.

I, the undersigned, being a Senior Financial Officer of the Company, hereby certify as follows:

1. On or before the date of the December Closing, the members of the Company contributed $12.5 million in the aggregate to the Company in exchange for additional Interests (the "**December Additional Weiss Equity Investment**"), and such December Additional Weiss Equity Investment has not, as of the date hereof, been withdrawn.

2. The proceeds of the December Additional Weiss Equity Investment have not been used for any purpose other than in accordance with Section 5.7 of the Note Purchase Agreement.

*[Signature Page Follows]*

EXHIBIT A
(to Note Purchase Agreement)

IN WITNESS WHEREOF, the undersigned has executed and delivered this Certificate on behalf of the Company (and not in his individual capacity) on and as of the date first written above.

**GWA, LLC**


By:_____
Name:
Title: Chief Financial Officer

Certificate of January Additional Weiss Equity Investment

**January Additional Weiss Equity Investment Certificate
(the "Certificate")**

**January 13, 2020**

This Certificate is being delivered pursuant to Section 4.4 of the Note Purchase Agreement (the "**Note Purchase Agreement**") dated as of December 3, 2019 (the "**Effective Date**"), by and among: GWA, LLC, a Connecticut limited liability company (the "**Company**"), Weiss Multi-Strategy Advisers LLC, a Delaware limited liability company and JFG Funding LLC, a Delaware limited liability company (the "**Investor**").

WHEREAS, pursuant to Section 4.4 of the Note Purchase Agreement, on or before the date thereof, the members of the Company contributed $12.5 million in the aggregate to the Company in exchange for additional Interests on terms and conditions reasonably satisfactory to the Investor (the "**December Additional Weiss Equity Investment**"); and

WHEREAS, in connection therewith, the Senior Financial Officer of the Company delivered to the Investor a certificate, dated December 3, 2019, indicating that the December Additional Weiss Equity Investment had been made.

All capitalized terms used but not defined in this Certificate shall have the meanings set forth in the Note Purchase Agreement.

I, the undersigned, being a Senior Financial Officer of the Company, hereby certify as follows:

1. On or before January 13, 2020, the members of the Company contributed $7.5 million in the aggregate to the Company in exchange for additional Interests (the "**January Additional Weiss Equity Investment**"), and such January Additional Weiss Equity Investment has not, as of the date hereof, been withdrawn.

2. The proceeds of the January Additional Weiss Equity Investment have not been used for any purpose other than in accordance with Section 5.7 of the Note Purchase Agreement.

3. The December Additional Weiss Equity Investment has not, as of the date hereof, been withdrawn.

4. The proceeds of the December Additional Weiss Equity Investment have not been used for any purpose other than in accordance with Section 5.7 of the Note Purchase Agreement.

*[Signature Page Follows]*

EXHIBIT B
(to Note Purchase Agreement)

A-290

IN WITNESS WHEREOF, the undersigned has executed and delivered this Certificate on behalf of the Company (and not in his individual capacity) on and as of the date first written above.

**GWA, LLC**

By:_____
Name:
Title: Chief Financial Officer

A-291

# Exhibit C

**THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR IN ANY OTHER JURISDICTION. THE SECURITIES REPRESENTED HEREBY MAY NOT BE OFFERED, SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER APPLICABLE SECURITIES LAWS UNLESS OFFERED, SOLD OR TRANSFERRED PURSUANT TO AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THOSE LAWS.**

NOTE

**GWA, LLC**

**$50,000,000 OF NOTES**

No. 2
$18,750,000.00                                                    **January 13, 2020**

FOR VALUE RECEIVED, the undersigned, **GWA, LLC** (herein called the "**Company**"), a Connecticut limited liability company, hereby promises to pay to Jefferies Strategic Investments LLC, or registered assigns, the Redemption Payment on the applicable Optional Redemption Date or Trigger Redemption Date or the Applicable Maturity Date, with interest (computed on the basis of a 360-day year of 12 30-day months), to the extent permitted by law, on any overdue payment of Redemption Payment at a rate per annum from time to time equal to the Default Rate.

Payment of the Redemption Amount with respect to the Note is to be made in lawful money of the United States of America at New York, New York or at such other place as the Company shall have designated by written notice to the holder of the Note as provided in the Note Purchase Agreement referred to below.

The Note (herein called the "**Note**") is issued pursuant to the Note Purchase Agreement, dated December 3, 2019 (as from time to time amended, the "**Note Purchase Agreement**"), by and among the Company, Weiss Multi-Strategy Advisers LLC and Jefferies Strategic Investments LLC, as successor in interest to JFG Funding LLC, and is entitled to the benefits thereof. The holder of the Note will be deemed, by its acceptance hereof, to have agreed to the confidentiality provisions set forth in Section 16 of the Note Purchase Agreement. Unless otherwise indicated, capitalized terms used in the Note shall have the respective meanings ascribed to such terms in the Note Purchase Agreement.

The Note is a registered Note and, as provided in the Note Purchase Agreement, upon surrender of the Note for registration of transfer accompanied by a written instrument of transfer duly executed, by the registered holder hereof or such holder's attorney duly authorized in writing,

a new Note for a like principal amount will be issued to, and registered in the name of, the transferee. Prior to due presentment for registration of transfer, the Company may treat the Person in whose name this Note is registered as the owner hereof for the purpose of receiving payment and for all other purposes, and the Company will not be affected by any notice to the contrary.

**This Note is not subject to prepayment.**

If an Event of Default occurs and is continuing, the Redemption Payment of the Note may be declared or otherwise become due and payable in the manner, at the price and with the effect provided in the Note Purchase Agreement.

The Note shall be construed and enforced in accordance with, and the rights of the Company and the holder of the Note shall be governed by, the law of the State of New York, excluding choice-of-law principles of the law of such State that would permit the application of the laws of a jurisdiction other than such State.

GWA, LLC

By _____

Name: Jeffrey D. Dillabough

Title: Senior Vice President & General Counsel

# Exhibit D

**THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR IN ANY OTHER JURISDICTION. THE SECURITIES REPRESENTED HEREBY MAY NOT BE OFFERED, SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER APPLICABLE SECURITIES LAWS UNLESS OFFERED, SOLD OR TRANSFERRED PURSUANT TO AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THOSE LAWS.**

NOTE

**GWA, LLC**

**$50,000,000 OF NOTES**

No. 2
$31,250,000.00

**December 3, 2019**

FOR VALUE RECEIVED, the undersigned, **GWA, LLC** (herein called the "**Company**"), a Connecticut limited liability company, hereby promises to pay to Jefferies Strategic Investments LLC, or registered assigns, the Redemption Payment on the applicable Optional Redemption Date or Trigger Redemption Date or the Applicable Maturity Date, with interest (computed on the basis of a 360-day year of 12 30-day months), to the extent permitted by law, on any overdue payment of Redemption Payment at a rate per annum from time to time equal to the Default Rate.

Payment of the Redemption Amount with respect to the Note is to be made in lawful money of the United States of America at New York, New York or at such other place as the Company shall have designated by written notice to the holder of the Note as provided in the Note Purchase Agreement referred to below.

The Note (herein called the "**Note**") is issued pursuant to the Note Purchase Agreement, dated December 3, 2019 (as from time to time amended, the "**Note Purchase Agreement**"), by and among the Company, Weiss Multi-Strategy Advisers LLC and Jefferies Strategic Investments LLC, as successor in interest to JFG Funding LLC, and is entitled to the benefits thereof. The holder of the Note will be deemed, by its acceptance hereof, to have agreed to the confidentiality provisions set forth in Section 16 of the Note Purchase Agreement. Unless otherwise indicated, capitalized terms used in the Note shall have the respective meanings ascribed to such terms in the Note Purchase Agreement.

The Note is a registered Note and, as provided in the Note Purchase Agreement, upon surrender of the Note for registration of transfer accompanied by a written instrument of transfer duly executed, by the registered holder hereof or such holder's attorney duly authorized in writing,

a new Note for a like principal amount will be issued to, and registered in the name of, the transferee. Prior to due presentment for registration of transfer, the Company may treat the Person in whose name this Note is registered as the owner hereof for the purpose of receiving payment and for all other purposes, and the Company will not be affected by any notice to the contrary.

**This Note is not subject to prepayment.**

If an Event of Default occurs and is continuing, the Redemption Payment of the Note may be declared or otherwise become due and payable in the manner, at the price and with the effect provided in the Note Purchase Agreement.

The Note shall be construed and enforced in accordance with, and the rights of the Company and the holder of the Note shall be governed by, the law of the State of New York, excluding choice-of-law principles of the law of such State that would permit the application of the laws of a jurisdiction other than such State.

**GWA, LLC**

By _____
    Name: Jeffrey D. Dillabough
    Title: Senior Vice President + General
           Counsel

# Exhibit E

A-298

DocuSign Envelope ID: AC5FDB1B-48AD-4BA5-A823-14F53FA09101

**Execution Copy**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Assignment**"), dated as of December 1, 2021 (the "**Effective Date**"), is by and between JFG Funding LLC, a Delaware limited liability company ("**Assignor**"), and Jefferies Strategic Investments LLC, a Delaware limited liability company ("**Assignee**"). Assignor and Assignee may sometimes be referred to herein each as a "**Party**" and together as the "**Parties**". Capitalized terms used but not defined in this Assignment have the meanings assigned thereto in the Note Purchase Agreement dated as of December 3, 2019 (the "**Agreement**"), by and among GWA, LLC, a Connecticut limited liability company (the "**Company**"), Weiss Multi-Strategy Advisers LLC, a Delaware limited liability company ("**WMSA**"), and Assignor.

### RECITALS

**WHEREAS**, the Company, WMSA and Assignor are party to the Agreement pursuant to which Assignor has purchased (i) a Note in the principal amount of $31.25 million at the purchase price of 100% of the principal amount thereof (the "**December Note**") and (ii) a Note in the principal amount of $18.75 million at the purchase price of 100% of the principal amount thereof (the "**January Note**" and, together with the December Notes, the "**Notes**");

**WHEREAS**, pursuant to Section 11.2(b) of the Agreement, the transfer of a Note by Assignor or a transferee to any Affiliate thereof will not be subject to the consent of the Company or WMSA; and

**WHEREAS**, (i) Assignor desires to distribute the Notes to Jefferies Financial Group Inc., its parent company ("**JFG**"), (ii) JFG desires to contribute the Notes to Jefferies Group LLC, its wholly-owned subsidiary ("**Jefferies Group**"), (iii) Jefferies Group desires to contribute the Notes to Jefferies Asset Management Holdings LLC, its wholly-owned subsidiary ("**JAM Holdings**"), and (iv) JAM Holdings desires to contribute the Notes to Assignee, its wholly-owned subsidiary, in each case as of the Effective Date;

**WHEREAS**, in connection therewith, Assignor desires to assign all of Assignor's rights, title, interests, obligations and liabilities under the Agreement to Assignee, and Assignee desires to accept such assignment;

**NOW, THEREFORE**, in consideration of the foregoing premises and the covenants, and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties do hereby agree as follows:

### AGREEMENT

1.    _Assignment and Assumption._  Assignor hereby assigns, transfers and delivers to Assignee, effective as of the Effective Date, all of Assignor's rights, title, interests, obligations and liabilities under the Agreement to Assignee, and Assignee hereby accepts the assignment, transfer and delivery of all of Assignor's rights, title, interests, obligations and  liabilities under the Agreement and agrees to be bound by all of the terms and conditions of the Agreement and assumes all rights and obligations of Assignor under the Agreement, in each case effective as of the Effective Date.

A-299

2.    <u>Further Assurances</u>.  Each Party from time to time after the Effective Date, at the other Party's request, will execute, acknowledge, and deliver to the requesting Party such other instruments of assignment, conveyance and transfer and will take such other actions and execute and deliver such other documents, certifications, and further assurances as the requesting Party may reasonably require in order to more effectively consummate the transactions contemplated by this Assignment.

3.    <u>Successor and Assigns; No Third Party Beneficiaries</u>.  This Assignment shall be binding upon and inure to the benefit of the respective heirs, personal representatives, successors and permitted assigns of the Parties.  This Assignment shall not be deemed to create any rights in favor of or be for the benefit of any Person not a Party except for the Company.

4.    <u>Governing Law</u>.  This Assignment shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to contrary choice of law principles of such State.

5.    <u>Counterparts</u>.  This Assignment may be executed by the parties hereto in counterparts, or by separate signature page or instrument, and delivered via electronic means, each of which shall be considered an original, and all of which shall together constitute but one and the same Assignment.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Parties hereto have executed or caused to be executed this Assignment as of the Effective Date.

**ASSIGNOR:**

JFG FUNDING LLC

By: _____
Name:    Matthew B. Smith
Title:     Authorized Person

**ASSIGNEE:**

JEFFERIES STRATEGIC INVESTMENTS LLC

By: _____
Name:    Matthew B. Smith
Title:     President

**Agreed and acknowledged
as of the date first set forth above:**

GWA LLC

By: _____
Name:    Jeffrey D. Dillabough
Title:    Senior Vice President & General Counsel

WEISS MULTI-STRATEGY ADVISERS LLC

By: _____
Name:    Jeffrey D. Dillabough
Title:    Senior Vice President & General Counsel

[Signature Page to Assignment and Assumption Agreement]

A-301

# Exhibit F

A-302

GWA, LLC

$3,000,000 Note

_____

NOTE PURCHASE AGREEMENT

_____

Dated September 21, 2022

## TABLE OF CONTENTS

| SECTION | HEADING | PAGE |
|---------|---------|------|
| SECTION 1. | AUTHORIZATION OF NOTE | 1 |
| SECTION 2. | SALE AND PURCHASE OF NOTE | 1 |
| SECTION 3. | CLOSINGS | 1 |
| SECTION 4. | CONDITIONS TO CLOSING | 2 |
| SECTION 4.1. | REPRESENTATIONS AND WARRANTIES | 2 |
| SECTION 4.2. | PERFORMANCE; NO DEFAULT | 2 |
| SECTION 4.3. | PURCHASE PERMITTED BY APPLICABLE LAW, ETC | 2 |
| SECTION 4.4 | FUNDING INSTRUCTIONS | 2 |
| SECTION 4.5. | PROCEEDINGS AND DOCUMENTS | 2 |
| SECTION 5. | REPRESENTATIONS AND WARRANTIES OF THE COMPANY | 3 |
| SECTION 5.1. | ORGANIZATION; POWER AND AUTHORITY | 3 |
| SECTION 5.2. | AUTHORIZATION, ETC | 3 |
| SECTION 5.3. | COMPLIANCE WITH LAWS, OTHER INSTRUMENTS, ETC | 3 |
| SECTION 5.4. | GOVERNMENTAL AUTHORIZATIONS, ETC | 3 |
| SECTION 5.5. | LITIGATION; OBSERVANCE OF AGREEMENTS, STATUTES AND ORDERS | 3 |
| SECTION 5.6. | PRIVATE OFFERING BY THE COMPANY | 4 |
| SECTION 5.7. | USE OF PROCEEDS | 4 |
| SECTION 5.8. | STATUS UNDER CERTAIN STATUTES | 4 |
| SECTION 5.9. | INVESTMENT MANAGEMENT AGREEMENT/STRATEGIC RELATIONSHIP MANAGEMENT AGREEMENT REPRESENTATIONS | 4 |
| SECTION 6. | REPRESENTATIONS OF THE INVESTOR | 4 |
| SECTION 6.1. | PURCHASE FOR INVESTMENT | 5 |
| SECTION 7. | TERMS OF THE NOTE | 5 |
| SECTION 7.1. | MATURITY | 5 |
| SECTION 7.2. | OPTIONAL REDEMPTION | 5 |
| SECTION 7.3. | [RESERVED] | 5 |
| SECTION 7.4. | MATURITY; SURRENDER, ETC | 5 |
| SECTION 7.5. | PURCHASE OF NOTE | 5 |
| SECTION 7.6. | PAYMENT DUE ON NON-BUSINESS DAYS | 6 |
| SECTION 8. | AFFIRMATIVE COVENANTS | 6 |
| SECTION 8.1. | COMPLIANCE WITH LAWS | 6 |
| SECTION 8.2. | LIMITED LIABILITY COMPANY EXISTENCE, ETC | 6 |
| SECTION 8.3. | ADDITIONAL NOTIFICATION RIGHTS | 6 |
| SECTION 9. | EVENTS OF DEFAULT | 7 |

SECTION 10.                    REMEDIES ON DEFAULT, ETC ................................................7

   SECTION 10.1.      ACCELERATION .................................................................7
   SECTION 10.2.      OTHER REMEDIES ............................................................8
   SECTION 10.3.      NO WAIVERS OR ELECTION OF REMEDIES, EXPENSES, ETC ................8

SECTION 11.                    REGISTRATION; EXCHANGE; SUBSTITUTION OF NOTE ...........8

   SECTION 11.1.      REGISTRATION OF NOTE ...................................................8
   SECTION 11.2.      TRANSFER AND EXCHANGE OF NOTE ................................9
   SECTION 11.3.      REPLACEMENT OF NOTE ...................................................9

SECTION 12.                    PAYMENTS ON NOTE ........................................................9

   SECTION 12.1.      PLACE OF PAYMENT ..........................................................9
   SECTION 12.2.      PAYMENT BY WIRE TRANSFER ......................................9

SECTION 13.                    EXPENSES, ETC ...............................................................10

   SECTION 13.1.      TRANSACTION EXPENSES ...............................................10
   SECTION 13.2.      CERTAIN TAXES .............................................................10
   SECTION 13.3.      SURVIVAL ......................................................................11

SECTION 14.    SURVIVAL OF REPRESENTATIONS AND WARRANTIES; ENTIRE AGREEMENT ...........11

SECTION 15.                    AMENDMENT AND WAIVER ..........................................11

   SECTION 15.1.      REQUIREMENTS .............................................................11
   SECTION 15.2.      SOLICITATION OF HOLDERS OF THE NOTE ...................11
   SECTION 15.3.      BINDING EFFECT, ETC ...................................................12
   SECTION 15.4.      NOTE HELD BY COMPANY, ETC ...................................12
   SECTION 15.5.      NOTICES .........................................................................12

SECTION 16.                    CONFIDENTIAL INFORMATION ....................................13

SECTION 17.                    MISCELLANEOUS ...........................................................13

   SECTION 17.1.      SUCCESSORS AND ASSIGNS ...........................................13
   SECTION 17.2.      SEVERABILITY ...............................................................13
   SECTION 17.3.      CONSTRUCTION, ETC ......................................................13
   SECTION 17.4.      COUNTERPARTS ..............................................................14
   SECTION 17.5.      GOVERNING LAW ...........................................................14
   SECTION 17.6.      JURISDICTION AND PROCESS; WAIVER OF JURY TRIAL .........14

SCHEDULE A        —    Defined Terms

SCHEDULE 1        —    Form of Note

INVESTOR SCHEDULE   —    Information Relating to the Investor

A-306

**GWA, LLC**
**Weiss Multi-Strategy Advisers LLC**
**320 Park Avenue**
**20th Floor**
**New York, New York 10022**

$3,000,000 Note

**September 21, 2022**

TO:
Jefferies Strategic Investments, LLC
520 Madison Avenue
New York, New York 10022

Ladies and Gentlemen:

GWA, LLC, a Connecticut limited liability company (the "**Company**") and Weiss Multi-Strategy Advisers LLC, a Delaware limited liability company ("**WMSA**") agree with Jefferies Strategic Investments, LLC, a Delaware limited liability company (the "**Investor**") as follows:

**Section 1.     AUTHORIZATION OF THE NOTE.**

The Company will authorize the issue and sale of a $3 million aggregate principal amount Note (the "**Note**"). The Note shall be substantially in the form set out in Schedule 1. Certain capitalized and other terms used in this Agreement are defined in Schedule A and, for purposes of this Agreement, the rules of construction set forth in Section 17.3 shall govern.

**Section 2.     SALE AND PURCHASE OF THE NOTE.**

Subject to the terms and conditions of this Agreement, the Company will issue and sell to the Investor and the Investor will purchase from the Company at the Closing provided for in Section 3, the Note at the purchase price of 100% of the principal amount thereof.

**Section 3.     CLOSING.**

The sale and purchase of the Note to be purchased by the Investor shall occur at the offices of the Investor, at 10:00 a.m., New York City time, at a closing (the "**Closing**") on September 21, 2022. At the Closing, the Company will deliver to the Investor the Note to be purchased in the form of a single note dated the date of the Closing and registered in the Investor's name (or in the name of its nominee), against delivery by the Investor to the Company or its order of immediately available funds in the amount of the purchase price therefor by wire transfer of immediately

available funds for the account of the Company to account number ████████ at U.S. Trust/Bank of America, ABA Number ████████, attention: Rob Roseen. If at the Closing the Company shall fail to tender the Note to be delivered to the Investor as provided above in this Section 3, or any of the conditions specified in Section 4 shall not have been fulfilled to the Investor's satisfaction, the Investor shall, at its election, be relieved of all further obligations under this Agreement, without thereby waiving any rights the Investor may have by reason of such failure by the Company to tender the Note or any of the conditions specified in Section 4 not having been fulfilled to the Investor's satisfaction.

**Section 4.    CONDITIONS TO CLOSING.**

The Investor's obligation to purchase and pay for the Note to be sold to the Investor at the Applicable Closing is subject to the fulfillment to the Investor's satisfaction, prior to or at the Applicable Closing, of the following conditions:

**Section 4.1.    Representations and Warranties**.  The representations and warranties of the Company and WMSA in this Agreement shall be correct when made and at the Closing.

**Section 4.2.    Performance; No Default**.  The Company and WMSA shall have performed and complied with all agreements and conditions contained in this Agreement required to be performed or complied with by it prior to or at the Closing.  Before and after giving effect to the issue and sale of the Note (and the application of the proceeds thereof as contemplated by Section 5.7), no Default or Event of Default shall have occurred and be continuing.

**Section 4.3.    Purchase Permitted By Applicable Law, Etc.**  On the date of the Closing, the Investor's purchase of the Note shall (a) be permitted by the laws and regulations of each jurisdiction to which the Investor is subject, (b) not violate any applicable law or regulation (including Regulation T, U or X of the Board of Governors of the Federal Reserve System), (c) not subject the Investor to any tax, penalty or liability under or pursuant to any applicable law or regulation, which law or regulation was not in effect on the date hereof and (d) would not cause any adverse regulatory, tax, legal or accounting effect on the Investor or its Affiliates, including any regulatory prohibition on the Company or any of its Subsidiaries retaining or transacting with Affiliates of the Investor in a manner consistent with its Ordinary Course of Business.

**Section 4.4.    Funding Instructions**.  At least one Business Day prior to the date of the Closing, the Investor shall have received written instructions signed by a Responsible Officer on letterhead of the Company confirming the information specified in Section 3 including (i) the name and address of the transferee bank, (ii) such transferee bank's ABA number and (iii) the account name and number into which the purchase price for the Note is to be deposited.

**Section 4.5.    Proceedings and Documents**.  All limited liability company and other proceedings in connection with the transactions contemplated by this Agreement and all documents and instruments incident to such transactions shall be satisfactory to the Investor and its special counsel, and the Investor and its special counsel shall have received all such counterpart originals or certified or other copies of such documents as the Investor or such special counsel may reasonably request.

A-308

**Section 5.** **REPRESENTATIONS AND WARRANTIES OF THE COMPANY AND WMSA**.

Each of the Company and WMSA represents, warrants and agrees as to the Investor as of Closing that:

**Section 5.1.   Organization; Power and Authority**. The Company is a Connecticut limited liability company duly organized, validly existing and in good standing under the laws of its jurisdiction, and is in good standing in each jurisdiction in which such qualification is required by law, other than those jurisdictions as to which the failure to be so qualified or in good standing could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect. The Company has the limited liability company power and authority to own or hold under lease the properties it purports to own or hold under lease, to transact the business it transacts and proposes to transact, to execute and deliver this Agreement and the Note and to perform the provisions hereof and thereof.

**Section 5.2.   Authorization, Etc.** This Agreement and the Note have been duly authorized by all necessary limited liability company action on the part of the Company, and this Agreement constitutes, and upon execution and delivery thereof the Note will constitute, a legal, valid and binding obligation of the Company, enforceable against the Company, in accordance with its terms, except as such enforceability may be limited by (i) applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and (ii) general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

**Section 5.3.   Compliance with Laws, Other Instruments, Etc.** The execution, delivery and performance by the Company of this Agreement and the Note will not (i) contravene, result in any breach of, or constitute a default under, or result in the creation of any Lien in respect of any property of the Company or any Subsidiary under, any indenture, mortgage, deed of trust, loan, purchase or credit agreement, lease, limited liability company agreement or other charter documents, regulations or by-laws, or any other agreement or instrument to which the Company or any Subsidiary is bound or by which the Company or any Subsidiary or any of their respective properties may be bound or affected, (ii) conflict with or result in a breach of any of the terms, conditions or provisions of any order, judgment, decree or ruling of any court, arbitrator or Governmental Authority applicable to the Company or any Subsidiary or (iii) violate any provision of any statute or other rule or regulation of any Governmental Authority applicable to the Company or any Subsidiary. For the avoidance of doubt, the Investor hereby gives its consent to the issuance of the Note pursuant to Section 2(a)(iv) of the Strategic Relationship Agreement.

**Section 5.4.   Governmental Authorizations, Etc.** No consent, approval or authorization of, or registration, filing or declaration with, any Governmental Authority is required in connection with the execution, delivery or performance by the Company of this Agreement or the Note.

**Section 5.5.   Litigation; Observance of Agreements, Statutes and Orders**. (a) There are no actions, suits, investigations or proceedings pending or, to the best knowledge of the Company, threatened against or affecting the Company or any Subsidiary or any property of the

Company or any Subsidiary in any court or before any arbitrator of any kind or before or by any Governmental Authority that could, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

(b)      Neither the Company nor any Subsidiary is (i) in default under any agreement or instrument to which it is a party or by which it is bound, (ii) in violation of any order, judgment, decree or ruling of any court, any arbitrator of any kind or any Governmental Authority or (iii) in violation of any applicable law, ordinance, rule or regulation of any Governmental Authority (including Environmental Laws and the USA PATRIOT Act), which default or violation could, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

**Section 5.6.    Private Offering by the Company**.  Neither the Company nor anyone acting on its behalf has offered the Note or any similar Securities for sale to, or solicited any offer to buy the Note or any similar Securities from, or otherwise approached or negotiated in respect thereof with, any Person other than the Investor, which has been offered the Note at a private sale for investment.  Neither the Company nor anyone acting on its behalf has taken, or will take, any action that would subject the issuance or sale of the Note to the registration requirements of section 5 of the Securities Act or to the registration requirements of any Securities or blue sky laws of any applicable jurisdiction.

**Section 5.7.    Use of Proceeds**.  No part of the proceeds from the sale of the Note hereunder will be used, directly or indirectly, for the purpose of buying or carrying any margin stock within the meaning of Regulation U of the Board of Governors of the Federal Reserve System (12 CFR 221), or for the purpose of buying or carrying or trading in any Securities under such circumstances as to involve the Company in a violation of Regulation X of said Board (12 CFR 224) or to involve any broker or dealer in a violation of Regulation T of said Board (12 CFR 220).  As used in this Section, the terms "**margin stock**" and "**purpose of buying or carrying**" shall have the meanings assigned to them in said Regulation U.

**Section 5.8.    Status under Certain Statutes**.  Neither the Company nor any Subsidiary is subject to regulation, or will, following the issuance and sale of the Note pursuant to this Agreement, be subject to regulation under the Investment Company Act of 1940, the Public Utility Holding Company Act of 2005, the ICC Termination Act of 1995, or the Federal Power Act.

**Section 5.9.    Additional Representations**.  (a) All of the representations and warranties that it has made pursuant to the Investment Management Agreement or the Strategic Relationship Agreement, as applicable, are true and correct, (b) there has not been any breach of its obligations, covenants, representations or warranties that has not previously been disclosed to the Investor under the Investment Management Agreement or the Strategic Relationship Agreement, as applicable, and (c) all information that it has provided to the Investor in connection with (i) the Investment Management Agreement or the Strategic Relationship Agreement or (ii) the negotiation of this Agreement, the issuance and sale of the Note and any transactions related to the foregoing is true, accurate and correct in all material respects.

**Section 6.        REPRESENTATIONS OF THE INVESTOR**.

-4-

**Section 6.1.    Purchase for Investment**.  The Investor represents that it is purchasing the Note for its own account or for one or more separate accounts maintained by it, *provided* that the disposition of the Investor's property shall at all times be within the Investor's control.  The Investor understands that the Note have not been registered under the Securities Act and may be resold only if registered pursuant to the provisions of the Securities Act or if an exemption from registration is available, except under circumstances where neither such registration nor such an exemption is required by law, and that the Company is not required to register the Note.

**Section 7.        TERMS OF THE NOTE**.

**Section 7.1.    Maturity**.  (i) The Note will mature on September 21, 2029 (the "**Maturity Date**"), subject to Optional Redemption by the Company or the Investor and Trigger Redemption by the Investor. Unless the Note shall have been previously redeemed via an Optional Redemption, on the Maturity Date the Company will pay the Investor the Redemption Payment and the Note will cease to be outstanding upon payment in full thereof.

**Section 7.2.    Optional Redemption**.  Each of the Company and the Investor shall have the right to redeem the Note, in whole but not in part, on each applicable Optional Redemption Date (an "**Optional Redemption**") by at least 10 calendar days' prior written notice to the other party prior to the Optional Redemption Date, and the Company will pay the Investor the Redemption Payment on the Optional Redemption Date and the Note will cease to be outstanding upon payment in full thereof.

**Section 7.3.    Trigger Redemption**.  The Investor shall have the right to redeem the Notes, in whole but not in part, at any time following the occurrence of either (a) Cause by prior written notice to the Company at any time or (b) a Members Equity Event by at least 10 calendar days' prior written notice to the Company (any such redemption, a "**Trigger Redemption**").  If the Notes are redeemed pursuant to a Trigger Redemption, the Company will pay the Investor the Redemption Payment on the date specified by the Investor in the applicable notice (the "**Trigger Redemption Date**") and the Notes will cease to be outstanding upon payment in full thereof.

**Section 7.4.    Maturity; Surrender, Etc.**  In the case of each Optional Redemption, Trigger Redemption or Maturity Date pursuant to this Section 7, the Redemption Payment shall become due and payable on the applicable Optional Redemption Date, Trigger Redemption Date or Maturity Date, as applicable.  From and after such date, unless the Company shall fail to pay such Redemption Payment when so due and payable, interest on such Redemption Payment shall not accrue.  Any Note paid in full shall be surrendered to the Company and cancelled and shall not be reissued.

**Section 7.5.    Purchase of Note**.  The Company will not, and will not permit any Affiliate, to purchase, redeem, prepay or otherwise acquire, directly or indirectly, the outstanding Note except upon the payment of the Note in accordance with this Agreement and the Note.  The Company will promptly cancel the Note acquired by it or any Affiliate pursuant to any payment of the Note pursuant to this Agreement and no Note may be issued in substitution or exchange for the Note.

**Section 7.6.    Payment Due on Non-Business Days**.  Anything in this Agreement or the Note to the contrary notwithstanding, any payment of the Redemption Payment on the Note that is due on a date that is not a Business Day shall be made on the next succeeding Business Day and shall include the additional days elapsed in the computation of the Redemption Payment payable on such next succeeding Business Day.

**Section 8.    AFFIRMATIVE COVENANTS**.

The Company covenants that so long as each Note is outstanding:

**Section 8.1.    Compliance with Laws**.    The Company will, and will cause each of its Subsidiaries to, comply with all laws, ordinances or governmental rules or regulations to which each of them is subject (including ERISA, Environmental Laws and the USA PATRIOT Act) and will obtain and maintain in effect all licenses, certificates, permits, franchises and other governmental authorizations necessary to the ownership of their respective properties or to the conduct of their respective businesses, in each case to the extent necessary to ensure that non-compliance with such laws, ordinances or governmental rules or regulations or failures to obtain or maintain in effect such licenses, certificates, permits, franchises and other governmental authorizations could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

**Section 8.2.    Limited Liability Company Existence, Etc.**  The Company will at all times preserve and keep its limited liability company existence in full force and effect.  The Company will at all times preserve and keep in full force and effect the organizational existence of each of its Subsidiaries (unless merged into the Company or a Wholly Owned Subsidiary) and all rights and franchises of the Company and its Subsidiaries unless, in the good faith judgment of the Company, the termination of or failure to preserve and keep in full force and effect such organizational existence, right or franchise could not, individually or in the aggregate, have a Material Adverse Effect.

**Section 8.3.    Additional Notification Rights**.  The Company shall notify the Investor promptly in writing if it has reason to believe that the Members Equity as of any given day would be or is equal to or less than (a) $25 million or (b) $10 million, in each case, calculated as if the Note and the Existing Notes had been redeemed in full as of such day.  For purposes of clarity, the Company's obligation to give notice to the Investor pursuant to clause (a) shall be triggered on each day when the Members Equity falls from an amount higher than $25 million to an amount equal to or lower than $25 million (*i.e.*, there is no obligation to provide notice to the Investor if the Members Equity previously fell to an amount equal or lower than $25 million and then continued on subsequent days to not exceed $25 million until either (i) it equaled or exceeded $25 million on a subsequent day or (ii) fell to or less than $10 million in accordance with clause (b) above).

A-312

**Section 9.    EVENTS OF DEFAULT**.

An "**Event of Default**" shall exist if any of the following conditions or events shall occur and be continuing:

(a)    the Company defaults in the payment of the Redemption Payment on the Note or any of the notes issued pursuant to that certain Note Purchase Agreement dated December 3, 2019 among the Company, WMSA and the Investor (the "**Existing Notes**") when those notes become due and payable; or

(b)    (i) the Company defaults in the performance of or compliance with any other term contained in this Agreement, the Note or the Existing Notes that have not be waived by Investor or its affiliates or (ii) any representation or warranty made in writing by or on behalf of the Company or by any officer of the Company in this Agreement, the Investment Management Agreement or the Strategic Relationship Agreement or any writing furnished in connection with the transactions contemplated hereby proves to have been false or incorrect in any material respect on the date as of which it was made; or

(c)    the Company or any Subsidiary (i) is generally not paying, or admits in writing its inability to pay, its debts as they become due, (ii) files, or consents by answer or otherwise to the filing against it of, a petition for relief or reorganization or arrangement or any other petition in bankruptcy, for liquidation or to take advantage of any bankruptcy, insolvency, reorganization, moratorium or other similar law of any jurisdiction, (iii) makes an assignment for the benefit of its creditors, (iv) consents to the appointment of a custodian, receiver, trustee or other officer with similar powers with respect to it or with respect to any substantial part of its property, (v) is adjudicated as insolvent or to be liquidated, or (vi) takes limited liability company action for the purpose of any of the foregoing; or

(d)    a court or other Governmental Authority of competent jurisdiction enters an order appointing, without consent by the Company or any of its Subsidiaries, a custodian, receiver, trustee or other officer with similar powers with respect to it or with respect to any substantial part of its property, or constituting an order for relief or approving a petition for relief or reorganization or any other petition in bankruptcy or for liquidation or to take advantage of any bankruptcy or insolvency law of any jurisdiction, or ordering the dissolution, winding-up or liquidation of the Company or any of its Subsidiaries, or any such petition shall be filed against the Company or any of its Subsidiaries and such petition shall not be dismissed within 60 days; or

(e)    any event occurs with respect to the Company or any Subsidiary which, under the laws of any jurisdiction, is analogous to any of the events described in Section 9(b).

**Section 10.    REMEDIES ON DEFAULT, ETC.**

**Section 10.1.  Acceleration**.  (a)  If an Event of Default with respect to the Company described in Section 9(a), (c), (d) or (e) (other than an Event of Default described in clause (i) of Section 9(c) or described in clause (vi) of Section 9(c) by virtue of the fact that such clause

-7-

encompasses clause (i) of Section 9(c) has occurred), the Note shall automatically become immediately due and payable.

(b)    If any other Event of Default has occurred and is continuing, any holder of the Note may at any time at its option, by notice to the Company, declare the Note to be immediately due and payable.

Upon the Note becoming due and payable under this Section 10.1, whether automatically or by declaration, the Note will forthwith mature and the Redemption Payment, plus any interest accrued thereon at the Default Rate, shall all be immediately due and payable, in each and every case without presentment, demand, protest or further notice, all of which are hereby waived.

**Section 10.2.  Other Remedies**.  If any Default or Event of Default has occurred and is continuing, and irrespective of whether the Note have become or have been declared immediately due and payable under Section 10.1, the holders of the Note at the time outstanding may proceed to protect and enforce the rights of such holders by an action at law, suit in equity or other appropriate proceeding, whether for the specific performance of any agreement contained herein or in the Note, or for an injunction against a violation of any of the terms hereof or thereof, or in aid of the exercise of any power granted hereby or thereby or by law or otherwise. Nothing set forth in this Agreement shall have any effect on any of the remedies available to the Investor pursuant to the Investment Management Agreement or the Strategic Relationship Agreement.

**Section 10.3.  No Waivers or Election of Remedies, Expenses, Etc.**  No course of dealing and no delay on the part of any holder of the Note in exercising any right, power or remedy shall operate as a waiver thereof or otherwise prejudice such holder's rights, powers or remedies. No right, power or remedy conferred by this Agreement or the Note upon any holder thereof shall be exclusive of any other right, power or remedy referred to herein or therein or now or hereafter available at law, in equity, by statute or otherwise.  Without limiting the obligations of the Company under Section 13, the Company will pay to each holder of the Note, on demand, such further amount as shall be sufficient to cover all costs and expenses of such holder incurred in any enforcement or collection under this Section 10, including reasonable attorneys' fees, expenses and disbursements.  This Section 10.3 shall also be deemed to apply to the Investor's rights under the Strategic Relationship Agreement and the Investment Management Agreement.

**Section 11.    REGISTRATION; EXCHANGE; SUBSTITUTION OF NOTE**.

**Section 11.1.  Registration of Note**.  The Company shall keep at its principal executive office a register for the registration and registration of transfers of the Note.  The name and address of each holder of the Note, each transfer thereof and the name and address of each transferee of the Note shall be registered in such register.  If any holder of the Note is a nominee, then (a) the name and address of the beneficial owner of the Note shall also be registered in such register as an owner and holder thereof and (b) at any such beneficial owner's option, either such beneficial owner or its nominee may execute any amendment, waiver or consent pursuant to this Agreement. Prior to due presentment for registration of transfer, the Person in whose name the Note shall be

registered shall be deemed and treated as the owner and holder thereof for all purposes hereof, and the Company shall not be affected by any notice or knowledge to the contrary.

**Section 11.2.  Transfer and Exchange of Note**.  (a) Upon surrender of the Note to the Company at the address and to the attention of the designated officer (all as specified in Section 15.5(iii)), for registration of transfer or exchange (and, in the case of a surrender for registration of a transfer accompanied by a written instrument of transfer, duly executed by the registered holder of the Note or such holder's attorney duly authorized in writing and accompanied by the relevant name, address and other information for notices of each transferee of the Note or part thereof), within 2 Business Days thereafter, the Company shall execute and deliver, at the Company's expense (except as provided below), a new Note (as requested by the holder thereof) in exchange therefor, in an aggregate principal amount equal to the unpaid principal amount of the surrendered Note.  The new Note shall be payable to such Person as such holder may request and shall be substantially in the form of Schedule 1.  The new Note shall be dated the date of the surrendered Note.  The Company may require payment of a sum sufficient to cover any stamp tax or governmental charge imposed in respect of any such transfer of the Note.  The Note shall not be transferred in denominations of less than $1 million.

(b)      For the avoidance of doubt, transfer of the Note by the Investor or a transferee to any Affiliate thereof will not be subject to the consent of the Company or WMSA.

**Section 11.3.  Replacement of Note**.  Upon receipt by the Company at the address and to the attention of the designated officer (all as specified in Section 15.5(iii)) of evidence reasonably satisfactory to it of the ownership of and the loss, theft, destruction or mutilation of the Note, and

(a)      in the case of loss, theft or destruction, of indemnity reasonably satisfactory to it (*provided* that if the holder of the Note is, or is a nominee for, the Investor) such Person's own unsecured agreement of indemnity shall be deemed to be satisfactory, or

(b)      in the case of mutilation, upon surrender and cancellation thereof,

within 2 Business Days thereafter, the Company, at its own expense shall execute and deliver, in lieu thereof, a new Note, dated the date of such lost, stolen, destroyed or mutilated Note.

**Section 12.      PAYMENTS ON NOTE**.

**Section 12.1.  Place of Payment**.  Subject to Section 12.2, payments of the Redemption Payment becoming due and payable on the Note shall be made in New York, New York at the principal office of WMSA in such jurisdiction.  The Company may at any time, by notice to the holders of the Note, change the place of payment of the Note so long as such place of payment shall be either the principal office of WMSA in such jurisdiction or the principal office of a bank or trust company in such jurisdiction.

**Section 12.2.  Payment by Wire Transfer**.  So long as the Investor or its nominee shall be the holder of the Note, and notwithstanding anything contained in Section 12.1 or in the Note to the contrary, the Company will pay all sums becoming due on the Note for the Redemption

Payment and all other amounts becoming due hereunder by the method and at the address specified for such purpose below the Investor's name in the Investor Schedule, or by such other method or at such other address as the Investor shall have from time to time specified to the Company in writing for such purpose, without the presentation or surrender of the Note or the making of any notation thereon, except that upon written request of the Company made concurrently with or reasonably promptly after payment or prepayment in full of the Note, the Investor shall surrender the Note for cancellation, reasonably promptly after any such request, to the Company at its principal executive office or at the place of payment most recently designated by the Company pursuant to Section 12.1. Prior to any sale or other disposition of the Note held by the Investor or its nominee, the Investor will surrender the Note to the Company in exchange for a new Note pursuant to Section 11.2.

**Section 13.    EXPENSES, ETC.**

**Section 13.1.    Transaction Expenses**.  Whether or not the transactions contemplated hereby are consummated, the Company will pay all costs and expenses (including attorneys' fees of a special counsel and, if reasonably required by the Required Holder, local or other counsel) incurred by the Investor in connection with such transactions and in connection with any amendments, waivers or consents under or in respect of this Agreement, the Note, the Investment Management Agreement and the Strategic Relationship Agreement (whether or not such amendment, waiver or consent becomes effective), including: (a) the costs and expenses incurred in enforcing or defending (or determining whether or how to enforce or defend) any rights under this Agreement or the Note or in responding to any subpoena or other legal process or informal investigative demand issued in connection with this Agreement or the Note, or by reason of being a holder of the Note and (b) the costs and expenses, including financial advisors' fees, incurred in connection with the insolvency or bankruptcy of the Company or any Subsidiary or in connection with any work out or restructuring of the transactions contemplated hereby and by the Note.

The Company will pay, and will save the Investor harmless from, (i) all claims in respect of any fees, costs or expenses, if any, of brokers and finders (other than those, if any, retained by the Investor or other holder in connection with its purchase of the Note), (ii) any and all wire transfer fees that any bank or other financial institution deducts from any payment under the Note to such holder or otherwise charges to a holder of the Note with respect to a payment under the Note and (iii) any judgment, liability, claim, order, decree, fine, penalty, cost, fee, expense (including reasonable attorneys' fees and expenses) or obligation resulting from the consummation of the transactions contemplated hereby, including the use of the proceeds of the Note by the Company.

**Section 13.2.    Certain Taxes**.  (a) The Company agrees to pay all stamp, documentary or similar taxes or fees which may be payable in respect of the execution and delivery or the enforcement of this Agreement or the execution and delivery (but not the transfer) or the enforcement of the Note in the United States or any other jurisdiction where the Company has assets or of any amendment of, or waiver or consent under or with respect to, this Agreement or of the Note, and to pay any value added tax due and payable in respect of reimbursement of costs and expenses by the Company pursuant to this Section 13, and will save each holder of the Note, to the extent permitted by applicable law, harmless against any loss or liability resulting from

-10-

nonpayment or a delay in payment of any such tax or fee required to be paid by the Company hereunder.

(b)    The Company and the Investor agree to treat each Note as a prepaid derivative financial contract issued by the Company to the Investor for U.S. federal income tax purposes.  The parties shall report income and expense in accordance with the "wait and see" method of accounting.

**Section 13.3.  Survival**.  The obligations of the Company under this Section 13 will survive the payment or transfer of the Note, the enforcement, amendment or waiver of any provision of this Agreement, the Note, and the termination of this Agreement.

**Section 14.    SURVIVAL OF REPRESENTATIONS AND WARRANTIES; ENTIRE AGREEMENT**.

All representations and warranties contained herein shall survive the execution and delivery of this Agreement and the Note, the purchase or transfer by the Investor of the Note or a portion thereof or interest therein and the payment of the Note, and may be relied upon by any subsequent holder of the Note, regardless of any investigation made at any time by or on behalf of the Investor or any other holder of the Note.  All statements contained in any certificate or other instrument delivered by or on behalf of the Company pursuant to this Agreement shall be deemed representations and warranties of the Company under this Agreement.  Subject to the preceding sentence, this Agreement, the Note, the Investment Management Agreement and the Strategic Relationship Agreement embody the entire agreement and understanding between the Investor and the Company and supersede all prior agreements and understandings relating to the subject matter hereof.

**Section 15.    AMENDMENT AND WAIVER**.

**Section 15.1.  Requirements**.  This Agreement and the Note may be amended, and the observance of any term hereof or of the Note may be waived (either retroactively or prospectively), only with the written consent of the Company, WMSA and the Required Holder.

**Section 15.2.  Solicitation of Holders of the Note**.

(a)    *Solicitation*.  The Company will provide any holders of the Note with sufficient information, sufficiently far in advance of the date a decision is required, to enable such holders to make an informed and considered decision with respect to any proposed amendment, waiver or consent in respect of any of the provisions hereof or of the Note.  The Company will deliver executed or true and correct copies of each amendment, waiver or consent effected pursuant to this Section 15 to the holders of the Note promptly following the date on which it is executed and delivered by, or receives the consent or approval of, the requisite holders of the Note.

(b)    *Payment*.  The Company will not, directly or indirectly, pay or cause to be paid any remuneration, whether by way of supplemental or additional interest, fee or otherwise, or grant any security or provide other credit support, to a holder of the Note as consideration for or as an inducement to the entering into by such holder of any waiver or amendment of any of the terms

and provisions hereof or the Note unless such remuneration is concurrently paid, or security is concurrently granted or other credit support concurrently provided, on the same terms, ratably to the holders of the Note, even if such holders did not consent to such waiver or amendment.

(c)     *Consent in Contemplation of Transfer*.  Any consent given pursuant to this Section 15 by a holder of the Note that has transferred or has agreed to transfer the Note to (i) the Company, (ii) any Subsidiary or any other Affiliate or (iii) any other Person in connection with, or in anticipation of, such other Person acquiring, making a tender offer for or merging with the Company and/or any of its Affiliates, in each case in connection with such consent, shall be void and of no force or effect, except solely as to such holder, and any amendments effected or waivers granted or to be effected or granted that would not have been or would not be so effected or granted but for such consent shall be void and of no force or effect except solely as to such holder.

**Section 15.3.  Binding Effect, Etc.**  Any amendment or waiver consented to as provided in this Section 15 is binding upon a holder and upon each future holder of the Note and upon the Company without regard to whether the Note has been marked to indicate such amendment or waiver.  No such amendment or waiver will extend to or affect any obligation, covenant, agreement, Default or Event of Default not expressly amended or waived or impair any right consequent thereon.  No course of dealing between the Company and any holder of the Note and no delay in exercising any rights hereunder or under the Note shall operate as a waiver of any rights of the holder of the Note.

**Section 15.4.  Note Held by Company, Etc.**  Solely for the purpose of determining whether the holders of the requisite percentage of the aggregate principal amount of the Note then outstanding approved or consented to any amendment, waiver or consent to be given under this Agreement or the Note, or have directed the taking of any action provided herein or the Note to be taken upon the direction of the holders of a specified percentage of the aggregate principal amount of the Note then outstanding, the Note directly or indirectly owned by the Company or any of its Affiliates shall be deemed not to be outstanding.

**Section 15.5.  Notices**.

All notices and communications provided for hereunder shall be in writing and sent (a) by telecopy if the sender on the same day sends a confirming copy of such notice by an internationally recognized overnight delivery service (charges prepaid), or (b) by registered or certified mail with return receipt requested (postage prepaid), or (c) by an internationally recognized overnight delivery service (charges prepaid).  Any such notice must be sent:

(i)     if to the Investor or its nominee, to the Investor or nominee at the address specified for such communications in the Investor Schedule, or at such other address as the Investor or nominee shall have specified to the Company in writing,

(ii)     if to any other holder of the Note, to such holder at such address as such other holder shall have specified to the Company in writing, or

-12-

(iii)    if to the Company, to the Company at its address set forth at the beginning hereof to the attention of Jeffrey Dillabough, or at such other address as the Company shall have specified to the holder of the Note in writing.

Notices under this Section 15 will be deemed given only when actually received.

**Section 16.    CONFIDENTIAL INFORMATION.**

Any information regarding the Note and the related transactions described in this Agreement will be treated as "Confidential Information" per the Strategic Relationship Agreement.

**Section 17.    MISCELLANEOUS.**

**Section 17.1.  Successors and Assigns**.  All covenants and other agreements contained in this Agreement by or on behalf of any of the parties hereto bind and inure to the benefit of their respective successors and assigns (including any subsequent holder of the Note) whether so expressed or not, except that the Company and WMSA may not assign or otherwise transfer any of its rights or obligations hereunder or under the Note without the prior written consent of the Investor.  Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto and their respective successors and assigns permitted hereby) any legal or equitable right, remedy or claim under or by reason of this Agreement.

**Section 17.2.  Severability**.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall (to the full extent permitted by law) not invalidate or render unenforceable such provision in any other jurisdiction.

**Section 17.3.  Construction, Etc**.  Each covenant contained herein shall be construed (absent express provision to the contrary) as being independent of each other covenant contained herein, so that compliance with any one covenant shall not (absent such an express contrary provision) be deemed to excuse compliance with any other covenant.  Where any provision herein refers to action to be taken by any Person, or which such Person is prohibited from taking, such provision shall be applicable whether such action is taken directly or indirectly by such Person.

Defined terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation."  The word "will" shall be construed to have the same meaning and effect as the word "shall."  Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein) and, for purposes of the Note, shall also include any such note issued in substitution therefor pursuant to Section 11, (b) subject to Section 17.1, any

-13-

reference herein to any Person shall be construed to include such Person's successors and assigns, (c) the words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (d) all references herein to Sections and Schedules shall be construed to refer to Sections of, and Schedules to, this Agreement, and (e) any reference to any law or regulation herein shall, unless otherwise specified, refer to such law or regulation as amended, modified or supplemented from time to time.

**Section 17.4.  Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.  Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto.

**Section 17.5.  Governing Law**.  This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the law of the State of New York, excluding choice-of-law principles of the law of such State that would permit the application of the laws of a jurisdiction other than such State.

**Section 17.6.  Jurisdiction and Process; Waiver of Jury Trial**.  (a) The Company irrevocably submits to the non-exclusive jurisdiction of any New York State or federal court sitting in the Borough of Manhattan, the City of New York, over any suit, action or proceeding arising out of or relating to this Agreement or the Note.  To the fullest extent permitted by applicable law, the Company irrevocably waives and agrees not to assert, by way of motion, as a defense or otherwise, any claim that it is not subject to the jurisdiction of any such court, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

(b)    The Company agrees, to the fullest extent permitted by applicable law, that a final judgment in any suit, action or proceeding of the nature referred to in Section 17.6(a) brought in any such court shall be conclusive and binding upon it, subject to rights of appeal, as the case may be, and may be enforced in the courts of the United States of America or the State of New York (or any other courts to the jurisdiction of which it or any of its assets is or may be subject) by a suit upon such judgment.

(c)    The Company consents to process being served by or on behalf of any holder of the Note in any suit, action or proceeding of the nature referred to in Section 17.6(a) by mailing a copy thereof by registered, certified, priority or express mail (or any substantially similar form of mail), postage prepaid, return receipt or delivery confirmation requested, to it at its address specified in Section 15.5 or at such other address of which such holder shall then have been notified pursuant to said Section.  The Company agrees that such service upon receipt (i) shall be deemed in every respect effective service of process upon it in any such suit, action or proceeding and (ii) shall, to the fullest extent permitted by applicable law, be taken and held to be valid personal service upon and personal delivery to it.  Notices hereunder shall be conclusively presumed received as evidenced by a delivery receipt furnished by the United States Postal Service or any reputable commercial delivery service.

A-320

(d)    Nothing in this Section 17.6 shall affect the right of any holder of the Note to serve process in any manner permitted by law, or limit any right that any holder of the Note may have to bring proceedings against the Company in the courts of any appropriate jurisdiction or to enforce in any lawful manner a judgment obtained in one jurisdiction in any other jurisdiction.

(e)    The parties hereto hereby waive trial by jury in any action brought on or with respect to this Agreement, the Note or any other document executed in connection herewith or therewith.

\*    \*    \*    \*    \*

If you are in agreement with the foregoing, please sign the form of agreement on a counterpart of this Agreement and return it to the Company, whereupon this Agreement shall become a binding agreement between you, the Company and WMSA.

Very truly yours,

GWA, LLC

By _____
Name: Pierce Archer
Title: Authorized Signer & Chief Operating
    Officer of Weiss Multi-Strategy Advisers
    LLC

Weiss Multi-Strategy Advisers LLC

By _____
Name: Pierce Archer
Title: Chief Operating Officer

This Agreement is hereby
accepted and agreed to as
of the date hereof.

Jefferies Strategic Investments, LLC

By _____
Name:  Matthew Smith
Title:    President

-16-

### DEFINED TERMS

As used herein, the following terms have the respective meanings set forth below or set forth in the Section hereof following such term:

"**Affiliate**" means, at any time, and with respect to any Person, any other Person that at such time, directly or indirectly through one or more intermediaries Controls, or is Controlled by, or is under common Control with, such first Person, and, with respect to the Company, shall include any Person beneficially owning or holding, directly or indirectly, 10% or more of any class of voting or equity interests of the Company or any Subsidiary or any Person of which the Company and its Subsidiaries beneficially own or hold, in the aggregate, directly or indirectly, 10% or more of any class of voting or equity interests.  Unless the context otherwise clearly requires, any reference to an "Affiliate" is a reference to an Affiliate of the Company.

"**Agreement**" means this Note Purchase Agreement, including all Schedules attached to this Agreement.

"**Business Day**" means any day other than a Saturday, a Sunday or a day on which commercial banks in New York, New York, are required or authorized to be closed.

"**Cause**" shall have the meaning given to it in the Investment Management Agreement.

"**Code**" means the Internal Revenue Code of 1986 and the rules and regulations promulgated thereunder from time to time.

"**Company**" is defined in the first paragraph of this Agreement.

"**Company Agreement**" means the Third Amended and Restated Operating Agreement of the Company dated as of March 1, 2021.

"**Confidential Information**" is defined in Section 16.

"**Control**" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise; and the terms "**Controlled**" and "**Controlling**" shall have meanings correlative to the foregoing.

"**Closing**" is defined in Section 3.

"**Default**" means an event or condition the occurrence or existence of which would, with the lapse of time or the giving of notice or both, become an Event of Default.

"**Default Rate**" means the sum of (a) the Prime Rate, as published in H.15, or another electronic source used for displaying that rate, opposite the heading "Bank prime loan" plus (b)

SCHEDULE A
(to Note Purchase Agreement)

A-323

5%.  If the Prime Rate cannot be determined as described above, the Investor shall determine the Prime Rate in a commercially reasonable manner.

"**Environmental Laws**" means any and all federal, state, local and foreign statutes, laws, regulations, ordinances, rules, judgments, orders, decrees, permits, concessions, grants, franchises, licenses, agreements or governmental restrictions relating to pollution and the protection of the environment or the release of any materials into the environment, including those related to Hazardous Materials.

"**ERISA**" means the Employee Retirement Income Security Act of 1974 and the rules and regulations promulgated thereunder from time to time in effect.

"**Event of Default**" is defined in Section 9.

"**Existing Notes**" is defined in Section 9.

"**Governmental Authority**" means

    (a)    the government of

        (i)    the United States of America or any state or other political subdivision thereof, or

        (ii)    any other jurisdiction in which the Company or any Subsidiary conducts all or any part of its business, or which asserts jurisdiction over any properties of the Company or any Subsidiary, or

    (b)    any entity exercising executive, legislative, judicial, regulatory or administrative functions of, or pertaining to, any such government.

"**H.15**" means statistical release of H.15, available through the website of the Board of Governors of the Federal Reserve System, at http://www.federalreserve.gov/releases/h15, or any successor site or publication.

"**Hazardous Materials**" means any and all pollutants, toxic or hazardous wastes or other substances that might pose a hazard to health and safety, the removal of which may be required or the generation, manufacture, refining, production, processing, treatment, storage, handling, transportation, transfer, use, disposal, release, discharge, spillage, seepage or filtration of which is or shall be restricted, prohibited or penalized by any applicable law, including asbestos, urea formaldehyde foam insulation, polychlorinated biphenyls, petroleum, petroleum products, lead-based paint, radon gas or similar restricted, prohibited or penalized substances.

"**holder**" means, with respect to the Note, the Person in whose name the Note is registered in the register maintained by the Company pursuant to Section 11.1, *provided*, *however*, that if such Person is a nominee, then for the purposes of Sections 10, 15.2 and 15.5 and any related

A-2

definitions in this Schedule A, "holder" shall mean the beneficial owner of the Note whose name and address appears in such register.

"**Interest**" shall have the meaning given to it in the Company Agreement.

"**Investment Management Agreement**" means the Investment Management Agreement dated as of May 1, 2018 between WMSA and the Investor, as amended.

"**Investor**" is defined in first paragraph of this Agreement.

"**Investor Schedule**" means the Investor Schedule to this Agreement listing the Investor of the Note and including its notice and payment information.

"**Lien**" means, with respect to any Person, any mortgage, lien, pledge, charge, security interest or other encumbrance, or any interest or title of any vendor, lessor, lender or other secured party to or of such Person under any conditional sale or other title retention agreement, upon or with respect to any property or asset of such Person (including in the case of stock, stockholder agreements, voting trust agreements and all similar arrangements).

"**Material**" means material in relation to the business, operations, affairs, financial condition, assets, properties or prospects of the Company and its Subsidiaries, taken as a whole.

"**Material Adverse Effect**" means a material adverse effect on (a) the business, operations, affairs, financial condition, assets or properties of the Company or any of its Subsidiaries, (b) the ability of the Company to perform its obligations under this Agreement and the Note or (c) the validity or enforceability of this Agreement or the Note.

"**Maturity Date**" is defined in Section 7.1.

"**Members Equity**" means the member's equity of the Company.

"**Members Equity Event**" shall be deemed to have occurred if, on any day, the Members Equity is equal to or less than $10 million, calculated as if the Note and the Existing Notes had been redeemed in full as of such day.

"**Note**" is defined in Section 1.

"**Optional Redemption**" is defined in Section 7.2.

"**Optional Redemption Date**" means monthly, on the last calendar day of each month.

"**Ordinary Course of Business**" shall have the meaning given to it in the Strategic Relationship Agreement.

"**Person**" means an individual, partnership, corporation, limited liability company, association, trust, unincorporated organization, business entity or Governmental Authority.

A-3

"**Prime Rate**" means the "Wall Street Journal Prime Rate" of interested as published in the *Wall Street Journal* or another rate agreed by the parties hereto.

"**property**" or "**properties**" means, unless otherwise specifically limited, real or personal property of any kind, tangible or intangible, choate or inchoate.

"**Redemption Payment**" means an aggregate amount equal to $3 million in principal plus accrued interest at an annual rate of Prime Rate plus 2%, compounded monthly.

"**Required Holder**" means (i) with respect to the Note at any time on or after Closing, the holder of 100% in principal amount of the Note at the time outstanding.

"**Responsible Officer**" means any Senior Financial Officer and any other officer of the Company with responsibility for the administration of the relevant portion of this Agreement.

"**Securities**" or "**Security**" shall have the meaning specified in section 2(1) of the Securities Act.

"**Securities Act**" means the Securities Act of 1933 and the rules and regulations promulgated thereunder from time to time in effect.

"**Senior Financial Officer**" means the chief financial officer, principal accounting officer, treasurer or comptroller of the Company.

"**Strategic Relationship Agreement**" the Strategic Relationship Agreement dated as of May 1, 2018 by and between LAM Holding LLC and the Company, which agreement has been assigned by LAM Holding LLC to Leucadia Asset Management Holdings LLC pursuant to an Assignment and Assumption Agreement dated as of October 18, 2018.

"**Subsidiary**" means, as to any Person, any other Person in which such first Person or one or more of its Subsidiaries or such first Person and one or more of its Subsidiaries owns sufficient equity or voting interests to enable it or them (as a group) ordinarily, in the absence of contingencies, to elect a majority of the directors (or Persons performing similar functions) of such second Person, and any partnership or joint venture if more than a 50% interest in the profits or capital thereof is owned by such first Person or one or more of its Subsidiaries or such first Person and one or more of its Subsidiaries (unless such partnership or joint venture can and does ordinarily take major business actions without the prior approval of such Person or one or more of its Subsidiaries). Unless the context otherwise clearly requires, any reference to a "Subsidiary" is a reference to a Subsidiary of the Company.

"**Trigger Redemption**" is defined in Section 7.3.

"**Trigger Redemption Date**" means the date specified by Investor in the applicable notice delivered to the Company to effectuate a Trigger Redemption.

"**USA PATRIOT Act**" means United States Public Law 107-56, Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001 and the rules and regulations promulgated thereunder from time to time in effect.

"**Wholly Owned Subsidiary**" means, at any time, any Subsidiary, all of the equity interests (except directors' qualifying shares) and voting interests of which are owned by any one or more of the Company and the Company's other Wholly Owned Subsidiaries at such time.

"**WMSA**" has the meaning given to it in the first paragraph of this Agreement.

**THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR IN ANY OTHER JURISDICTION. THE SECURITIES REPRESENTED HEREBY MAY NOT BE OFFERED, SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER APPLICABLE SECURITIES LAWS UNLESS OFFERED, SOLD OR TRANSFERRED PURSUANT TO AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THOSE LAWS.**

**NOTE**

**GWA, LLC**

**$3,000,000**

No. 1                                                                                                    **September 21, 2022**
$3,000,000

FOR VALUE RECEIVED, the undersigned, **GWA, LLC** (herein called the "**Company**"), a Connecticut limited liability company, hereby promises to pay to Jefferies Strategic Investments, LLC, or registered assigns, the Redemption Payment on the applicable Optional Redemption Date, Trigger Redemption Date or Maturity Date, with interest (computed on the basis of a 360-day year of 12 30-day months), to the extent permitted by law, on any overdue payment of Redemption Payment at a rate per annum from time to time equal to the Default Rate.

Payment of the Redemption Amount with respect to the Note is to be made in lawful money of the United States of America at New York, New York or at such other place as the Company shall have designated by written notice to the holder of the Note as provided in the Note Purchase Agreement referred to below.

The Note (herein called the "**Note**") is issued pursuant to the Note Purchase Agreement, dated September 21, 2022 (as from time to time amended, the "**Note Purchase Agreement**"), by and among the Company, Weiss Multi-Strategy Advisers LLC and Jefferies Strategic Investments, LLC and is entitled to the benefits thereof. The holder of the Note will be deemed, by its acceptance hereof, to have agreed to the confidentiality provisions set forth in Section 16 of the Note Purchase Agreement. Unless otherwise indicated, capitalized terms used in the Note shall have the respective meanings ascribed to such terms in the Note Purchase Agreement.

The Note is a registered Note and, as provided in the Note Purchase Agreement, upon surrender of the Note for registration of transfer accompanied by a written instrument of transfer

SCHEDULE 1
(to Note Purchase Agreement)

duly executed, by the registered holder hereof or such holder's attorney duly authorized in writing, a new Note for a like principal amount will be issued to, and registered in the name of, the transferee.  Prior to due presentment for registration of transfer, the Company may treat the Person in whose name this Note is registered as the owner hereof for the purpose of receiving payment and for all other purposes, and the Company will not be affected by any notice to the contrary.

**This Note is subject to prepayment.**

If an Event of Default occurs and is continuing, the Redemption Payment of the Note may be declared or otherwise become due and payable in the manner, at the price and with the effect provided in the Note Purchase Agreement.

The Note shall be construed and enforced in accordance with, and the rights of the Company and the holder of the Note shall be governed by, the law of the State of New York, excluding choice-of-law principles of the law of such State that would permit the application of the laws of a jurisdiction other than such State.

**GWA, LLC**

By _____
    **Name:**
    **Title:**

SCHEDULE 1
(to Note Purchase Agreement)

## GWA, LLC

### INFORMATION RELATING TO THE INVESTOR

NAME AND ADDRESS OF THE INVESTOR

Jefferies Strategic Investments, LLC
520 Madison Avenue
New York, NY 10022

PRINCIPAL AMOUNT OF
NOTE TO BE PURCHASED

$3,000,000

(1)  All payments by wire transfer of immediately available funds to:

Bank of New York
ABA: ▇▇▇▇▇▇
Account Name: Jefferies Group LLC
Account #: ▇▇▇▇▇▇▇
Reference: Jefferies Strategic Investment, LLC (#100-64162)

with sufficient information to identify the source and application of such funds.

(2)  All notices of payments and written confirmations of such wire transfers:

kvlasovskaya@jefferies.com; and
AssetManagement@jefferies.com

(3)  All other communications:

Jefferies Strategic Investments, LLC
520 Madison Avenue New York, NY 10022
Attn: General Counsel
Email: msharp@jefferies.com

(4)  U.S. Tax Identification Number: 13-2615557

SCHEDULE 1
(to Note Purchase Agreement)

A-330

# Exhibit G

A-331

**THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR IN ANY OTHER JURISDICTION. THE SECURITIES REPRESENTED HEREBY MAY NOT BE OFFERED, SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER APPLICABLE SECURITIES LAWS UNLESS OFFERED, SOLD OR TRANSFERRED PURSUANT TO AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THOSE LAWS.**

**NOTE**

**GWA, LLC**

**$3,000,000**

No. 1                                              **September 21, 2022**
$3,000,000

FOR VALUE RECEIVED, the undersigned, **GWA, LLC** (herein called the "**Company**"), a Connecticut limited liability company, hereby promises to pay to Jefferies Strategic Investments, LLC, or registered assigns, the Redemption Payment on the applicable Optional Redemption Date, Trigger Redemption Date or Maturity Date, with interest (computed on the basis of a 360-day year of 12 30-day months), to the extent permitted by law, on any overdue payment of Redemption Payment at a rate per annum from time to time equal to the Default Rate.

Payment of the Redemption Amount with respect to the Note is to be made in lawful money of the United States of America at New York, New York or at such other place as the Company shall have designated by written notice to the holder of the Note as provided in the Note Purchase Agreement referred to below.

The Note (herein called the "**Note**") is issued pursuant to the Note Purchase Agreement, dated September 21, 2022 (as from time to time amended, the "**Note Purchase Agreement**"), by and among the Company, Weiss Multi-Strategy Advisers LLC and Jefferies Strategic Investments, LLC and is entitled to the benefits thereof.  The holder of the Note will be deemed, by its acceptance hereof, to have agreed to the confidentiality provisions set forth in Section 16 of the Note Purchase Agreement.  Unless otherwise indicated, capitalized terms used in the Note shall have the respective meanings ascribed to such terms in the Note Purchase Agreement.

The Note is a registered Note and, as provided in the Note Purchase Agreement, upon surrender of the Note for registration of transfer accompanied by a written instrument of transfer

SCHEDULE 1
(to Note Purchase Agreement)

A-332

duly executed, by the registered holder hereof or such holder's attorney duly authorized in writing, a new Note for a like principal amount will be issued to, and registered in the name of, the transferee. Prior to due presentment for registration of transfer, the Company may treat the Person in whose name this Note is registered as the owner hereof for the purpose of receiving payment and for all other purposes, and the Company will not be affected by any notice to the contrary.

**This Note is subject to prepayment.**

If an Event of Default occurs and is continuing, the Redemption Payment of the Note may be declared or otherwise become due and payable in the manner, at the price and with the effect provided in the Note Purchase Agreement.

The Note shall be construed and enforced in accordance with, and the rights of the Company and the holder of the Note shall be governed by, the law of the State of New York, excluding choice-of-law principles of the law of such State that would permit the application of the laws of a jurisdiction other than such State.

**GWA, LLC**

By _____
          **Name:** Pierce Archer
          **Title:** Authorized Signer & Chief
          Operating Officer of Weiss Multi-Strategy
          Advisers LLC

# Exhibit H

**A-334**

# Jefferies

520 Madison Avenue
New York, NY 10022
*tel*  212.284.2300
Jefferies.com

## JEFFERIES STRATEGIC INVESTMENTS, LLC

### Notice of Optional Redemption

**To:** GWA, LLC
320 Park Avenue
20th Floor
New York, New York 10022

**From:** Jefferies Strategic Investments, LLC ("JSI")
**Date:** December 21, 2023
**RE:** GWA, LLC's ("GWA") $31,250,000 Note dated December 3, 2019 (the "December Note")
GWA's $18,750,000 Note dated January 13, 2020 (the "January Note")
GWA's $3,000,000 Note dated September 21, 2022 (the "September Note")

NOTICE IS HEREBY GIVEN pursuant to Section 7.2 of the Note Purchase Agreement (the "2019 Agreement"), dated as of December 3, 2019 (as from time to time amended) by and among GWA, Weiss Multi-Strategy Advisers LLC ("WMSA") and JSI, as successor in interest to JFG Funding LLC, that, in accordance with the terms and conditions of the 2019 Agreement and each of the December Note and the January Note, JSI hereby elects to exercise its right to redeem 100% of the outstanding aggregate principal amount of each of the December Note and the January Note on December 31, 2023 (the "Redemption Date"). On the Redemption Date GWA shall pay JSI the Redemption Payment (as defined in the 2019 Agreement) for each of the December Note and the January Note  and the December Note and January Note shall each cease to be outstanding upon payment in full thereof.

NOTICE IS HEREBY ALSO GIVEN pursuant to Section 7.2 of the Note Purchase Agreement (the "2022 Agreement"), dated as of September 21, 2022 (as from time to time amended) by and among GWA, WMSA and JSI, that, in accordance with the terms and conditions of the 2022 Agreement and the September Note, JSI hereby elects to exercise its right to redeem 100% of the outstanding aggregate principal amount of the September Note on the Redemption Date. On the Redemption Date GWA shall pay JSI the Redemption Payment (as defined in the 2022 Agreement) for the September Note and the September Note shall cease to be outstanding upon payment in full thereof.

The Redemption Payment for each of the December Note, the January Note and the September Note shall be paid by wire transfer of immediately available funds to:

Bank of New York
ABA: 021000018
Account Name: Jefferies Financial Group Inc.
Account #: 8900672064
Reference: Jefferies Strategic Investment, LLC (100-64162)

Very truly yours,

JEFFERIES STRATEGIC INVESTMENTS, LLC

Name: Matthew Smith
Title: President

A-335

# Exhibit I

A-336

## FORBEARANCE AGREEMENT

**THIS FORBEARANCE AGREEMENT** ("Agreement") is made and entered into this February 12, 2024, by and between GWA, LLC, a Connecticut limited liability company ("GWA"), Weiss Multi-Strategy Funds, LLC, a Delaware limited liability company ("WMSF"), OGI Associates, LLC, a Delaware limited liability company ("OGI"), Weiss Special Operations LLC, a Delaware limited liability company ("WSPO"), Weiss Multi-Strategy Advisers LLC, a Delaware limited liability company ("WMSA" and collectively with GWA, WMSF, WSPO and OGI, the "Weiss Parties"), George A. Weiss ("Weiss") for purposes of Section 5(a), 9 and 10(c) hereof, and, Leucadia Asset Management Holdings LLC ("LAM Holdings") and Jefferies Strategic Investments, LLC, a Delaware limited liability company ("JSI").

## RECITALS

WHEREAS, LAM Holding LLC ("LAM Holding") and GWA entered into the Strategic Relationship Agreement dated as of May 1, 2018 (as amended, the "SR Agreement");

WHEREAS, in connection with LAM Holdings entering into the SR Agreement, WMSA and JSI (under its former name "Leucadia Funding LLC") entered into the Investment Management Agreement dated May 1, 2018 (as amended, the "IMA");

WHEREAS, LAM Holding assigned all of its rights under the SR Agreement to LAM Holdings (under its former name, Jefferies Asset Management Holdings LLC) (LAM Holdings, collectively with JSI and their affiliated entities, the "Jefferies Parties"), pursuant to the Assignment and Assumption Agreement dated as of October 18, 2018, between LAM Holding and LAM Holdings;

WHEREAS, LAM Holding merged with and into LAM Holdings as of December 1, 2021, with LAM Holdings as the surviving company;

WHEREAS, GWA, WMSA, and JSI, as successor in interest to JFG Funding LLC, are parties to that certain Note Purchase Agreement, dated as of December 3, 2019 (as amended, the "2019 Note Purchase Agreement");

WHEREAS, GWA, WMSA, and JSI are parties to that certain Note Purchase Agreement, dated as of September 21, 2022 (as amended, the "2022 Note Purchase Agreement" and collectively with the 2019 Note Purchase Agreement, the "Note Purchase Agreements");

WHEREAS, pursuant to the terms of the Note Purchase Agreements, GWA has issued (i) a $31,250,000 Note dated December 3, 2019, (ii) a $18,750,000 Note dated January 13, 2020, and (iii) a $3,000,000 Note dated September 21, 2022 (collectively, the "Notes");

WHEREAS, JSI has entered into Forbearance Letters on each of January 1, 2022, September 1, 2022 and July 25, 2023, with GWA and WMSA, pursuant to which JSI agreed to forebear from exercising certain remedies subject to certain conditions;

WHEREAS, on December 21, 2023, JSI delivered to GWA that certain Notice of Optional Redemption (the "Redemption Notice");

WHEREAS, representatives of the Jefferies Parties and the Weiss Parties have been in ongoing discussions since December 2023 regarding the terms under which the Jefferies Parties may be willing to forebear from exercising their remedies in connection with the Enforcement Actions;

WHEREAS, the Jefferies Parties delivered to the Weiss Parties on February 1, 2024 a draft Forbearance Agreement that was conditioned upon such bonus payment not being paid and such bonus payments were made by the Weiss Parties on February 8, 2024; and

WHEREAS, JSI currently has the right to immediately commence an enforcement action, suit, litigation, claim or other action with respect to the Past Due Obligations (as defined below) and the actions of the Weiss Parties referred to above (collectively "Enforcement Actions") against GWA.

NOW THEREFORE, in good and valuable consideration of the covenants and mutual promises hereinafter set forth, the sufficiency of which the parties heretofore acknowledge, the parties hereto agree as follows:

1.    Past Due Obligations. Each party agrees that pursuant to the terms of the Note Purchase Agreements, the Notes and the Redemption Notice, GWA is past due with respect to the following payment obligations to JSI (each calculated as of January 15, 2024): (i) $23,650,410.10 on the Note dated December 3, 2019, (ii) $27,457,310.08 on the Note dated January 13, 2020 and (iii) $3,420,395.60 on the Note dated September 21, 2022 (collectively, the "Past Due Obligations"). Each party further agrees that the Past Due Obligations are owed without defense, set-off or counter claim, and are past due.

2.    Weiss Parties Agreements.

(a)    To the extent they have not done so prior to the execution of this Agreement, the Weiss Parties agree to deliver the following information to the Jefferies Parties no later than 5:00 p.m. on February 13, 2024:

(i)    A schedule of bonus payments made to each employee during 2024 including (A) the name of the recipient employee, (B) the aggregate amounts paid to such recipient employee, and (C) the date or dates on which such bonus payments were made to such employee.

(ii)    Schedules of assets and liabilities of each of GWA, WMSF, OGI, WSPO, WMSA and each of their subsidiaries as of each of January 31, 2024 and February 9, 2024.

(iii)    Copies of statements from each brokerage, futures, commodities, custodial, bank, deposit or similar account held by any of the entities referred to in clause (ii) above.

2

(iv)    The name and address of each entity referred to in clause (ii) above and of each bank or brokerage firm where the accounts referred to in clause (iii) above are held.

(v)    A schedule of each client account managed by WMSA or its affiliates (the "Weiss Client Accounts"), including the amount of any accrued but unpaid fees or allocations owed to WMSA from each Weiss Client Account.

(vi)    The operative and offering documents of each Weiss Client Account, including each Private Placement Memorandum, Offering Memorandum, Limited Partnership Agreement, Limited Liability Company Agreement, Memorandum and Articles of Association, Investment Management Agreement and all similar documents.

(vii)    Copies of every invoice for accrued but unpaid fees or allocation that have been sent to any Weiss Client.

(b)    The Weiss Parties agree to provide promptly, and in any event within 24 hours of such request, any other information requested by the Jefferies Parties related to the Weiss Parties' and any of their subsidiaries' respective financial operations or financial conditions, the Past Due Obligations or the representations or obligations set forth in this Agreement.

(c)    The Weiss Parties hereby agree that none of them will (i) pay, grant or transfer (directly or indirectly) to any other person or entity an aggregate amount in excess of $10,000 on any day, except for payments made in the course of normal course trading consistent with past practices (*e.g.*, payments to prime and executing brokers, payments against delivery and payments to ISDA counterparties), (ii) take any action or fail to take any action that may result in OGI's net assets being reduced or diminished in any respect other than permitting normal course trading consistent with past practices or (iii) take any other action or fail to take any action that would be reasonably expected to reduce the net asset value of the Weiss Parties or their subsidiaries, in each case without the prior written consent of the Jefferies Parties, which may be granted or withheld in their sole and absolute discretion.

3.    Guaranty.

(a)    Guaranty of Obligations.    Each Weiss Party (other than GWA) hereby irrevocably and unconditionally guarantees to each of JSI and LAM Holdings (collectively, the "Beneficiaries") and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations (as herein defined).    This guaranty shall remain in full force and effect until the Guaranteed Obligations are paid in full, notwithstanding any increase in the amount of the Guaranteed Obligations or any modification or amendment of any instrument governing the Guaranteed Obligations.    As used herein, the term "Guaranteed Obligations" shall mean all the obligations of GWA and each other Weiss Party arising under any Note

Purchase Agreement, the Notes, the SR Agreement and this Agreement, and any loss, damage, penalty, action, judgment, suit, cost, expense, disbursement, liability, claim or other obligation, incurred by or behalf of any Beneficiary (including but not limited to reasonable out-of-pocket attorneys' fees and costs) arising out or, relating to or in connection with any Note Purchase Agreement, any Note, the SR Agreement, this Agreement or the transaction contemplated thereby.

(b)  Nature of Guaranty.  This guaranty is an irrevocable, absolute, and continuing guaranty of the full and punctual payment and performance and not a guaranty of collection.  This guaranty may not be revoked by any Weiss Party and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by any Weiss Party.

(c)  Guaranteed Obligations Not Reduced by Offset.  No payment or payments made by any Weiss Party, any other guarantor or any other person or received or collected by any Beneficiary from any Weiss Party, any other guarantor or any other person by virtue of any action or proceeding or any set-off or appropriation or application at any time or from time to time in reduction of or in payment of the Guaranteed Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of any Weiss Party hereunder until all of the Guaranteed Obligations have been repaid in full. Each Weiss Party shall remain liable under this Agreement until the Guaranteed Obligations are satisfied and paid in full.

(d)  Waivers.  Each Weiss Party hereby acknowledges the applicable provisions of the Note Purchase Agreement, the Notes and the SR Agreement, and hereby waives notice of (i) any transactions thereunder, whether characterized as loans or advances, (ii) acceptance of this guaranty, (iii) any amendment or extension of the Guaranteed Obligations or any document evidencing or governing the Guaranteed Obligations, (iv) the execution and delivery by any Beneficiary or any other Weiss Party of any other agreement or other documents arising in connection with the Guaranteed Obligations, (v) the occurrence of any breach by any Weiss Party under any document or agreement governing the Guaranteed Obligations, (vi) a Beneficiary's transfer or disposition of any of its rights under the documents governing the Guaranteed Obligations, or any part thereof, (vii) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral for the Guaranteed Obligations, including the Collateral, (viii) protest, proof of non-payment or default by any Weiss Party, or (ix) any other action at any time taken or omitted by the Beneficiaries, and, generally, except to the extent required by the terms hereof, all other demands and notices of every kind in connection with this guaranty, or any documents or agreements evidencing, securing or relating to any of the Guaranteed Obligations.

4.    Grant Of Security.

(a)  Grant of Security Interest.  Each Weiss Party hereby grants and pledges to Secured Party (as defined below), to secure the full and punctual payment of the Guaranteed Obligations when due (whether at the stated maturity, by acceleration or otherwise), a continuing security interest in all of such Weiss Party's right, title and interest in, to and under the Collateral, wherever located, whether now owned or hereafter acquired

4

**A-340**

or arising, and all proceeds and products thereof. The Secured Party's security interest shall continually exist until all Guaranteed Obligations have been paid in full. Each Weiss Party shall make notations, reasonably satisfactory to the Secured Party, on its books and records disclosing the existence of this security interest in the Collateral. "Collateral" shall mean all goods, accounts, equipment, inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, general intangibles, commercial tort claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), cash, deposit accounts, securities accounts, certificates of deposit, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), securities, and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located; and all of each Weiss Party's books and records relating to the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing. Terms used in this definition shall have the meanings given to such terms in Article 9 of the Code (as defined below), as applicable.

(b)    Priority of Security Interest. Each Weiss Party represents, warrants, and covenants that the security interest granted herein, and until expiration of the security interests as provided in Section 4(a), is and shall at all times continue to be a first priority perfected security interest in the Collateral (subject only, in the case of deposit account and securities account, to ordinary course liens in favor of that applicable depositary institutions and securities intermediaries that do not secure indebtedness for borrowed money).

(c)    Authorization to File Financing Statements. Each Weiss Party hereby authorizes Secured Party to file financing statements, without notice to any Weiss Party, with all appropriate jurisdictions to perfect or protect the Secured Party's interest or rights hereunder, including a notice that any disposition of the Collateral, by either such Weiss Party or any other person, other than in accordance with this Agreement shall be deemed to violate the rights of Secured Party under the Uniform Commercial Code, as the same may, from time to time, be enacted and in effect in the State of New York or any other applicable jurisdiction as the context may require (the "Code").

(d)    Termination of Liens; Release of Collateral. Upon payment in full of all Guaranteed Obligations in accordance with the terms hereof, (i) the lien in the Collateral granted by each Weiss Party in favor of the Secured Party under, or pursuant to, this Agreement shall automatically be terminated and released without any further action by any person and all rights therein shall revert to the applicable Weiss Party and (ii) the Secured Party shall, at the Weiss Party's sole cost and expense, release its lien in the Collateral and execute and deliver to the applicable Weiss Party such documents reasonably requested by such Weiss Party to evidence such release.

(e)    Account Control Agreement. Each Weiss Party shall within five Business Days of this Agreement, execute and deliver an account control agreement in respect of each account referred to in Section 2(a)(iii) to provide the Secured Party with perfection by control of its security interest in each such account, each in form and substance reasonable acceptable to the Secured Party.

(f)    Further Assurances. Each Weiss Party shall execute any and all further documents, financing statements, agreements and instruments, and shall take all such further actions, which may be required under any applicable law or which Secured Party may reasonably request in order to grant, preserve, protect, perfect and evidence the validity and priority of the security interests created or intended to be created by this Agreement (including, without limitation, the filing and recording of financing statements, fixture filings, mortgages, deeds of trust and other documents), all at the sole cost and expense of the Weiss Parties.

(g)    Appointment of Secured Party. Each of JSI and LAM Holdings hereby appoints JSI to act as its collateral agent (JSI, together with its successors and assigns in such capacity, the "Secured Party") for purposes of perfecting the lien granted to the Secured Party in this Agreement. The Secured Party shall have no rights or duties other than as expressly provided herein, and may assign its rights under this Agreement to any Beneficiary or any affiliate thereof, solely with the consent of the Beneficiaries. The Secured Party shall be authorized to apply any proceeds of the Collateral to the Guaranteed Obligations in such order as it may determine in its sole discretion.

5.    Representations.

(a)    Enforceability. Each Weiss Party and Weiss hereby represents and warrants that (x) this Agreement has been duly executed and delivered by such Weiss Party and Weiss and (y) this Agreement is the legal, valid and binding obligation of such Weiss Party and Weiss, and is enforceable against each such Weiss Party and Weiss, in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and by equitable principles relating to enforceability.

(b)    Authorization; No Conflicts. Each Weiss Party hereby represents and warrants that its execution, delivery and performance of this Agreement, are within its corporate or limited liability company powers and have been duly authorized by all necessary corporate, limited liability company and, if required, stockholder action of such Weiss Party. The execution, delivery and performance of this Agreement, (i) do not require any consent or approval of, registration or filing with, or any other action by, any governmental authority, except (a) such as have been obtained or made and are in full force and effect, and (b) for filings and registrations necessary to perfect liens created hereunder, (ii) will not violate any law, rule or regulation applicable to any Weiss Party, (iii) will not result in a default or breach under any of its constituent documents or any instrument or agreement binding on it or any of its assets, and (iv) will not result in the creation or imposition of any lien on any asset of any Weiss Party, or any of its subsidiaries, except liens created hereby.

(c)    No Default; Representations and Warranties. Each Weiss Party hereby represents and warrants that except as disclosed to the Beneficiaries in writing (i) no default or breach has occurred under any Note Purchase Agreement, any Note, the SR Agreement or this Agreement and (ii) all of the representations and warranties of each Weiss Party, as applicable, contained in any of any Note Purchase Agreement, any Note, the SR Agreement

or this Agreement are true and correct in all material respects as of the date hereof, except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall have been true and correct in all material respects as of such earlier date.

(d)    <u>Disclosure</u>. Each Weiss Party hereby represents and warrants that none of the reports, financial statements, certificates or other information furnished by or on behalf of any Weiss Party to the Secured Party or any Beneficiary in connection with the negotiation of this Agreement or delivered pursuant to hereto contains any untrue statement of a material fact or omits any material fact required to be stated therein or necessary to make the statements made therein, in light of the circumstances under which they are made, not misleading as of the time when made or delivered.

6.    <u>Forbearance</u>.  In exchange for the Weiss Parties agreeing to and complying with the terms of this Agreement, JSI agrees to (a) forbear from seeking relief or exercising any remedies under title 11 of the United State Code (the "<u>Bankruptcy Code</u>"), including, but not limited to, commencing an involuntary case against GWA under sections 301 or 303 of the Bankruptcy Code, as well as initiating or causing the initiation of an assignment for the benefit of creditors proceeding, a receivership or other similar insolvency proceeding and (b) forbear from filing an Enforcement Action, in each case, for the period (the "<u>Forbearance Period</u>") beginning on the date hereof until the earlier of (x) two Business Days after such date or (y) the occurrence of any Forbearance Default, except that the Forbearance Period will be automatically extended by an additional one Business Day at the conclusion of the Forbearance Period unless the Jefferies Parties give written notice of a termination of the Forbearance Period to the Weiss Parties on or prior to the conclusion of the Forbearance Period.  (For the avoidance of doubt, the Forbearance Period shall automatically terminate upon the occurrence of a Forbearance Default.)  For the purposes hereof, "<u>Forbearance Default</u>" shall mean the occurrence of any of the events described on <u>Exhibit A</u> attached hereto and "<u>Business Day</u>" shall have the meaning given to such term in the SR Agreement.

7.    <u>Reservation of Rights</u>.  Except as expressly set forth herein, this Agreement shall not, by implication or otherwise, constitute a termination, waiver or amendment of, or otherwise affect the rights and remedies of any Beneficiary as a holder of the Notes, as party to the Note Purchase Agreements, as a party to the SR Agreement or under any other document.  Each Beneficiary reserves all rights and remedies, including but not limited to rights to interest under the Notes and the SR Agreement, any netting and set-off, and defenses, that such Beneficiary is entitled to exercise under the Notes, the Note Purchase Agreement, the Redemption Notice, the SR Agreement, any related documents or otherwise at law or in equity.  For the avoidance of doubt, this Agreement shall not extinguish the obligations for the payment of money outstanding under the Notes or SR Agreement or discharge or release the priority of the Notes or any other security therefor.  Nothing herein contained shall be construed as a substitution or novation of the obligations outstanding on the Notes, under the Note Purchase Agreement or the SR Agreement or any instruments, documents and agreements securing the same, which shall remain in full force and effect.  Nothing in this Agreement shall be construed as a release or other discharge of any Weiss Party or its affiliates from any of its obligations and liabilities under the Note, the Note Purchase Agreement or the SR Agreement.  No delay by any Beneficiary or any of its affiliates in exercising any right or remedy in respect of the Notes or the Note Purchase Agreement or the SR

Agreement or related documents or in respect of applicable law or equities will be deemed to constitute a waiver or forbearance of any such right or remedy. No verbal communication from or on behalf of any Beneficiary or any of its affiliates by any source with respect to the subject matter of this Agreement shall constitute any agreement of any Beneficiary or any of its affiliates with respect to the subject matter hereof, which shall be effective only if in writing and duly executed on behalf of such Beneficiary or such affiliate.

8.    IMA Fees. WMSA hereby agrees as of date hereof to treat any amounts JSI owes WMSA pursuant to the IMA (including but not limited to any amounts for the period of January 1, 2023 through December 31, 2023, including but not limited to the Investment Teams Bonus Fee) as offsetting GWA's payment obligations to JSI under the Notes, and as a result (i) JSI shall have been deemed to have paid such amounts to WMSA and (ii) such deemed paid amounts shall be deemed to be a receipt by JSI of a payment by GWA on the Notes of such amount.

9.    Weiss Guarantee. Weiss unconditionally and irrevocably personally guarantees to the Jefferies Entities the accuracy of the representations made by, and the performance of the agreements of, the Weiss Parties hereunder. Weiss further agrees that he shall take all actions within his control, including by exercising all of his voting, governance, management and other rights and powers with respect to each of the other Weiss Parties, any of their subsidiaries and any of his personal or his family's trusts to cause such persons to comply with the terms of this Agreement.

10.    Miscellaneous.

(a)    This Agreement may be executed in counterparts, each of which shall together be deemed an original instrument and all of which shall constitute one and the same agreement.

(b)    The parties hereto represent that they shall do all acts, and execute and deliver all documents necessary, convenient, or desirable to effectuate all provisions of this Agreement.

(c)    Each Weiss Party and Weiss acknowledges and agrees that it is receiving a direct benefit from the transactions contemplated by this Agreement, and the terms of this Agreement, including the guaranty provided herein and the security interests granted herein, constitute reasonably equivalent value for the benefit it is receiving from entering into this Agreement. Each Weiss Party and Weiss agrees that it shall not, nor shall it cause, directly or indirectly, any person controlled by, or under common control with, it, to take any action inconsistent with the terms of this Agreement. Each party represents and warrants that it has full power and authority to enter into and perform this Agreement, and that the person executing this Agreement on behalf of that party has been properly authorized and empowered to enter into this Agreement and to bind that party hereto.

(d)    This Agreement addresses the Past Due Obligations and the amounts under the IMA referenced in Section 8 hereof. This Agreement does not pertain to any other indebtedness and/or obligations of the Weiss Parties to the Jefferies Parties not specifically addressed in this Agreement (including but not limited to any amounts owed under the

Placement Agreement between Jefferies LLC and certain of the Weiss Parties). All terms and provisions of any agreements between one or more Weiss Parties and one or more Jefferies Parties, not specifically modified herein, shall remain in full force and effect in accordance with their terms.

(e)     No modification, waiver or amendment of this Agreement shall be valid unless the same is in writing and executed by all parties hereto. Waiver of any one provision shall not be deemed to be a waiver of any other provision herein.

(f)     This Agreement shall be binding upon the parties hereto and their predecessors, representatives, successors and permitted assigns, and shall inure to the benefit of said parties, and each of them, and their respective predecessors, representatives, successors and permitted assigns.

(g)     All agreements, covenants, representations and warranties, express or implied, oral and written, of the parties hereto concerning the subject matter hereof, are contained herein. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party hereto to any other concerning the subject matter hereof. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter hereto are merged herein.

(h)     This Agreement shall be governed by and construed and administered in accordance with the internal substantive laws of the State of New York without regard to principles of conflict of laws. Each party agrees that any dispute arising out of this Agreement shall be subject to the exclusive jurisdiction of the New York courts and irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in (i) any state court in the State of New York or (ii) any federal court in the State of New York, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

(i)     In the event that any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Agreement, but this Agreement shall be constructed as if such invalid or unenforceable provisions had never been contained in this Agreement.

(j)     All notices or other communications required or permitted to be given hereunder shall be in writing and shall be sent by electronic mail or sent, postage prepaid, by registered, certified or express mail or overnight courier service and shall be deemed given when received, as follows:

(i)     if to a Jefferies Party, to:

c/o Leucadia Asset Management Holdings LLC
520 Madison Avenue

9

New York, New York 10022
Attn: Nick Daraviras, Sonia Han Levovitz, Matthew Smith
E-mail: ndaraviras@jefferies.com; shan@jefferies.com;
    matt.smith@jefferies.com

With copies to:

Herbert Smith Freehills
450 Lexington Avenue
New York NY 10017
Attn: Scott S. Balber
Email: Scott.Balber@hsf.com

(ii)    if to a Weiss Party, to:

c/o GWA, LLC
320 Park Avenue
20th Floor
New York, New York 10022
Attention: Jeffrey Dillabough
Email: jdillabough@gweiss.com

*[Signature  Page Follows]*

10

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed as of the day and year first above written.

**GWA, LLC**

By:_____
Name: George A. Weiss
Title: Manager


**WEISS MULTI-STRATEGY ADVISERS LLC**

By:_____
Name: George A. Weiss,
Title: Manager


**WEISS MULTI-STRATEGY FUNDS, LLC**

By:_____
Name: George A. Weiss
Title: Authorized Signatory


**OGI ASSOCIATES, LLC**

By:_____
Name: George A. Weiss
Title: Manager


**WEISS SPECIAL OPERATIONS LLC**

By:_____
Name: George A. Weiss
Title: Authorized Signatory


**GEORGE A. WEISS,** for purposes of Sections 5(a), 9 and 10(c)


_____

**JEFFERIES STRATEGIC INVESTMENTS, LLC**

By:_____
Name:
Title:


**LEUCADIA ASSET MANAGEMENT HOLDINGS LLC**

By:_____
Name:
Title:

A-348

**EXHIBIT A**

A "<u>Forbearance Default</u>" shall be deemed to have occur if any of the following evets occurs:

a)     any breach by a Weiss Party or Weiss of its obligations under this Agreement;

b)     any of the representations made by the Weiss Parties in Section 5 hereof ceasing to be true;

c)     any Weiss Party shall have: (i) applied for, or consented to, the appointment of a custodian, receiver, fiscal agent, trustee or liquidator of all or a substantial part of its assets; (ii) filed a voluntary petition in bankruptcy, or sought dissolution or reorganization under any law; (iii) filed an answer admitting the material allegations of a bankruptcy or reorganization petition; or (iv) an involuntary proceeding under sections 301 or 303 Bankruptcy initiated against it by a third party (i.e., not a Jefferies Party);

d)     any Weiss Party shall have: (i) a custodian, receiver, fiscal agent, trustee or liquidator appointed without its consent for all or a substantial part of its assets; (ii) have an involuntary petition filed against it in bankruptcy for dissolution or reorganization; or (iii) have been adjudicated a bankrupt or had a plan of reorganization submitted by any creditor or committee approved; or

e)     any Weiss Party: (i) dissolves, liquidates or ceases operations; or (ii) agrees to the sale of, or a sale of all or substantially all of the property or assets of, such Weiss Party.

13

# Exhibit J

A-350

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

202308

2024 FEB 13  AM 10: 30

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

CSC - 50    1418836-1

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **Weiss Multi-Strategy Funds LLC** | | | | | |
| 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| **c/o GWA, LLC, 320 Park Avenue, 20th Floor** | | **New York** | **NY** | **10022** | **USA** |
| | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  Limited Liability Company | 1f. JURISDICTION OF ORGANIZATION  **New York** | 1g. ORGANIZATIONAL ID #, if any | NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **Jefferies Strategic Investments, LLC** | | | | | |
| 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| c/o Leucadia Asset Management Holdings LLC, 520 Madison Avenue | | **New York** | **NY** | **10022** | **USA** |

**4. This FINANCING STATEMENT covers the following collateral:**

All of the Debtor's goods, accounts, equipment, inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, general intangibles, commercial tort claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), cash, deposit accounts, securities accounts, certificates of deposit, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), securities, and all other investment property, supporting obligations, and financial assets, (each foregoing term having the meaning given to it under the Uniform Commercial Code) whether now owned or hereafter acquired, wherever located; and all of the Debtor's books and records relating to the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] | | All Debtors | Debtor 1 | Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**

To be filed with the New York Secretary of State

**FILING NUMBER: 202402130049500**

1418836-1

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# Exhibit K

## GWA, LLC
### Interest on unpaid revenue sharing

### Revenue Share Fee payable to Jefferies (formerly Leucadia)
### January 1, 2023 thru December 31, 2023

| | Total | Disgorged | Net | LAM Fee |
|---|---|---|---|---|
| **OGI Associates LLC:** | | | | |
| P&L gain/(Loss) on investments | (5,259,469) | | (5,259,469) | (986,524) |
| Investment Income | 1,365,666 | | 1,365,666 | 256,062 |
| Net change in unrealized | 7,934,565 | | 7,934,565 | 1,428,196 |
| Interest Income | 3,661,675 | | 3,661,675 | 686,542 |
| Interest Expense | (3,572,624) | | (3,572,624) | (641,030) |
| Dividend Income | 2,375,064 | | 2,375,064 | 450,000 |
| Dividend Expense | (1,973,705) | | (1,973,705) | (305,261) |
| Other Income | | | | |
| Professional fees & other expenses | (220,167) | | (220,167) | |
| Total OGI Associates | 1,931,472 | | 1,777,476 | 349,962 |
| | | | | |
| **Interest and Other Income:** | | | | |
| GWA, LLC | | | | |
| Weiss Multi-Strategy Advisers LLC | 636 | | 636 | 181 |
| Weiss Multi-Strategy Funds LLC | 46 | | 46 | 6 |
| | | | | |
| Total Interest and Other Income | 682 | | 682 | 158 |
| | | | | |
| **Management Fees per WMSA TR:** | | | | |
| 10% fee - OGI | 35,083,663 | | 35,083,663 | 6,346,949 |
| subtotal of management fees | 3,559,052 | | 3,559,052 | 462,254 |
| Crystallized Incentive fee per WMSA TR: | | | | |
| 10% fee | 20,616,977 | | 20,616,977 | 3,091,616 |
| subtotal of crystallized incentive fee | 24,926 | | 24,926 | 3,087,032 |
| Total Crystallized Fees | 20,543,002 | | 20,543,002 | |
| | | | | |
| YTD - Total Revenue Sharing Fee | 60,325,046 | | 58,126,966 | 10,457,564 |

### Revenue Share Fee payable to Jefferies (formerly Leucadia)
### January 1, 2023 thru September 20, 2023

| | Total | Disgorged | Net | LAM Fee |
|---|---|---|---|---|
| **OGI Associates LLC:** | | | | |
| P&L gain/(Loss) on investments | (2,033,534) | | (2,033,534) | (956,697) |
| Investment Income | (584,405) | | (584,405) | (110,506) |
| Net change in unrealized | 3,630,002 | | 3,630,002 | 656,487 |
| Interest Income | 2,504,779 | | 2,504,779 | 470,549 |
| Interest Expense | (2,593,116) | | (2,593,116) | (486,701) |
| Dividend Income | 1,727,016 | | 1,727,016 | 324,375 |
| Dividend Expense | (1,533,507) | | (1,533,507) | (240,107) |
| Other Income | | | | |
| Professional fees & other expenses | (202,501) | | (202,501) | |
| Total OGI Associates | 444,676 | | 644,676 | 116,880 |
| | | | | |
| **Interest and Other Income:** | | | | |
| GWA, LLC | | | | |
| Weiss Multi-Strategy Advisers LLC | 616 | | 616 | 111 |
| Weiss Multi-Strategy Funds LLC | 30 | | 30 | 5 |
| | | | | |
| Total Interest and Other Income | 646 | | 646 | 116 |
| | | | | |
| **Management Fees per WMSA TR:** | | | | |
| 10% fee - OGI | 27,784,037 | | 27,784,037 | 4,987,071 |
| subtotal of management fees | 2,189,169 | | 2,189,169 | 338,375 |
| Crystallized Incentive fee per WMSA TR: | | | | |
| 10% fee | 29,694,006 | | 29,694,006 | 5,326,246 |
| subtotal of crystallized incentive fee | 9,985,566 | | 9,985,566 | 1,797,502 |
| Total Crystallized Fees | 39,940,574 | | 39,940,574 | 7,123,688 |
| | | | | |
| YTD - Total Revenue Sharing Fee | 40,303,695 | | 40,586,596 | 7,250,948 |

A-353

**A-354**

## GVA LLC
### JEFFERIES NOTES PAYABLE - GL acct 2012

| | |
|---|---|
| Cash received on 9/21/2022 | $ 3,000,000.00 |
| Payments | |
| Interest LTD | 401,265.49 |
| Balance payable | $ 3,401,265.49 |
| Interest Rate | Prime rate plus 2% compounded monthly; computed on the basis of a 360-day year of 12 30-day months |

| Date | Principal | ROR | Days | Interest | Payment | Balance |
|---|---|---|---|---|---|---|
| 9/21/2022 | 3,000,000.00 | | | | | 3,000,000.00 |
| 9/30/2022 | 3,000,000.00 | 8.25% | 9 | 6,187.50 | | 3,006,187.50 |
| 10/31/2022 | 3,006,187.50 | 8.25% | 30 | 20,667.54 | | 3,026,855.04 |
| 11/2/2022 | 3,026,855.04 | 8.25% | 2 | 1,387.31 | | 3,028,242.35 |
| 11/30/2022 | 3,028,855.04 | 9.00% | 28 | 21,187.99 | | 3,049,430.33 |
| 12/14/2022 | 3,049,430.34 | 9.00% | 14 | 10,673.01 | | 3,060,103.35 |
| 12/31/2022 | 3,060,103.34 | 9.50% | 16 | 12,875.37 | | 3,072,978.72 |
| 1/31/2023 | 3,072,978.72 | 9.50% | 30 | 24,327.75 | | 3,097,306.47 |
| 2/1/2023 | 3,097,306.47 | 9.50% | 1 | 817.34 | | 3,098,123.81 |
| 2/28/2023 | 3,098,123.81 | 9.75% | 29 | 24,326.76 | | 3,122,450.57 |
| 3/22/2023 | 3,122,450.57 | 9.75% | 22 | 18,604.60 | | 3,141,055.17 |
| 3/31/2023 | 3,141,055.17 | 10.00% | 8 | 6,938.78 | | 3,147,993.95 |
| 4/30/2023 | 3,147,993.95 | 10.00% | 30 | 26,233.28 | | 3,174,227.23 |
| 5/3/2023 | 3,174,227.23 | 10.00% | 3 | 2,645.19 | | 3,176,872.42 |
| 5/31/2023 | 3,176,872.42 | 10.25% | 27 | 24,441.87 | | 3,201,274.29 |
| 6/30/2023 | 3,201,274.29 | 10.25% | 30 | 27,344.22 | | 3,228,618.51 |
| 7/26/2023 | 3,228,618.51 | 10.25% | 26 | 23,990.75 | | 3,252,519.25 |
| 7/31/2023 | 3,252,519.25 | 10.50% | 4 | 3,766.72 | | 3,256,285.98 |
| 8/31/2023 | 3,256,285.98 | 10.50% | 30 | 28,492.50 | | 3,284,778.48 |
| 9/30/2023 | 3,284,778.48 | 10.50% | 30 | 28,741.81 | | 3,313,520.29 |
| 10/31/2023 | 3,313,520.29 | 10.50% | 30 | 28,993.30 | | 3,342,513.59 |
| 11/30/2023 | 3,342,513.59 | 10.50% | 30 | 29,246.99 | | 3,371,760.58 |
| 12/31/2023 | 3,371,760.58 | 10.50% | 30 | 29,502.91 | | 3,401,263.49 |

| | |
|---|---|
| LTD | 401,265.49 |

---

| Date | Principal | Prime | +2% | Rate | Days | Interest | Ending |
|---|---|---|---|---|---|---|---|
| 9/21/2022 | 3,000,000.00 | | 2% | | | | |
| 9/30/2022 | 3,000,000.00 | 6.25% | 2% | 8.25% | 9 | 6,187.50 | 3,006,187.50 |
| 10/31/2022 | 3,006,187.50 | 6.25% | 2% | 8.25% | 30 | 20,667.54 | 3,026,855.04 |
| 11/2/2022 | 3,026,855.04 | 6.25% | 2% | 8.25% | 2 | 1,387.31 | 3,028,242.35 |
| 11/30/2022 *final month rate change | 3,028,242.35 | 7% | 2% | 9.00% | 28 | 21,187.99 | 3,049,430.33 |
| 12/14/2022 | 3,049,430.34 | 7% | 2% | 9.00% | 14 | 10,673.01 | 3,060,103.35 |
| 12/31/2022 *final month rate change | 3,060,103.34 | 7.50% | 2% | 9.50% | 16 | 12,875.57 | 3,072,978.72 |
| 1/31/2023 | 3,072,978.72 | 7.50% | 2% | 9.50% | 30 | 24,327.75 | 3,097,306.46 |
| 2/1/2023 | 3,097,306.46 | 7.50% | 2% | 9.50% | 1 | 817.34 | 3,098,123.80 |
| 2/28/2023 *final month rate change | 3,098,123.80 | 8% | 2% | 9.75% | 29 | 24,326.76 | 3,122,450.57 |
| 3/22/2023 | 3,122,450.57 | 8% | 2% | 9.75% | 22 | 18,604.60 | 3,141,055.17 |
| 3/31/2023 *final month rate change | 3,141,055.17 | 8% | 2% | 10.00% | 8 | 6,938.78 | 3,147,993.95 |
| 4/30/2023 | 3,147,993.95 | 8.25% | 2% | 10.25% | 30 | 26,233.28 | 3,174,227.23 |
| 5/3/2023 | 3,174,227.23 | 8.25% | 2% | 10.25% | 3 | 2,645.19 | 3,176,872.42 |
| 5/31/2023 | 3,176,872.42 | 8.25% | 2% | 10.25% | 27 | 24,441.87 | 3,201,274.29 |
| 6/30/2023 | 3,201,274.29 | 8.25% | 2% | 10.25% | 30 | 27,344.22 | 3,228,618.51 |
| 7/26/2023 | 3,228,618.51 | 8.25% | 2% | 10.25% | 26 | 23,990.75 | 3,252,519.25 |
| 7/31/2023 *final month rate change | 3,252,519.25 | 8.50% | 2% | 10.50% | 4 | 3,766.72 | 3,256,285.98 |
| 8/31/2023 | 3,256,285.98 | 8.50% | 2% | 10.50% | 30 | 28,492.50 | 3,284,778.48 |
| 9/30/2023 | 3,284,778.48 | 8.50% | 2% | 10.50% | 30 | 28,741.81 | 3,313,520.29 |
| 10/31/2023 | 3,313,520.29 | 8.50% | 2% | 10.50% | 30 | 28,993.30 | 3,342,513.59 |
| 11/30/2023 | 3,342,513.59 | 8.50% | 2% | 10.50% | 30 | 29,246.99 | 3,371,760.58 |
| 12/31/2023 | 3,371,760.58 | 8.50% | 2% | 10.50% | 30 | 29,502.91 | 3,401,263.49 |
| Ending Balance 12/31/23 | | | | | | 401,263.49 | 3,401,263.49 |

| Effective Date | Rate |
|---|---|
| 7/27/2023 | 8.50% |
| 5/4/2023 | 8.25% |
| 3/23/2023 | 8.00% |
| 2/2/2023 | 7.75% |
| 12/15/2022 | 7.50% |
| 11/3/2022 | 7.00% |
| 9/22/2022 | 6.25% |
| 7/28/2022 | 5.50% |

**W E I S S**

## Investment Team Bonus Fee

Invoice: 20231231 ISSF
Date: January 30, 2024
Interim CFO: Scott Crowell
Fund Reference: Jefferies Strategic Investments, LLC

**Add/subtraction**
$  2,581,878.24   **value obligation (Trance 1) effective Feb 12th 2020 per forebearance Agreement
$  1,000,000.00   **paydown on 2/21

### Investment Team Bonus Fee

2023 Investment Teams Bonus Fee payable for the period January 1, 2023 through December 31, 2023

AMOUNT:   $ 2,581,878.24

Please make payment to:   Bank Name: US Trust Bank of America
ABA Routing: 026009593
FBO: Weiss Multi-Strategy Advisers LLC
Account Number: 483011470910
Attn: Money Laskey

# Exhibit L

A-357



# Invoice

Jefferies LLC
520 Madison Avenue
New York  NY  10022

Herbert Smith Freehills LLP
450 Lexington Avenue, 14th floor
New York  NY  10017
USA
T +1 917 542 7600
F +1 917 542 7601
www.herbertsmithfreehills.com

Our ref: 16117/31064692
Your ref: 5298

| | |
|---|---|
| **Invoice no** | 66009718 |
| **Invoice date** | 15 March 2024 |
| **Re** | Weiss |
| **Period** | 1 January 2024 to 29 February 2024 |
| **Activity Code** | A111 |
| **Client's Matter ID** | 5298 |

**INVOICE**

Federal Tax ID: 98-1062435

| | USD |
|---|---:|
| **TO OUR PROFESSIONAL CHARGES in connection with the above** | 140,613.50 |
| Discount 14.99% | -21,077.03 |
| | 119,536.47 |
| External Searches | 228.70 |
| | 119,765.17 |
| Total | 119,765.17 |

For all forms of payment please quote our invoice number. If paying by Bank Transfer please remit funds to:
Herbert Smith Freehills NY LLP,
Santander N.A., 601 Penn Street, Reading, PA 19601.
A/C Number ███████ , BIC/SWIFT: ███████, Routing/ABA: ███████

We will not change our bank account details without informing you first. If you are notified of our bank account details changing, please check with your known contact at Herbert Smith Freehills for confirmation.

You may have a right to object to this bill by way of the firm's complaints procedure, and/or by making a complaint to the Legal Ombudsman, and/or by applying to the court for an assessment of the bill under Part III of the Solicitors Act 1974.
If all or part of this bill remains unpaid we may be entitled to charge interest.

Herbert Smith Freehills New York LLP and Herbert Smith Freehills, an Australian Partnership, are separate member firms of the international legal practice known as Herbert Smith Freehills.
Herbert Smith Freehills New York LLP is a limited liability partnership registered in England and Wales with registered number OC375072.  Its registered office is at Exchange House, Primrose Street, London EC2A 2EG.



# Invoice

Jefferies LLC
520 Madison Avenue
New York NY 10022

Herbert Smith Freehills LLP
450 Lexington Avenue, 14th floor
New York NY 10017
USA
T +1 917 542 7600
F +1 917 542 7601
www.herbertsmithfreehills.com

Our ref: 16117/31064692
Your ref: 5298

| | |
|---|---|
| **Invoice no** | 66009964 |
| **Invoice date** | 24 April 2024 |
| **Re** | Weiss |
| **Period** | 1 February 2024 to 31 March 2024 |
| **Activity Code** | A111 |
| **Client's Matter ID** | 5298 |

**INVOICE**

Federal Tax ID: 98-1062435

| | | USD |
|---|---|---|
| **TO OUR PROFESSIONAL CHARGES in connection with the above** | | 47,657.50 |
| Discount 15% | | -7,148.63 |
| | | 40,508.87 |
| External Searches | | 60.21 |
| | | 40,569.08 |
| <u>DISBURSEMENTS</u> | | |
| Professional Fees | | |
| Serving By Irving, Inc. | 7,700.00 | |
| | | 7,700.00 |
| Total | | 48,269.08 |

For all forms of payment please quote our invoice number. If paying by Bank Transfer please remit funds to:
Herbert Smith Freehills NY LLP,
Santander N.A., 601 Penn Street, Reading, PA 19601.
A/C Number: ▓▓▓▓▓  BIC/SWIFT: ▓▓▓▓▓ Routing/ABA: ▓▓▓▓▓

We will not change our bank account details without informing you first. If you are notified of our bank account details changing, please check with your known contact
at Herbert Smith Freehills for confirmation.

You may have a right to object to this bill by way of the firm's complaints procedure, and/or by making a complaint to the Legal Ombudsman, and/or by applying to the
court for an assessment of the bill under Part III of the Solicitors Act 1974.
If all or part of this bill remains unpaid we may be entitled to charge interest.

Herbert Smith Freehills New York LLP and Herbert Smith Freehills, an Australian Partnership, are separate member firms of the international legal practice known as
Herbert Smith Freehills.
Herbert Smith Freehills New York LLP is a limited liability partnership registered in England and Wales with registered number OC375072.  Its registered office is at
Exchange House, Primrose Street, London EC2A 2EG.

A-359



# Invoice

Jefferies LLC
520 Madison Avenue
New York  NY  10022

Herbert Smith Freehills LLP
450 Lexington Avenue, 14th floor
New York  NY  10017
USA
T +1 917 542 7600
F +1 917 542 7601
www.herbertsmithfreehills.com

Our ref: 16117/31064692
Your ref: 5298

| | |
|---|---|
| **Invoice no** | 66010128 |
| **Invoice date** | 17 May 2024 |
| **Re** | Weiss |
| **Period** | 1 March 2024 to 28 April 2024 |
| **Activity Code** | A111 |
| **Client's Matter ID** | 5298 |

**INVOICE**

Federal Tax ID: 98-1062435

| | USD |
|---|---|
| **TO OUR PROFESSIONAL CHARGES in connection with the above** | 22,381.00 |
| Discount 15% | -3,357.15 |
| | |
| Total | 19,023.85 |

For all forms of payment please quote our invoice number. If paying by Bank Transfer please remit funds to:
Herbert Smith Freehills NY LLP,
Santander N.A., 601 Penn Street, Reading, PA 19601.
A/C Number: ▮▮▮▮▮▮ , BIC/SWIFT: ▮▮▮▮▮ , Routing/ABA: ▮▮▮▮▮

We will not change our bank account details without informing you first. If you are notified of our bank account details changing, please check with your known contact at Herbert Smith Freehills for confirmation.

You may have a right to object to this bill by way of the firm's complaints procedure, and/or by making a complaint to the Legal Ombudsman, and/or by applying to the court for an assessment of the bill under Part III of the Solicitors Act 1974.
If all or part of this bill remains unpaid we may be entitled to charge interest.

Herbert Smith Freehills New York LLP and Herbert Smith Freehills, an Australian Partnership, are separate member firms of the international legal practice known as Herbert Smith Freehills.
Herbert Smith Freehills New York LLP is a limited liability partnership registered in England and Wales with registered number OC375072.  Its registered office is at Exchange House, Primrose Street, London EC2A 2EG.

A-360

---

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF NEW YORK

Case number *(if known)* _____   Chapter __**11**__

☐ Check if this an amended filing

---

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy       06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | Debtor's name | **Weiss Multi-Strategy Funds LLC** |
| 2. | All other names debtor used in the last 8 years<br><br>Include any assumed names, trade names and *doing business as* names | |
| 3. | Debtor's federal Employer Identification Number (EIN) | **20-0428004** |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **P.O. Box 2857**<br>**Meriden, CT 06450**<br>Number, Street, City, State & ZIP Code | _____<br>P.O. Box, Number, Street, City, State & ZIP Code |
| **New Haven**<br>County | **Location of principal assets, if different from principal place of business**<br>_____<br>Number, Street, City, State & ZIP Code |

5. **Debtor's website** (URL)   _____

6. **Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

---

A-361

24-10375-mg   Doc 4369-1   Filed 06/09/24   Entered 06/10/24 17:27:58   Main Doc 1
Pg 2 of 10

| Debtor | **Weiss Multi-Strategy Funds LLC** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

**7.** **Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

<u>5239</u>

**8.** **Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.** **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

| Debtor | **Weiss Multi-Strategy Funds LLC** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No

☑ Yes.

List all cases. If more than 1, attach a separate list

| Debtor | **See Attachment** | | Relationship | |
|---|---|---|---|---|
| District | | When | Case number, if known | |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes.   Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.   Insurance agency _____

Contact name _____

Phone _____

---

**▉ Statistical and administrative information**

**13. Debtor's estimation of available funds**   .   *Check one:*

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☑ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☑ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |

---

24-10175-mg   Doc 369   Filed 06/19/24   Entered 06/19/24 17:27:58   Main Document
Pg 4 of 10

| Debtor | Weiss Multi-Strategy Funds LLC | Case number (*if known*) |
|--------|--------------------------------|--------------------------|
|        | Name                           |                          |

☐ $50,001 - $100,000  ☐ $10,000,001 - $50 million  ☐ $1,000,000,001 - $10 billion
☐ $100,001 - $500,000  ■ $50,000,001 - $100 million  ☐ $10,000,000,001 - $50 billion
☐ $500,001 - $1 million  ☐ $100,000,001 - $500 million  ☐ More than $50 billion

A-364

| Debtor | **Weiss Multi-Strategy Funds LLC** | | Case number (*if known*) | |
|---|---|---|---|---|
| | Name | | | |

| | **Request for Relief, Declaration, and Signatures** |
|---|---|

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **June 19, 2024**
              MM / DD / YYYY

**X /s/ George Weiss**                          **George Weiss**
Signature of authorized representative of debtor        Printed name

Title    **Authorized Person**

**18. Signature of attorney**

**X /s/ Tracy L. Klestadt**             Date   **June 19, 2024**
Signature of attorney for debtor                      MM / DD / YYYY

**Tracy L. Klestadt**
Printed name

**Klestadt Winters Jureller Southard & Stevens, LLP**
Firm name

**200 West 41st Street**
**17th Floor**
**New York, NY 10036**
Number, Street, City, State & ZIP Code

Contact phone   **(212) 972-3000**      Email address   **tklestadt@klestadt.com**

**2089985 NY**
Bar number and State

A-365

Debtor   **Weiss Multi-Strategy Funds LLC**                                    Case number (*if known*) _____
_____
Name

| Fill in this information to identify your case: |
| United States Bankruptcy Court for the: |
| SOUTHERN DISTRICT OF NEW YORK |
| Case number (*if known*) _____   Chapter __**11**__ |

☐ Check if this an
amended filing

### FORM 201. VOLUNTARY PETITION

#### Pending Bankruptcy Cases Attachment

| Debtor | **GWA, LLC** | | | Relationship to you | | **Parent Company** |
|---|---|---|---|---|---|---|
| District | **Southern District of New York** | When | **4/29/24** | Case number, if known | | **24-10744** |
| Debtor | **OGI Associates LLC** | | | Relationship to you | | **Affiliate** |
| District | **Southern District of New York** | When | **4/29/24** | Case number, if known | | **24-10745** |
| Debtor | **Weiss Multi Strategy Advisers LLC** | | | Relationship to you | | **Affiliate** |
| District | **Southern District of New York** | When | **4/29/24** | Case number, if known | | **24-10743** |
| Debtor | **Weiss Special Operations LLC** | | | Relationship to you | | **Affiliate** |
| District | **Southern District New York** | When | **4/29/24** | Case number, if known | | **24-10746** |

**WRITTEN CONSENT**
**OF**
**THE SOLE MEMBER**
**OF**
**WEISS MULTI-STRATEGY FUNDS LLC**

THE UNDERSIGNED, constituting the Sole Member (defined below) of WEISS MULTI-STRATEGY FUNDS LLC, a New York limited liability company (the "Company"), acting pursuant to the Amended and Restated Operating Agreement of Weiss Multi-Strategy Funds LLC (the "Operating Agreement"), does hereby consent to the following resolutions in lieu of a meeting with the same force and effect as if adopted at a duly held meeting and with the direction that this Written Consent (this "Consent") be filed in the minute book of the Company:

WHEREAS, pursuant to the Company's Operating Agreement, GWA, LLC is the sole member of the Company (the "Sole Member");

WHEREAS, pursuant to Sections 4 and 6 of the Company's Operating Agreement, the Company may be dissolved and its affairs wound up upon the written consent of the Sole Member;

WHEREAS, on or about June 4, 2024, the SEC approved the Company's *Form BDW – Uniform Request for Broker-Dealer Withdrawal*, which effectively terminated the Company's status as broker dealer;

WHEREAS, the Sole Member has reviewed and analyzed the materials regarding the financial condition, capital structure, liquidity position, short-term and long-term prospects of the Company, and the restructuring and other strategic alternatives available to the Company, and the impact of the foregoing on the Company's business; and

WHEREAS, the Sole Member has determined that it is desirable and in the best interests of the Company and its creditors, members, and other interested parties that a petition be filed by the Company seeking to liquidate under the provisions of Title 11 of the United States Code (the "Bankruptcy Code");

NOW THEREFORE, BE IT RESOLVED, that the Company is hereby empowered, authorized, and directed to file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in a court of proper jurisdiction (the "Bankruptcy Court");

RESOLVED FURTHER, that the Sole Member, George Weiss as Manager of the Sole Member, and the officers of the Company (each an "Authorized Person" and collectively, the "Authorized Persons") are, and each of them acting individually is, hereby appointed as the Company's authorized representative(s), and in such capacity, the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to execute and file on behalf of the Company, all petitions, schedules, lists, applications,

pleadings and other motions, papers, agreements, consents or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's businesses;

RESOLVED FURTHER, that the law firm of Klestadt Winters Jureller Southard & Stevens, LLP ("KWJSS") is hereby empowered, authorized, and directed to represent the Company as its general bankruptcy counsel, and to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including the preparation of pleadings and filings; and in connection therewith, the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of KWJSS;

RESOLVED FURTHER, that the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to employ any other individual and/or firm as professionals or consultants or financial advisors to the Company as are deemed necessary to represent and assist the Company in carrying out its duties under Chapter 11 of the Bankruptcy Code, and in connection therewith, the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to execute appropriate retention agreements, pay appropriate retainers, if required, prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of any such individual and/or firm;

RESOLVED FURTHER, that all acts lawfully done or actions lawfully taken by the Authorized Persons (or their delegates) or any of the Company's retained professionals to seek relief on behalf of the Company under Chapter 11 of the Bankruptcy Code or in connection with the Chapter 11 Case in connection with such proceedings, or any matter related thereof, are hereby adopted, ratified, confirmed, and approved in all respects as the acts and deeds of the Company;

RESOLVED FURTHER, that the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record and perform such agreements, instruments, motions, affidavits, applications for approvals or ruling of governmental or regulatory authorities, certificates or other documents, to incur all such fees and expenses and to take such other action, as in the judgment of such Authorized Person shall be or become necessary, proper and desirable to prosecute to a successful completion the Chapter 11 Case, to effectuate the restructuring of debt, other obligations, organizational form and structure and ownership of the Company and to carry out and put into effect the purposes of the foregoing resolutions and the transactions contemplated by these resolutions;

RESOLVED FURTHER, that the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to take such

2

actions as any of the Authorized Persons deem necessary, appropriate, advisable or desirable to pursue and maximize the benefits of the Company's Chapter 11 Case, including without limitation, pursuing and consummating any sale or sales of the Company's assets any of the Authorized Persons deem necessary or appropriate, developing, negotiating, confirming and performing under a bankruptcy plan of liquidation, and negotiating, executing and delivering on behalf of the Company any and all agreements, instruments and related documents that, in the judgment and discretion of any of the Authorized Persons are necessary, appropriate, advisable or desirable for pursuing and consummating such sale or sales of the Company's assets or for such development, negotiation and confirmation of, and performance under, such a bankruptcy plan of liquidation, including without limitation executing asset purchase agreements, plans and related documents;

RESOLVED FURTHER, that in addition to the specific authorizations heretofore conferred upon the Authorized Persons, each of the Authorized Persons (and their delegates) are hereby empowered, authorized, and directed, in the name of and on behalf of the Company, to take or cause to be taken any and all such other and further action, to amend, supplement or otherwise modify from time to time, and to execute, acknowledge, deliver and file any and all such agreements, certificates, instruments and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorized Person's or Authorized Persons' judgment, shall be necessary, advisable or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

RESOLVED FURTHER, that any and all acts authorized pursuant to, and performed prior to the execution of, this Consent in furtherance of these resolutions are hereby ratified and approved; and

RESOLVED FURTHER, that this Consent may be executed in one or more counterparts, each of which shall constitute an original document, but all of which taken together shall constitute but one instrument, and each counterpart shall be effective with respect to each person signing it, even if another person whose signature is contemplated hereunder does not sign the same counterpart.

[Remainder of page intentionally left blank.  Signature page follows.]

3

A-369

*        *        *

      IN WITNESS WHEREOF, the undersigned, constituting the Sole Member of the Company, has executed and delivered to the Company this Consent to be effective as of the 19th day of June, 2024.

SOLE MEMBER

GWA, LLC

By: /s/ George Weiss
Name: George Weiss
Title: Manager

4

A-370

---

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF NEW YORK

Case number *(if known)* _____ Chapter **11**

☐ Check if this an amended filing

---

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy 06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | **GWA, LLC** |
| 2. | **All other names debtor used in the last 8 years** Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **06-1457079** |

4. **Debtor's address**

**Principal place of business**

**400 Capital Boulevard, Suite 201
Rocky Hill, CT 06067**
Number, Street, City, State & ZIP Code

**Hartford**
County

**Mailing address, if different from principal place of business**

P.O. Box, Number, Street, City, State & ZIP Code

**Location of principal assets, if different from principal place of business**

Number, Street, City, State & ZIP Code

5. **Debtor's website** (URL) _____

6. **Type of debtor**

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

A-371

| Debtor | GWA, LLC | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes.

5239

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| District | | When | | Case number | |
|---|---|---|---|---|---|
| District | | When | | Case number | |

24-10744-mg   Doc 4369   Filed 04/29/24   Entered 04/29/24 11:52:36   Main Document
Pg 3 of 10

| Debtor | GWA, LLC | | Case number (*if known*) | |
|---|---|---|---|---|
| | Name | | | |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No

■ Yes.

List all cases. If more than 1, attach a separate list

| | | | |
|---|---|---|---|
| Debtor | **See Attachment** | | Relationship |
| District | | When | Case number, if known |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

■ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☐ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other

**Where is the property?** _____
Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ■ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |

24-10744-mg   Doc 369   Filed 04/29/24   Entered 04/29/24 11:55:36   Main Document
Pg 4 of 10

| Debtor | **GWA, LLC** | Case number (*if known*) |
| | Name | |

- ☐ $50,001 - $100,000
- ☐ $100,001 - $500,000
- ☐ $500,001 - $1 million

- ☐ $10,000,001 - $50 million
- ☒ $50,000,001 - $100 million
- ☐ $100,000,001 - $500 million

- ☐ $1,000,000,001 - $10 billion
- ☐ $10,000,000,001 - $50 billion
- ☐ More than $50 billion

A-374

24-10744-mg Doc 369 Filed 04/29/24 Entered 04/29/24 11:52:36 Main Document
Pg 5 of 10

| Debtor | **GWA, LLC** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

| Request for Relief, Declaration, and Signatures |
|---|

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  **April 29, 2024**
MM / DD / YYYY

**X** **/s/ George Weiss**                              **George Weiss**
Signature of authorized representative of debtor          Printed name

Title  **Manager**

**18. Signature of attorney**

**X** **/s/ Tracy L. Klestadt**                          Date  **April 29, 2024**
Signature of attorney for debtor                         MM / DD / YYYY

**Tracy L. Klestadt**
Printed name

**Klestadt Winters Jureller Southard & Stevens, LLP**
Firm name

**200 West 41st Street**
**17th Floor**
**New York, NY 10036**
Number, Street, City, State & ZIP Code

Contact phone  **(212) 972-3000**      Email address  **tklestadt@klestadt.com**

**2089985 NY**
Bar number and State

| Official Form 201 | Voluntary Petition for Non-Individuals Filing for Bankruptcy | page 5 |
|---|---|---|

A-375

| Debtor | GWA, LLC | | Case number (*if known*) | |
|--------|----------|--|--------------------------|--|
| | Name | | | |

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF NEW YORK

Case number (*if known*) _____ Chapter **11**

☐ Check if this an amended filing

## FORM 201. VOLUNTARY PETITION

## Pending Bankruptcy Cases Attachment

| Debtor | **OGI Associates LLC** | | Relationship to you | |
|--------|------------------------|--|---------------------|--|
| District | | When | Case number, if known | |
| Debtor | **Weiss Multi-Strategy Advisers LLC** | | Relationship to you | |
| District | **Southern District of New York** | When **4/29/24** | Case number, if known | **24-10743** |
| Debtor | **Weiss Special Operations LLC** | | Relationship to you | |
| District | | When | Case number, if known | |

**WRITTEN CONSENT**
**OF**
**THE REQUISITE MEMBERS**
**OF**
**GWA, LLC**

THE UNDERSIGNED, constituting the Requisite Members (defined below) of GWA, LLC, a Connecticut limited liability company (the "Company"), acting pursuant to Section 9 of the Company's Amended and Restated Operating Agreement (the "Operating Agreement"), do hereby consent to the following resolutions in lieu of a meeting with the same force and effect as if adopted at a duly held meeting of the members of the Company and with the direction that this Written Consent (this "Consent") be filed in the minute book of the Company:

WHEREAS, pursuant to Section 9 of the Company's Operating Agreement, the Company may be dissolved and its affairs wound up upon consent of members of the Company owning percentage interests constituting more than 50% of the issued and outstanding Class A Interests in the Company (the "Requisite Members");

WHEREAS, the Requisite Members have reviewed and analyzed the materials regarding the financial condition, capital structure, liquidity position, short-term and long-term prospects of the Company and its subsidiaries and affiliates, and the restructuring and other strategic alternatives available to the Company and its subsidiaries and affiliates, and the impact of the foregoing on the Company's and its subsidiaries' and affiliates' business; and

WHEREAS, the Requisite Members have determined that it is desirable and in the best interests of the Company and its creditors, members, and other interested parties that a petition be filed by the Company seeking to liquidate under the provisions of Title 11 of the United States Code (the "Bankruptcy Code");

NOW THEREFORE, BE IT RESOLVED, that the Company is hereby empowered, authorized, and directed to file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in a court of proper jurisdiction (the "Bankruptcy Court");

RESOLVED FURTHER, that the Manager and the officers of the Company (each an "Authorized Person" and collectively, the "Authorized Persons") are, and each of them acting individually is, hereby appointed as the Company's authorized representative(s), and in such capacity, the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to execute and file on behalf of the Company, all petitions, schedules, lists, applications, pleadings and other motions, papers, agreements, consents or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's businesses;

RESOLVED FURTHER, that the law firm of Klestadt Winters Jureller Southard & Stevens, LLP ("KWJSS") is hereby empowered, authorized, and directed to represent the Company as its general bankruptcy counsel, and to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including the preparation of pleadings and filings; and in connection therewith, the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of KWJSS;

RESOLVED FURTHER, that the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to employ any other individual and/or firm as professionals or consultants or financial advisors to the Company as are deemed necessary to represent and assist the Company in carrying out its duties under Chapter 11 of the Bankruptcy Code, and in connection therewith, the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to execute appropriate retention agreements, pay appropriate retainers, if required, prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of any such individual and/or firm;

RESOLVED FURTHER, that all acts lawfully done or actions lawfully taken by the Authorized Persons (or their delegates) or any of the Company's retained professionals to seek relief on behalf of the Company under Chapter 11 of the Bankruptcy Code or in connection with the Chapter 11 Case in connection with such proceedings, or any matter related thereof, are hereby adopted, ratified, confirmed, and approved in all respects as the acts and deeds of the Company;

RESOLVED FURTHER, that the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record and perform such agreements, instruments, motions, affidavits, applications for approvals or ruling of governmental or regulatory authorities, certificates or other documents, to incur all such fees and expenses and to take such other action, as in the judgment of such Authorized Person shall be or become necessary, proper and desirable to prosecute to a successful completion the Chapter 11 Case, to effectuate the restructuring of debt, other obligations, organizational form and structure and ownership of the Company and to carry out and put into effect the purposes of the foregoing resolutions and the transactions contemplated by these resolutions;

RESOLVED FURTHER, that the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to take such actions as any of the Authorized Persons deem necessary, appropriate, advisable or desirable to pursue and maximize the benefits of the Company's Chapter 11 Case, including without limitation, pursuing and consummating any sale or sales of the Company's assets any of the Authorized Persons deem necessary or appropriate, developing, negotiating, confirming and

2

performing under a bankruptcy plan of liquidation, and negotiating, executing and delivering on behalf of the Company any and all agreements, instruments and related documents that, in the judgment and discretion of any of the Authorized Persons are necessary, appropriate, advisable or desirable for pursuing and consummating such sale or sales of the Company's assets or for such development, negotiation and confirmation of, and performance under, such a bankruptcy plan of liquidation, including without limitation executing asset purchase agreements, plans and related documents;

RESOLVED FURTHER, that in addition to the specific authorizations heretofore conferred upon the Authorized Persons, each of the Authorized Persons (and their delegates) are hereby empowered, authorized, and directed, in the name of and on behalf of the Company, to take or cause to be taken any and all such other and further action, to amend, supplement or otherwise modify from time to time, and to execute, acknowledge, deliver and file any and all such agreements, certificates, instruments and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorized Person's or Authorized Persons' judgment, shall be necessary, advisable or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

RESOLVED FURTHER, that any and all acts authorized pursuant to, and performed prior to the execution of, this Consent in furtherance of these resolutions are hereby ratified and approved; and

RESOLVED FURTHER, that this Consent may be executed in one or more counterparts, each of which shall constitute an original document, but all of which taken together shall constitute but one instrument, and each counterpart shall be effective with respect to each person signing it, even if another person whose signature is contemplated hereunder does not sign the same counterpart.

[Remainder of page intentionally left blank.  Signature page follows.]

\*        \*        \*

3

IN WITNESS WHEREOF, the undersigned, constituting the Requisite Members of the Company, have executed and delivered to the Company this Consent to be effective as of the 29th day of April, 2024.

REQUISITE MEMBERS

GEORGE WEISS REVOCABLE TRUST (23.74% Class A Interests)

/s/ George Weiss
By: George Weiss
Title: Settlor and Trustee

BENJAMIN PENN LLC (15.93% Class A Interests)

By: WEISS FAMILY INTERESTS LLC, its Sole Member

/s/ George Weiss
By: George Weiss
Title: Manager

WEISS FAMILY INTERESTS LLC (15.90% Class A Interests)

/s/ George Weiss
By: George Weiss
Title: Manager

4

A-380

| Fill in this information to identify your case: |
| --- |

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF NEW YORK

Case number *(if known)* _____  Chapter __**11**__

☐ Check if this an amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy          06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

1. **Debtor's name**          **OGI Associates LLC**

2. **All other names debtor used in the last 8 years**
   Include any assumed names, trade names and *doing business as* names

3. **Debtor's federal Employer Identification Number** (EIN)          **06-1414493**

4. **Debtor's address**          **Principal place of business**          Mailing address, if different from principal place of business

   **400 Capital Boulevard, Suite 201**
   **Rocky Hill, CT 06067**
   Number, Street, City, State & ZIP Code          P.O. Box, Number, Street, City, State & ZIP Code

   **Hartford**          **Location of principal assets, if different from principal place of business**
   County

   Number, Street, City, State & ZIP Code

5. **Debtor's website** (URL)          _____

6. **Type of debtor**
   ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
   ☐ Partnership (excluding LLP)
   ☐ Other. Specify: _____

24-10745-mg   Doc 4369   Filed 04/29/24   Entered 04/29/24 11:50:36   Main Document   Pg 2 of 10

| Debtor | OGI Associates LLC | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

■ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

5239

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check all that apply:*

  ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☐ A plan is being filed with this petition.

  ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

  ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

  ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| | District | | When | | Case number | |
|---|---|---|---|---|---|---|
| | District | | When | | Case number | |

A-382

24-10745-mg   Doc 369   Filed 04/29/24   Entered 04/29/24 11:50:36   Main Document
Pg 3 of 10

| Debtor | OGI Associates LLC | Case number (*if known*) | |
|--------|--------------------|--------------------------|---|
| | Name | | |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No

☑ Yes.

List all cases. If more than 1, attach a separate list

| Debtor | **See Attachment** | | Relationship | |
|--------|--------------------|---|--------------|---|
| District | | When | Case number, if known | |

**11. Why is the case filed in *this district?***

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes.   Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.   Insurance agency _____

Contact name _____

Phone _____

**■ Statistical and administrative information**

**13. Debtor's estimation of available funds** .

*Check one:*

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

☑ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than100,000

**15. Estimated Assets**

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☑ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

**16. Estimated liabilities**

☐ $0 - $50,000

☐ $1,000,001 - $10 million

☐ $500,000,001 - $1 billion

24-10745-mg   Doc 369   Filed 04/29/24   Entered 04/29/24 11:50:36   Main Document
Pg 4 of 10

| Debtor | OGI Associates LLC | Case number (*if known*) |
|---|---|---|
| | Name | |

☐ $50,001 - $100,000              ☐ $10,000,001 - $50 million          ☐ $1,000,000,001 - $10 billion

☐ $100,001 - $500,000            ☐ $50,000,001 - $100 million       ☐ $10,000,000,001 - $50 billion

☐ $500,001 - $1 million          ☐ $100,000,001 - $500 million      ☐ More than $50 billion

---

A-384

| Debtor | **OGI Associates LLC** | | Case number (*if known*) | |
| | Name | | | |

| | **Request for Relief, Declaration, and Signatures** |

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  **April 29, 2024**
　　　　　　　MM / DD / YYYY

**X** **/s/ George Weiss**　　　　　　　　　　　　　　**George Weiss**
Signature of authorized representative of debtor　　　Printed name

Title  **Manager**

**18. Signature of attorney**

**X** **/s/ Tracy L. Klestadt**　　　　　　　　Date **April 29, 2024**
Signature of attorney for debtor　　　　　　　　　　MM / DD / YYYY

**Tracy L. Klestadt**
Printed name

**Klestadt Winters Jureller Southard & Stevens, LLP**
Firm name

**200 West 41st Street**
**17th Floor**
**New York, NY 10036**
Number, Street, City, State & ZIP Code

Contact phone  **(212) 972-3000**　　Email address  **tklestadt@klestadt.com**

**2089985 NY**
Bar number and State

Official Form 201　　　　**Voluntary Petition for Non-Individuals Filing for Bankruptcy**　　　　page 5

A-385

Debtor   **OGI Associates LLC**                                              Case number *(if known)*
                Name

| Fill in this information to identify your case: |
| --- |
| United States Bankruptcy Court for the: |
| SOUTHERN DISTRICT OF NEW YORK |
| Case number *(if known)* _____   Chapter   **11** |

☐ Check if this an
   amended filing

### FORM 201. VOLUNTARY PETITION

### <u>Pending Bankruptcy Cases Attachment</u>

| Debtor | **GWA, LLC** | | | Relationship to you | |
| --- | --- | --- | --- | --- | --- |
| District | **Southern District of New York** | When | **4/29/24** | Case number, if known | **24-10744** |
| Debtor | **Weiss Multi-Strategy Advisers LLC** | | | Relationship to you | |
| District | **Southern District of New York** | When | **4/29/24** | Case number, if known | **24-10473** |
| Debtor | **Weiss Special Operations LLC** | | | Relationship to you | |
| District | | When | | Case number, if known | |

**WRITTEN CONSENT**
**OF**
**THE SOLE MEMBER**
**OF**
**OGI ASSOCIATES LLC**


        THE UNDERSIGNED, constituting the Sole Member (defined below) of OGI Associates LLC, a Connecticut limited liability company (the "Company"), acting pursuant to Section 11 of the Company's Amended and Restated Limited Liability Company Agreement (the "Operating Agreement"), does hereby consent to the following resolutions in lieu of a meeting with the same force and effect as if adopted at a duly held meeting and with the direction that this Written Consent (this "Consent") be filed in the minute book of the Company:

        WHEREAS, pursuant to the Company's Operating Agreement, GWA, LLC is the sole member of the Company (the "Sole Member");

        WHEREAS, pursuant to Section 11 of the Company's Operating Agreement, the Company may be dissolved and its affairs wound up upon the written consent of the Sole Member;

        WHEREAS, the Sole Member has reviewed and analyzed the materials regarding the financial condition, capital structure, liquidity position, short-term and long-term prospects of the Company and its subsidiaries and affiliates, and the restructuring and other strategic alternatives available to the Company and its subsidiaries and affiliates, and the impact of the foregoing on the Company's and its subsidiaries' and affiliates' business; and

        WHEREAS, the Sole Member has determined that it is desirable and in the best interests of the Company and its creditors, members, and other interested parties that a petition be filed by the Company seeking to liquidate under the provisions of Title 11 of the United States Code (the "Bankruptcy Code");

        NOW THEREFORE, BE IT RESOLVED, that the Company is hereby empowered, authorized, and directed to file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in a court of proper jurisdiction (the "Bankruptcy Court");

        RESOLVED FURTHER, that the Manager and the officers of the Company (each an "Authorized Person" and collectively, the "Authorized Persons") are, and each of them acting individually is, hereby appointed as the Company's authorized representative(s), and in such capacity, the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to execute and file on behalf of the Company, all petitions, schedules, lists, applications, pleadings and other motions, papers, agreements, consents or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's businesses;

RESOLVED FURTHER, that the law firm of Klestadt Winters Jureller Southard & Stevens, LLP ("KWJSS") is hereby empowered, authorized, and directed to represent the Company as its general bankruptcy counsel, and to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including the preparation of pleadings and filings; and in connection therewith, the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of KWJSS;

RESOLVED FURTHER, that the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to employ any other individual and/or firm as professionals or consultants or financial advisors to the Company as are deemed necessary to represent and assist the Company in carrying out its duties under Chapter 11 of the Bankruptcy Code, and in connection therewith, the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to execute appropriate retention agreements, pay appropriate retainers, if required, prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of any such individual and/or firm;

RESOLVED FURTHER, that all acts lawfully done or actions lawfully taken by the Authorized Persons (or their delegates) or any of the Company's retained professionals to seek relief on behalf of the Company under Chapter 11 of the Bankruptcy Code or in connection with the Chapter 11 Case in connection with such proceedings, or any matter related thereof, are hereby adopted, ratified, confirmed, and approved in all respects as the acts and deeds of the Company;

RESOLVED FURTHER, that the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record and perform such agreements, instruments, motions, affidavits, applications for approvals or ruling of governmental or regulatory authorities, certificates or other documents, to incur all such fees and expenses and to take such other action, as in the judgment of such Authorized Person shall be or become necessary, proper and desirable to prosecute to a successful completion the Chapter 11 Case, to effectuate the restructuring of debt, other obligations, organizational form and structure and ownership of the Company and to carry out and put into effect the purposes of the foregoing resolutions and the transactions contemplated by these resolutions;

RESOLVED FURTHER, that the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to take such actions as any of the Authorized Persons deem necessary, appropriate, advisable or desirable to pursue and maximize the benefits of the Company's Chapter 11 Case, including without limitation, pursuing and consummating any sale or sales of the Company's assets any of the

2

Authorized Persons deem necessary or appropriate, developing, negotiating, confirming and performing under a bankruptcy plan of liquidation, and negotiating, executing and delivering on behalf of the Company any and all agreements, instruments and related documents that, in the judgment and discretion of any of the Authorized Persons are necessary, appropriate, advisable or desirable for pursuing and consummating such sale or sales of the Company's assets or for such development, negotiation and confirmation of, and performance under, such a bankruptcy plan of liquidation, including without limitation executing asset purchase agreements, plans and related documents;

RESOLVED FURTHER, that in addition to the specific authorizations heretofore conferred upon the Authorized Persons, each of the Authorized Persons (and their delegates) are hereby empowered, authorized, and directed, in the name of and on behalf of the Company, to take or cause to be taken any and all such other and further action, to amend, supplement or otherwise modify from time to time, and to execute, acknowledge, deliver and file any and all such agreements, certificates, instruments and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorized Person's or Authorized Persons' judgment, shall be necessary, advisable or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

RESOLVED FURTHER, that any and all acts authorized pursuant to, and performed prior to the execution of, this Consent in furtherance of these resolutions are hereby ratified and approved; and

RESOLVED FURTHER, that this Consent may be executed in one or more counterparts, each of which shall constitute an original document, but all of which taken together shall constitute but one instrument, and each counterpart shall be effective with respect to each person signing it, even if another person whose signature is contemplated hereunder does not sign the same counterpart.

[Remainder of page intentionally left blank.  Signature page follows.]

*     *     *

3

IN WITNESS WHEREOF, the undersigned, constituting the Sole Member of the Company, has executed and delivered to the Company this Consent to be effective as of the 29th day of April, 2024.


SOLE MEMBER

GWA, LLC

By:  /s/ George Weiss_____
Name: George Weiss
Title: Manager

4

A-390

| Fill in this information to identify your case: |
|---|

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF NEW YORK

Case number *(if known)*          Chapter    **11**

☐ Check if this an
amended filing

---

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | **Weiss Special Operations LLC** |
| 2. | **All other names debtor used in the last 8 years**<br>Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **20-3927626** |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **400 Capital Boulevard, Suite 201**<br>**Rocky Hill, CT 06067**<br>Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| **Hartford**<br>County | **Location of principal assets, if different from principal place of business**<br><br>Number, Street, City, State & ZIP Code |

5. **Debtor's website** (URL)

6. **Type of debtor**

☐ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) ■

☐ Partnership (excluding LLP)

☐ Other. Specify:

---

A-391

24-10546-mg  Doc 4369  Filed 04/29/24  Entered 04/29/24 11:51:28  Main Document
Pg 2 of 10

| Debtor | **Weiss Special Operations LLC** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

**7.** **Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes.

<u>5239</u>

**8.** **Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.** **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| District | | When | | Case number | |
|---|---|---|---|---|---|
| District | | When | | Case number | |

A-392

Debtor **Weiss Special Operations LLC**                    Case number (*if known*) _____
       Name

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**
☐ No
■ Yes.

List all cases. If more than 1, attach a separate list

| Debtor | **See Attachment** | | Relationship | |
|---|---|---|---|---|
| District | _____ | When _____ | Case number, if known | _____ |

**11. Why is the case filed in *this district*?**   *Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

■ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**
■ No
☐ Yes.   Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
   What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                         Number, Street, City, State & ZIP Code

**Is the property insured?**
☐ No
☐ Yes.   Insurance agency _____
         Contact name _____
         Phone _____

---

**■ Statistical and administrative information**

**13. Debtor's estimation of available funds**   .   *Check one:*
■ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ■ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |

24-10746-mg   Doc 369   Filed 04/29/24   Entered 04/29/24 11:05:28   Main Document
Pg 4 of 10

Debtor   **Weiss Special Operations LLC**                                    Case number (*if known*) _____
         Name

| | | |
|---|---|---|
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☑ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

A-394

| | | | |
|---|---|---|---|
| Debtor | **Weiss Special Operations LLC** | Case number (*if known*) | |
| | Name | | |

| | |
|---|---|
| ■ | **Request for Relief, Declaration, and Signatures** |

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on     **April 29, 2024**
                          MM / DD / YYYY

**X** /s/ George Weiss                                          **George Weiss**
      Signature of authorized representative of debtor          Printed name

Title     **Manager**

**18. Signature of attorney**

**X** /s/ Tracy L. Klestadt                          Date  **April 29, 2024**
      Signature of attorney for debtor                        MM / DD / YYYY

**Tracy L. Klestadt**
Printed name

**Klestadt Winters Jureller Southard & Stevens, LLP**
Firm name

**200 West 41st Street**
**17th Floor**
**New York, NY 10036**
Number, Street, City, State & ZIP Code

Contact phone  **(212) 972-3000**     Email address  **tklestadt@klestadt.com**

**2089985 NY**
Bar number and State

A-395

| Debtor | **Weiss Special Operations LLC** | | Case number (*if known*) | |
|---|---|---|---|---|
| | Name | | | |

| Fill in this information to identify your case: |
|---|

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF NEW YORK

Case number (*if known*) _____ Chapter __**11**__

☐ Check if this an amended filing

### FORM 201. VOLUNTARY PETITION

### Pending Bankruptcy Cases Attachment

| Debtor | **GWA, LLC** | | Relationship to you | |
|---|---|---|---|---|
| District | **Southern District of New York** | When **4/29/24** | Case number, if known | **24-10744** |
| Debtor | **OGI Associates LLC** | | Relationship to you | |
| District | **Southern District of New York** | When **4/29/24** | Case number, if known | **24-10745** |
| Debtor | **Weiss Multi-Strategy Advisers LLC** | | Relationship to you | |
| District | **Southern District of New York** | When **4/29/24** | Case number, if known | **24-10743** |

**WRITTEN CONSENT
OF
THE MANAGER
OF
WEISS SPECIAL OPERATIONS LLC**

THE UNDERSIGNED, constituting the Manager (defined below) of Weiss Special Operations LLC, a Connecticut limited liability company (the "Company"), acting pursuant to Sections 9 and 11 of the Company's Operating Agreement (the "Operating Agreement"), does hereby consent to the following resolutions in lieu of a meeting with the same force and effect as if adopted at a duly held meeting and with the direction that this Written Consent (this "Consent") be filed in the minute book of the Company:

WHEREAS, George A. Weiss is the Manager of the Company (the "Manager");

WHEREAS, pursuant to Sections 9 and 11 of the Company's Operating Agreement, the Manager shall have the authority to bind the Company and the Company may be dissolved and its affairs wound up upon consent of the Manager;

WHEREAS, the Manager has reviewed and analyzed the materials regarding the financial condition, capital structure, liquidity position, short-term and long-term prospects of the Company and its subsidiaries and affiliates, and the restructuring and other strategic alternatives available to the Company and its subsidiaries and affiliates, and the impact of the foregoing on the Company's and its subsidiaries' and affiliates' business; and

WHEREAS, the Manager has determined that it is desirable and in the best interests of the Company and its creditors, members, and other interested parties that a petition be filed by the Company seeking to liquidate under the provisions of Title 11 of the United States Code (the "Bankruptcy Code");

NOW THEREFORE, BE IT RESOLVED, that the Company is hereby empowered, authorized, and directed to file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in a court of proper jurisdiction (the "Bankruptcy Court");

RESOLVED FURTHER, that the Manager and the officers of the Company (each an "Authorized Person" and collectively, the "Authorized Persons") are, and each of them acting individually is, hereby appointed as the Company's authorized representative(s), and in such capacity, the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to execute and file on behalf of the Company, all petitions, schedules, lists, applications, pleadings and other motions, papers, agreements, consents or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's businesses;

RESOLVED FURTHER, that the law firm of Klestadt Winters Jureller Southard & Stevens, LLP ("KWJSS") is hereby empowered, authorized, and directed to represent the Company as its general bankruptcy counsel, and to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including the preparation of pleadings and filings; and in connection therewith, the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of KWJSS;

RESOLVED FURTHER, that the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to employ any other individual and/or firm as professionals or consultants or financial advisors to the Company as are deemed necessary to represent and assist the Company in carrying out its duties under Chapter 11 of the Bankruptcy Code, and in connection therewith, the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to execute appropriate retention agreements, pay appropriate retainers, if required, prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of any such individual and/or firm;

RESOLVED FURTHER, that all acts lawfully done or actions lawfully taken by the Authorized Persons (or their delegates) or any of the Company's retained professionals to seek relief on behalf of the Company under Chapter 11 of the Bankruptcy Code or in connection with the Chapter 11 Case in connection with such proceedings, or any matter related thereof, are hereby adopted, ratified, confirmed, and approved in all respects as the acts and deeds of the Company;

RESOLVED FURTHER, that the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record and perform such agreements, instruments, motions, affidavits, applications for approvals or ruling of governmental or regulatory authorities, certificates or other documents, to incur all such fees and expenses and to take such other action, as in the judgment of such Authorized Person shall be or become necessary, proper and desirable to prosecute to a successful completion the Chapter 11 Case, to effectuate the restructuring of debt, other obligations, organizational form and structure and ownership of the Company and to carry out and put into effect the purposes of the foregoing resolutions and the transactions contemplated by these resolutions;

RESOLVED FURTHER, that the Authorized Persons (and their delegates) are, and each of them acting individually is, hereby empowered, authorized, and directed to take such actions as any of the Authorized Persons deem necessary, appropriate, advisable or desirable to pursue and maximize the benefits of the Company's Chapter 11 Case, including without limitation, pursuing and consummating any sale or sales of the Company's assets any of the Authorized Persons deem necessary or appropriate, developing, negotiating, confirming and

2

performing under a bankruptcy plan of liquidation, and negotiating, executing and delivering on behalf of the Company any and all agreements, instruments and related documents that, in the judgment and discretion of any of the Authorized Persons are necessary, appropriate, advisable or desirable for pursuing and consummating such sale or sales of the Company's assets or for such development, negotiation and confirmation of, and performance under, such a bankruptcy plan of liquidation, including without limitation executing asset purchase agreements, plans and related documents;

RESOLVED FURTHER, that in addition to the specific authorizations heretofore conferred upon the Authorized Persons, each of the Authorized Persons (and their delegates) are hereby empowered, authorized, and directed, in the name of and on behalf of the Company, to take or cause to be taken any and all such other and further action, to amend, supplement or otherwise modify from time to time, and to execute, acknowledge, deliver and file any and all such agreements, certificates, instruments and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorized Person's or Authorized Persons' judgment, shall be necessary, advisable or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

RESOLVED FURTHER, that any and all acts authorized pursuant to, and performed prior to the execution of, this Consent in furtherance of these resolutions are hereby ratified and approved; and

RESOLVED FURTHER, that this Consent may be executed in one or more counterparts, each of which shall constitute an original document, but all of which taken together shall constitute but one instrument, and each counterpart shall be effective with respect to each person signing it, even if another person whose signature is contemplated hereunder does not sign the same counterpart.

[Remainder of page intentionally left blank.  Signature page follows.]

\*       \*       \*

WBD (US) 59266950v2

IN WITNESS WHEREOF, the undersigned, constituting the Manager of the Company, have executed and delivered to the Company this Consent to be effective as of the 29th day of April, 2024.


GEORGE WEISS, Manager


/s/ George Weiss

_____

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
John E. Jureller, Jr.
Lauren C. Kiss
Stephanie R. Sweeney

*Proposed Counsel to the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                         :
                                              :         Chapter 11
WEISS MULTI-STRATEGY ADVISERS                 :
LLC, *et al.,*[1]                             :         Case No. 24-10743 (MG)
                                              :
                      Debtors.                :         (Joint Administration Requested)
------------------------------------------------------------x

**DECLARATION OF PIERCE ARCHER, SENIOR VICE PRESIDENT AND CHIEF OPERATING OFFICER OF THE DEBTORS PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 IN SUPPORT OF CHAPTER 11 PETITIONS**

PIERCE ARCHER, being duly sworn, declares and states, under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1.       I am a Senior Vice President and the Chief Operating Officer of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"). I have been employed by the Debtors since 2006 and have been Chief Operating Officer since 2019.

---
[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Weiss Multi-Strategy Advisers LLC (7518); GWA, LLC (7079); OGI Associates LLC (4493); and Weiss Special Operations LLC (7626). The location of Debtor Weiss Multi-Strategy Advisers LLC's principal place of business is 320 Park Avenue, 20th Floor, New York, New York 10022 and the Debtors' service address in these Chapter 11 Cases is P.O. Box 2857, Meriden, Connecticut 06450.

1

2.      I am one of the officers with responsibility for managing the Debtors' business and financial affairs and I am familiar with, and responsible for, the Debtors' day-to-day operations.

3.      I am also familiar with the Debtors' books and records, which I personally know are made and maintained in the ordinary course of business.

4.      I submit this declaration (the "Declaration") in accordance with Rule 1007-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") and in connection with the Debtors' voluntary petitions (each a "Petition" and collectively the "Petitions") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (the "Bankruptcy Cases") on April 29, 2024 (the "Petition Date").

5.      I make this Declaration in support of the Debtors' Petitions and to provide the Court and all parties in interest with an overview of the Debtors, their businesses and the events precipitating the commencement of the Debtors' Bankruptcy Cases.

6.      Except as otherwise indicated herein, the facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents, information provided to me by the Debtors' management, employees or professionals, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and the industry in which they operate.  I am authorized to submit this Declaration on the Debtors' behalf.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

7.      On this basis, I have personal knowledge of the facts stated herein or knowledge based on the business records that are made and maintained in the ordinary course of the Debtors' businesses, the information supplied to me by (a) the other directors and officers of the Debtors;

2

(b) my colleagues who report directly to me; or (c) the Debtors' general bankruptcy counsel and other legal and professional advisors retained by the Debtors in the ordinary course of business.

8.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  The Debtors commenced these Bankruptcy Cases to effectuate an orderly liquidation of their assets under Chapter 11 of the Bankruptcy Code.

9.      There is no other or prior bankruptcy case filed by or against the Debtors.  To the best of my knowledge, no committee of unsecured creditors has been organized prior to the entry of the order for relief in the Debtors' Bankruptcy Cases.  It is anticipated that the United States Trustee (the "UST") will schedule an organizational meeting soon after the Petition Date and may form an official committee of unsecured creditors (a "Creditors' Committee") at that time.

10.     Copies of the resolutions authorizing the Debtors to file these Bankruptcy Cases are attached to each of the Petitions and incorporated by reference herein.  Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis.

**A.      History and Background of the Debtors' Businesses**

        i.          **Corporate Structure and Ownership Structure**

11.     Attached hereto as **Exhibit A** is the Debtors' corporate structure chart.

12.     GWA is a limited liability company organized under the laws of the State of Connecticut on June 21, 1996.  GWA is a holding company and the parent (in whole or in part) of the other Debtor entities.  GWA is owned by the following entities and individuals:  (i) Weiss Family Interests LLC (15.9%); (ii) Benjamin Penn LLC (15.9%); (iii) George A. Weiss Revocable Trust (23.8%), and (iv) a certain number of employees of WMSA (44.4%).

3

13. WMSA is a limited liability company organized under the laws of the State of Delaware on May 9, 2005. WMSA was registered to do business in New York on March 29, 2006. WMSA is owned 99.9% by GWA and .1% by the George A. Weiss Revocable Trust.

14. OGI is a limited liability company organized under the laws of the State of Connecticut on November 30, 1994. OGI is a wholly owned subsidiary of GWA.

15. WSO is a limited liability company organized under the laws of the State of Connecticut on December 12, 2005. WSO is a wholly owned subsidiary of WMSA.

### ii. The Debtors' Businesses

16. George A. Weiss ("Weiss"), the Chairman and Chief Executive Officer of WMSA, founded George Weiss Associates, Inc. ("Weiss Associates"), formerly an SEC and NASD registered broker/dealer, in 1978. The original business was built around brokerage and trading, especially in domestic utility company names on behalf of institutional investors. In 1986, Weiss Associates entered the hedge fund business.

17. In the mid-1990s, Weiss Associates initiated a proprietary investment operation. For the better part of a decade, Weiss Associates focused increasingly on managing the capital of its principals and it wound down the hedge fund business. This proprietary endeavor proved successful and facilitated a substantial expansion of the enterprise. Weiss Associates was reorganized in 2005 and WMSA was created as the investment advisory entity which would manage Weiss Associates' private investment funds, registered investment companies, managed accounts, and proprietary capital. WMSA became registered as an investment adviser with the United States Securities and Exchange Commission (the "SEC") in March 2010 and registered as a commodity pool operator with the Commodity Futures Trading Commission ("CFTC") and National Futures Association ("NFA") in January 2013.

18.     Historically, WMSA acted as a discretionary investment adviser to a number of private investment funds organized by WMSA, a mutual fund and an Undertakings for Collective Investment in Transferable Securities ("UCITS") fund.  WMSA also advised managed accounts owned by institutional investors over which it exercised sole investment discretion.

19.     On behalf of its clients, WMSA invested and traded in a wide range of U.S. and non-U.S. equities, fixed income securities, convertibles, options, other derivatives such as swaps, credit default protection and contracts for differences, futures, forward contracts, debt instruments and other types of financial instruments.  In connection with client trading, WMSA employed short-selling techniques and utilized leverage and/or make margin purchases.  There were generally no restrictions on WMSA's use of leverage or borrowing, other than those which may be imposed by applicable statutes and regulations or by the owner of a separately managed account.

20.     WMSA is the registered investment advisor to the following funds:

    a.  Weiss Multi-Strategy Partners LLC:  this fund has many investors and is subject to the Employee Retirement Income Security Act of 1974 ("ERISA").  This company expects 90% of its cash to be distributed to investors in the next month, with 10% being held back until all audits and dissolution activities are completed.  The last remaining asset of this company that needs to be liquidated is certain Portuguese bonds.

    b.  Weiss Multi-Strategy Partners (Cayman) Ltd:  this fund has many investors and is subject to ERISA.  The company's sole asset is its investment in Weiss Multi-Strategy Partners LLC.  This company expects 90% of its cash to be distributed to investors in next month, with 10% being held back until all audits and dissolution activities are completed.

    c.  OGI, an investment company that contains GWA's excess capital.

    d.  Weiss Enhanced Global Macro Fund:  this fund is subject to a complex IRS audit for the 2020 tax year.  The audit may or may not result in adjustments, and if adjusted, will likely result in other tax years being opened up.

    e.  Weiss Reinsurance Partners (Ireland) LP:  this fund has one investor, Somerset Reinsurance Ltd.  Ninety percent of its assets have been distributed to Somerset

Reinsurance Ltd. with 10% being held back until all audits and dissolution activities
are completed.

f.  Weiss Reinsurance Partners GP Limited:  this fund is a wholly owned subsidiary
of WMSA which was established to solely act as General Partner for Weiss
Reinsurance Partners (Ireland) LP.

g.  Weiss Alternative Multi-Strategy Fund:  this fund is a registered mutual fund under
the Investment Company Act of 1940 and has many investors.  This fund had a
final NAV on April 1, 2024, and investors were paid out subsequently.

h.  GWA, LLC 401(k) Profit Sharing Plan:  the plan is governed by ERISA.  Weiss is
the sole trustee of the Trustee-directed plan, which currently holds two assets:  (1)
an investment in the Weiss Multi-Strategy Partners, LLC containing the Portuguese
bonds and (2) the Weiss Alternative Multi-Strategy Fund.

21.   As of December 31, 2023, WMSA managed approximately $2.3 billion dollars in
net assets on a discretionary basis.  This amount may include notionally funded assets.  WMSA
did not manage non-discretionary assets.   The Debtors are, and continue to remain, fiduciaries to
their clients in these capacities, including under the various industry regulations, until such time
as all assets are distributed to the clients.

22.   WSO was originally established to provide administrative services for the
investment funds.  In 2016, it assigned its employees to WMSA and since then has been in the
process of liquidating its assets.

**B.  The Debtors' Relationship with the Jefferies Parties and the
Circumstances Leading the Debtors to File the Bankruptcy Cases**

i.   **The Strategic Relationship Agreement, Investment Management
Agreement, Notes, and Placement Agreement**

23.   On or about May 1, 2018, GWA entered into a certain Strategic Relationship
Agreement (as amended from time to time, the "Strategic Relationship Agreement") with LAM
Holding LLC ("LAM Holding"), which gave LAM Holding a revenue sharing interest in the
Debtors' businesses.

6

24. Simultaneously, on or about May 1, 2018, WMSA entered into a certain Investment Management Agreement (as amended from time to time, the "Investment Management Agreement") with Leucadia Funding LLC ("Leucadia"), an affiliate of LAM Holding, pursuant to which Leucadia agreed to open an investment account to be managed by WMSA on the terms and conditions set forth therein.

25. On or about October 15, 2018, WMSA entered into a certain Placement Agreement (as amended from time to time, the "Placement Agreement") with Jefferies LLC, pursuant to which Jefferies LLC was appointed as a non-exclusive placement agent to find investors for the sale of interests in WMSA's investments and would be compensated in accordance with the terms of the Placement Agreement.

26. On or about October 18, 2018, LAM Holding assigned all of its rights under the Strategic Relationship Agreement to Jefferies Asset Management Holdings LLC pursuant to a certain Assignment and Assumption Agreement between LAM Holding and Jefferies Asset Management Holdings LLC, which later changed its name to Leucadia Asset Management Holdings LLC ("Leucadia Holdings").

27. In 2021, LAM Holding merged with and into Leucadia, with Leucadia Holdings as the surviving entity.

28. On or about December 3, 2019, GWA and WMSA entered into a certain Note Purchase Agreement with JFG Funding LLC ("JFG"), (as amended from time to time, the "2019 Note Purchase Agreement"), whereby GWA issued the following unsecured notes to JFG: (i) an unsecured note in the principal amount of $31,250,000 issued on December 3, 2019 (the "First Note") and (ii) a an unsecured note in the principal amount of $18,750,000 issued on January 13, 2020 (the "Second Note" and together with the First Note, the "Initial Notes").

29.     In exchange for the Initial Notes, JFG provided $50 million to GWA.

30.     JFG subsequently assigned its interest in the 2019 Note Purchase Agreement and Initial Notes to Jefferies Strategic Investments, LLC ("JSI"), an affiliate of Leucadia Holdings (JSI and Leucadia Holdings, collectively, the "Jefferies Parties").

31.     In addition, on or about September 21, 2022, GWA and WMSA entered into another Note Purchase Agreement with JSI, (as amended from time to time, the "2022 Note Purchase Agreement and together with the 2019 Note Purchase Agreement, the "Note Purchase Agreements"), whereby GWA issued another unsecured note in the original principal amount of $3,000,0000 on September 21, 2022 to JSI (the "Third Note" and together with the Initial Notes, the "Notes").

32.     In exchange for the Third Note, JSI provided $3,000,000 to GWA.

ii.     **Defaults under the Jefferies Agreements and Negotiations with the Jefferies Parties**

33.     In the years following entry into the Notes, Investment Management Agreement and Strategic Relationship Agreement, GWA became unable to meet certain minimum equity covenants set forth in the various agreements.

34.     On or about January 1, 2022, September 1, 2022 and July 25, 2023, GWA and WMSA entered into certain forbearance letter agreements (the "Initial Forbearance Agreements") with JSI, whereby, among other things, JSI agreed to forebear on exercising its remedies for, among other things, non-payment of principal and interest under the Notes subject to certain conditions.

35.     On or about December 21, 2023, JSI exercised its option to redeem the full amounts owed under the Notes and delivered to GWA that certain Notice of Optional Redemption, which required GWA to repay in full the outstanding amount of $54,223,110 by December 31, 2023.

8

36.     GWA was unable to repay $54,223,110 by December 31, 2023.

37.     GWA had previously repaid approximately $24,000,000 to JSI on account of the Notes since 2021.

38.     On or around February 1, 2024, JSI provided the Debtors with a draft forbearance agreement, which required, among other things (i) that the Debtors obtain JSI's consent prior to paying any bonuses due to employees of WMSA and (ii) a set-off of approximately $2.6 million the Jefferies Parties owed to the Debtors.   For various reasons, as discussed with the Jefferies Parties, the Debtors refused to execute the draft February 1, 2024 forbearance agreement proposed by the Jefferies Parties.

39.     WMSA processed bonus amounts totaling $28,139,616 to WMSA's employees, through ADP, on February 8, 2024, which were paid on or about February 12, 2024 (the "Bonus Payments").  The compensation of the majority of WMSA's employees was typically computed as year-end compensation (or bonuses) and paid in February of each subsequent year and this was consistent with the ordinary business practices of WMSA.  This compensation scheme is standard in the industry.

40.     On February 11, 2024, the Debtors advised JSI that the Bonus Payments were in process.

41.     In response, JSI demanded that the Debtors sign a forbearance agreement by 5 a.m. on Monday, February 12, 2024 with the Jefferies Parties or else the Jefferies Parties would commence litigation seeking to (i) collect damages due to the Debtors' breaches of the Note Purchase Agreements and Notes, among others, and (ii) clawback the purported fraudulent transfers of the Bonus Payments to the Debtors' employees.  The Jefferies Parties forwarded a draft complaint whereby they intended to commence an action against, among others, all

9

employees of the Debtors who had received their annual bonus compensation payment in February 2024.

42.     At approximately 4 a.m. (EST) on February 12, 2024, the Debtors, their non-debtor affiliate Weiss Multi-Strategy Funds, LLC ("WMSF"), and Weiss, individually, were compelled to sign that certain Forbearance Agreement with the Jefferies Parties (the "2024 Purported Forbearance Agreement").  The Debtors never received a fully executed copy of the 2024 Purported Forbearance Agreement and, as such, do not know whether the Jefferies Parties signed it.

43.     The 2024 Purported Forbearance Agreement purported to add WMSA, OGI and WSO, and non-debtor WMSF as guarantors of GWA's and WMSA's obligations under the Notes, the Note Purchase Agreements and the Strategic Relationship Agreement, and to provide for the grant of all asset security interests by GWA, WMSA, WMSF, WSO and OGI to the Jefferies Parties to secure all such obligations.  The Jefferies Parties were previously unsecured under the agreements, with no cross-corporate guarantees.  In addition, the 2024 Purported Forbearance Agreement contained provisions for set-off of amounts owed to the Debtors by the Jefferies Parties in an amount of approximately $2.6 million.  In exchange, the Jefferies Parties provided a two (2) day forbearance on any action taken under the default.

44.     UCC-1 Financing Statements were filed on behalf of JSI on February 12, 2024 with the Delaware Department of State under Filing No. 20240953024, with respect to OGI,[2] and Filing No. 20240953073, with respect to WMSA, and on February 13, 2024 with the Connecticut Secretary of State under Filing Number 0005191844, with respect to GWA, and under Filing Number 0005191843, with respect to WSO.

---

[2] OGI's jurisdiction of organization is Connecticut.  The Debtors are not aware of a UCC-1 Financing Statement filed as against non-debtor WMSF.

45.     Within three (3) days after entry into the 2024 Purported Forbearance Agreement, on February 15, 2024, GWA repaid $3,000,000 to JSI, which amount was applied to the Initial Notes.

46.     As of the Petition Date, approximately $43,190,924 remains outstanding under the Notes and approximately $52,473,259 remains outstanding under the Strategic Relationship Agreement.   In addition, WSMA owes Jefferies LLC approximately $1,611,111 under the Placement Agreement as of the Petition Date.

47.     Separately, the Jefferies Parties owe the Debtors a certain 2023 Investment Teams Bonus Fee totaling $2,581,878 (and will owe an additional similar fee for 2024). The Jefferies Parties are seeking under the 2024 Purported Forbearance Agreement to offset (rather than pay) this amount against the amounts owed under the Strategic Relationship Agreement.

48.     On February 28, 2024, as a result of, *inter alia*, actions taken by the Jefferies Parties as set forth above, the Debtors determined to cease operations, and on February 29, 2024, WMSA announced its intentions to terminate its advisory and affiliated businesses and begin the process of returning capital to its clients.

49.     Contemporaneously herewith, the Debtors are commencing an adversary proceeding (the "Adversary Proceeding") against the Jefferies Parties by filing an adversary complaint seeking to, among other things, (i) avoid the Purported 2024 Forbearance Agreement and related transactions, including the purported security interests and guarantees, as preferences and/or fraudulent conveyances and (ii) avoid and recover certain payments made to the Jefferies Parties as fraudulent transfers.

### C.     Debtors' Assets and Liquidation in Chapter 11

50.     The Debtors' goals in these Bankruptcy Cases are to (i) orderly liquidate the Debtors' assets in a way that maximizes value for the benefit of the Debtors' creditors; (ii) work with any creditors' committee formed and other creditors to ensure that the Debtors' financial affairs are properly organized and evaluated; and (iii) ensure compliance with the strict securities and/or regulator rules and regulations that govern dissolution of the Debtors and in particular, the winding-down of WMSA.

51.     The Debtors' assets primarily consist of (i) cash and (ii) certain Portuguese bonds.

### i.     Cash

52.     As of the Petition Date, the Debtors maintained the following accounts:

| Debtor | Financial Institution | Type of Account | Last 4 Digits of Account | Balance on Petition Date |
|---|---|---|---|---|
| WMSA | Bank of America | Flex Spend Account – ERISA Account. | 4721 | $41,964.66 |
| WSO | Bank of America | Operating Account | 6897 | $4,498.78 |
| WMSA | Bank of America | Operating Account | 6910 | $634,227.38 |
| WMSA | Bank of America | Payroll Account | 6923 | $ 5,824.47 |
| GWA | Bank of America | Operating Account | 6952 | $220,747.15 |
| WMSA | Bank of America | Travel & Expense Account. | 8143 | $345.01 |
| GWA[3] | Bank of America | Flex Savings Account | 8810 | $41,964.66 |
| OGI | Citibank, N.A. | Brokerage Account | 278B | $ 0 |
| OGI | Morgan Stanley | Brokerage Account | AA78 | $ 0 |
|  |  |  | **TOTAL** | $949,572.11 |

---

[3] GWA is the Plan Sponsor of a 401(k) Profit Sharing Plan held in Bank of America Account number ending -6274. GWA has only a contingent reversionary interest in the Flex Savings Account held in Bank of America Account number ending -8810.

53.     In addition, the Debtors expect to receive monies in the form of fee income from the operation of their businesses or under revenue sharing agreements from time to time, including approximately $2,543,421.81 due to be received within the next 30 days.

54.     All fees are due to WMSA.

55.     The cash held and to be received by the Debtors represents the primary source of funds available to fund ongoing expenses, including professional fees and other fees associated with the Bankruptcy Cases.

ii.     **Portuguese Bonds**

56.     Nova Banco, S.A. ("Novo Banco") was created in August of 2014 out of the failure of one of Portugal's largest banks, Banco Espírito Santo, S.A. ("BES").  Novo Banco was established to take over those parts of BES that were considered viable, while BES kept the non-viable parts of the business.  Certain of the assets transferred to Novo Banco included fifty-two (52) outstanding series of senior notes.

57.     On December 29, 2015, Banco de Portugal ("BdP") unlawfully retransferred €2.2b of bonds (5 of the 52 outstanding series of senior bonds) (the "Retransferred Notes") from Novo Banco back to BES, imposing significant losses to investors in those bonds.  These Retransferred Notes were all governed by Portuguese law and owned by foreign investors, while almost all of the remaining series of bonds were governed by English law, thereby avoiding litigation outside of Portugal.

58.     Various investors are pursuing legal action against BdP, arguing that BdP's retransfer decision was unlawful.

59.     OGI has filed liquidation and litigation claims in Portugal on account of certain bonds it held that were part of the Retransferred Notes.  WMSA, together with other investors,

13

filed a Section 1782 request to obtain discovery in the United States in connection with the ongoing litigation in Portugal.

60.     If the litigation is unsuccessful, OGI expects to recover approximately $14 million on the Portuguese bonds due to a floor recovery amount available to bondholders.  To the extent the litigation in Portugal is successful, OGI may recover between $14 and $59 million.

D.      **Debtors' Liabilities**

61.     Except as disputed pursuant to the pending Adversary Proceeding, the Debtors do not have secured indebtedness.  In addition to the unsecured amounts due to the Jefferies Parties, the Debtors have approximately $24,000,000 of unsecured liabilities as of the Petition Date, including to employees, vendors, service providers and landlords.

E.      **WMSA's Employees**

62.     WMSA is the only Debtor with employees.  As of January 1, 2024, WMSA employed 110 employees and beginning on March 8, 2024, WMSA has terminated 64 employees and 12 employees have resigned in the following departments:  Investment Professionals, Risk, Administrative Support, IT Executive Management, Marketing, Operations, Compliance, Accounting, Tax, Human Resources, and Strategic Business Initiative.  As of the Petition Date, WMSA employed 34 employees.

F.      **Information Required by Local Rule 1007-2**

        i.      **Debtors' Business and Events Leading to the Chapter 11 Filings**

63.     The information requested in Local Rule 1007-2(a)(1) is set forth in Sections A-B above.

        ii.     **Bankruptcy Cases Were Not Originally Commenced Under Chapter 7**

64.     The Bankruptcy Cases were voluntarily commenced under Chapter 11 of the Bankruptcy Code.  Accordingly, Local Rule 1007-2(a)(2) is inapplicable.

### iii.     No Prepetition Creditors Committee

65.     In accordance with Local Rule 1007-2(a)(3), to the best of the Debtors' knowledge, no pre-petition creditors committee has been formed.

### iv.     Holders of the Twenty (20) Largest Unsecured Claims

66.     In accordance with Local Rule 1007-2(a)(4), a list setting forth the top twenty (20) general unsecured creditors of each Debtor, excluding those persons who constitute "insiders" under Bankruptcy Code Section 101(31) of the Debtor is attached as **Exhibit B**.  As required by Local Rule 1007-2(a)(4), Exhibit B includes the creditors' names, addresses, telephone numbers (for persons familiar with the account, if available), amount of each claim, and an indication of whether the claims are contingent, unliquidated, disputed or partially secured.

### v.     Holders of the Five Largest Secured Claims

67.     In accordance with Local Rule 1007-2(a)(5), a list setting forth each of the Debtor's five (5) largest secured creditors is annexed hereto as **Exhibit C**.  As required by Local Rule 1007-2(a)(5),  Exhibit C includes the creditors' names, addresses, amount of each claim, a description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

### vi.     Summary of the Debtors' Assets and Liabilities

68.     As required by Local Rule 1007-2(a)(6), a summary of the Debtors' assets and liabilities as of the Petition Date is annexed hereto as **Exhibit D**.

### vii.  **Publicly Held Securities**

69.    As required by Local Rule 1007-2(a)(7), the Debtors have no classes of shares of stock, debentures, or other securities of the Debtors that are publicly held.

### viii.  **Property Held by Others**

70.    As required by Local Rule 1007-2(a)(8), to the best of my knowledge, there is no property of the Debtors in the custody of any public officer, receiver, trustee, pledgee, assignee of rents, liquidator, secured creditor or agents of any such person.

### ix.  **Debtors' Premises**

71.    As required by Local Rule 1007-2(a)(9), **Exhibit E** contains a list of each of the premises owned, leased or held under any other arrangement from which the Debtors operate their businesses.

### x.  **Location of the Debtors' Assets and Books and Records**

72.    Pursuant to Local Rule 1007-2(a)(10), the majority of the Debtors' hard copy books and records are maintained at Iron Mountain's facility in Connecticut.  The Debtors' digital files are stored with Revver f/k/a eFileCabinet and SS&C Geneva and Eze Castle Software, Salesforce, and Druva, among others.

73.    The only asset of the Debtors located outside the United States is OGI's interest in the Portuguese Bonds described in Section C(ii) above.

### xi.  **Pending or Threatened Actions Against the Debtors**

74.    Pursuant to Local Rule 1007-2(a)(11), **Exhibit F** contains a schedule identifying the nature and present status of pending or threatened actions against the Debtors.

### xii.  **Debtors' Senior Management**

75.    In accordance with Local Rule 1007-2(a)(12), **Exhibit G** contains a schedule which provides the names of the individuals who constitute the Debtors' senior management, their tenure with the Debtors and a brief summary of their responsibilities and relevant experience as of the Petition Date.

G.    **The Debtors' Post-Petition Operations**

76.    Following the Petition Date, the Debtors intends to continue operating their businesses solely for the purpose of liquidating their assets.

77.    Pursuant to Local Rule 1007-2(b)(1), for the thirty (30) day period following the Petition Date, the Debtors intend to pay employees (exclusive of officers, directors, stockholders, partners, and members) approximately $217,337.57 as of May 15, 2024 and $168,545.87 as of May 31, 2024, for a total of approximately $385,883.44.

78.    Pursuant to Local Rule 1007-2(b)(2), for the thirty (30) day period following the Petition Date, the Debtors intend to pay officers and directors approximately $167,854.21 as of May 15, 2024 and $126,187.54 as of May 31, 2024, for a total of approximately $294.041.75.

79.    Pursuant to Local Rule 1007-2(b)(2), for the thirty (30) day period following the Petition Date, the Debtors intend to pay consultants approximately $30,583.34 as of May 15, 2024 and $33,083.34 as of May 31, 2024, for a total of approximately $63,666.68.

80.    Pursuant to Local Rule 1007-2(b)(3), the following provides a schedule of estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue but remaining unpaid for the thirty (30) days following the Petition Date:

| Type | Amount |
|---|---|
| Cash Receipts (fee income due) | $2,543,421.81 |
| Cash Disbursements (payroll, insurance, consultants, other operating expenses) | $500,000 |
| Net Cash Gain | $2,043,421.81 |
| Unpaid Obligations (excluding professional fees and excluding amounts under contracts and leases sought to be rejected) | $65,000 |
| Unpaid Receivables (excluding professional fees) | $5,800,000 |

81.     The Debtors consider that the protections afforded by the bankruptcy process, including the breathing space afforded by the automatic stay upon the filing of the Bankruptcy Cases, the exclusivity period afforded to the Debtors for proposing a plan of liquidation, the transparency of the proceedings in the Bankruptcy Cases and the distribution scheme provided for in the Bankruptcy Code will benefit the orderly liquidation of the Debtors.  Accordingly, the Debtors believe that the chapter 11 process affords a better opportunity to provide a greater return to its creditors than any alternative wind down or liquidation process.

H.     **Compliance with Regulatory Requirements**

82.     Notwithstanding the commencement of these Bankruptcy Cases, WMSA will continue to manage client assets in segregated accounts for the foreseeable future, including complex illiquid assets that will take considerable skill and expertise to liquidate.  WMSA was actively trading in the Weiss Enhanced Global Macro Fund through April, 2024.  The Debtors will continue to be subject to the various reporting and regulatory requirements of the industry.

83.     In order to comply with the various rules and regulations set forth below that the Debtors are subject to when winding down their affairs, the Debtors' current management and professionals, who have years of experience with the Debtors and extensive knowledge of the Debtors' operations, are best equipped to oversee and carry out the winding up process.

i.  **Investment Advisers Act of 1940**

84.    WMSA is registered with the SEC as an investment adviser, with the CFTC as a commodity pool operator, and is a member of the NFA.  Violations of the laws and regulations promulgated by these agencies and self-regulatory organizations may result in significant fines and penalties both at the corporate and individual level, and, in some cases, criminal charges.

85.    The Investment Advisers Act of 1940 (the "Advisers Act") regulates investment advisers such as WMSA and requires, subject to certain exceptions, that firms compensated for advising others about securities investments must register with the SEC and conform to various regulations designed to protect investors.  By way of background, pooled investment vehicles, such as the private investment funds managed by WMSA, are considered to be advisory clients of the investment adviser, in addition to the separately managed accounts that WMSA manages for institutional clients.

1.  **Fiduciary Duty**

86.    As an investment advisor, WMSA is a fiduciary and therefore owes a duty to act in the best interest of its advisory clients, including the Weiss private investment funds.  The fiduciary duty is comprised of a duty of care and a duty of loyalty. The duty of care includes: (i) the duty to provide advice that is in the best interest of the client; (ii) the duty to seek best execution of a client's transactions where the adviser has the responsibility to select brokers to execute client trades; and (iii) the duty to provide advice and monitoring over the course of the relationship.

87.    WMSA will continue to manage client assets in segregated accounts for the foreseeable future, including complex illiquid assets that will take considerable skill and expertise to liquidate.  For example, each of the Weiss Multi-Strategy Partners LLC, OGI, and the GWA, LLC 401(k) Profit Sharing Plan hold illiquid Portuguese bonds that are in active litigation in

19

Portugal and the United States, and those accounts are named litigants in the cases. Portuguese counsel advises that under the Portuguese legal system, transfer of these bonds to a third party would require the courts to grant leave to substitute the litigants, which is expected to take at least six months. The litigation is not expected to have a final determination in the foreseeable future. Having personnel who are not qualified or properly supervised execute transactions for a WMSA managed fund or client or manage these litigations on their behalf would likely cause a breach of these fiduciary duties. In addition, clients of the Debtors will have millions of dollars of cash "held back" in the coming months to pay for on-going administrative activities such as audits, audit adjustments and tax statement preparation, the ultimate distribution of which are subject to the Debtors' fiduciary duties. Additionally, one of the Weiss managed client entities, Weiss Enhanced Global Macro Fund, is under IRS audit, the management of which requires employee and consulting expertise. Such audit will be continuing for the foreseeable future.

88. As a result, it is essential for the Debtors to continue to employ current management and professionals, who are qualified to liquidate these assets. Having personnel who are not qualified or properly supervised execute transactions for a client risks a breach of these fiduciary duties.

## 2. Books and Records Preservation and Access

89. Rule 204-2 of the Advisers Act (the "Books and Records Rule") is designed to ensure transparency, accountability, and investor protection within the financial industry. Compliance with these rules is essential for investment advisers such as WMSA to operate legally and ethically.

90. The Books and Records Rule stipulates the following:

    a. *Maintenance of Records*: Investment advisers such as WMSA must maintain and keep accurate records of all activities related to their business as investment advisers. This includes records of securities transactions, investment advice, and other business activities.

    b. *Client Records*: Investment advisers must maintain records of each client's personal and financial information, including agreements, contracts, and communications.

    c. *Trade Records*: Records of all trades made on behalf of clients, including purchase and sale confirmations, must be maintained.

    d. *Books and Journals*: Investment advisers must keep a record of all purchases and sales of securities, as well as all receipts and disbursements of cash and securities.

    e. *Advertisements and Marketing Materials*: Records related to advertisements and marketing materials used by the adviser must be maintained.

    f. *Communications*: Records of all written communications relating to investment advice or recommendations must be retained.

    g. *Electronic Records*: If records are maintained electronically, advisers must ensure they are preserved in a non-rewriteable, non-erasable format.

    h. *Retention Period*: Records must be retained for a specified period, typically five (5) years, and they must be readily accessible for examination by the SEC.

91.    The information technology employees at the Debtors advise that it will take several months to scope and facilitate the transfer of the records required to be retained by the SEC to a facility in a manner that complies with the Books and Records Rule for the required five years. Indeed, those records cannot even be "frozen" to commence facilitation for transfer until the

deregistration of the necessary Debtor entities with the SEC, which for regulatory purposes cannot happen until May 2024 at the earliest.

### 3. Compliance Program

92.     For regulatory reasons, the necessary Debtor entities will not be able withdraw its registration with the SEC until May 2024 at the earliest. Until that time, Rule 206(4)-7 under the Advisers Act requires every investment adviser registered with the SEC (i) to adopt and implement written policies and procedures designed to detect and prevent violations of the Advisers Act by the adviser and its supervised persons, (ii) to review the policies and procedures at least annually to assure their adequacy and effectiveness, and (iii) to designate a chief compliance officer with responsibility for administering and enforcing the policies and procedures.

93.     Rule 204A-1 requires a registered investment adviser to adopt a code of ethics. An adviser's code of ethics must require all access persons to submit periodic reports to the compliance officer (or other designated person) including annual holdings reports and quarterly transaction reports.

94.     Administering an adviser's compliance policies and procedures as well as its code of ethics requires a deep understanding of the adviser's business and takes a considerable amount of time and attention. Many of the mandated policies require constant monitoring in order to seek to protect client assets and information.

### 4. Form ADV

95.     Advisers Act Rule 204-1(a)(1) requires WMSA to file an annual updating amendment to its Form ADV within 90 days after its fiscal year-end. Advisers Act Rule 204-3(b) requires WMSA to deliver to each client an updated Form ADV Part 2A within 120 days after the adviser's fiscal year-end if there are material changes.

5.     **Custody Rule**

96.     The Advisers Act and the rules promulgated thereunder include many specific requirements that necessitate experienced staff in order to ensure compliance.  For example, Advisers Act Rule 206(4)-2 (the "Custody Rule") generally requires a registered investment adviser in the position of WMSA to, among other requirements:

    a.   Maintain client assets with a "qualified custodian";

    b.   Arrange for account statements to be sent to clients at least quarterly by the qualified custodian;  and

    c.   Undergo an annual surprise examination by an independent public accountant of those client assets for which the adviser has custody.  WMSA's 2023 custody examination was completed covering September 1, 2022 through September 30, 2023. The 2024 examination has not been initiated or completed.

97.     For the purposes of the Custody Rule, pooled investment vehicles, such as the private investment funds managed by WMSA, are considered to be advisory clients of the investment adviser, and the investment adviser is generally considered to have custody of the assets of those private funds.  In order to comply with the Custody Rule, the Debtors' avail themselves of the Custody Rule's audit provision, which requires, among other things, that the private fund be audited at least annually by an independent public accountant registered with, and subject to regular inspection by, the Public Company Accounting Oversight Board.  It also requires that the audited financial statements be distributed to all beneficial owners of the private fund within 120 days of the fiscal year-end of the fund, or within 180 days of the fiscal year-end for a fund of funds (Rule 206(4)-2(b)(4)).  Audits for the 2023 and 2024 fiscal years of the WMSA managed private

funds have not been completed and the 2024 audits will take a minimum of several months to complete.

<h3 style="text-align:center">6.      Form PF</h3>

98.     Registered investment advisers with at least $150 million in regulatory assets under management attributable to private funds must file Form PF. Managers are required to disclose on Form PF certain information relating to the manager and the private funds that it advises. Form PF must be filed annually, or for large advisers, quarterly. Certain advisers are also required to file a current report on Form PF as soon as practicable, but no later than 72 hours from the occurrence of one or more "current reporting events," which include certain extraordinary investment losses, significant margin and default events, terminations or material restrictions of prime broker relationships, operations events, and events associated with withdrawals and redemptions.

99.     Form PF includes historical data and requires an understanding of the adviser's investment strategies, counterparty relationships and adviser operations.

100.    The filing of Form PF will be necessary until WMSA withdraws its registration with the SEC, which for regulatory purposes cannot happen until May 2024, at the earliest.

<h4 style="text-align:center">ii.     Commodity Exchange Act of 1936</h4>

101.    The Commodity Exchange Act of 1936 (the "CEA") regulates the trading of commodity futures in the United States and establishes the statutory framework under which the CFTC operates.

<h3 style="text-align:center">1.      Individual Obligations</h3>

102.    Each Principal of a registered commodity pool operator ("CPO") must submit fingerprints to the NFA and file a Form 8-R. Any person who controls a CPO's business activities

24

is generally considered a "Principal". A CPO must have at least one individual who is both a Principal and an Associated Person. To register as an Associated Person, an individual must, in addition to the fingerprints and Form 8-R, satisfy proficiency requirements. The proficiency requirements depend on the nature of the CPO's business but typically includes passing the Series 3 exam.

### 2. Compliance

103. Similar to the Advisers Act, the CEA and the rules promulgated thereunder, as well as the rules of the NFA, require that a CPO adopt and follow a number of compliance policies and procedures. Many of these procedures focus on internal controls, safeguarding, cybersecurity and other areas that are constantly applicable, regardless of any change in control.

### 3. Books and Records Preservation and Access

104. Similar to the Advisers Act, the CEA and the rules promulgated thereunder, as well as the rules of the NFA, require that records must be retained for a five year period, and they must be readily accessible for examination by the NFA.

105. As discussed above, the information technology employees at WMSA advise that it will take several months to scope and facilitate the transfer of the records required to be retained by the CFTC and the NFA to a facility in a manner that complies with CFTC Rule 1.31 for the required five (5) years. Indeed, those records cannot even be "frozen" to commence facilitation for transfer until the deregistration of WMSA with the CFTC, which for regulatory purposes cannot happen until May 2024 at the earliest.

### 4. Reporting

106. A CPO is required to file a number of reports, including some that must be completed promptly upon certain events. A CPO is also required to (i) electronically submit to

the NFA an annual questionnaire with information about the CPO and its related entities and (ii)
perform an annual review of its operations using the self-examination questionnaire prescribed by
the NFA.

107.    CPOs are generally required to distribute a periodic report of their account
statements within 30 calendar days of each month end, including an attestation from an individual
that to the best of their knowledge and belief, the information contained in the account statement
is accurate and complete.  It is unlawful to an individual to make such attestation if they should
know that any of the information in the document is not accurate or complete.

108.    CPOs that operate pools for which they have reporting obligations under Part 4 of
the Commodity Futures Trading Commission regulations must file pool quarterly reports (Form
PQR) within 60 days following each quarter-end.

109.    CPOs must distribute an Annual Report, certified by an independent public
accountant, to pool participants within 90 days of the pool's fiscal year-end.  CPOs are also
required to file this report with the NFA within 90 days of the pool's fiscal year-end.  Annual
reports for 2024 fiscal year end will not be available for at least a few months.

iii.    **Securities Exchange Act of 1934**

110.    The Securities Exchange Act of 1934 (the "Exchange Act") is designed to protect
investors by requiring mandatory disclosures that investors would find relevant in making
investment decisions and to ensure that any securities transactions are not based on fraudulent
information or practices.

111.    The Exchange Act requires numerous filings by WMSA, including:

### 1. Form 13F

112.    Exchange Act Rule 13f-1 requires every institutional investment adviser that exercises investment discretion over accounts holding "Section 13(f) securities" with an aggregate fair market value on the last trading day of any month of any calendar year of at least $100 million to file Form 13F within 45 days after the last day of such calendar year and within 45 days after the last day of each of the first three calendar quarters of the subsequent calendar year.

### 2. Form N-PX

113.    Institutional investment advisers subject to the reporting requirements of Section 13(f) of the Exchange Act, must annually report on Form N-PX how they voted proxies relating to executive compensation (or "say-on-pay") matters no later than August 31 of each year.

### 3. Form 13H

114.    Exchange Act Rule 13h-1 requires a "large trader" to identify itself to the SEC and promptly make certain disclosures to the SEC on Form 13H. All large traders must make an amended filing to correct inaccurate information in the form promptly following the quarter-end in which the information became inaccurate.  All large traders must make an annual filing within 45 days after the end of each full calendar year.

### 4. New Filings

115.    The SEC has proposed and adopted rules amending filing obligations as well as creating new filing obligations.  For example, institutional investment advisers that meet or exceed certain reporting thresholds will be required to report on a monthly basis, using Form SHO, specified gross short position and activity data for equity securities.

iv.    **Employee Retirement Income Security Act of 1974**

116.    Part VI of Title I of ERISA regulates the investment of the assets of employer sponsored benefit plans.

117.    Pursuant to Section 3(42) of ERISA, the significant participation of ERISA plan investors in Weiss Multi-Strategy Partners (Cayman) Ltd. and Weiss Multi-Strategy Partners LLC, makes these funds and their underlying portfolio investment "plan assets" subject to ERISA. WMSA, as investment adviser to these funds, exercises discretionary authority over plan assets and is a fiduciary, defined in section 3(21) of ERISA, and investment manager, defined in section 3(38) of ERISA, to each ERISA plan invested in the funds.

118.    ERISA's fiduciary duties, include the requirement to act for the exclusive benefit of the plans' participants, to comply with a prudent expert standard of care and to avoid engaging in prohibited transactions.

119.    Section 409 of ERISA imposes joint and several personal liability on ERISA fiduciaries for breaches of their fiduciary duties and Section 410 of ERISA provides that liability for fiduciary breaches cannot be subject to indemnification.

v.    **Investment Company Act of 1940**

120.    The Investment Company Act of 1940 (the "Company Act") regulates the formation of investment companies and their activities.

121.    WMSA is the investment adviser to a mutual fund registered as an investment company under the Company Act.  It will need to submit filings to the SEC in connection with the wind-up of this fund.

vi.   **U.S. Department of Treasury**

122.   Investment advisers may be required to file certain forms with the Federal Reserve Bank of New York, on behalf of the Department of Treasury, if it or any of its clients takes part in certain cross-border transactions, including managing a U.S. fund that invests in foreign securities (including interests in an offshore master fund) and managing a U.S. fund with foreign investors (including an offshore feeder fund with interests in the U.S. fund).  These filings include Form SLT, Form S, Form SHCA, Form SHC, Form SHLA, Form SHL and Form B.  The timing of these filings vary, including monthly, quarterly and annual obligations.

I.   **Debtors' Professionals**

123.   On or after the Petition Date, the Debtors intend to file applications seeking to retain the following professionals, subject to Bankruptcy Court approval, to assist with the administration of the Bankruptcy Cases and wind down and liquidation process.  The following legal and accounting professionals, where applicable, have had significant experience with the Debtors and handling the specific requirements necessary in the course of the Debtors' business operations.

   a.  Klestadt Winters Jureller Southard & Stevens, LLP as bankruptcy counsel to the Debtors;

   b.  Omni Agent Solutions, Inc. as claims and noticing agent for the Debtors;

   c.  Seward & Kissel LLP, as corporate and securities and ERISA counsel to the Debtors;

   d.  KPMG LLP as auditors and tax accountant to the Debtors;

   e.  Citrin Cooperman & Company, LLC as auditors for the GWA, LLC 401(k) Profit Sharing Plan;

   f.  TR Paul as Inc. as third-party administrator for the GWA, LLC 401(k) Profit Sharing Plan; and

   g.  Gama Glória as special litigation counsel for WMSA and OGI with respect to, *inter alia*, the litigation issues concerning the Portuguese Bonds.

**Conclusion**

124.    The Debtors reserve the right to amend or supplement any of the schedules annexed hereto as exhibits in the event additional information is obtained by the Debtors during the course of these proceedings.

125.    I believe that the protections afforded in the Bankruptcy Code will enable the Debtors to maximize the value of their assets for the benefit of the Debtors' estates and their creditors.

[Signature Page Follows]

I declare under penalty of perjury that, to the best of my knowledge and after reasonable

inquiry, the foregoing is true and correct.

Dated:  April 29, 2024

_____
Pierce Archer
Senior Vice President and
Chief Operating Officer of the Debtors

**Exhibit A**

**Corporate Organizational Structure**

(*See attached*)



## Other Unrelated Individual Members Comprising 44.4% of GWA, LLC

| Member | Class A Interest | Class B Interest |
|---|---|---|
| Jordi Visser | 16.81% | |
| Michael Edwards | 5.80% | |
| David Betten | 2.39% | 0.89% |
| Jason Osier | 1.97% | |
| Lundy Wright | 1.67% | 0.42% |
| Ron Llor | 1.67% | 0.20% |
| Jeffrey Dillabough | 1.48% | |
| Jena Roche | 1.45% | |
| Edward Olanow | 0.99% | |
| Nicholas Morris | 0.98% | 0.20% |
| Pierce Archer | 0.96% | |
| David Hopkins | 0.49% | |
| Robert Levites | 0.48% | |
| Richard Comizio | 0.27% | 0.25% |
| David Feldman | 0.11% | 0.67% |
| Jonathan Levin | 0.10% | |
| Ron Darnowski | 0.08% | |
| Timothy Yam | 0.07% | 0.20% |
| Robert Gendreau | 0.06% | |
| Steven Breen | 0.06% | |
| Jay McCareins | 0.05% | |
| Steven Kleinman | 0.02% | |
| Cory Liberman | 0.01% | |
| Michele Lanzoni | 0.01% | |
| Brett Moskowitz | | 0.24% |
| Robin Nazarzadeh | | 0.45% |
| Richard Biggs | | 0.22% |
| Carlos Ribereiro | | 0.31% |
| Andrew Mahony | | 1.12% |
| Andrew Pizzi | | 0.63% |
| David Greenbaum | | 0.19% |
| Andrew O'Connor | | 0.30% |
| Pavel Blinchik | | 0.16% |

**Exhibit B**

**List of Each Debtor's Top Twenty Unsecured Creditors[4]**

**Weiss Multi-Strategy Advisers LLC**

| Name of Creditor and Complete Mailing Address | Name, Telephone Number, and Email Address of Creditor Contact | Nature of the Claim | Indicate if Claim is Contingent, Unliquidated or Disputed | Amount of Unsecured Claim |
|---|---|---|---|---|
| Leucadia Asset Management Holdings LLC 520 Madison Avenue New York, NY 10022 | Herbert Smith Freehills 450 Lexington Ave. New York, NY 10017 Attn: Scott S. Balber Scott.Balber@hsf.com<br><br>and<br><br>Sidley Austin LLP 787 Seventh Avenue New York, NY 10019 William E. Curtin (wcurtin@sidley.com) Anthony R. Grossi (agrossi@sidley.com) David A. Form (dform@sidley.com) | Strategic Relationship Agreement | Disputed | $52,473,259.00 |

---

[4] Amounts are estimated and subject to adjustment and may be subject to offset. Inclusion of any amount is not an admission of liability.

| Name of Creditor and Complete Mailing Address | Name, Telephone Number, and Email Address of Creditor Contact | Nature of the Claim | Indicate if Claim is Contingent, Unliquidated or Disputed | Amount of Unsecured Claim |
|---|---|---|---|---|
| Jefferies Strategic Investments, LLC c/o Leucadia Asset Management Holdings 520 Madison Avenue New York, NY 10022 | Herbert Smith Freehills 450 Lexington Ave. New York, NY 10017 Attn: Scott S. Balber Scott.Balber@hsf.com<br><br>and<br><br>Sidley Austin LLP 787 Seventh Avenue New York, NY 10019 William E. Curtin (wcurtin@sidley.com) Anthony R. Grossi (agrossi@sidley.com) David A. Form (dform@sidley.com) | Notes | Disputed | $43,190,924.00 |
| Mutual of America Life Insurance Company 320 Park Avenue New York, NY 10022 | 320 Park Avenue New York, NY 10022 Eileen.Dillon@jll.com 212-308-0320 | Lease | | $3,588,490.22 |
| Jason Osier | ███████████ | Compensation | | $2,922,350.00 |
| Andrew Pizzi | ███████████ | Compensation | Contingent | $2,079,132.28 |

Exhibit B - 2

| Name of Creditor and Complete Mailing Address | Name, Telephone Number, and Email Address of Creditor Contact | Nature of the Claim | Indicate if Claim is Contingent, Unliquidated or Disputed | Amount of Unsecured Claim |
|---|---|---|---|---|
| Jefferies LLC c/o Leucadia Asset Management Holdings 520 Madison Avenue New York, NY 10022 | Herbert Smith Freehills 450 Lexington Ave. New York, NY 10017 Attn: Scott S. Balber Scott.Balber@hsf.com and Sidley Austin LLP 787 Seventh Avenue New York, NY 10019 William E. Curtin (wcurtin@sidley.com) Anthony R. Grossi (agrossi@sidley.com) David A. Form (dform@sidley.com) | Placement Agreement | Disputed | $1,611,111.00 |
| Bo Yang | | Compensation | Contingent | $1,308,743.85 |
| Andrew Mahony | | Compensation | Contingent | $1,203,954.68 |
| David F Betten | | Compensation | Contingent | $1,100,356.96 |
| David Greenbaum | | Compensation | Contingent | $1,087,413.85 |

Exhibit B - 3

| Name of Creditor and Complete Mailing Address | Name, Telephone Number, and Email Address of Creditor Contact | Nature of the Claim | Indicate if Claim is Contingent, Unliquidated or Disputed | Amount of Unsecured Claim |
|---|---|---|---|---|
| David A Feldman ███ | ███ | Compensation | Contingent | $870,143.58 |
| Robin Nazarzadeh ███ | ███ | Compensation | Contingent | $645,433.56 |
| Ron M Lior ███ | ███ | Compensation | Contingent | $626,129.07 |
| Lundy R Wright ███ | ███ | Compensation | Contingent | $567,139.83 |
| Richard Biggs ███ | ███ | Compensation | Contingent | $552,032.77 |
| Timothy Yam ███ | ███ | Compensation | Contingent | $535,528.27 |
| Maxim Kulikov ███ | ███ | Compensation | | $529,246.50 |
| Konstantin Igel ███ | ███ | Compensation | | $529,246.50 |

Exhibit B - 4

| Name of Creditor and Complete Mailing Address | Name, Telephone Number, and Email Address of Creditor Contact | Nature of the Claim | Indicate if Claim is Contingent, Unliquidated or Disputed | Amount of Unsecured Claim |
|---|---|---|---|---|
| Carlos L Ribeiro ████ | ████ | Compensation | Contingent | $441,409.63 |
| Nicholas Morris ████ | ████ | Compensation | Contingent | $371,781.33 |

**GWA, LLC**

| Name of Creditor and Complete Mailing Address | Name, Telephone Number, and Email Address of Creditor Contact | Nature of the Claim | Indicate if Claim is Contingent, Unliquidated or Disputed | Amount of Unsecured Claim |
|---|---|---|---|---|
| Leucadia Asset Management Holdings LLC 520 Madison Avenue New York, NY 10022 | Herbert Smith Freehills 450 Lexington Ave. New York, NY 10017 Attn: Scott S. Balber Scott.Balber@hsf.com  and  Sidley Austin LLP 787 Seventh Avenue New York, NY 10019 William E. Curtin (wcurtin@sidley.com) Anthony R. Grossi (agrossi@sidley.com) David A. Form (dform@sidley.com) | Strategic Relationship Agreement | Disputed | $52,473,259.00 |

Exhibit B - 5

| Name of Creditor and Complete Mailing Address | Name, Telephone Number, and Email Address of Creditor Contact | Nature of the Claim | Indicate if Claim is Contingent, Unliquidated or Disputed | Amount of Unsecured Claim |
|---|---|---|---|---|
| Jefferies Strategic Investments, LLC c/o Leucadia Asset Management Holdings 520 Madison Avenue New York, NY 10022 | Herbert Smith Freehills 450 Lexington Ave. New York, NY 10017 Attn: Scott S. Balber Scott.Balber@hsf.com  and  Sidley Austin LLP 787 Seventh Avenue New York, NY 10019 William E. Curtin (wcurtin@sidley.com) Anthony R. Grossi (agrossi@sidley.com) David A. Form (dform@sidley.com) | Notes | Disputed | $43,190,924.00 |
| Mutual of America Life Insurance Company 320 Park Avenue New York, NY 10022 | 320 Park Avenue New York, NY 10022 Eileen.Dillon@jll.com 212-308-0320 | Lease | | $3,588,490.22 |
| American Express PO Box 1270 Newark, NJ 07101 | Patrick Holzman, American Express patrick.t.holzman@aexp.com 623-492-4395 | Credit card | Disputed | $34,683.11 |
| American Express PO Box 1270 Newark, NJ 07101 | Patrick Holzman, American Express patrick.t.holzman@aexp.com 623-492-4395 | Credit card | Disputed | $19,368.11 |
| American Express PO Box 1270 Newark, NJ 07101 | Patrick Holzman, American Express patrick.t.holzman@aexp.com 623-492-4395 | Credit card | Disputed | $5,853.97 |

Exhibit B - 6

**OGI Associates LLC**

| Name of Creditor and Complete Mailing Address | Name, Telephone Number, and Email Address of Creditor Contact | Nature of the Claim | Indicate if Claim is Contingent, Unliquidated or Disputed | Amount of Unsecured Claim |
|---|---|---|---|---|
| Leucadia Asset Management Holdings LLC 520 Madison Avenue New York, NY 10022 | Herbert Smith Freehills 450 Lexington Ave. New York, NY 10017 Attn: Scott S. Balber Scott.Balber@hsf.com<br><br>and<br><br>Sidley Austin LLP 787 Seventh Avenue New York, NY 10019 William E. Curtin (wcurtin@sidley.com) Anthony R. Grossi (agrossi@sidley.com) David A. Form (dform@sidley.com) | Strategic Relationship Agreement | Disputed | $52,473,259.00 |
| Jefferies Strategic Investments, LLC c/o Leucadia Asset Management Holdings 520 Madison Avenue New York, NY 10022 | Herbert Smith Freehills 450 Lexington Ave. New York, NY 10017 Attn: Scott S. Balber Scott.Balber@hsf.com<br><br>and<br><br>Sidley Austin LLP 787 Seventh Avenue New York, NY 10019 William E. Curtin (wcurtin@sidley.com) Anthony R. Grossi (agrossi@sidley.com) David A. Form (dform@sidley.com) | Notes | Disputed | $43,190,924.00 |

Exhibit B - 7

A-441

**Weiss Special Operations LLC**

| Name of Creditor and Complete Mailing Address | Name, Telephone Number, and Email Address of Creditor Contact | Nature of the Claim | Indicate if Claim is Contingent, Unliquidated or Disputed | Amount of Unsecured Claim |
|---|---|---|---|---|
| Leucadia Asset Management Holdings LLC 520 Madison Avenue New York, NY 10022 | Herbert Smith Freehills 450 Lexington Ave. New York, NY 10017 Attn: Scott S. Balber Scott.Balber@hsf.com<br><br>and<br><br>Sidley Austin LLP 787 Seventh Avenue New York, NY 10019 William E. Curtin (wcurtin@sidley.com) Anthony R. Grossi (agrossi@sidley.com) David A. Form (dform@sidley.com) | Strategic Relationship Agreement | Disputed | $52,473,259.00 |
| Jefferies Strategic Investments, LLC c/o Leucadia Asset Management Holdings 520 Madison Avenue New York, NY 10022 | Herbert Smith Freehills 450 Lexington Ave. New York, NY 10017 Attn: Scott S. Balber Scott.Balber@hsf.com<br><br>and<br><br>Sidley Austin LLP 787 Seventh Avenue New York, NY 10019 William E. Curtin (wcurtin@sidley.com) Anthony R. Grossi (agrossi@sidley.com) David A. Form (dform@sidley.com) | Notes | Disputed | $43,190,924.00 |

Exhibit B - 8

**Exhibit C**

**Five Largest Secured Claims for each Debtor**

**All Debtors:**

| Name of Creditor and Complete Mailing Address | Amount of Claim | Value and Description of Collateral | Indicate if Claim is Contingent, Unliquidated, or Disputed |
|---|---|---|---|
| Leucadia Asset Management Holdings LLC 520 Madison Avenue New York, NY 10022<br><br>Counsel:<br><br>Herbert Smith Freehills 450 Lexington Ave. New York, NY 10017 Attn: Scott S. Balber Scott.Balber@hsf.com<br><br>and<br><br>Sidley Austin LLP 787 Seventh Avenue New York, NY 10019 William E. Curtin (wcurtin@sidley.com) Anthony R. Grossi (agrossi@sidley.com) David A. Form (dform@sidley.com) | $52,473,259.00 | Purported security interest in all of the Debtors' assets | Disputed |

Exhibit C - 1

| Name of Creditor and Complete Mailing Address | Amount of Claim | Value and Description of Collateral | Indicate if Claim is Contingent, Unliquidated, or Disputed |
|---|---|---|---|
| Jefferies Strategic Investments, LLC c/o Leucadia Asset Management Holdings 520 Madison Avenue New York, NY 10022<br><br>Counsel:<br><br>Herbert Smith Freehills 450 Lexington Ave. New York, NY 10017 Attn: Scott S. Balber Scott.Balber@hsf.com<br><br>and<br><br>Sidley Austin LLP 787 Seventh Avenue New York, NY 10019 William E. Curtin (wcurtin@sidley.com) Anthony R. Grossi (agrossi@sidley.com) David A. Form (dform@sidley.com) | $43,190,924.00 | Purported security interest in all of the Debtors' assets | Disputed |

Exhibit C - 2

**Exhibit D**

**Summary of the Debtors' Assets and Liabilities**

The following are estimates of the Debtors' total assets and liabilities on a consolidated basis. The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. The Debtors reserve all rights to assert that any debt or claim included herein is as disputed claim or debt, and to challenge the priority, nature, amount, or status of any such claim or debt.

| Assets and Liabilities | Amount (Approximate) |
|---|---|
| Total Assets (Book Value as of Petition Date) | $28,000,000 |
| Total Liabilities (without duplication of co-Debtor obligations) (Book Value as of Petition Date) | $122,000,000 |

**Exhibit E**

**List of Premises**

| Debtor | Location | Interest | Use | WMSA's Intention |
|--------|----------|----------|-----|------------------|
| WMSA | 320 Park Avenue 20th Floor and 21st Floor and portion of basement New York, New York 10022 | Tenant – Leasehold interest | Office Space | WMSA intends to reject this lease as of the Petition Date, subject to Bankruptcy Court approval. |
| WMSA | 400 Capital Boulevard Suite 201 Rocky Hill, Connecticut 06067 | Tenant – Leasehold interest | Office Space | WMSA intends to reject this lease as of the Petition Date, subject to Bankruptcy Court approval. |
| WMSA | 110 Barnes Road Wallingford, Connecticut 06492 | Tenant – Leasehold interest | Colocation space where WMSA maintains hardware and software owned and operated by WMSA | WMSA intends to retain this lease for the current time. |
| WMSA | 110 Barnes Road Wallingford, Connecticut 06492 | Subtenant – Leasehold interest | Office Space | WMSA intends to retain this lease for the current time. |
| WMSA | 4400 Biscayne Blvd Miami, FL 33137 | Tenant - Leasehold interest | Office Space | WMSA intends to reject this lease as of the Petition Date, subject to Bankruptcy Court approval. |
| WMSA | 6 Norden Place Nowalk, CT 06855 | Customer | Colocation space – placement, operation and maintenance of customer equipment | WMSA intends to reject this lease as of the Petition Date, subject to Bankruptcy Court approval. |

**Exhibit F**

**List of Pending Legal or Administrative Proceedings**

The following Debtors are involved in the following pending legal actions:

| Case Name & Case No. | Status |
|---|---|
| *Beth Andrew-Berry, individually and as a representative of the GWA, LLC 401(k) Profit Sharing Plan and a class of similarly situated persons v. George A. Weiss and GWA, LLC,* Case No. 23-cv-00978-OAW (United States District Court, District of Connecticut) | Discovery ongoing while Defendants' motion to dismiss is pending |
| Judicial Court of the District of Lisbon, Central Instance – 1st Chamber of Commerce – J1, Proceeding No. 18588/16.2T8LSB, Reference: 356173826 | Litigation and liquidation claims have been filed investors relating to the decision of the Bank of Portugal on December 29, 2015 to retransfer €2.2b of bonds owned by foreign investors from Novo Banco back to Banco Espírito Santo resulting in losses to such investors including OGI. |
| *Banca Pueyo SA et al., v. Lone Star Fund IX (US) LP et. al.,* Case No. 18-mc-00100, United States District Court, Northern District of Texas<br><br>Weiss Multi-Strategy Advisers LLC is one of the petitioners | 28 U.S.C. § 1782 application |
| *GWA, LLC, George A. Weiss, Tax Matters Partner v. Commissioner of Internal Revenue,* Docket No. 6981-19, Tax Court | On May 1, 2019 GWA filed a lawsuit against the Internal Revenue Service (the "IRS"), to resolve a longstanding dispute regarding an issue from tax years 2009 and 2010, which relates to whether certain investments should be taxed at ordinary income rather than at capital gain rates. On July 1, 2019 the IRS filed an answer to the petition. GWA expects a decision to be rendered in the next few months. |

A-447

**Exhibit G**

**The Debtors' Senior Management**

| Name/Position | Relevant Experience/Responsibilities | Date of Hire |
|---|---|---|
| *George A. Weiss,* Chief Executive Officer & Treasurer; Executive Committee Member of WMSA, GWA, OGI | Responsible for reviewing financial reports, participating in board meetings and reviewing suggestions from managers and employees to maximize employee productivity. Also acts as a spokesperson for the Debtors to give quotes to media personnel in response to upcoming company events and product launches or legal matters. | 1978 |
| *Jordi Visser,* President, Chief Investment Officer; Executive Committee Member of WMSA, GWA, OGI | Responsible for the research, evaluation and selection of investment vehicles. Plans and directs all aspects of an organization's investment programs. Demonstrates expertise in a variety of the field's concepts, practices, and procedures. Manages departmental function within a broader corporate function. Works with external portfolio managers, analyst, and investors. Develops major goals to support broad functional objectives. Approves policies developed within various sub-functions and departments. Reports to top management. | August 1, 2005 |
| *Steven Breen,* Chief Technology Officer | Responsible for long-range direction of an organization's technology function. Directs strategic design, acquisition, management, and implementation of an enterprise-wide technology infrastructure. Monitors and analyzes technology and trends that could improve company's products and performance. Establishes technology standards and communicates technical information to organization. Manages a business unit, division, or corporate function with major organizational impact. Establishes overall direction and strategic initiatives for given major function. | October 30, 2009 |

A-448

| Name/Position | Relevant Experience/Responsibilities | Date of Hire |
|---|---|---|
| *Jeffrey Dillabough*, General Counsel and Secretary | Responsible for providing legal advice and strategies to the firm's executive team. The main duties include reviewing and writing various internal legal contracts, negotiating, and managing client and vendor contracts and ensuring legal compliance. | May 18, 2009 |
| *Pierce Archer*, Chief Operating Officer | Responsible for the leadership, management, and vision necessary to ensure that the company has the proper operational controls, administrative and reporting procedures, and people systems in place to effectively grow the organization and to ensure financial strength and operating efficiency. The position accomplishes this through a respectful, constructive, and energetic style, guided by the objectives of the company. | November 6, 2006 |
| *Scott Crowell*, Interim Chief Financial Officer | Responsible for ensuring that the financial operations of the firm are carried out in an ethically responsible manner. | September 28, 2007 |
| *Michele Lanzoni*, Controller | Responsible for driving all activities related to accounting processes, payroll, controls and procedures, financial reporting, and audit support. | November 2, 1987 |

A-449

---

**Fill in this information to identify the case:**

Debtor name  **Weiss Multi-Strategy Advisers LLC**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF NEW YORK

Case number (if known)  **24-10743**

☑ Check if this is an amended filing

---

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

---

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* _____
- ☑ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  **June 11, 2024**         *X* **/s/ Michele Lanzoni**
                                        Signature of individual signing on behalf of debtor

                                        **Michele Lanzoni**
                                        Printed name

                                        **Controller**
                                        Position or relationship to debtor

---

24-10743-mg Doc 369 Filed 06/11/24 Entered 06/11/24 12:05:40 Main Document Pg 2 of 4

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Weiss Multi-Strategy Advisers LLC** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK |
| Case number (if known): | **24-10743** |

☑ Check if this is an

amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|
| | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Leucadia Asset Management Holdings LLC** 520 Madison Avenue New York, NY 10022 | **Scott S. Balber** Scott.Balber@hsf.com 917-542-7810 | all assets | **Disputed** | $52,473,259.00 | Unknown | $52,473,259.00 |
| **Jefferies Strategic Investments, LLC** c/o Leucadia Asset Management Holdings 520 Madison Avenue New York, NY 10022 | **Scott S. Balber** Scott.Balber@hsf.com 917-542-7810 | all assets | **Disputed** | $43,190,924.00 | Unknown | $43,190,924.00 |
| **Mutual of America Life Insurance Company** 320 Park Avenue New York, NY 10022 | **Eileen Dillon** Eileen.Dillon@jll.com 212-308-0320 | Lease | **Subject to Setoff** | | | $3,588,490.22 |
| **Jason Osier** ▮▮▮▮▮▮▮▮ | josier75@gmail.com (646) 734-9214 | | | | | $2,922,350.00 |
| **Andrew Pizzi** ▮▮▮▮▮▮▮▮ | andrew.pizzi@gmail.com (201) 787-6547 | | **Contingent** | | | $2,079,132.28 |
| **Jefferies LLC** c/o Leucadia Asset Management Holdings 520 Madison Avenue New York, NY 10022 | **Scott S. Balber** Scott.Balber@hsf.com 917-542-7810 | | **Disputed** | | | $1,611,111.00 |

A-451

24-10743-mg Doc 369 Filed 06/11/24 Entered 06/11/24 12:05:40 Main Doc
Pg 3 of 4

| Debtor | Weiss Multi-Strategy Advisers LLC | | | Case number *(if known)* | 24-10743 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim  If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Bo Yang | bo.yang@gmail.com (917) 526-3893 | | Contingent | | | $1,308,743.85 |
| Andrew Mahony | andrewmahony2004@yahoo.com (917) 533-8194 | | Contingent | | | $1,203,954.68 |
| David F Betten | Betten@gmail.com 917-902-6118 | | Contingent | | | $1,100,356.96 |
| David Greenbaum | davegreenbaum@gmail.com (646) 637-6182 | | Contingent | | | $1,087,413.85 |
| Bo Yang | | | | | | $1,053,346.31 |
| Andrew Pizzi | | | | | | $948,831.79 |
| David A Feldman | dfeldmandsb@yahoo.com (917) 751-5495 | | Contingent | | | $870,143.58 |
| David Greenbaum | | | | | | $730,985.40 |
| Robin Nazarzadeh | Rnazarzadeh@hotmail.com (646) 623-6860 | | Contingent | | | $645,433.56 |
| Ron M Lior | ronlior490@gmail.com 917-696-9649 | | Contingent | | | $626,129.07 |
| Lundy R Wright | lundywright@gmail.com (201) 417-4920 | | Contingent | | | $587,616.32 |

A-452

| Debtor | Weiss Multi-Strategy Advisers LLC | | Case number *(if known)* | 24-10743 |
|---|---|---|---|---|
| | Name | | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Richard Biggs** | rickbiggs1@gmail.com<br>(917) 496-6850 | | **Contingent** | | | $552,032.77 |
| **Timothy Yam** | timyam@gmail.com<br>(917) 432-8681 | | **Contingent** | | | $535,528.27 |
| **Maxim Kulikov** | mkulikov13@gmail.com<br>(917) 553-9561 | | | | | $529,246.50 |

**Fill in this information to identify the case:**

Debtor name    **GWA, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK

Case number (if known)    **24-10744**

☑ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐   *Schedule H: Codebtors* (Official Form 206H)
☐   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐   Amended *Schedule*
☑   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐   Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **June 11, 2024**      **X** /s/ Michele Lanzoni
                 Signature of individual signing on behalf of debtor

                 **Michele Lanzoni**
                 Printed name

                 **Controller**
                 Position or relationship to debtor

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **GWA, LLC** |
| United States Bankruptcy Court for the: | **SOUTHERN DISTRICT OF NEW YORK** |
| Case number (if known): | **24-10744** |

☑ Check if this is an

amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
**12/15**

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Leucadia Asset Management Holdings LLC 520 Madison Avenue New York, NY 10022 | Scott S. Balber Scott.Balber@hsf.com 917-542-7810 | | Disputed | $52,473,259.00 | Unknown | $52,473,259.00 |
| Jefferies Strategic Investments, LLC c/o Leucadia Asset Management Holdings 520 Madison Avenue New York, NY 10022 | Scott S. Balber Scott.Balber@hsf.com 917-542-7810 | all assets | Disputed | $43,190,924.00 | Unknown | $43,190,924.00 |
| Mutual of America Life Insurance Company 320 Park Avenue New York, NY 10022 | | | Subject to Setoff | | | $3,588,490.22 |
| American Express P.O. Box 1270 Newark, NJ 07101 | Patrick Holzman, American Express patrick.t.holzman@aexp.com 623-492-4395 | | Disputed | | | $34,683.11 |
| American Express P.O. Box 1270 Newark, NJ 07101 | Patrick Holzman, American Express patrick.t.holzman@aexp.com 623-492-4395 | | Disputed | | | $19,368.11 |
| American Express P.O. Box 1270 Newark, NJ 07101 | Patrick Holzman, American Express patrick.t.holzman@aexp.com 623-492-4395 | | Disputed | | | $5,853.97 |

A-455

---

**Fill in this information to identify the case:**

Debtor name    **OGI Associates LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK

Case number (if known)    **24-10745**

☑ Check if this is an amended filing

---

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

---

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐    *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐    *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐    *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐    *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐    *Schedule H: Codebtors* (Official Form 206H)
☐    *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐    Amended *Schedule*
■    *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐    Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **June 11, 2024**         X **/s/ Michele Lanzoni**
                                            Signature of individual signing on behalf of debtor

                                            **Michele Lanzoni**
                                            Printed name

                                            **Controller**
                                            Position or relationship to debtor

---

Official Form 202            **Declaration Under Penalty of Perjury for Non-Individual Debtors**

A-456

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **OGI Associates LLC** |
| United States Bankruptcy Court for the: | **SOUTHERN DISTRICT OF NEW YORK** |
| Case number (if known): | **24-10745** |

☑ Check if this is an

amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders                                        12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Leucadia Asset Management Holdings LLC 520 Madison Avenue New York, NY 10022 | Scott Balber Scott.Balber@hsf.com 917-542-7810 | | Disputed | $52,473,259.00 | Unknown | $52,473,259.00 |
| Jefferies Strategic Investments, LLC c/o Leucadia Asset Management Holdings 520 Madison Avenue New York, NY 10022 | Scott S. Balber Scott.Balber@hsf.com 917-542-7810 | | Disputed | $43,190,924.00 | Unknown | $43,190,924.00 |
| Júdice Glória, Taborda da Gama, SA SP RL Rue Alexandre Herculano 38-4 1250-011 Lisbon, Portugal | | | | | | $9,130.57 |

A-457

---

**Fill in this information to identify the case:**

Debtor name  **Weiss Special Operations LLC**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF NEW YORK

Case number (if known)  **24-10746**

☑ Check if this is an amended filing

---

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.** Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

---

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐ *Schedule H: Codebtors* (Official Form 206H)
☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐ Amended *Schedule* _____
☑ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  **June 11, 2024**          **X /s/ Michele Lanzoni**
                                         Signature of individual signing on behalf of debtor

                                         **Michele Lanzoni**
                                         Printed name

                                         **Controller**
                                         Position or relationship to debtor

---

Official Form 202                **Declaration Under Penalty of Perjury for Non-Individual Debtors**

A-458

24-10746  Doc 169  Filed 06/10/24  Entered 06/11/24 23:02:36  Main Document
Pg 2 of 2

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Weiss Special Operations LLC** |
| United States Bankruptcy Court for the: | **SOUTHERN DISTRICT OF NEW YORK** |
| Case number (if known): | **24-10746** |

☑ Check if this is an

amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders                                                    12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Leucadia Asset Management Holdings LLC 520 Madison Avenue New York, NY 10022** | **Scott S. Balber**<br><br>**Scott.Balber@hsf.com**<br>**917-542-7810** | | **Disputed** | **$52,473,259.00** | **Unknown** | **$52,473,259.00** |
| **Jefferies Strategic Investments, LLC c/o Leucadia Asset Management Holdings 520 Madison Avenue New York, NY 10022** | **Scott S. Balber**<br><br>**Scott.Balber@hsf.com**<br>**917-542-7810** | | **Disputed** | **$43,190,924.00** | **Unknown** | **$43,190,924.00** |

A-459

**Fill in this information to identify the case:**

Debtor name  **Weiss Multi-Strategy Funds LLC**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF NEW YORK

Case number (if known)  _____

☐ Check if this is an amended filing

## Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐  *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐  *Schedule H: Codebtors* (Official Form 206H)
☐  *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐  Amended *Schedule*
■  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐  Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  **June 19, 2024**          X **/s/ George Weiss**
                                          Signature of individual signing on behalf of debtor

                                          **George Weiss**
                                          Printed name

                                          **Authorized Person**
                                          Position or relationship to debtor

Official Form 202                **Declaration Under Penalty of Perjury for Non-Individual Debtors**

A-460

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Weiss Multi-Strategy Funds LLC** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK |
| Case number (if known): | |

☐ Check if this is an

amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders                12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| -NONE- | | | | | | |

## GLOBAL NOTES, METHODOLOGY AND SPECIFIC
## DISCLOSURES REGARDING WMSF'S SCHEDULES OF
## ASSETS AND LIABILITIES AND STATEMENT OF FINANCIAL AFFAIRS

### Introduction

On April 29, 2024 (the "Initial Petition Date"), Weiss Multi-Strategy Advisers LLC ("WMSA"), GWA, LLC ("GWA"), OGI Associates LLC ("OGI") and Weiss Special Operations LLC ("WSO and, together with WMSA, GWA and OGI, collectively, the "Initial Debtors") filed voluntary petitions under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") commencing these chapter 11 cases before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court" or the "Court") [Dkt. No. 1], which are jointly administered under the caption *Weiss Multi-Strategy Advisers LLC, et al.,* Case No. 24-10743 (Bankr. S.D.N.Y.). On June 19, 2024 (the "WMSF Petition Date") Weiss Multi-Strategy Funds LLC ("WMSF" and, together with the Initial Debtors, the "Debtors") filed its voluntary petition under chapter 11 of the Bankruptcy Code before the Bankruptcy Court, Case No. 24-11075 (Bankr. S.D.N.Y.). WMSF has requested that its chapter 11 case be jointly administered with the Initial Debtors' chapter 11 cases under the caption *Weiss Multi-Strategy Advisers LLC, et al.,* Case No. 24-10743 (Bankr. S.D.N.Y.).

These *Global Notes, Methodology, and Specific Disclosures Regarding WMSF's Schedules of Assets and Liabilities and Statement of Financial Affairs* (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of WMSF's Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements"). The Global Notes should be referred to, considered, and reviewed in connection with any review of the Schedules and Statements.

The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled with the financial statements of the Debtors. Additionally, the Schedules and Statements contain unaudited information that is subject to further review and potential adjustment and reflect the Debtors' reasonable efforts to report their assets and liabilities.

In preparing the Schedules and Statements, the Debtors relied upon information derived from their books and records available at the time of such preparation. Although the Debtors have made reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, inadvertent errors or omissions may exist, and subsequent information or discovery may result in material changes to the Schedules and Statements. Accordingly, the Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, interpreting, reporting, communicating, or delivering the information contained in the Schedules and Statements.

Except as expressly required by the Bankruptcy Code, the Debtors, their attorneys and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-

categorize the information provided in the Schedules and Statements or to notify any third party should the information be updated, modified, revised, or re-categorized. The Debtors, on behalf of their officers, agents, and advisors, disclaim any liability to any third party arising out of or related to the information contained in the Schedules and Statements and reserve all rights with respect thereto.

George Weiss has signed the Schedules and Statements. Mr. Weiss is an authorized signatory for WMSF and each of the Debtors in these bankruptcy cases. In reviewing and signing the Schedules and Statements, Mr. Weiss has necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and their legal advisors. Mr. Weiss has not (and could not have) personally verified the accuracy of each such statement and representation, including, for example, statements and representations concerning amounts owed to creditors and their addresses.

## Global Notes and Overview of Methodology

1. **Reservation of Rights**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, without limitation, to: amend the Schedules and Statements with respect to claim description or designation; dispute or otherwise assert offsets or defenses to any claim as to amount, liability, priority, status, or classification; designate any claim as "disputed," "contingent," or "unliquidated"; or object to the extent, validity, enforceability, priority, or avoidability of any claim. Any failure to designate a claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such claim or amount is not "disputed," "contingent," or "unliquidated." Listing a claim does not constitute an admission of liability by the Debtor against which the claim is listed or by any of the Debtors. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' bankruptcy cases, including, without limitation, issues involving claims, defenses, equitable subordination, recharacterization, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtors are not hereby committing or obligating themselves to update the Schedules and Statements.

2. **Description of Cases and "as of" Information Date**. The asset information provided in the Schedules and Statements, except as otherwise noted, represents the asset data of the Debtors as of the WMSF Petition Date, and the liability information provided herein, except as otherwise noted, represents the liability data of the Debtors as of the WMSF Petition Date.

3. **Net Book Value of Assets**. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations for all

of their assets. Additionally, because the book values of certain assets, such as equipment, may materially differ from their fair market values, they may be listed as undetermined amounts as of the WMSF Petition Date. Furthermore, as applicable, assets that have fully depreciated or were expensed for accounting purposes may not appear in the Schedules and Statements if they have no net book value.

4. **Recharacterization**. Notwithstanding the Debtors' reasonable efforts to properly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors may, nevertheless, have improperly characterized, classified, categorized, designated, or omitted certain items. Accordingly, the Debtors reserve all rights to recharacterize, reclassify, recategorize, further designate, add, or delete items reported in the Schedules and Statements as necessary or appropriate as additional information becomes available.

5. **Real Property and Personal Property–Leased**. In the ordinary course of their business, the Debtors may have leased various articles of personal property, including fixtures and equipment, from certain third-party lessors. The Debtors have made reasonable efforts to list all such leases in the Schedules and Statements.

6. **Excluded Assets and Liabilities**. The Debtors have sought to allocate liabilities between the prepetition and post-petition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and post-petition periods may change.

7. **Section 503(b)(9)**. The liabilities listed on the Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's claim.

8. **Executory Contracts and Unexpired Leases**. The Debtors' known executory contracts and unexpired leases have been set forth in Schedule G. The Debtors reserve all rights to add or delete items reported in Schedule G as necessary or appropriate as additional information becomes available, including, without limitation, as to whether contracts or leases listed therein, if any, were deemed executory or unexpired as of the WMSF Petition Date and remain executory and unexpired post-petition.

9. **Classifications**. Listing a claim or contract on (a) Schedule D as "secured," (b) Schedule E/F part 1 as "priority," (c) Schedule E/F part 2 as "unsecured," or (d) Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtors of the legal rights of the claimant, or a waiver of the Debtors' rights to recharacterize or reclassify such claims or contracts or leases or to setoff of such claims.

10. **Claims Description**. Schedules D and E/F permit the Debtors to designate a claim as "disputed," "contingent," and/or "unliquidated." Any failure to designate a claim as

3

"disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated," or that such claim is not subject to objection. The Debtors reserve all rights to dispute, or assert offsets or defenses to, any claim reflected on their respective Schedules and/or Statements on any grounds, including, without limitation, liability or classification, or to otherwise subsequently designate such claims as "disputed", "contingent", or "unliquidated" or object to the extent, validity, enforceability, priority, or avoidability of any claim. Moreover, listing a claim does not constitute an admission of liability by the Debtor against which the claim is listed or by any of the Debtors. The Debtors reserve all rights to amend their Schedules and Statements as necessary and appropriate, including, but not limited to, with respect to the claim description and designation.

11. **Estimates and Assumptions.** The preparation of the Schedules and Statements required the Debtors to make reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities on the date of the Schedules and Statements, and the reported amounts of revenues and expenses during the applicable reporting periods. Actual results could differ from such estimates.

12. **Causes of Action**. Despite reasonable efforts to identify all known assets, the Debtors may not have listed all causes of action or potential causes of action against third-parties as assets in the Schedules and Statements, including, without limitation, causes of actions arising under the provisions of chapter 5 of the Bankruptcy Code and any relevant non-bankruptcy laws to recover assets or avoid transfers. The Debtors reserve all rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross-claim, counter-claim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, whether asserted directly or derivatively, whether arising before, on, or after the WMSF Petition Date, in contract or in tort, in law, or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

13. **Parties-in-Interest.** In the circumstance where the Schedules and Statements require information regarding "insiders", the Debtors have included information with respect to certain individuals who the Debtors believe may be included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods. The listing of a party as an insider for the purposes of the Schedules and Statements is not intended to be, nor should it be, construed as an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used

4

for (1) the purposes of determining (i) control of the Debtors, (ii) the extent to which any individual exercised management responsibilities or functions or corporate decision-making authority over the Debtors, or (iii) whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code, or with respect to any theories of liability, or (2) any other purpose.

14. **Totals.** All totals that are included in the Schedules and Statements represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual total may be different from the listed total.

15. **Global Notes Control**. If the Schedules and Statements differ from these Global Notes, the Global Notes shall control.

### Specific Disclosures with Respect to the WMSF's Schedules and Statements

**Redactions.** Addresses of individuals have been redacted in accordance with the Court's *Order (I) Extending Debtors' Time to File Schedules and Statements of Financial Affairs and (II) Authorizing Debtors to Redact in Filed Documents and File Under Seal Personally Identifiable Information of Individuals* [Dkt. No. 56] (the "Redaction Order") and WMSF's pending Motion seeking application of the Redaction Order to WMSF [Dkt. No. 104].

**Schedule D.** The Debtors list the claims of Jefferies Strategic Investments, LLC and Leucadia Asset Management Holdings LLC (the "Jefferies Parties") as disputed secured claims on Schedule D. These claims are the subject of the Debtors' pending adversary proceeding against the Jefferies Parties [Adv. Pro. No. 24-01350] (the "Adversary Proceeding") wherein the Debtors have asserted, among other things, that these claims are avoidable to the extent arising under or secured pursuant to that certain alleged Forbearance Agreement dated as of February 12, 2024. See generally Complaint, Dkt. No. 1 [Adv. Pro. No. 24-01350], as amended from time to time. Nothing set forth in Schedule D or the other Schedules or Statements is intended to or shall constitute a waiver of any claim or defense or right of setoff the Debtors may have or assert at any time in connection with claims of the Jefferies Parties (or their affiliates) or the subject matter of the Adversary Proceeding.

**Schedule H**. Inclusion of any Debtor or other party as a co-debtor on Schedule H is not an admission of liability of such Debtor or other party as co-liable. For example, a Debtor may be listed as a co-debtor on Schedule H as a result of its purported guarantee which is the subject of dispute pursuant to the Debtors' pending Adversary Proceeding.

**Statement, Part 13, Line 31.** WMSF is a pass-through entity for tax consolidation purposes. WMSF is a disregarded entity of GWA, and the financial activities of WMSF are consolidated in the GWA tax return.

---

**Fill in this information to identify the case:**

Debtor name **Weiss Multi-Strategy Funds LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case number (if known) **24-11075**

☐ Check if this is an amended filing

---

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

---

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ■ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ■ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ■ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ■ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ■ *Schedule H: Codebtors* (Official Form 206H)
- ■ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ *Amended Schedule* _____
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __June 28, 2024__          X /s/ George Weiss
                                        Signature of individual signing on behalf of debtor

                                        George Weiss
                                        Printed name

                                        Authorized Person
                                        Position or relationship to debtor

---

Official Form 202                    Declaration Under Penalty of Perjury for Non-Individual Debtors

A-467

| Fill in this information to identify the case: |
|---|

Debtor name    **Weiss Multi-Strategy Funds LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK

Case number (if known)    **24-11075**

☐ Check if this is an amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals            12/15

| Part 1: | Summary of Assets |
|---|---|

1.  *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

    **1a. Real property:**
    Copy line 88 from *Schedule A/B*............................................................................................... $         **0.00**

    **1b. Total personal property:**
    Copy line 91A from *Schedule A/B*.............................................................................................. $     **173,196.57**

    **1c. Total of all property:**
    Copy line 92 from *Schedule A/B*............................................................................................... $     **173,196.57**

| Part 2: | Summary of Liabilities |
|---|---|

2.  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
    Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*............ $   **95,664,183.00**

3.  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

    **3a. Total claim amounts of priority unsecured claims:**
    Copy the total claims from Part 1 from line 5a of *Schedule E/F*................................................. $        **0.00**

    **3b. Total amount of claims of nonpriority amount of unsecured claims:**
    Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*....................... +$        **0.00**

4.  **Total liabilities** ....................................................................................................
    Lines 2 + 3a + 3b     $   **95,664,183.00**

**Fill in this information to identify the case:**

Debtor name    **Weiss Multi-Strategy Funds LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK

Case number (if known)    **24-11075**

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|
| 2.    **Cash on hand** | $135,602.20 |

3.    **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*
     Name of institution (bank or brokerage firm)      Type of account      Last 4 digits of account number

4.    **Other cash equivalents** *(Identify all)*

| 5.    **Total of Part 1.** | $135,602.20 |
|---|---|

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

■ No. Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.
■ Yes Fill in the information below.

11.    **Accounts receivable**

     11a. 90 days old or less:      37,594.37    -    0.00    = ....    $37,594.37
                         face amount            doubtful or uncollectible accounts

| Debtor | **Weiss Multi-Strategy Funds LLC** | | Case number *(If known)* | **24-11075** |
|---|---|---|---|---|
| | Name | | | |

12. **Total of Part 3.**
   Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

$37,594.37

---

**Part 4:    Investments**

13. **Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

---

**Part 5:    Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

■ No.  Go to Part 6.
☐ Yes Fill in the information below.

---

**Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

---

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

---

**Part 8:    Machinery, equipment, and vehicles**

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No.  Go to Part 9.
☐ Yes Fill in the information below.

---

**Part 9:    Real property**

54. **Does the debtor own or lease any real property?**

■ No.  Go to Part 10.
☐ Yes Fill in the information below.

---

**Part 10:    Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

---

**Part 11:    All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**
   Include all interests in executory contracts and unexpired leases not previously reported on this form.

■ No.  Go to Part 12.
☐ Yes Fill in the information below.

---

A-470

| Debtor | **Weiss Multi-Strategy Funds LLC** | Case number *(If known)* | **24-11075** |
|---|---|---|---|
| | Name | | |

**Part 12:** **Summary**

In Part 12 copy all of the totals from the earlier parts of the form

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $135,602.20 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $37,594.37 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9*..................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $173,196.57 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $173,196.57 |

A-471

**Fill in this information to identify the case:**

Debtor name **Weiss Multi-Strategy Funds LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case number (if known)   24-11075

☐ Check if this is an amended filing

Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Part 1:   List Creditors Who Have Secured Claims**

2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>Amount of claim<br><br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |
|---|---|---|---|
| **2.1** **Jefferies Strategic Investments, LLC**<br>Creditor's Name<br><br>**c/o Leucadia Asset Management Holdings**<br>**520 Madison Avenue**<br>**New York, NY 10022**<br>Creditor's mailing address<br><br>scott.balber@hsf.com<br>Creditor's email address, if known<br><br>Date debt was incurred<br><br>Last 4 digits of account number | Describe debtor's property that is subject to a lien<br><br>Describe the lien<br><br>**Is the creditor an insider or related party?**<br>■ No<br>☐ Yes<br>**Is anyone else liable on this claim?**<br>■ No<br>☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H) | **$43,190,924.00** | Unknown |
| Do multiple creditors have an interest in the same property?<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | As of the petition filing date, the claim is:<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed | | |
| **2.2** **Leucadia Asset Management Holdings LLC**<br>Creditor's Name<br><br>**520 Madison Avenue**<br>**New York, NY 10022**<br>Creditor's mailing address<br><br>scott.balber@hsf.com<br>Creditor's email address, if known<br><br>Date debt was incurred<br><br>Last 4 digits of account number | Describe debtor's property that is subject to a lien<br><br>Describe the lien<br><br>**Is the creditor an insider or related party?**<br>■ No<br>☐ Yes<br>**Is anyone else liable on this claim?**<br>■ No<br>☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H) | **$52,473,259.00** | Unknown |

A-472

| Debtor | **Weiss Multi-Strategy Funds LLC** | | Case number (if known) | 24-11075 |
|---|---|---|---|---|
| | Name | | | |

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply |
|---|---|
| ■ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ■ Disputed |

| 3. | Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | **$95,664,183. 00** |
|---|---|---|

| **Part 2:** | **List Others to Be Notified for a Debt Already Listed in Part 1** |
|---|---|

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **Herbert Smith Freehills 450 Lexington Avenue Attn: Scott S. Balber New York, NY 10017** | Line **2.1** | |
| **Herbert Smith Freehills 450 Lexington Avenue Attn: Scott S. Balber New York, NY 10017** | Line **2.2** | |

A-473

| Fill in this information to identify the case: |
| --- |

Debtor name __**Weiss Multi-Strategy Funds LLC**__

United States Bankruptcy Court for the: __SOUTHERN DISTRICT OF NEW YORK__

Case number (if known) __24-11075__

☐ Check if this is an
amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:    List All Creditors with PRIORITY Unsecured Claims**

1.  **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

■ No. Go to Part 2.

☐ Yes. Go to line 2.

**Part 2:    List All Creditors with NONPRIORITY Unsecured Claims**

3.  **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill
out and attach the Additional Page of Part 2.

| | | |
| --- | --- | --- |
| 3.1 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* _____ |
| | | ☐ Contingent |
| | | ☐ Unliquidated |
| | **Date or dates debt was incurred** _____ | ☐ Disputed |
| | **Last 4 digits of account number** _____ | **Basis for the claim:** _____ |
| | | **Is the claim subject to offset?** ☐ No  ☐ Yes |

**Part 3:    List Others to Be Notified About Unsecured Claims**

4. **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies,
assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
| --- | --- | --- |
| | | |

**Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims**

5.  Add the amounts of priority and nonpriority unsecured claims.

| | | | **Total of claim amounts** |
| --- | --- | --- | --- |
| **5a. Total claims from Part 1** | 5a. | $ | 0.00 |
| **5b. Total claims from Part 2** | 5b. + | $ | 0.00 |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ | 0.00 |

A-474

| Fill in this information to identify the case: |
|---|

Debtor name       **Weiss Multi-Strategy Funds LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF NEW YORK

Case number (if known)       24-11075

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.   **Does the debtor have any executory contracts or unexpired leases?**
   ■ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.
   ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal* *Property* (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| 2.1   State what the contract or lease is for and the nature of the debtor's interest | |
|       State the term remaining | |
|       List the contract number of any government contract | |
| 2.2   State what the contract or lease is for and the nature of the debtor's interest | |
|       State the term remaining | |
|       List the contract number of any government contract | |
| 2.3   State what the contract or lease is for and the nature of the debtor's interest | |
|       State the term remaining | |
|       List the contract number of any government contract | |
| 2.4   State what the contract or lease is for and the nature of the debtor's interest | |
|       State the term remaining | |
|       List the contract number of any government contract | |

A-475

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Weiss Multi-Strategy Funds LLC** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK |
| Case number (if known) | **24-11075** |

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| | **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 | GWA, LLC | P.O. Box 2857 Meriden, CT 06450 | Jefferies Strategic Investments, LLC | ■ D __2.1__ ☐ E/F ____ ☐ G ____ |
| 2.2 | OGI Associates LLC | P.O. Box 2857 Meriden, CT 06450 | Jefferies Strategic Investments, LLC | ■ D __2.1__ ☐ E/F ____ ☐ G ____ |
| 2.3 | Weiss Multi-Strategy Advisers LLC | P.O. Box 2857 Meriden, CT 06450 | Jefferies Strategic Investments, LLC | ■ D __2.1__ ☐ E/F ____ ☐ G ____ |
| 2.4 | Weiss Special Operations LLC | P.O. Box 2857 Meriden, CT 06450 | Jefferies Strategic Investments, LLC | ■ D __2.1__ ☐ E/F ____ ☐ G ____ |

A-476

---

**Fill in this information to identify the case:**

Debtor name  **Weiss Multi-Strategy Funds LLC**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF NEW YORK

Case number (if known)  **24-11075**

☐ Check if this is an amended filing

---

## Official Form 207
### Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy  04/22

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

**Part 1:**  **Income**

1. **Gross revenue from business**

   ☐ None.

   | Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
   | --- | --- | --- |
   | **From the beginning of the fiscal year to filing date:**<br>From  **1/01/2024** to **Filing Date** | ☐ Operating a business<br>■ Other  **WMSA Exclusivity Fee** | $312,506.00 |

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ■ None.

   | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
   | --- | --- |
   |  |  |

**Part 2:**  **List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ☐ None.

   | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
   | --- | --- | --- | --- |
   | 3.1.  **GWA, LLC**<br>**P.O. Box 2857**<br>**Meriden, CT 06450** | 3/28/24<br>4/15/24 | $554,216.56 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other__ |

A-477

24-11075-mg   Doc 359-1   Filed 06/26/24   Entered 06/28/24 10:53:07   Main Document
Pg 17 of 23

Debtor    **Weiss Multi-Strategy Funds LLC**                                Case number (if known)    24-11075

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|---|
| 3.2. | **Weiss Multi-Strategy Advisers LLC**<br>**P.O. Box 2857**<br>**Meriden, CT 06450** | 3/28/24<br>4/5/24 | $162,782.82 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ☐ None.

| | Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|---|
| 4.1. | **Weiss Multi-Strategy Advisers LLC**<br>**P.O. Box 2857**<br>**Meriden, CT 06450** | 6/30/2023<br>7/27/2023<br>8/31/2023<br>10/2/2023<br>10/31/2023<br>11/27/2023<br>12/29/2023<br>1/31/2024<br>2/29/2024 | $610,916.83 | |
| 4.2. | **GWA, LLC**<br>**P.O. Box 2857**<br>**Meriden, CT 06450** | 6/30/2023<br>7/27/2023<br>8/31/2023<br>10/2/2023<br>11/27/2023<br>12/29/2023 | $68,447.74 | |

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

   ■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**
   List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

   ■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**Part 3:    Legal Actions or Assignments**

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
   List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

A-478

| Debtor | **Weiss Multi-Strategy Funds LLC** | Case number *(if known)* | **24-11075** |
| --- | --- | --- | --- |

■ None.

| Case title Case number | Nature of case | Court or agency's name and address | Status of case |
| --- | --- | --- | --- |

**8. Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

**Part 4:   Certain Gifts and Charitable Contributions**

9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
| --- | --- | --- | --- |

**Part 5:   Certain Losses**

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss | Dates of loss | Value of property lost |
| --- | --- | --- | --- |
| | If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | | |

**Part 6:   Certain Payments or Transfers**

11. **Payments related to bankruptcy**
List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| | Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
| --- | --- | --- | --- | --- |
| 11.1. | **Klestadt Winters Jureller Southard & St 200 West 41st Street 17th Floor New York, NY 10036** | **Attorney Fees (aggregate among all affiliated Debtors)** | 2/13/24 2/14/24 2/29/24 3/20/24 4/5/24 4/29/24 | **$458,190.00** |
| | Email or website address tklestadt.com | | | |
| | Who made the payment, if not debtor? GWA, LLC (affiliated debtor) | | | |

12. **Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

A-479

| Debtor | Weiss Multi-Strategy Funds LLC | Case number *(if known)* | 24-11075 |
|---|---|---|---|

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**

List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

## Part 7: Previous Locations

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| | Address | Dates of occupancy From-To |
|---|---|---|
| 14.1. | 320 Park Avenue 20th Floor New York, NY 10021 | 2003-03/2024 |

## Part 8: Health Care Bankruptcies

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

## Part 9: Personally Identifiable Information

**16. Does the debtor collect and retain personally identifiable information of customers?**

■ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

■ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

## Part 10: Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

A-480

| Debtor | Weiss Multi-Strategy Funds LLC | Case number *(if known)* | 24-11075 |
|---|---|---|---|

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Does debtor still have it? |
|---|---|---|---|

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

■ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|

**Part 11: Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

**Part 12: Details About Environment Information**

For the purpose of Part 12, the following definitions apply:

*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

■ No.

☐ Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

A-481

24-11075-mg Doc 359 Filed 06/26/24 Entered 06/28/24 10:53:07 Main Document
Pg 21 of 23

| Debtor | Weiss Multi-Strategy Funds LLC | Case number *(if known)* | 24-11075 |
|---|---|---|---|

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

24. Has the debtor notified any governmental unit of any release of hazardous material?

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**Part 13:** Details About the Debtor's Business or Connections to Any Business

25. **Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

■ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|

26. **Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
☐ None

| Name and address | Date of service<br>From-To |
|---|---|
| 26a.1.   **Michele M Lanzoni** ████████████████ | |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Date of service<br>From-To |
|---|---|
| 26b.1.   **KPMG LLP**<br>**PO Box 120511**<br>**Dallas, TX 75312** | |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1.   **Michele M Lanzoni** ████████████████ | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|

24-11075-mg   Doc 359   Filed 06/26/24   Entered 06/28/24 15:33:07   Main Document
Pg 22 of 23

| Debtor | Weiss Multi-Strategy Funds LLC | Case number *(if known)* | 24-11075 |

| | Name and address |
|---|---|
| 26d.1. | **Jefferies Strategic Investments, LLC**<br>c/o Leucadia Asset Management Holdings<br>520 Madison Avenue<br>New York, NY 10022 |
| 26d.2. | **Financial Industry Regulatory Authority**<br>1700 K Street, NW<br>Washington, DC 20006 |
| 26d.3. | **Securities and Exchange Commission**<br>100 F St NE<br>Washington, DC 20549 |
| 26d.4. | **All 50 States** |

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28.** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Michele M Lanzoni | ███████ | | |

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No

☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| Victoria Stearns | ███████ | Interim CEO and President; Chief Compliance Officer | 1/2020 - 4/2024 |

**30. Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No

☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No

☑ Yes. Identify below.

A-483

| Debtor | Weiss Multi-Strategy Funds LLC | Case number *(if known)* | 24-11075 |
|---|---|---|---|

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| GWA, LLC | EIN:   06-1457079 |

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

■ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| | |

| **Part 14:** | **Signature and Declaration** |
|---|---|

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   __June 28, 2024__

__/s/ George Weiss__                                    __George Weiss__
Signature of individual signing on behalf of the debtor         Printed name

Position or relationship to debtor   __Authorized Person__

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
■ No
☐ Yes

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
John E. Jureller, Jr.
Lauren C. Kiss
Stephanie R. Sweeney
200 West 41st Street, 17th Floor
New York, New York 10036
(212) 972-3000

*Attorneys for Debtors and Debtors-in-Possession*
*Weiss Multi-Strategy Advisors LLC and its affiliated debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**WEISS MULTI-STRATEGY ADVISERS**<br>**LLC,** *et al.,* [1]<br><br>　　　　　　　　　**Debtors**. | ) ) ) ) ) ) ) | **Chapter 11**<br><br>**Case No. 24-10743 (MG)**<br>**(Joint Administration Requested)** |
| | | |

| | |
|---|---|
| GWA, LLC, WEISS MULTI-STRATEGY<br>ADVISERS LLC, OGI ASSOCIATES, LLC,<br>and WEISS SPECIAL OPERATIONS LLC,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　vs.<br><br>JEFFERIES STRATEGIC INVESTMENTS,<br>LLC and LEUCADIA ASSET<br>MANAGEMENT HOLDINGS, LLC,<br><br>　　　　　　　　　Defendants. | Adv. Proc. No. 24-<br><br>**COMPLAINT TO AVOID AND**<br>**RECOVER AVOIDABLE**<br>**TRANSFERS** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Weiss Multi-Strategy Advisers LLC (7518); GWA, LLC ("GWA") (7079); OGI Associates LLC ("OGI") (4493); and Weiss Special Operations LLC ("WSO") (7626). The location of Debtor Weiss Multi-Strategy Advisers LLC's principal place of business is 320 Park Avenue, 20th Floor, New York, New York 10022 and the Debtors' service address in these Chapter 11 Cases is P.O. Box 2857, Meriden, Connecticut 06450.

GWA, LLC ("GWA"), Weiss Multi-Strategy Advisers LLC ("WMSA"), OGI Associates, LLC ("OGI"), and Weiss Special Operations LLC ("WSO", and collectively with GWA, WMSA and OGI as the "Debtors" or the "Plaintiffs"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by their proposed counsel, file this complaint (the "Complaint") to avoid and recover certain transfers made by one or more of the Plaintiffs to or for the benefit of Jefferies Strategic Investments, LLC ("JSI") and Leucadia Asset Management Holdings, LLC ("LAM Holdings", and with JSI as the "Defendants"), on knowledge as to themselves and as to all other matters on information and belief, respectfully allege as follows:

## NATURE OF THE ACTION

1.       Plaintiffs seek a judgment avoiding as a preferential transfer and/or fraudulent conveyance that certain alleged[2] amended forbearance agreement, dated February 12, 2024 ("Amended Forbearance Agreement"), and any security interest granted or perfected in furtherance thereof.  The Amended Forbearance Agreement purports to provide Defendants, who were at all times unsecured creditors without any guarantees, with, among other things, (i) a first priority security interest in all of Plaintiffs' assets, (ii) joint and several guarantees by each of the Debtors (whether party to the Notes (as defined later herein), or not), and (iii) an offset on any fees that JSI owes to GWA or any other Debtor under the IMA (as defined later herein), in exchange for a forbearance for all of *two business days*.

2.       Further, Plaintiffs seek a money judgment relating to certain avoidable transfers in the aggregate amounts of $3 million made by Plaintiffs to JSI in the ninety (90) day, and in the aggregate sum of $20,000,000 during the two (2) year period, respectively, preceding the

---

[2]Plaintiffs never received a fully executed copy of the Amended Forbearance Agreement.  Plaintiffs reserve all rights which may apply due to the failure of Defendants to transmit a fully executed copy of the Amended Forbearance Agreement, including a judgment that such agreement is null and void to the extent not signed by the Defendants prior to the Petition Date.

commencement of the Debtors' bankruptcy cases (each transfer, an "<u>Avoidable Transfer</u>" and, collectively, the "<u>Avoidable Transfers</u>"). The Avoidable Transfers are set forth on <u>Schedule 1</u> hereto.

3.  Specifically, Plaintiffs seek entry of a judgment against Defendants (a) avoiding, (i) pursuant to 11 U.S.C. § 547(b), preferential transfers to or for the benefit of the Defendants, and (ii) pursuant to 11 U.S.C. § 548(a)(1)(B) any transfers that may have been fraudulent conveyances, including the Amended Forbearance Agreement and security interests contained therein; (b) preserving for the benefit of the estate, the Avoidable Transfers or the value thereof pursuant to 11 U.S.C. § 551; (c) pursuant to 11 U.S.C. § 550(a), directing Defendants to pay to Plaintiffs an amount to be determined at trial that is not less than the amount of the Avoidable Transfers, plus interest and costs; and (d) pending such payment, disallowing any claim of Defendants against the Debtors pursuant to 11 U.S.C. § 502(d) ("<u>Section 502</u>").

4.  To the extent that Defendants have filed a proof of claim or have a claim listed on the Debtors' schedules as undisputed, liquidated, and not contingent, or have otherwise requested payment from the Debtors or the Debtors' Chapter 11 estates (collectively, the "<u>Claims</u>"), this Complaint is not intended to be, nor should it be construed as, a waiver of the Debtors' right to object to such Claims for any reason including, but not limited to, Section 502, and such rights are expressly reserved. Further, this Complaint is not intended to be, nor should it be construed as, a waiver of the Debtors' right to assert any other claim against the Defendants, including any claim for monies owed by either of the Defendants to the Debtors.

3

## JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the Southern District of New York (this "Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1331 and 1334(b).

6.      The statutory and legal predicates for the relief sought herein are sections 502(d), 547(b), 548(a)(1)(B), 550 and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.      This proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

8.      Venue in this district is proper pursuant to 28 U.S.C. § 1409 because this proceeding arises in a case under the Bankruptcy Code pending in this district.

## PARTIES

**Plaintiffs**

9.      GWA is a Connecticut limited liability company with offices located at 400 Capital Boulevard, Suite 201, Rocky Hill, Connecticut 06067.

10.     WMSA is a Delaware limited liability company with offices located at 320 Park Avenue, 20th Floor, New York, New York 10022.

11.     OGI is a Connecticut limited liability company with offices located at 400 Capital Boulevard, Suite 201, Rocky Hill, Connecticut 06067.

12.     WSO is a Connecticut limited liability company with offices located at 400 Capital Boulevard, Suite 201, Rocky Hill, Connecticut 06067.

**Defendants**

13.     JSI is a Delaware limited liability company with offices located at 520 Madison

4

Avenue, New York, New York.

14.    LAM Holdings is a Delaware limited liability company with offices located at 520 Madison Avenue, New York, New York.

### BACKGROUND

15.    On April 29, 2024 (the "Petition Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.

16.    The Debtors continue to operate their businesses as debtors and debtors-in-possession.

17.    To date, no trustee has been appointed for the Debtors or their estates.

**A. The Debtors' Businesses.**

18.    GWA is a holding company, which holds the equity interests of the other Debtor entities.

19.    WMSA acts as a discretionary investment adviser to a number of private investment funds organized by WMSA, a mutual fund and a UCITS fund. WMSA also advises managed accounts owned by institutional investors over which it exercises sole investment discretion.

20.    On behalf of its clients, WMSA invests and trades in a wide range of U.S. and non-U.S. equities, fixed income securities, convertibles, options, other derivatives such as swaps, credit default protection and contracts for differences, futures, forward contracts, debt instruments and other types of financial instruments.  In connection with client trading, WMSA employs short-selling techniques and may utilize leverage and/or make margin purchases. There are generally no restrictions on WMSA's use of leverage or borrowing, other than those which may be imposed by applicable statutes and regulations or by the owner of a separately managed account.

21.    OGI is an investment company that contains GWA's excess capital.

5

22.     WSO was originally established to provide administrative services for the investment funds.  In 2016, it assigned its employees to WMSA and since then has been in the process of liquidating its assets.

23.     As of December 31, 2023, WMSA managed approximately $ 2.3 billion dollars in net assets on a discretionary basis.

24.     On March 1, 2024, as a result of, *inter alia*, actions taken by the Defendants as set forth below, the Debtors and any non-debtor affiliates announced their intentions to cease operations, terminate their advisory and affiliated businesses, close the managed funds and begin the process of returning capital to its clients.  To date, the majority of the Debtors' managed funds' assets have been liquidated and the majority of the proceeds have been or in the process of being distributed to the investors.

**B.  Agreements between Parties.**

25.     Over the course of their relationship, certain of the Debtors (GWA and WMSA) and the Defendants were parties to certain agreements (as amended and restated), including wherein at relevant times Defendants held profit equity interest in certain of the Debtors and were entitled to a share of the revenue of the Debtors.

26.     LAM Holding LLC ("LAM Holding") and GWA entered into that certain Strategic Relationship Agreement dated as of May 1, 2018 (as amended, the "SR Agreement").

27.     In connection with LAM Holding entering into the SR Agreement, WMSA and JSI (under its former name "Leucadia Fundings LLC") entered into the Investment Management Agreement dated May 1, 2018 (as amended, the "IMA").

28.     LAM Holding assigned all of its rights under the SR Agreement to LAM Holdings (under its former name Jefferies Asset Management Holdings LLC)(LAM Holdings, collectively

6

with JSI and their affiliated entities, the "Jefferies Parties"), pursuant to the Assignment and Assumption Agreement dated as of October 18, 2018 between LAM Holding and LAM Holdings.

29.     LAM Holding merged with and into LAM Holdings as of December 1, 2021, with LAM Holdings as the surviving company.

30.     GWA, WMSA, and JSI, as successor in interest to JFG Funding LLC, are parties to that certain Note Purchase Agreement, dated as of December 3, 2019 (as amended, the "2019 Note Purchase Agreement").

31.     GWA, WMSA, and JSI are parties to that certain Note Purchase Agreement, dated as of September 21, 2022 (as amended, the "2022 Note Purchase Agreement" and collectively with the 2019 Note Purchase Agreement, the "Note Purchase Agreements").

32.     Pursuant to the Note Purchase Agreements, GWA has issued (i) a $31,250,000 Note dated December 3, 2019, (ii) a $18,750,000 Note dated January 13, 2020, and (iii) a $3,000,000 Note dated September 21, 2022 (collectively, the "Notes").

33.     Under the Note Purchase Agreements and the Notes, JSI was at all relevant times an unsecured creditor of GWA and WMSA.  There were no guarantees under the Note Purchase Agreements or the Notes.  Further, at all relevant times, LAM Holdings was an unsecured creditor under the SR Agreement.  None of these agreements were guaranteed by any other party.

34.     Prior to February 2024, JSI, on the one hand, and GWA and WMSA, on the other hand, as parties to the Note Purchase Agreements and the Notes, had entered into certain forbearance letters on January 1, 2022, September 1, 2022 and July 25, 2023 (the "Initial Forbearance Agreements"), pursuant to which JSI agreed to forebear from exercising certain remedies subject to certain conditions.  Under each of the Initial Forbearance Agreements, GWA and WMSA continued to operate in the ordinary course of business, including, among other things,

7

payment of ordinary course obligations including bi-monthly salary and year-end bonus/compensation. As per industry standard, the majority of the employees annual compensation was paid at year-end in February.

35.     On December 21, 2023, JSI delivered to GWA that certain Notice of Optional Redemption.

### C. Amended Forbearance Agreement.

36.     In February 2024, under the threat of the State Court Action (as defined below), the Defendants demanded that the Debtors enter into the Amended Forbearance Agreement. The Amended Forbearance Agreement substantially enhanced the nature and priority of their security for repayment of the Notes over all other creditors.

37.     The Amended Forbearance Agreement contained the following new provisions and clauses, each of which provided the Defendants with significant additional benefits under the Note Purchase Agreement and the Notes[3]:

a. Security interest:

*Each Weiss Party [the Debtors] grants and pledges to Secured Party [JSI] (as defined below), to secure the full and punctual payment of the Guaranteed Obligations when due (whether at the stated maturity, by acceleration or otherwise), a continuing security interest in all of such Weiss Party's right, title and interest in, to and under the Collateral, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof. The Secured Party's security interest shall continually exist until all Guaranteed Obligations have been paid in full. Each Weiss Party shall make notations, reasonably satisfactory to the Secured Party, on its books and records disclosing the existence of this security interest in the Collateral. "Collateral" shall mean all goods, accounts, equipment, inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, general intangibles, commercial tort claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or*

---

[3] The recited portions of the Amended Forbearance Agreement are for explanatory purposes. The full and complete Amended Forbearance Agreement shall apply.

electronic), cash, deposit accounts, securities accounts, certificates of deposit, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), securities, and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located; and all of each Weiss Party's books and records relating to the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds or any or all of the foregoing. Terms used in this definition shall have the meanings given to such terms in Article 9 of the Code (as defined below), as applicable.

b.  Guarantees[4]:

_Guaranty of Obligations_. Each Weiss Party (other than GWA) hereby irrevocably and unconditionally guarantees to each of JSI and LAM Holdings (collectively, the "Beneficiaries") and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due (whether at the states maturity, by acceleration or otherwise) of the Guaranteed Obligations (as defined herein). This guaranty shall remain in full force and effect until the Guaranteed Obligations are paid in full, notwithstanding any increase in the amount of the Guaranteed Obligations or any modification or amendment of any instrument governing the Guaranteed Obligations. As used herein, the term "_Guaranteed Obligations_" shall mean all the obligations of GWA and each other Weiss Party arising under any Note Purchase Agreement, the Notes, the SR Agreement and this Agreement, any loss, damage, penalty, action, judgment, suit, cost, expense, disbursement, liability, claim or other obligation, incurred by or behalf of any Beneficiary (including but not limited to reasonable out-of-pocket attorneys' fees and costs) arising out or, relating to or in connection with any Note Purchase Agreement, any Note, the SR Agreement, this Agreement or the transaction contemplated thereby.

_Nature of Guaranty_. This guaranty is an irrevocable, absolute, and continuing guaranty of the full and punctual payment and performance and not a guaranty of collection. This Guaranty may not be revoked by any Weiss Party and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by any Weiss Party.

---

[4] OGI and WSO were not signatories to any of the Notes, Note Purchase Agreements or SR Agreement, and were not guarantors thereunder.

    c.  Offset of indebtedness.

> *IMA Fees.  WMSA hereby agrees as of the date hereto to treat any amounts JSI owes WMSA pursuant to the IMA (including but not limited to any amounts for the period of January 1, 2023 through December 31, 2023, including but not limited to the Investment Teams Bonus Fees) as offsetting GWA's payment obligations to JSI under the Notes, and as a result (I) JSI shall have been deemed to have paid such amounts to WMSA and (ii) such deemed paid amounts shall be deemed to be a receipt by JSI of a payment by GWA on the Notes of such amounts.*

38.    In exchange for the substantial benefits received under the Amended Forbearance Agreement, the Defendants agreed to a Forbearance Period (as defined therein) of ***"the earlier of (i) two Business Days … or (y) the occurrence of any Forbearance Default"*** [as defined therein] (emphasis added).

39.    Under duress of the Defendants bringing an action to clawback the compensation from its employees, on February 12, 2024 the Debtors executed the Amended Forbearance Agreement.  To date, the Debtors have not received a counter-signed copy of the Amended Forbearance Agreement; nonetheless, on February 12, 2024 and February 13, 2024 the Defendants filed UCC-1 financing statements, seeking to perfect the security interests purportedly granted under the Amended Forbearance Agreement (the "Perfected Security Interests").

40.    The Amended Forbearance Agreement was a transfer of the Debtors' interests in property and/or an incurrence of an obligation by the Debtors, all for less than equivalent reasonable compensation.

41.    On February 17, 2024, the Defendants delivered to the Debtors a draft State Court complaint (the "State Court Action"), whereby they furthered their intention to commence an action against GWA and WMSA for breach of contract, and each of the employees of the Debtors who had received their annual compensation/bonus payment in February 2024 under causes of

action for avoidance of fraudulent conveyances as a result of, *inter alia*, certain purported fraudulent or false statements or false or misleading actions, i.e. the "clawback" of their respective annual compensation/bonus payment.

**D. Avoidable Transfers to Defendants.**

42.    During the ninety (90) days before the Petition Date, that is between January 31, 2024, and April 29, 2024, (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, or otherwise to certain entities, including to Defendants.

43.    During the two (2) years before the Petition Date, that is between April 29, 2022, and April 29, 2024, (the "Fraudulent Conveyance Period"), the Debtors conducted transfers and/or incurred obligations to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, or otherwise to Defendants.

44.    During the Preference Period and the Fraudulent Conveyance Period, respectively, the Debtors made certain of the Avoidable Transfers to the Defendants, as set forth on Schedule 1 hereto.

45.    On information and belief, the Avoidable Transfers were on account of an antecedent debt or were not prepayments for goods and/or services subsequently received, the Debtors did not receive reasonably equivalent value in exchange for the Avoidable Transfers, either (a) because the value of the services and/or goods received was in fact less than the Avoidable Transfers or (b) because the Debtors that received such goods and/or services were not the parties that had incurred the debt, and the Debtors were: (i) insolvent on the dates of the Avoidable Transfers or became insolvent as a result of the Avoidable Transfers; and/or (ii) engaged in business or a transaction for which any property remaining with the Debtors were

11

an unreasonably small capital at the time of, or as a result of, the Avoidable Transfers; and/or
(iii) the Debtors intended to incur, or believed that the Debtors would incur, debts that would be
beyond the Debtors' ability to pay as such debts matured.

46.     The Debtors are seeking to avoid all of the Avoidable Transfers of an interest in
any of the Debtors' property made by the Debtors to Defendants within the Preference Period and
the Fraudulent Conveyance Period.

47.     During the course of this proceeding, the Debtors may learn (through discovery or
otherwise) of additional transfers made to Defendants during the Preference Period, the Fraudulent
Conveyance Period or that are otherwise avoidable.  It is the Debtors' intention to avoid and
recover all transfers made by the Debtors of an interest of the Debtors in property to or for the
benefit of Defendants.

48.     To the extent that the Debtors' records do not accurately identify all transfers made
by the Debtors of an interest in the Debtors' property, including but not limited to any transfers
that cleared post-petition, the Debtors reserve their rights to amend this Complaint to include:
(a) further information regarding the Avoidable Transfers, (b) additional transfers,
(c) modifications of and/or revision of the Defendant's name or identity, (d) additional defendants,
and/or (e) additional causes of action (collectively, the "Amendments"), that may become known
to the Debtors at any time during the pendency of this adversary proceeding, through formal
discovery or otherwise, and for the Amendments to relate back to this Complaint.

**COUNT I - TO AVOID AMENDED FORBEARANCE AGREEMENT
AS A PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(b)**

49.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1
through 48 above as if fully set forth herein.

50.     During the Preference Period, the Debtors and Defendants entered into the

Amended Forbearance Agreement.

51.     During the Preference Period, Defendants were creditors of certain of the Debtors within the meaning of Bankruptcy Code section 547(b)(1) at the time of entry into the Amended Forbearance Agreement by virtue of, *inter alia*, the Note Purchase Agreements, the Notes and the SR Agreement for which certain of the Debtors were obligated to pay in accordance with the terms thereof.

52.     The Amended Forbearance Agreement was a transfer of an interest of the Debtors in property, including, among other things, (i) the granting of a priority security interest in all of Plaintiffs' assets, (ii) the issuance of joint and several guarantees by each of the Debtors (whether or not a party to the Note Purchase Agreements, Notes, or SR Agreement), and (iii) an offset on any fees that JSI owes to GWA or any other Debtor under the IMA.

53.     The Amended Forbearance Agreement was made to, or for the benefit of, Defendants because the terms thereof provided additional benefits to the Defendants, with little to no consideration therefor, to reduce or pay a debt to the Defendants.

54.     The Amended Forbearance Agreement was for or on account of antecedent debts owed by certain of the Plaintiffs to the Defendants.

55.     The Amended Forbearance Agreement was entered into during a time that Plaintiffs were insolvent.  Plaintiffs are entitled to the presumption of insolvency for each transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

56.     The Amended Forbearance Agreement was made on or entered within ninety (90) days prior to the Petition Date.

57.     The Amended Forbearance Agreement enabled Defendants to receive more than they would receive if (a) Plaintiffs' cases was cases under chapter 7 of the Bankruptcy Code,

13

(b) the Amended Forbearance Agreement had not been made, and (c) Defendants received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

58.    Defendants were either the initial beneficiary of the Amended Forbearance Agreement, the entity for whose benefit the Amended Forbearance Agreement was made, or were the immediate or mediate transferee of the initial transferee receiving the Amended Forbearance Agreement.

59.    By reason of the foregoing, the Amended Forbearance Agreement should be avoided and set aside as a preferential transfer pursuant to 11 U.S.C. § 547(b).

## COUNT II - TO AVOID AMENDED FORBEARANCE AGREEMENT AS A FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. § 548(a)(1)(B)

60.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 59 above as if fully set forth herein.

61.    The Amended Forbearance Agreement was made or entered into within two (2) years prior to the Petition Date.

62.    The Amended Forbearance Agreement was made to, or for the benefit of, the Defendants.

63.    The Amended Forbearance Agreement were transfers of an interest of the Debtors in property, or an incurrence of an obligation by the Debtors, including, among other things, (i) the granting of a priority security interest in all of Plaintiffs' assets, (ii) the issuance of joint and several guarantees by each of the Debtors (whether or not a party to the Note Purchase Agreements, Notes, or SR Agreement), and (iii) an offset on any fees that JSI owes to GWA or any other Debtor under the IMA.

64.    Subject to proof, the Debtors plead that to the extent the Amended Forbearance Agreement was not on account of an antecedent debt or were prepayments for goods and/or

14

services subsequently received by a particular Debtor, such Plaintiffs did not receive reasonably equivalent value in exchange for the Amended Forbearance Agreement, or the grant of security or additional compensation thereunder, either (a) because the value of the services and/or goods received was in fact less than the value of the Amended Forbearance Agreement or (b) because the Debtors that entered into the Amended Forbearance Agreement were not the parties (i.e. Plaintiffs) that had incurred or had any obligation for the debt, and the Debtors were: (i) insolvent on the dates of the Amended Forbearance Agreement or became insolvent as a result of the Amended Forbearance Agreement; and/or (ii) engaged in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital at the time of, or as a result of, the Amended Forbearance Agreement; and/or (iii) the Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

65.     By reason of the foregoing, the Amended Forbearance Agreement should be avoided and set aside as a fraudulent transfer.

### COUNT III - TO AVOID THE PERFECTED SECURITY INTERESTS AS PREFERENTIAL TRANSFERS AND/OR FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 547(b) AND 548(a)(1)(B)

66.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 above as if fully set forth herein.

67.     As set forth more fully above, the Amended Forbearance Agreement, and all transfers of property or obligations incurred thereunder, should be avoided and set aside as a preferential transfer pursuant to 11 U.S.C. § 547(b) and/or a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

68.     The Perfected Security Interests are a transfer of property of the Debtors' estates, and/or an incurrence of an obligation of the Debtors' estates, all without fair or reasonable

15

consideration therefor, and enabled Defendants to receive more than they would receive if (a) Plaintiffs' cases was cases under chapter 7 of the Bankruptcy Code, (b) the Amended Forbearance Agreement had not been made, and (c) Defendants received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

69.     By reason of the foregoing, the Perfected Security Interests, including any UCC-1 filing in furtherance thereof, resulting from the Amended Forbearance Agreement should also be avoided and set aside as either a preferential transfer or fraudulent transfer.

## COUNT IV - TO PRESERVE
## PROPERTY PURSUANT TO 11 U.S.C. § 551

70.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 69 above as if fully set forth herein.

71.     The interests and obligations incurred and/or transferred under the Amended Forbearance Agreement, including the Perfected Security Interests, are property of Plaintiffs' estates.

72.     Therefore, interests and obligations incurred and/or transferred under the Amended Forbearance Agreement, or the value thereof, should be preserved for the benefit of Plaintiffs' estates pursuant to § 551 of the Bankruptcy Code.

## COUNT V - TO RECOVER AVOIDABLE
## TRANSFERS PURSUANT TO 11 U.S.C. § 550

73.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 72 above as if fully set forth herein.

74.     Plaintiffs are entitled to avoid the Amended Forbearance Agreement, and any security interest therein, pursuant to 11 U.S.C. § 547(b) as a preferential transfer and the Amended Forbearance Agreement, and any security interest therein, pursuant to 11 U.S.C. § 548(a)(1)(B) as a fraudulent transfer.

16

75.     Defendants were an initial transferee of one or more of the interests and obligations incurred and/or transferred under the Amended Forbearance Agreement, the immediate or mediate transferee of such initial transferee, or the person for whose benefit the Amended Forbearance Agreement was made.

76.     Pursuant to 11 U.S.C. § 550(a), Plaintiffs are entitled to avoid the Amended Forbearance Agreement, including the Perfected Security Interests.

### COUNT VI - TO AVOID PREFERENTIAL
### TRANSFERS PURSUANT TO 11 U.S.C. § 547(b)

77.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 76 above as if fully set forth herein.

78.     During the Preference Period, Plaintiffs made the Avoidable Transfers to, or for the benefit of, the Defendants in the amount of $3,000,000.

79.     During the Preference Period, Defendants were creditors of Plaintiffs within the meaning of Bankruptcy Code section 547(b)(1) at the time of each Avoidable Transfer by virtue of the Note Purchase Agreements and the Notes for which Plaintiffs were obligated to pay in accordance with the Agreements.

80.     The Avoidable Transfers were transfers of an interest of Plaintiffs in property.

81.     According to the Debtors' books and records, the Avoidable Transfers were made to, or for the benefit of, Defendants because each Avoidable Transfer either reduced or fully satisfied a debt or debts then owed by Plaintiffs to Defendants.

82.     The Avoidable Transfers were made for or on account of antecedent debts owed by Plaintiffs to the Defendants.

83.     The Avoidable Transfers were made while Plaintiffs were insolvent. Plaintiffs are entitled to the presumption of insolvency for each transfer made during the Preference Period

pursuant to 11 U.S.C. § 547(f).

84.    The Avoidable Transfers were made on or within ninety (90) days prior to the

Petition Date.

85.    The Avoidable Transfers enabled Defendants to receive more than they would

receive if (a) Plaintiffs' cases was cases under chapter 7 of the Bankruptcy Code, (b) the Avoidable

Transfers had not been made, and (c) Defendants received payment of such debt to the extent

provided by the provisions of the Bankruptcy Code.

86.    Defendants were either the initial transferee of the Avoidable Transfers, the entity

for whose benefit the Avoidable Transfers were made, or were the immediate or mediate transferee

of the initial transferee receiving the Avoidable Transfers.

87.    By reason of the foregoing, each Avoidable Transfer should be avoided and set

aside as a preferential transfer pursuant to 11 U.S.C. § 547(b).

**COUNT VII - TO AVOID FRAUDULENT**
**TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)(1)(B)**

88.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1

through 87 above as if fully set forth herein.

89.    The Avoidable Transfers were made within two (2) years prior to the Petition Date.

90.    The Avoidable Transfers were made to, or for the benefit of, the Defendants.

91.    Subject to proof, Plaintiffs plead that to the extent one or more of the Avoidable

Transfers were not on account of an antecedent debt or were prepayments for goods and/or services

subsequently received, Plaintiffs did not receive reasonably equivalent value in exchange for the

Avoidable Transfers, either (a) because the value of the services and/or goods received was in fact

less than the Avoidable Transfers or (b) because the Debtors that received such goods and/or

services were not the parties (i.e. Plaintiffs) that had incurred the debt, and Plaintiffs were:

18

(i) insolvent on the dates of the Avoidable Transfers or became insolvent as a result of the Avoidable Transfers; and/or (ii) engaged in business or a transaction for which any property remaining with Plaintiffs was an unreasonably small capital at the time of, or as a result of, the Avoidable Transfers; and/or (iii) Plaintiffs intended to incur, or believed that Plaintiffs would incur, debts that would be beyond Plaintiffs' ability to pay as such debts matured.

92.     By reason of the foregoing, the Avoidable Transfers should be avoided and set aside as fraudulent transfers.

## COUNT VIII - TO PRESERVE
## PROPERTY PURSUANT TO 11 U.S.C. § 551

93.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 92 above as if fully set forth herein.

94.     The Avoidable Transfers are property of Plaintiffs' estates.

95.     Therefore, the Avoidable Transfers, or the value thereof, should be preserved for the benefit of Plaintiffs' estates pursuant to § 551 of the Bankruptcy Code.

## COUNT IX - TO RECOVER AVOIDABLE
## TRANSFERS PURSUANT TO 11 U.S.C. § 550

96.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 95 above as if fully set forth herein.

97.     Plaintiffs are entitled to avoid the Avoidable Transfers pursuant to 11 U.S.C. § 547(b), and the Avoidable Transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

98.     Defendants were an initial transferee of one or more of the Avoidable Transfers, the immediate or mediate transferee of such initial transferee, or the person for whose benefit one or more of the Avoidable Transfers were made.

99.     Pursuant to 11 U.S.C. § 550(a), Plaintiffs are entitled (i) to avoid the Amended Forbearance Agreement and (ii) to recover from Defendants an amount to be determined at trial

19

that is not less than the amount of the Avoidable Transfers as set forth on Schedule 1 hereof, plus

interest thereon to the date of payment and the costs of this action.

**COUNT X - TO DISALLOW**
**CLAIMS PURSUANT TO 11 U.S.C. § 502(d)**

100.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1

through 99 above as if fully set forth herein.

101.     Defendants are entities from which property is recoverable under 11 U.S.C. § 550.

102.     Defendants are the initial transferees of the Amended Forbearance Agreement

and/or Avoidable Transfers, the immediate or mediate transferee of such initial transferee, or the

person for whose benefit the Amended Forbearance Agreement was entered into, or one or more

of the Avoidable Transfers were made.

103.     Defendants have not paid the amount of any one of the Avoidable Transfers, or

turned over such property, for which Defendants are liable under 11 U.S.C. § 550.

104.     Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendants and/or their

assignees, against the Debtors' Chapter 11 estate or the Debtors must be disallowed until such time

as the Amended Forbearance Agreement is deemed null and void and/or the Defendants pay to

Plaintiffs all amounts sought for the Avoidable Transfers as set forth above.

*[Continued on Next Page]*

**WHEREFORE**, for the foregoing reasons, Plaintiffs respectfully request that this

Court enter judgment against Defendants:

    a) avoiding the Amended Forbearance Agreement, including the Perfected Security Interests arising thereunder, as a Preferential Transfer pursuant to 11 U.S.C. § 547(b), or, in the alternative, as a Fraudulent Transfer pursuant to 11 U.S.C. § 548(a)(1)(B);

    b) avoiding the Avoidable Transfers as Preferential Transfers pursuant to 11 U.S.C. § 547(b), or, in the alternative, as Fraudulent Transfers pursuant to 11 U.S.C. § 548(a)(1)(B);

    c) preserving for the benefit of the Debtors' estate interests or obligations purportedly transferred under the Amended Forbearance Agreement, the Perfected Security Interests and/or the Avoidable Transfers or the value thereof pursuant to 11 U.S.C. § 551;

    d) pursuant to 11 U.S.C. § 550(a), directing (a) that the Amended Forbearance Agreement, and the Perfected Security Interests arising thereunder, is null and void and/or (b) Defendant to pay to Plaintiffs an amount to be determined at trial that is not less than the aggregate amount of the Avoidable Transfers as set forth on Schedule 1 hereof, plus interests and costs;

    e) disallowing any Claim of Defendant against the Debtors pursuant to 11 U.S.C. § 502(d);

    f) requiring Defendants to pay forthwith the amount of the Judgment; and

    g) granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 29, 2024

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By: /s/John E. Jureller, Jr.
    Tracy L. Klestadt
    John E. Jureller, Jr.
    Lauren C. Kiss
    Stephanie R. Sweeney
200 West 41st St., 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Email: tklestadt@klestadt.com
      jjureller@klestadt.com
      lkiss@klestadt.com
      ssweeney@klestadt.com

A-505

**SCHEDULE 1**

| Transferor | Transferee | Date | Amount |
|---|---|---|---|
| GWA, LLC | JSI | 4/29/2022 | $5,000,000 |
| GWA, LLC | JSI | 7/29/2022 | $10,000,000 |
| GWA, LLC | JSI | 11/28/2023 | $2,000,000 |
| OGI Associates, LLC[5] | JSI | 2/15/2024 | $3,000,000 |
| | | | $20,000,000 |

---

[5] This amount was paid by OGI Associates, LLC on behalf of GWA, LLC.

22