# 25-914-cv

## United States Court of Appeals
### *for the*
## Second Circuit

JEFFERIES STRATEGIC INVESTMENTS, LLC,
LEUCADIA ASSET MANAGEMENT HOLDINGS LLC,

*Plaintiffs-Appellees,*

— v. —

GEORGE WEISS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
### Volume 5 of 5 (Pages A-1007 to A-1258)

SCOTT BALBER
MICHAEL P. JONES
DANIEL GOMEZ
HERBERT SMITH FREEHILLS
  KRAMER NEW YORK LLP
*Attorneys for Plaintiffs-Appellees*
200 Park Avenue, 16th Floor
New York, New York 10166
(917) 542-7810

BRIAN A. KATZ
PETER M. SARTORIUS
DANIEL M. STONE
OLSHAN FROME WOLOSKY LLP
*Attorneys for Defendant-Appellant*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

CP COUNSEL PRESS  (800) 4-APPEAL • (382243)

i

## TABLE OF CONTENTS

**Page**

United States District Court Docket Entries .............. A-1

Notice of Removal, by Defendant, dated
June 7, 2024 ............................................ A-12

Exhibit A to Notice -
Summons and Complaint in the New York State
Supreme Court Matter *Jefferies Strategic
Investments, LLC and Leucadia Asset
Management Holdings LLC v. George Weiss*
("New York State Matter"), dated May 6, 2024 .... A-17

Order Regulating Proceedings, by the Honorable
Alvin K. Hellerstein, dated October 11, 2024 ....... A-39

Answer to Complaint, dated October 25, 2024 ......... A-40

Notice of Motion, by Defendant, for an Order
Granting Summary Judgment, dated
November 5, 2024 ....................................... A-52

Memorandum of Law, by Defendant, in Support of
Motion, dated November 5, 2024 ........................ A-54

Statement of Material Facts, by Defendant, in
Support of Motion, dated November 5, 2024 ........ A-83

Declaration of Defendant George Weiss, in Support
of Motion, dated November 5, 2024 .................... A-97

Declaration of Jeffrey Dillabough, in Support of
Motion, dated November 5, 2024 ........................ A-104

Exhibit 1 to Foregoing Documents -
Draft Forbearance Agreement, dated
February 1, 2024 ..................................... A-112

ii

**Page**

Exhibit 2 to Foregoing Documents -
Email from Jeffrey Dillabough to Sonia Han
Levovitz, dated February 12, 2024 ...................... A-120

Exhibit 3 to Foregoing Documents -
Forbearance Agreement, dated February 12, 2024    A-123

Exhibit 4 to Foregoing Documents -
Redlined Forbearance Agreement, dated
February 11, 2024 ................................................. A-136

Exhibit 5 to Foregoing Documents -
Email from Scott Balber to Jeffrey Dillabough,
dated February 12, 2024 ....................................... A-150

Exhibit 6 to Foregoing Documents -
Email from Nick Daraviras to
jvisser@hweiss.com, dated February 17, 2024 ..... A-155

    Attached to Email -
    (i) Draft Redacted Complaint.............................. A-156

Exhibit 7 to Foregoing Documents -
Email from Scott Balber to Tracy Kelstadt, dated
March 26, 2024 ..................................................... A-183

    Attached to Email -
    (i) Draft Complaint ............................................ A-184

Notice of Motion, by Plaintiffs, for an Order
   Granting Summary Judgment, dated
   November 5, 2024 ................................................. A-209

Table of Contents of Documents Related to
   Plaintiffs' Motion for Summary Judgment, dated
   November 5, 2024 ................................................. A-211

Declaration of Scott S. Balber, for Plaintiffs, in
   Support of Motion, dated November 5, 2024 ........ A-215

iii

**Page**

Exhibit 1 to Balber Declaration -
Declaration of Nicholas Daraviras, in the United
State Bankruptcy Court for the Southern District
of New York Matter *In Re: Weiss Multi-Strategy
Advisers LLC, et al.*, dated August 22, 2024 ......... A-221

   Exhibit A to Daraviras Declaration -
   Strategic Relationship Agreement, dated
   May 1, 2018 ....................................................... A-228

   Exhibit B to Daraviras Declaration -
   Note Purchase Agreement, dated
   December 3, 2019 ............................................... A-254

   Exhibit C to Daraviras Declaration -
   Note, dated January 13, 2020............................. A-291

   Exhibit D to Daraviras Declaration -
   Note, dated December 3, 2019........................... A-294

   Exhibit E to Daraviras Declaration -
   Assignment and Assumption Agreement, dated
   December 1, 2021 ............................................... A-297

   Exhibit F to Daraviras Declaration -
   Note Purchase Agreement, dated
   December 1, 2021 ............................................... A-301

   Exhibit G to Daraviras Declaration -
   Note, dated September 21, 2022 ........................ A-330

   Exhibit H to Daraviras Declaration -
   Notice of Optional Redemption ......................... A-333

   Exhibit I to Daraviras Declaration -
   Forbearance Agreement, dated
   February 12, 2024 .............................................. A-335

iv

**Page**

Exhibit J to Daraviras Declaration -
UCC Financing Statement ................................. A-349

Exhibit K to Daraviras Declaration -
Copy of Spreadsheet ........................................... A-351

Exhibit L to Daraviras Declaration -
Invoices Reflecting Attorneys' Fees ................. A-356

Exhibit 2 to Balber Declaration -
Chapter 11 Voluntary Petition for Non-Individual,
in the Bankruptcy Matter, dated April 29, 2024,
with Exhibits ............................................................ A-360

Exhibit 3 to Balber Declaration -
Chapter 11 Voluntary Petition for Non-Individual
in the United States Bankruptcy Court for the
Southern District of New York Matter *In Re:
GWA, LLC*, dated April 29, 2024, with Exhibits.... A-370

Exhibit 4 to Balber Declaration -
Chapter 11 Voluntary Petition for Non-Individual
in the United States Bankruptcy Court for the
Southern District of New York Matter *In Re:
OGI, LLC,* dated April 29, 2024 ........................... A-380

Exhibit 5 to Balber Declaration -
Chapter 11 Voluntary Petition for Non-Individual
in the United States Bankruptcy Court for the
Southern District of New York Matter *In Re:
Weiss Special Operations LLC*, dated
April 29, 2024 ......................................................... A-390

Exhibit 6 to Balber Declaration -
Declaration of Pierce Archer, in the United State
Bankruptcy Court for the Southern District of
New York Matter *In Re: Weiss Multi-Strategy
Advisers LLC, et al.*, dated April 30, 2024............. A-400

v

**Page**

Exhibit 7 to Balber Declaration -
Declaration Under Penalty of Perjury for Non-
Individual Debtors, with Exhibits, in the United
States Bankruptcy Court for the Southern District
of New York Matter *In Re: Weiss Multi-Strategy
Advisers LLC, et al.*, dated June 11, 2024.............. A-449

Exhibit 8 to Balber Declaration -
Declaration Under Penalty of Perjury for Non-
Individual Debtors, with Exhibits, in the United
States Bankruptcy Court for the Southern District
of New York Matter *In Re: GWA, LLC*, dated
June 11, 2024 ........................................................ A-453

Exhibit 9 to Balber Declaration -
Declaration Under Penalty of Perjury for Non-
Individual Debtors, with Exhibits, in the United
States Bankruptcy Court for the Southern District
of New York Matter *In Re: OGI, LLC*, dated
June 11, 2024 ........................................................ A-455

Exhibit 10 to Balber Declaration -
Declaration Under Penalty of Perjury for Non-
Individual Debtors, with Exhibits, in the United
States Bankruptcy Court for the Southern District
of New York Matter *In Re: OGI, LLC*, dated
June 11, 2024 ........................................................ A-457

Exhibit 11 to Balber Declaration -
Chapter 11 Voluntary Petition for Non-Individual,
with Exhibits, in the United States Bankruptcy
Court for the Southern District of New York
Matter *In Re: Weiss Multi-Strategy Funds LLC*,
dated June 19, 2024 ................................................ A-459

vi

**Page**

Exhibit 12 to Balber Declaration -
Global Notes, Methodology and Specific
Disclosures Regarding WMSF's Schedules of
Assets and Liabilities and Statement of Financial
Affairs, in the United States Bankruptcy Court
for the Southern District of New York Matter *In
Re: Weiss Multi-Strategy Funds LLC*, filed
June 28, 2024 ........................................................... A-461

Exhibit 13 to Balber Declaration -
Complaint to Avoid and Recover Avoidable
Transfers, in the United States Bankruptcy Court
for the Southern District of New York Matter
*GWA, LLC et al. v. Jefferies Strategic
Investments, LLC et al.* ("Adversary
Proceeding"), dated April 29, 2024 ...................... A-484

Exhibit 14 to Balber Declaration -
First Amended Complaint in the Adversary
Proceeding, dated June 25, 2024 ........................... A-506

Exhibit 15 to Balber Declaration -
Memorandum of Law, by Plaintiffs, in Support of
Partial Motion, in the Adversary Proceeding,
dated July 16, 2024 ................................................ A-541

Exhibit 16 to Balber Declaration -
Memorandum of Law, by Plaintiffs, in
Opposition to Motion, in the Adversary
Proceeding, dated August 6, 2024 ........................ A-571

Exhibit 17 to Balber Declaration -
Transcript of Proceedings held before the
Honorable Martin Glenn, in the Adversary
Proceeding, dated September 11, 2024.................. A-601

Exhibit 18 to Balber Declaration -
BrokerCheck Report for George Allen Weiss........ A-671

vii

**Page**

Local Rule 56.1 Statement in Support of Plaintiffs'
   Motion for Summary Judgment, dated
      November 5, 2024 ................................................. A-680

Memorandum of Law, by Plaintiffs, in Support of
   Motion for Summary Judgment, dated
      November 5, 2024 ................................................. A-689

Memorandum of Law, by Defendant, in Opposition
   to Motion for Summary Judgment, dated
      November 22, 2024 ............................................... A-705

Defendant's Response to Plaintiffs' Local Rule 56.1
   Statement, dated November 22, 2024 ................... A-741

Declaration of Brian A. Katz, for Defendant, in
   Opposition to Motion for Summary Judgment,
      dated November 22, 2024 ..................................... A-754

   Exhibit A to Katz Declaration -
   Reply in Support of Partial Motion to Dismiss
   First Amended Complaint in the Adversary
   Proceeding, dated August 16, 2024 ...................... A-756

   Exhibit B to Katz Declaration -
   Order of the Honorable Martin Glenn in the
   Adversary Proceeding, dated September 24, 2024    A-771

   Exhibit C to Katz Declaration -
   Examiner's Report of Christopher K. Kiplok, in
   the Adversary Proceeding, dated
   November 21, 2024 ................................................. A-847

Local Rule 56.1 Counterstatement of Material Facts
   in Opposition to Plaintiffs' Motion for Summary
   Judgment, dated November 22, 2024 ................... A-931

viii

**Page**

Memorandum of Law, by Plaintiffs, in Opposition
to Defendant's Motion for Summary Judgment,
dated November 22, 2024 .................................... A-983

Reply Memorandum of Law, by Defendant, in
Further Support of Motion for Summary
Judgment, dated December 4, 2024 ....................... A-1006

Reply, by Defendant, to Plaintiff's Local Rule 56.1
Counterstatement ................................................... A-1030

Reply Memorandum of Law, by Plaintiffs, in
Further Support of Motion for Summary
Judgment, dated December 4, 2024 ....................... A-1082

Opinion and Order of the Honorable Alvin K.
Hellerstein, dated March 12, 2025 ........................ A-1108

Judgment, dated March 12, 2025 ............................... A-1117

Attachment to Judgment -
(i) United States District Court for the Southern
District of New York Appeal Instructions and
Forms ..................................................................... A-1118

Notice of Motion, by Defendant, for an Order
Granting Reconsideration of and/or Amending
and Altering the Order and Judgment, dated
March 26, 2025 ..................................................... A-1128

Memorandum of Law, by Defendant, in Support of
Motion for Reconsideration, dated
March 26, 2025 ..................................................... A-1130

Notice of Motion, by Plaintiffs, for an Order
Correcting Omission in Judgment, dated
March 26, 2025 ..................................................... A-1146

ix

**Page**

Exhibit A to Notice -
Proposed Corrected Judgment ............................... A-1148

Exhibit B to Notice -
Plaintiffs' Calculation of Pre-Judgment Interest
and Total Amounts Owed ...................................... A-1150

Memorandum of Law, by Plaintiffs, in Support of
Motion to Correct Judgment, dated
March 26, 2025 ....................................................... A-1156

Memorandum of Law, by Plaintiffs, in Opposition
to Motion for Reconsideration, dated
April 9, 2025 ........................................................... A-1163

Memorandum of Law, by Defendant, in Opposition
to Motion to Correct Judgment, dated
April 9, 2025 ........................................................... A-1178

Notice of Appeal, by Defendant, dated April 10,
2025, with Opinion and Order, Appealed From .... A-1191

Reply Memorandum of Law, by Defendant, in
Further Support of Motion for Reconsideration,
dated April 16, 2025 ............................................... A-1202

Reply Memorandum of Law, by Plaintiffs, in
Further Support of Motion to Correct Judgment,
dated April 16, 2025 ............................................... A-1213

Order of the Honorable Alvin K. Hellerstein, dated
May 15, 2025 ......................................................... A-1224

Order of the Honorable Alvin K. Hellerstein, dated
May 16, 2025 ......................................................... A-1226

Amended Order of the Honorable Alvin K.
Hellerstein, dated May 20, 2025 ........................... A-1229

Corrected Judgment, dated May 21, 2025 ................. A-1232

x

**Page**

Attachment to Judgment -
(i) United States District Court for the Southern
District of New York Appeal Instructions and
Forms ........................................................ A-1233

Amended Notice of Appeal, by Defendant, dated
May 22, 2025 ........................................... A-1243

Exhibit 1 to Amended Notice -
Opinion and Order of the Honorable Alvin K.
Hellerstein, dated March 12, 2025...................... A-1245

Exhibit 2 to Amended Notice -
Order of the Honorable Alvin K. Hellerstein,
dated May 15, 2025 ............................... A-1254

Exhibit 3 to Amended Notice -
Amended Order of the Honorable Alvin K.
Hellerstein, dated May 20, 2025.......................... A-1256

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT .........................................................................................................3

I.    AS PLAINTIFFS CONCEDE BY OMISSION, THERE IS NO BINDING,
      MUTUALLY-AGREED UPON AGREEMENT BETWEEN THE PARTIES.................4

      A.    Jefferies Unequivocally Rejected Mr. Weiss's Counteroffer, Extinguishing
            Mr. Weiss's Offer and Jefferies' Right to Accept It ....................................4

            1.    Jefferies' February 12 Letter Rejected Mr. Weiss's Counteroffer .............5

            2.    Jefferies Could Not Accept an Offer They Had Rejected..........................7

      B.    The Bankruptcy Court Order Does Not Preclude Mr. Weiss From
            Establishing that the Forbearance Agreement is Unenforceable...............8

II.   SECTION 9 IS, AT MOST, A LIMITED GUARANTEE AND NOT A
      GUARANTY OF PAYMENT............................................................................12

      A.    Mr. Weiss's Interpretation Gives Meaning to Every Term  While Jefferies'
            Interpretation Avoids Them ....................................................................13

      B.    If the Forbearance Agreement is Ambiguous, Mr. Weiss Is Still Entitled to
            Summary Judgment................................................................................16

      C.    Jefferies' Assertion that Mr. Weiss is Collaterally Estopped is Baseless ...............18

CONCLUSION......................................................................................................19

Table of Authorities

Page

CASES

*Am. Trading Co. v. Fish*,
  42 N.Y.2d 20 (1977) .............................................................................................13

*Autocrafting Fleet Sols., Inc. v. Alliance Fleet Co.*,
  148 A.D.3d 1564 (4th Dep't 2017).........................................................................14

*Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.*,
  402 U.S. 313 (1971)...............................................................................................10

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016).................................................................................................8

*Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago*,
  93 F.3d 1064 (2d Cir. 1996)..............................................................................15, 16

*Edwards v. Sequoia Fund, Inc.*,
  938 F.3d 8 (2d Cir. 2019).......................................................................................16

*Fernicola v. Specific Real Property*,
  No. 00 CIV. 5173, 2001 WL 1658257 (S.D.N.Y. Dec. 26, 2001)..........................11

*Goyal v. Gas Tech. Inst.*,
  718 F.3d 713 (7th Cir. 2013) ...................................................................................8

*Gurary v. Winehouse*,
  190 F.3d 37 (2d Cir. 1999).....................................................................................18

*Jericho Grp., Ltd. v. Midtown Dev., L.P.*,
  32 A.D.3d 294 (1st Dep't 2006) ...............................................................................7

*Keybanc Cap. Mkts., Inc. v. Extreme Steel, Inc.*,
  No. 23-cv-8535, 2024 WL 3237653 (S.D.N.Y. June 27, 2024) ..............................18

*Leonard v. PepsiCo, Inc.*,
  88 F. Supp. 2d 116 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 88 (2d Cir. 2000) ..................3

*Merchant Cash & Capital, LLC v. Haute Society Fashion, Inc.*,
  No. 16-CV-2696, 2017 WL 2912452 (E.D.N.Y. July 6, 2017)................................14

*Minneapolis & St. L. Ry. Co. v. Columbus Rolling-Mill Co.*,
  119 U.S. 149 (1886).................................................................................................8

12711680-10

Table of Authorities
(continued)

Page

*Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC,*
  760 F. Supp. 2d 384 (S.D.N.Y. 2011)......................................................................18

*Rainmakers Partners, LLC v. NewSpring Cap., LLC,*
  No. 21 Civ. 6800, 2022 WL 4626492 (S.D.N.Y. Sept. 30, 2022)...........................12

*Solco Plumbing Supply, Inc. v Hart,*
  123 A.D.3d 798 (2d Dep't 2014)............................................................................16

*Spinelli v. National Football League,*
  903 F.3d 185 (2d Cir. 2018)...................................................................................15

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het
  Kapitaal Van Saybolt Int'l B.V, v. Schreiber,*
  327 F.3d 173 (2d Cir. 2003)...................................................................................11

*Superior Funding Corp. v. Big Apple Cap. Corp.,*
  738 F. Supp. 1468 (S.D.N.Y. 1990).......................................................................11

*Symbol Techs., Inc. v. Voicenet (Aust.) Ltd.,*
  No. CV-03-6010, 2008 WL 89626 (E.D.N.Y. Jan. 4, 2008).................................12

*Tang Cap. Partners, LP v BRC Inc.,*
  22-CV-3476, 2024 WL 4716315 (S.D.N.Y. Nov. 8, 2024)....................................17

*Taylor v. Sturgell,*
  553 U.S. 880 (2008)....................................................................................11, 12, 19

*Thor Props., LLC v. Willspring Holdings LLC,*
  118 A.D.3d 505 (1st Dep't 2014) .............................................................................5

*Topps Co. v. Cadbury Stani S.A.I.C.,*
  526 F.3d 63 (2d Cir. 2008).................................................................................3, 17

*United States v. Grayson,*
  879 F.2d 620 (9th Cir. 1989) .................................................................................11

*United States v. Pham,*
  No. 12-cr-423, 2022 WL 993119 (S.D.N.Y. Apr. 1, 2022).....................................8

*Vertex Cap. Corp. v. V-Formation Inc.,*
  No. 01 CIV. 3565, 2002 WL 31011878 (S.D.N.Y. Sept. 6, 2002)...........................8

*Vill. of Hamburg v. Am. Ref-Fuel Co. of Niagara, L.P.,*
  284 A.D.2d 85 (4th Dep't 2001).............................................................................13

iii

Table of Authorities
(continued)

Page

*Wang v. Pataki*,
    396 F. Supp. 2d 446 (S.D.N.Y. 2005) .......................................................................11

*Wedgewood Care Ctr., Inc. v. Kravitz*,
    198 A.D.3d 124 (2d Dep't 2021) ...............................................................................12

*White Rose Food v. Saleh*,
    99 N.Y.2d 589 (2003) ..........................................................................................13, 14

*Woodward v. Tan Holding Corp.*,
    32 A.D.3d 467 (2d Dep't 2006) ....................................................................................4

12711680-10

Defendant George Weiss, by his undersigned counsel, respectfully submits this memorandum of law in reply in further support of his motion for summary judgment, ECF No. 25.[1]

## PRELIMINARY STATEMENT

Rather than take the dispositive issues in Defendant George Weiss's summary judgment motion head on, Plaintiffs ignore them at all costs. The reason is obvious. Jefferies cannot identify a genuine dispute of material fact to preclude summary judgment in Mr. Weiss's favor, or even identify a fully-executed, mutually agreed-upon Forbearance Agreement to support its breach of contract claims.

Indeed, Jefferies cannot decide whether their case is based on Defendant's counteroffer to Jefferies' offer to forbear – which Jefferies unequivocally rejected in a letter from outside counsel and never executed – or Jefferies' initial offer of forbearance – which Mr. Weiss unequivocally rejected, and which neither Jefferies nor Mr. Weiss executed. And, while Plaintiffs half-heartedly suggest that Mr. Weiss's revised Forbearance Agreement contained few changes from Jefferies' version, the number or location of those changes is immaterial, because, as Plaintiffs seek to conceal, *Jefferies labeled these clauses as "required" for any deal and rejected their removal.* It is undisputed that there is no fully-executed, mutually agreed-upon Forbearance Agreement for the Court to adjudicate, which is why Plaintiffs failed to attach one for consideration.

Instead, as best as can be ascertained from their opposition, Plaintiffs appear to contend that because Jefferies' behavior – *after Jefferies rejected Mr. Weiss's revised offer of forbearance* – was consistent with some terms in the drafts the parties exchanged, Mr. Weiss is bound by the rest of the terms (in particular, the supposed "personal guarantee" clause which would grant

---

[1]    Unless otherwise defined, capitalized terms refer to the terms described in Mr. Weiss's memorandum in support of his motion for summary judgment, ECF No. 25.

Jefferies a windfall under its unsupportable interpretation).  Plaintiffs are wrong.  Whether denominated "estoppel," wishful thinking, or some other extra-contractual doctrine, Jefferies' reliance on these concepts cannot override the undisputed fact that no breach of contract action can be based on alleged, post-rejection partial performance, which is why Plaintiffs conspicuously fail to identify any caselaw to support that argument.

Plaintiffs also claim Mr. Weiss is estopped from denying the enforceability of the Forbearance Agreement because of arguments certain corporate entities raised in a Chapter 11 bankruptcy proceeding to which Weiss was not a party.  But it is bedrock law that Mr. Weiss cannot be bound by arguments he did not make in a proceeding where he was not a party. Similarly, Mr. Weiss cannot be bound by observations the bankruptcy court made concerning the Forbearance Agreement when that court explicitly identified such musings as non-binding dicta and emphasized that resolution of those issues was the proper province of this Court.  Katz Decl. Ex. B at 54 n.20.  Jefferies' disingenuous "estoppel" argument fails accordingly.

But even if Jefferies were correct that some of the proposed terms in the various drafts constitute an enforceable contract – and they do not – Plaintiffs still fail to establish a viable counter interpretation of the so-called guarantee clause at issue.  Among other things, Plaintiffs make no effort to harmonize the language of the Forbearance Agreement as a whole.  Section 9 – when read in context – clearly constitutes a guarantee of the Weiss Companies' compliance with corporate controls Jefferies wanted (a so-called performance guaranty) as opposed to back-stopping $100 million in debt in exchange for two days of forbearance.  Indeed, the suggestion that Mr. Weiss would agree to personally guarantee $100 million in *corporate debt* – for which he had no personal responsibility – to provide GWA with *two days* of relief from theoretical litigation is commercially absurd.  As Mr. Weiss and the Weiss Companies' general counsel testified, that

was not the understanding of the parties, which is why there is not one contemporaneous email from the negotiations, or after, in which Jefferies mentioned such an onerous personal guarantee.

Further, Plaintiffs also fail to meaningfully explain how its interpretation squares with New York's longstanding rule that so-called payment guarantees must be strictly construed against the drafter, or to offer *any* evidentiary support – testimonial or otherwise – for its interpretation.  To the contrary, Plaintiffs construe Section 9 in the broadest possible manner, contending that Mr. Weiss guaranteed every obligation in the Forbearance Agreement.  For all these reasons, and those set forth more fully below and in Mr. Weiss' moving papers, the Court should grant this Motion.

## **ARGUMENT**

As an initial matter, the Court must award summary judgment to Mr. Weiss because no rational trier of fact could find that the parties mutually assented to the same contract.  *See Leonard v. PepsiCo, Inc.*, 88 F. Supp. 2d 116, 122 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 88 (2d Cir. 2000) ("The question of whether or not a contract was formed is appropriate for resolution on summary judgment.").  Alternatively, the Court must also grant summary judgment for Mr. Weiss because the plain and unambiguous language of Section 9 demonstrates that the personal guarantee was limited – and not a payment guaranty.  Further, summary judgment is appropriate because guarantees must be strictly construed in favor of the guarantor and, as Plaintiffs concede, the extrinsic evidence uniformly supports Mr. Weiss's reading.  *See Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) (summary judgment may be granted on unambiguous contract language or ambiguous contract language supported by unequivocal extrinsic evidence of one interpretation).  Under these well-recognized standards and undisputed facts, Mr. Weiss has demonstrated his entitlement to summary judgment and his Motion should be granted.

12711680-10

## I.    AS PLAINTIFFS CONCEDE BY OMISSION, THERE IS NO BINDING, MUTUALLY-AGREED UPON AGREEMENT BETWEEN THE PARTIES

Jefferies' opposition fails to demonstrate the existence of a binding agreement.  Indeed, Plaintiffs do not explain what version of the contract it believes is operative and enforceable. Specifically, Jefferies cannot decide whether they seek to enforce their initial draft, which Mr. Weiss never accepted and never signed (and which included certain "required" but removed admissions) or Mr. Weiss's counteroffer, which Jefferies rejected and never signed.[2]  Jefferies' waffling on this point demonstrates that there is no controlling, mutually-assented to contract at issue in this case.[3]  Summary judgment in Mr. Weiss's favor is therefore appropriate.

### A.    Jefferies Unequivocally Rejected Mr. Weiss's Counteroffer, Extinguishing Mr. Weiss's Offer and Jefferies' Right to Accept It

Plaintiffs agree that Mr. Weiss presented Jefferies with a counteroffer striking certain material admissions of actionable wrongdoing that Jefferies, in its own words, "required." Jefferies Opp. at 12-13; Dillabough Decl. Ex. 5 at 4 (the "Rejection Letter").  It is undisputed that Jefferies' transmission of the Forbearance Agreement constituted an offer.  Rather than accept that offer, Mr. Weiss counteroffered by modifying the offered agreement, signing it, and returning it to Jefferies.  *See, e.g.*, *Woodward v. Tan Holding Corp.*, 32 A.D.3d 467, 469 (2d Dep't 2006) ("It is a fundamental principle of contract law that a valid acceptance must comply with the terms of

---

[2]    *Compare* Jefferies Memorandum of Law in Opposition to George Weiss's Motion for Summary Judgment, ECF No. 37 ("Jefferies Opp.") at 3 (conceding Mr. Weiss "reviewed, **amended**, and then signed the Forbearance Agreement") (emphasis added) *with id.* at 5 ("Plaintiffs offered not to enforce their rights against Weiss . . . [and] Weiss . . . **accepted that offer** and agreed to the terms of the Forbearance Agreement."); *id.* at 11 ("Weiss, a seasoned industry professional was represented by experienced counsel, **agreed to the terms** of the Forbearance Agreement by signing it."); *id.* at 14 ("Plaintiffs formally offered the terms of the Forbearance agreement [and] Weiss **accepted** those terms.") (emphasis added).

[3]    Jefferies' Opposition is replete with the unsupported assertion that Mr. Weiss was "represented by experienced counsel." Jefferies Opp. at 3, 5, 11.  They cite no evidence in support of this fact, and it is demonstrably untrue, as the only lawyer involved for the Weiss Companies was Mr. Dillabough, who was not Mr. Weiss's personal counsel.  Dillabough Decl. ¶ 1.

4

the offer . . . and, if qualified with conditions it is equivalent to a rejection and counteroffer"). Mr. Weiss's counteroffer constituted a rejection of Jefferies' offer, extinguishing it and replacing it with Mr. Weiss's offer, which Jefferies could then accept, reject, or counter. *See, e.g.*, *Thor Props., LLC v. Willspring Holdings LLC*¸ 118 A.D.3d 505, 507 (1st Dep't 2014) (to contract, a party must unequivocally assent to terms of offer, and any modification "constitutes both a rejection and a counteroffer which extinguishes the initial offer"). Jefferies chose to reject Mr. Weiss's counteroffer through the Rejection Letter. Rejection Letter at 4-5.

Contrary to Jefferies' suggestion, they cannot ignore the Rejection Letter or change its terms after the fact. Plaintiffs argue, in two short paragraphs, that the letter was not a rejection because Jefferies still hoped or "expect[ed]" the Weiss Parties to honor their "representations in the unilaterally modified Forbearance Agreement" or, alternatively, that Jefferies acted in a way that was subjectively consistent with some of the terms Jefferies proposed. Jefferies Opp. at 12-13 (quoting the Rejection Letter at 5). Neither argument has merit.

       1.    <u>Jefferies' February 12 Letter Rejected Mr. Weiss's Counteroffer</u>

Jefferies' focus on a single sentence ignores the bulk of the Rejection Letter. Jefferies Opp. at 13. Jefferies avoids the Rejection Letter's contemporaneous description of the removed admissions as "required" by Jefferies. Rejection Letter at 4. Jefferies cannot claim that Mr. Weiss's removal of "required" sections was not a rejection and counteroffer. And these "required" admissions were significant and would have exposed Mr. Weiss and the Weiss Companies to substantial liability. Had Mr. Weiss signed that version of the Forbearance Agreement, he would have admitted to Jefferies' false narrative that they had been misled by Mr. Weiss and the Weiss Companies regarding the timing and manner of the February bonus payments. *See* Dillabough Decl. Ex. 4 at 2. These admissions would have exposed Mr. Weiss and the Weiss Companies to

potential claims of misrepresentation and the like. Jefferies "required" these admissions because, without them, Jefferies could not support a claim it had been misled.[4]

Plaintiffs also disregard their withdrawal of the sole consideration they had offered – two days of forbearance from litigation – by "reserv[ing] all of their rights to bring claims and pursue remedies arising from the Weiss Parties' misconduct." Rejection Letter at 5. By reserving the right to sue, Jefferies withdrew their commitment to forbear from bringing an enforcement action (defined in the Forbearance Agreement to include claims stemming from the bonus payments). *See* Dillabough Decl. Ex. 3 at Recitals, § 6. Given that Plaintiffs had no obligation to bring an enforcement action, Plaintiffs' reservation of rights put them in the same position they were in prior to the Forbearance Agreement: they had the option, not the obligation, to litigate.

And even the single sentence Plaintiffs highlight reveals that, when they sent the letter, they did not believe that the Weiss Companies or Mr. Weiss had any obligations under the "unilaterally modified Forbearance Agreement." Jefferies ended its Rejection Letter by stating that, "[i]n the meantime, we expect the Weiss Parties to abide by the representations made to the Jefferies Parties in the unilaterally modified Forbearance Agreement. . . ."[5]  *Id.* It is telling that Jefferies did not unambiguously state that they viewed the "unilaterally modified Forbearance Agreement" as binding the Weiss Companies or Mr. Weiss to any agreements contained therein,

---

[4]    Indeed, these "claims" have been disproven in the bankruptcy proceeding by an independent examiner, rendering Jefferies attempt to force Mr. Weiss into admitting this "wrongdoing" all the more sinister. *See* Examiner's Report, Katz Decl. Ex. C at 56-59 (noting that there was no evidence that Jefferies had been misled about the timing of the bonus payments).

[5]    The sentence continues to demand that the Weiss Companies provide "all the information regarding the bonus payments no later than 5:00 pm today," February 12, 2024. Dillabough Decl. Ex. 5. This demand was at odds with the terms of the Forbearance Agreement, which required the Weiss Companies to provide information regarding bonus payments no later than 5:00 pm the next day, February 13, 2024. Dillabough Decl. Ex. 3 § 2(a).

6

but merely "expect[ed]" them to act in accordance with their representations—including the disclosure representations—contained therein. *See id.*; Dillabough Decl. Ex. 3 § 5(d).

The Rejection Letter is clear: Jefferies rejected Mr. Weiss's "unilaterally modified Forbearance Agreement" because it excluded "required" terms, they reserved their right to sue, and "meanwhile" they pressured the Weiss Companies and Mr. Weiss to act in accordance with the representations made in the Forbearance Agreement despite Jefferies' rejection of the same. Had Jefferies wanted to accept the "unilaterally modified" counteroffer, it would have been simple enough to sign it. Jefferies did no such thing. Instead, by rejecting Mr. Weiss's offer, Jefferies extinguished it, along with any commensurate right to accept it. *See, e.g.*, *Jericho Grp., Ltd. v. Midtown Dev., L.P.*, 32 A.D.3d 294, 299 (1st Dep't 2006) (rejection "extinguishes the offer and renders any subsequent acceptance thereof inoperative.").

> 2.    Jefferies Could Not Accept an Offer They Had Rejected

Jefferies' argument that their subsequent "performance" revived the Forbearance Agreement is disingenuous at best. In fact, as the Rejection Letter makes clear, Jefferies explicitly told Mr. Weiss and the Weiss Companies at the time that they would not agree to forbear, but in fact were reserving their rights to commence litigation against Mr. Weiss and the Weiss Companies. Put differently, far from advising Mr. Weiss that Plaintiffs were going to perform under the Forbearance Agreement, Jefferies advised Weiss of the exact opposite. Jefferies did not agree to perform in accordance with the only term of the Forbearance Agreement that mattered – binding forbearance.[6]

---

[6]    Jefferies also argues that they performed by filing a single UCC financing statement from JSI to Weiss Multi-Strategy Funds LLC. *See* Jefferies Opp. at 5, Balber Decl. Ex. 1-J. Yet this filing was made on February 13, the day *after* Jefferies rejected Mr. Weiss's counteroffer. *See* Dillabough Decl. Ex. 5.

Moreover, Jefferies' behavior after their rejection is irrelevant. "As every first-year law student learns, the recipient's rejection of an offer leaves the matter as if no offer had ever been made." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016) (internal citation omitted). "Under New York law, the rejection of an offer terminates the power of the offeree to later accept it." *Vertex Cap. Corp. v. V-Formation Inc.*, No. 01 CIV. 3565, 2002 WL 31011878, at *4 n.10 (S.D.N.Y. Sept. 6, 2002) (citation omitted); *see also United States v. Pham*, No. 12-cr-423, 2022 WL 993119, at *12 (S.D.N.Y. Apr. 1, 2022) (same); *Goyal v. Gas Tech. Inst.*, 718 F.3d 713, 718–19 (7th Cir. 2013) ("Another fundamental principle of contract law dictates that an offer, once rejected, no longer exists."). Had Jefferies wished to enforce the Forbearance Agreement, as "unilaterally modified," they should have signed and agreed. Instead, they did the opposite. Jefferies' express rejection of the offer extinguished their right to accept, either explicitly or through performance. It is unsurprising, therefore, that Jefferies cites no case law in support of the argument that performance can revive a rejected offer.

Jefferies' argument that performance can revive a rejected offer runs counter to centuries of blackletter law. *See, e.g.*, *Minneapolis & St. L. Ry. Co. v. Columbus Rolling-Mill Co.*, 119 U.S. 149 (1886) (A party "having once rejected the offer, cannot revive it by tendering an acceptance of it."). Instead, because neither party made any subsequent offers to Jefferies' Rejection Letter, the parties could not have formed a contract that can be enforced. Mr. Weiss is entitled to summary judgment.

B.    The Bankruptcy Court Order Does Not Preclude Mr. Weiss From Establishing that the Forbearance Agreement is Unenforceable

Jefferies contends that, under the collateral estoppel doctrine, Mr. Weiss is precluded from arguing that Jefferies' rejection of the Weiss Companies' pre-execution modifications of the Forbearance Agreement (*i.e.*, a counteroffer) demonstrates there was no meeting of the minds

because this issue was litigated in the bankruptcy court. Jefferies Opp. at 8. Jefferies seems to base this argument primarily on the fact Mr. Weiss's counsel logged onto the bankruptcy court hearing by Zoom. *Id.* at 9. Indeed, Jefferies states that "Weiss's own counsel appeared and argued at the hearing before the Bankruptcy Court." *Id.* Jefferies' argument fails as a matter of fact and law.

First, Plaintiffs apparently seek to give this Court the inaccurate impression that Mr. Weiss's personal counsel addressed the issue of whether the Forbearance Agreement is enforceable. Jefferies Opp. at 9. The cited transcript pages contain no such argument – they contain no argument at all. As noted in Mr. Weiss's opposition to Jefferies' summary judgment motion, Mr. Weiss was not a party to the Adversary Proceeding and Mr. Weiss's counsel did not present any arguments at the hearing. Weiss Opposition to Jefferies Motion for Summary Judgment, ECF No. 33 (the "Weiss Opp.") at 11. Counsel instead advised the bankruptcy court that the instant case is "pending before Judge Hellerstein in the Southern District of New York" and provided case citations requested by the bankruptcy court. *Id.* (citing Balber Decl. Ex. 17 at 49:8-22). The case citations, requested by the bankruptcy court, were from the brief submitted by Mr. Weiss on the motion to dismiss in this Court, which did not mention the Rejection Letter because it was not in Jefferies' Complaint.

Second, the "precise issue" presented to the bankruptcy court by the Weiss Companies' bankruptcy counsel was whether Jefferies' failure to countersign the Forbearance Agreement invalidated it in *toto*. Balber Decl. Ex. 14 at ¶¶ 120, 122. While the bankruptcy court found only that an agreement does not need to be countersigned to be enforceable if there were other indicia of agreement, it did not review or analyze the Rejection Letter. Notably, the bankruptcy court was skeptical that the Forbearance Agreement was an enforceable agreement amongst all parties, ruling

that, "with respect to OGI, WSO, and WMSF, the Debtors have adequately pled a plausible claim that the 2024 Forbearance Agreement lacks consideration."[7]  Katz Decl. Ex. B at 45.  Ultimately, there is no discussion in the complaint, briefing, oral argument, or opinion in the Adversary Proceeding about the impact of the Rejection Letter, the discrete issue presented here.

Third, even if this Court were to disagree about the confines of the issue presented to the bankruptcy court by bankruptcy counsel for the Weiss Companies, application of the collateral estoppel doctrine is unwarranted because Mr. Weiss, who is not a party to the Adversary Proceeding, did not have a full and fair opportunity to litigate the issue.  *Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 329 (1971) ("Although neither judges, the parties, nor the adversary system performs perfectly in all cases, the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard.").  Mr. Weiss had no notice that his individual rights could be affected by the bankruptcy court's ruling in the Adversary Proceeding and Mr. Weiss did not participate in the briefing of the motion in the Adversary Proceeding.  Plaintiffs have not demonstrated otherwise.

Fourth, Jefferies' privity argument, as applied to the arguments made by the Weiss Companies' bankruptcy counsel on Jefferies' partial motion to dismiss, fares no better.  Privity for collateral estoppel requires a showing that the interests of the person claimed to be in privity were adequately represented by a party with the authority to represent those interests and "depends on a finding that the person against whom collateral estoppel is applied actively participated in the

---

[7]      As to OGI, WSO and WMSF, the bankruptcy court reasoned that the Forbearance Agreement could fail for lack of consideration because they were not parties to the Note Purchase Agreements or Notes, and they did not provide any guarantees or security interests in connection with those agreements.  The bankruptcy court also found that OGI, WSO and WMSF did not provide for any offset or receive any consideration in connection with those agreements.  Katz Decl. Ex. B at 45.

previous litigation." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V, v. Schreiber*, 327 F.3d 173, 187 (2d Cir. 2003). It is a "factual determination of substance, not mere form," and "must not be applied mechanically." *Id.* at 186 (citations omitted). There is nothing in this record to suggest that Mr. Weiss authorized the Debtors to represent him in the Adversary Proceeding or that he personally actively participated in the Adversary Proceeding. Moreover, Debtors' counsel, who were approved by the bankruptcy court to represent the Debtors' interests, did not and could not represent Mr. Weiss. It would be an injustice were this Court to prevent Mr. Weiss from defending himself in a contract dispute before this Court due to proceedings in a non-Article III court in which Mr. Weiss is not a party.

*Taylor v. Sturgell*, 553 U.S. 880 (2008), which was decided after all of the inapposite cases upon which Jefferies relies[8] and was not referenced in Jefferies' opposition, clarifies and narrows the standards for non-party issue preclusion: "A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted

---

[8]    In *Wang v. Pataki*, 396 F. Supp. 2d 446 (S.D.N.Y. 2005), Wang was the chief executive officer of an internet business, called PCL. Wang and PCL were jointly represented co-plaintiffs in a federal action challenging the constitutionality of a New York statute. The federal action was subsequently stayed while various administrative and state court proceedings involving Wang proceeded. In those state court proceedings, Wang made the same constitutional argument that she and PCL had made in the district court. After the stay of the federal action was lifted, the district court held that both Wang and PCL were precluded from making the argument that Wang had lost in the state court. Thus, unlike the instant case, the issue was exactly the same and both parties collectively asserted the identical issue before and after the state court ruling. Also inapposite are *Fernicola v. Specific Real Property*, No. 00 CIV. 5173, 2001 WL 1658257, at *4-5 (S.D.N.Y. Dec. 26, 2001) (privity discussed in the context of defensive collateral estoppel, which raises none of the due process concerns raised here) and *Superior Funding Corp. v. Big Apple Cap. Corp.*, 738 F. Supp. 1468, 1469-71 (S.D.N.Y. 1990) (incorrectly citing *United States v. Grayson*, 879 F.2d 620, 625 (9th Cir. 1989) to claim that "collateral estoppel applies to guarantor of corporate debt" despite *Grayson's* statement that "[t]here [was] nothing in the record to suggest that the district court's ruling was based on collateral estoppel.").

historic tradition that everyone should have his own day in court.'"  *Id.* at 892-93.  The Supreme Court outlined six exceptions that might trigger the application of issue preclusion, however, none of those exceptions are applicable here.

Simply stated, it would be unfair and unreasonable to preclude Mr. Weiss from arguing that the Forbearance Agreement is unenforceable due to Jefferies' rejection of the Weiss Companies' counteroffer, an argument not made previously before any court.

## II.    SECTION 9 IS, AT MOST, A LIMITED GUARANTEE AND NOT A GUARANTY OF PAYMENT

Mr. Weiss is also independently entitled to summary judgment because the plain and unambiguous text of the Forbearance Agreement clearly limits his personal guarantee to two specified subsections: the "representations" and the "agreements."  Any other interpretation would be absurd both as a matter of textual interpretation and commercial sense.  Indeed, Jefferies' suggestion that Mr. Weiss willingly embraced a $100 million personal repayment obligation only to obtain two days of relief from litigation for a corporate entity defies all logic and commercial reason.  Courts do not interpret agreements in such ways.  *Rainmakers Partners, LLC v. NewSpring Cap., LLC*, No. 21 Civ. 6800, 2022 WL 4626492, at *4 (S.D.N.Y. Sept. 30, 2022) (courts do not interpret contracts to lead to commercially absurd results).

Yet even if the Court found the Forbearance Agreement amenable to both Jefferies' and Mr. Weiss's proffered interpretations, rendering it ambiguous, Mr. Weiss would still be entitled to summary judgment.  First, his motion should be granted because the Court must interpret a guarantee strictly in favor of the guarantor, especially where the guarantor did not draft the agreement – a canon of construction that Jefferies conveniently ignores.  *See Symbol Techs., Inc. v. Voicenet (Aust.) Ltd.*, No. CV-03-6010, 2008 WL 89626, at *2 (E.D.N.Y. Jan. 4, 2008); *Wedgewood Care Ctr., Inc. v. Kravitz*, 198 A.D.3d 124, 138 (2d Dep't 2021).  Second, he is

12

entitled to summary judgment because the extrinsic evidence uniformly supports Mr. Weiss's view.  Third, he would still be entitled to judgment even if Jefferies could offer some extrinsic evidence—they did not—supporting their broad interpretation because that would merely reveal that the parties had never actually agreed on the scope of the personal guarantee.

> A.    Mr. Weiss's Interpretation Gives Meaning to Every Term
>        While Jefferies' Interpretation Avoids Them

Section 9 of the Forbearance Agreement is unambiguously a limited guarantee, and by its own terms applies only to the "agreements" and the "representations" of the Weiss Companies. Dillabough Decl. Ex. 3 § 9.  The only reading of Section 9 which gives meaning to every term is one that honors the specific invocation of "agreements" and "representations," rather than one that effectively rewrites the clause to Mr. Weiss guarantying "all terms and conditions."  *See Vill. of Hamburg v. Am. Ref-Fuel Co. of Niagara, L.P.*, 284 A.D.2d 85 (4th Dep't 2001) (to properly interpret a contract, "[e]ffect and meaning must be given to every term of the contract and reasonable effort must be made to harmonize all of its terms.") (internal citations omitted).

Plaintiffs ignore the plain language of Section 9 and instead claim that under New York law, any guaranty must be read broadly with an implicit guaranty of all terms and conditions unless terms are expressly excluded.  Jefferies Opp. at 14-15, 16-17.  This argument is diametrically opposed to New York law, which is clear that guarantees must be strictly construed in favor of the guarantor.  *See White Rose Food v. Saleh*, 99 N.Y.2d 589, 591 (2003).

Moreover, Section 9's careful use of referential language stands in marked contrast to the cases cited by Jefferies.  For example, in *American Trading Company v. Fish*, the Court was tasked with interpreting a clause that guarantied "full performance by Kinematix of ***all the terms and conditions*** of this agreement on the part of Kinematix to be performed."  42 N.Y.2d 20, 27 (1977) (emphasis added).  That phrase clearly referred to "all" terms and conditions and could not be

13

constrained to any specific provision.  *Id.*  Here, by contrast, the Forbearance Agreement does not use the generic "all terms and conditions," but the more specific reference to "representations" and "agreements."  Dillabough Decl. Ex. 3 § 9.  And they chose this limiting language knowing full well how to refer to "all terms and conditions."  *Id.* § 10(d) (referring to "All terms and conditions" of prior agreements between the parties).

Section 9's careful reference to specific subsections also differs from the contract in *Merchant Cash & Capital, LLC v. Haute Society Fashion, Inc.*, wherein the defendant guaranteed that the company "shall not breach, nor do any of the acts prohibited by, Section 3.1 of this agreement."  No. 16-CV-2696, 2017 WL 2912452, at *2 (E.D.N.Y. July 6, 2017).  Section 3.1, in turn, required the company to continue to deposit its proceeds into a bank account from which the plaintiff would withdraw the funds it was owed under the contract.  *Id.* at *3 n.1.  Thus, when the company failed to deposit funds into that bank account and plaintiff sued the guarantor, the court correctly found that the guaranty included a guaranty of payment, because that was precisely what had been guaranteed.  *See id.* at *1, *3.  Unlike the contract in *Merchant Cash*, Section 9's referenced sections do not contain any guaranty of payment (or guaranty of non-breach).  *See* Dillabough Decl. Ex. 3 §§ 2, 5, 9.

Instead, the Forbearance Agreement is like the contract in *Autocrafting Fleet Solutions, Inc. v. Alliance Fleet Co.*, which contained a guarantee of certain specified subsections.  148 A.D.3d 1564, 1565 (4th Dep't 2017).  Here, like there, the "clause was fashioned for the 'sole purpose' of securing a guarantee on [specific subsections] and thus it must be limited to those enumerated sections."  *Id.*

Jefferies' only counterargument that engages with, rather than avoids, Mr. Weiss's interpretation is that the only intra-contractual references that count are those that invoke section

14

12711680-10

*numbers* rather than section *titles*.  This argument, like many Jefferies make, cherry-picks contractual terms and avoids any inconsistency such cherry-picking creates.  Jefferies Opp. at 17-18.  For example, section 10(c), ignored by Jefferies, states that "the terms of this Agreement, including the **guaranty** provided herein and the **security interests granted** herein, constitute reasonably equivalent value for the benefit" received.  Dillabough Decl. Ex. 3 § 10(c) (emphasis added).[9]  Under Jefferies' interpretation, these could not refer to Section 3 (entitled "Guaranty") or Section 4(a) (entitled "Grant of Security Interests") because they do not use the section number.  Instead, Jefferies' argument maintains, these references to the "guaranty" and "security interests granted" somehow refer to the entire agreement or nothing at all.  Such an interpretation improperly renders the Forbearance Agreement's repeated invocation of specific subsections by their headings meaningless.  *See Spinelli v. National Football League*, 903 F.3d 185, 200 (2d Cir. 2018) (courts must "give effect and meaning to every term of a contract") (internal quotations omitted).

Jefferies' related argument – that the Forbearance Agreement's failure to explicitly exclude the "Guaranteed Obligations" must implicitly include them – is unsupported and unsupportable. Jefferies Opp. at 16-17.  Instead, New York law requires guarantees to be narrowly construed, and prohibits courts from extending them beyond their plain language.  *See Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago*, 93 F.3d 1064, 1074 (2d Cir. 1996) ("A guarantor's obligation must be 'narrowly construed and cannot be extended by construction beyond the plain and explicit language of the contract.'") (citations omitted).

---

[9]  Notably, these section references are also uncapitalized, like the section title references found within Section 9.  And, tellingly, Section 10(c) refers to the Section 3 "guaranty" rather than Mr. Weiss's personal "guarantee."  When the parties wanted to refer to specific sections of the Forbearance Agreement with heading descriptions, as they did in Section 9, they plainly knew how to.

12711680-10

The plain and unambiguous language of Section 9 is clear: it could only be a limited personal guarantee of the specified sections. Because Section 9 does not guarantee the Section 3 corporate guaranties, Mr. Weiss is entitled to summary judgment dismissing Jefferies' first claim.

B.     If the Forbearance Agreement is Ambiguous,
       Mr. Weiss Is Still Entitled to Summary Judgment

Jefferies can only prevail by proving that there "there is no reasonable basis for a difference of opinion" regarding the scope of Section 9. *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (citations omitted). For the reasons stated above, Mr. Weiss believes that there is no reasonable basis for Jefferies' expansion of the plain language of Section 9. If the Court is persuaded, however, that a "reasonably intelligent person" could also read an implicit "all terms and conditions" into Section 9, then the contract is at best ambiguous. *Id.* at 12-13. Yet Mr. Weiss is still entitled to summary judgment if the contract is ambiguous because all the interpretative tools the Court might use to interpret any ambiguity uniformly and unequivocally support Mr. Weiss's interpretation.

First, under New York law, the guaranty must be strictly construed in Mr. Weiss's favor. *See Solco Plumbing Supply, Inc. v Hart*, 123 A.D.3d 798 (2d Dep't 2014) ("The terms of a guaranty are to be strictly construed and a guarantor should not be found liable beyond the express terms of the guaranty."). Thus, if the Court determines that reasonable minds could interpret the agreement in Mr. Weiss's favor or in Jefferies' favor, then the strict construction requirement dictates that Mr. Weiss's more limited construction controls. *See, e.g.*, *id.*; *Chase Manhattan Bank*, 93 F.3d at 1074.

Second, as with any other ambiguous contract, the Court could look to extrinsic evidence to understand the ambiguous terms. When that extrinsic evidence supports only one interpretation of the ambiguous terms, summary judgment should be entered in favor of that interpretation. *See*

16

*Tang Cap. Partners, LP v BRC Inc.*, 22-CV-3476, 2024 WL 4716315, at *30 (S.D.N.Y. Nov. 8, 2024) (citing *Topps*, 526 F.3d at 68).

Here, the extrinsic evidence is consistent that neither party conceived of Jefferies' made-for-litigation interpretation. The undisputed evidence is that neither Mr. Weiss nor Mr. Dillabough understood the Forbearance Agreement to include a personal payment guaranty. Weiss Decl. ¶¶ 3, 21, 23-24; Dillabough Decl. ¶¶ 4, 23, 26; *see* Plaintiffs' Local Rule 56.1 Counterstatement of Material Facts in Opposition to Plaintiffs' Motion for Summary Judgment, ECF No. 36 ("Jefferies Counterstatement") ¶¶ 30, 55, 81 (offering no evidence contradicting, and thus conceding pursuant to Local Rule 56.1(d), that no one ever discussed Mr. Weiss personally guaranteeing any amounts.)

Jefferies likewise did not believe there was any payment guaranty. They did not reference a payment guarantee in either draft complaint. The February Draft Complaint did not even mention the Forbearance Agreement. Dillabough Decl. ¶ 30; *id.*, Ex. 6; Jefferies Counterstatement ¶ 72. The March Draft Complaint asserted claims based on the Forbearance Agreement but did not assert that Mr. Weiss personally guaranteed the debt, despite arguing that Mr. Weiss was accountable for the entire corporate debt through the more onerous process of piercing the corporate veil. Dillabough Decl. ¶ 32; *id.*, Ex. 7 ¶¶ 122-27; Jefferies Counterstatement ¶¶ 77-79. That both draft complaints omitted this argument is especially telling given that both included spurious and scandalous allegations about Mr. Weiss and his close cronies enriching themselves – allegations Jefferies knew to be false when made. *Compare* Dillabough Decl. Ex. 7 at ¶¶ 1, 40-41 (alleging Mr. Weiss used the corporate jet for personal travel and corporate funds for personal litigation without compensating the Weiss Companies) *with* Katz Decl. Ex. C at 43-44, 45-46 (detailing Mr. Weiss's payment for all plane travel and litigation fees prior to June 15, 2023). Clearly, if Jefferies believed that Mr. Weiss had just guaranteed the entire corporate debt, Jefferies had every incentive

17

to include that claim in their draft complaints.  That they did not says everything that need be said about Jefferies' contemporaneous understanding of Section 9.

Jefferies' opposition did not include *any* extrinsic evidence in support of its litigation interpretation – no witness affidavits, no contemporaneous emails, not even a Rule 56(d) affidavit in support of additional discovery.  Jefferies Opp. at 15-16.  Jefferies' failure to offer either extrinsic evidence itself or a Rule 56(d) affidavit seeking additional discovery effectively concedes that all extrinsic evidence supports Mr. Weiss's interpretation.  The conspicuous lack of a Rule 56(d) affidavit also makes clear that additional discovery would not yield extrinsic evidence in Jefferies' favor.  *See Gurary v. Winehouse*, 190 F.3d 37, 44 (2d Cir. 1999) (failure to file Rule 56(d) affidavit "is fatal" to a later claim that additional discovery should have been allowed).

Third, even if Jefferies could point to competing contemporaneous evidence that supported its litigation interpretation, that would only reveal that the parties had disagreed about the meaning of Section 9, further undermining the existence of the contract *ab initio*.  *See Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 398 (S.D.N.Y. 2011) ("When the parties understand the relevant language differently and both understandings are reasonable . . . the contract will be unenforceable as no meeting of the minds has occurred."); *Keybanc Cap. Mkts., Inc. v. Extreme Steel, Inc.*, No. 23-cv-8535, 2024 WL 3237653, at *4 (S.D.N.Y. June 27, 2024) (same).

C.    Jefferies' Assertion that Mr. Weiss is Collaterally Estopped is Baseless

Finally, as noted above and in Mr. Weiss's opposition to Jefferies' motion for summary judgment, Jefferies' efforts to collaterally estop Mr. Weiss are frivolous and an affront to due process.  *See* Jefferies Opp. at 14.  Mr. Weiss is not a party to the bankruptcy proceeding, his arguments were explicitly not considered by the bankruptcy court, and the bankruptcy court was without constitutional jurisdiction to bind Mr. Weiss.  Weiss Opp. at 15-22.  In short, Jefferies has

12711680-10

not demonstrated that any of the six enumerated exceptions to the rule against nonparty preclusion in federal court apply here or that the issue was actually decided by the bankruptcy court. *See Taylor*, 553 U.S. at 892-907. Mr. Weiss cannot be collaterally estopped from defending himself, for the first time, in this action.

<u>**CONCLUSION**</u>

In seeking to enforce the unenforceable Forbearance Agreement, Jefferies seeks an unbargained for and unagreed to windfall. For the reasons described above and in his opening brief, the Court should grant Mr. Weiss's motion for summary judgment.

Dated: New York, New York
        December 4, 2024

KAPLAN RICE LLP


By:    */s/ Howard Kaplan*
       Howard Kaplan
       Michelle Rice
       142 West 57th Street
       Suite 4A
       New York, New York 10019
       (212) 235-0300


OLSHAN FROME WOLOSKY LLP


By:    */s/ Brian A. Katz*
       Brian A. Katz
       Daniel M. Stone
       1325 Avenue of the Americas
       New York, New York 10019
       (212) 451-2300


*Attorneys for George Weiss*

A-1030

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC, <br><br> Plaintiff, <br><br> -against- <br><br> GEORGE WEISS, <br><br> Defendant. | Case No. 1:24-cv-04369-AKH |

---

**DEFENDANT WEISS'S REPLY TO JEFFERIES**
**LOCAL RULE 56.1 COUNTERSTATEMENT**

Pursuant to Local Civil Rule 56.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, defendant George Weiss, by and through his undersigned counsel, submits this REPLY to plaintiffs Jefferies Strategic Investments, LLC's ("JSI") and Leucadia Asset Management Holdings LLC's ("LAM Holdings," and with JSI, "Plaintiffs") counterstatement of material facts (ECF No. 36)

**A.    Parties**

1.    George Weiss is the founder of each of GWA, LLC ("GWA"), Weiss Multi-Strategy Funds LLC ("WMSF"), OGI Associates LLC ("OGI"), Weiss Special Operations LLC ("WSPO"), Weiss Multi-Strategy Advisers LLC ("WMSA," and collectively with GWA, WMSF, OGI, and WSPO, the "Weiss Companies"). Declaration of George Weiss, dated November 5, 2024 ("Weiss Decl.") ¶ 4.

**RESPONSE 1:  Not disputed.**

2.    Until recently, the Weiss Companies were some of the longest tenured hedge funds in the United States, managing approximately $4 billion at their peak. Weiss Decl. ¶ 5.

**RESPONSE 2:  Not disputed, but irrelevant. The assertions in paragraph 2 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). The tenure of the Weiss Companies[1] is immaterial and irrelevant to this dispute, which turns only on George Weiss's ("Weiss") failure to pay amounts under a guarantee made to Plaintiffs.**

3.      In 46 years of operation, the Weiss Companies ended a financial year with losses on only four occasions. Weiss Decl. ¶ 5.

**RESPONSE 3:  Not disputed, but irrelevant. The assertions in paragraph 3 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' financial performance over the last 46 years is immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

4.      Plaintiff JSI is a Delaware LLC and a subsidiary of Jefferies Financial Group. Complaint, ECF No. 1, Ex. A ¶ 11.

**RESPONSE 4:  Not disputed, but irrelevant. The assertions in paragraph 4 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Where JSI is organized, and its corporate structure, are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

5.      Plaintiff Leucadia is a Delaware LLC and a subsidiary of Jefferies Financial Group. Complaint, ECF No. 1, Ex. A ¶ 12.

---

[1] "Weiss Companies" refers to GWA, LLC ("GWA"), Weiss Multi-Strategy Funds LLC ("WMSF"), OGI Associates LLC ("OGI"), Weiss Special Operations LLC ("WSPO"), and Weiss Multi-Strategy Advisers LLC ("WMSA").

2

**RESPONSE 5:  Not disputed, but irrelevant. The assertions in paragraph 5 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Where LAM Holdings is organized, and its corporate structure, are irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

B.    <u>The Contracts Between Plaintiffs and Certain Weiss Companies</u>

6.       Jefferies has been in business with the Weiss Companies since 2018, when Leucadia entered into a "Strategic Relationship Agreement" with the Weiss Companies. Weiss Decl. ¶ 7; Declaration of Jeffrey Dillabough, dated November 5, 2024 ("Dillabough Decl.") ¶ 5.

**RESPONSE 6:  Not disputed that on or about May 1, 2018, LAM Holding LLC and GWA entered into a Strategic Relationship Agreement (as amended, the "Strategic Relationship Agreement"). (Balber Decl. Ex. 1-A).[2] Also not disputed that, on or about October 18, 2018, LAM Holding LLC assigned all of its rights under the Strategic Relationship Agreement to LAM Holdings, pursuant to an Assignment and Assumption Agreement. (Dillabough Decl. Ex. 3 at 1; Balber Decl. Ex. 6 ¶ 26).[3]**

**Otherwise, disputed. Weiss defines "Jefferies" as JSI and LAM Holdings, and the "Weiss Companies," as including GWA, WMSF, OGI, WSPO, and WMSA. However, only LAM Holdings and GWA were parties to the Strategic Relationship Agreement. (*See* Balber Decl. Ex. 1-A). Weiss does not submit any evidence of a connection between JSI and any of the "Weiss Companies" as of 2018, and the proffered evidence shows only that LAM**

---

[2] "Balber Decl." refers to the Declaration of Scott S. Balber (ECF No. 30). References to "Ex.   " refer to the exhibits to the Balber Decl.

[3] "Dillabough Decl." refers to the Declaration of Jeffrey Dillabough (ECF No. 28). References to "Ex.   " refer to the exhibits to the Dillabough Decl.

12715517-1

Holdings had a contractual relationship with GWA at that time, but not any of the other Weiss Companies. (*See id.*).

7.      As part of this arrangement, Jefferies provided financing to GWA through promissory notes. Weiss Decl. ¶ 7; Dillabough Decl. ¶ 5.

**RESPONSE 7: Disputed. Under the Strategic Relationship Agreement, Leucadia Funding LLC, a non-party to this action, agreed to "open an investment account and fund it with $250,000,000 of Notional Value," and to share certain revenues and profits generated by GWA's business. (Balber Decl. Ex. 1-A at 1). The proffered evidence does not establish that JSI or LAM Holdings provided "financing to GWA through promissory notes" via the Strategic Relationship Agreement.**

**However, on or about December 3, 2019, GWA, WMSA, and JFG Funding LLC, entered into a Note Purchase Agreement (as amended, the "2019 Note Purchase Agreement"). (Balber Decl. Ex. 1-B). Then, on December 1, 2021, JFG Funding LLC and JSI entered into an Assignment and Assumption Agreement. (Balber Decl. Ex. 1- E). And, on or about September 21, 2022, GWA, WMSA, and JSI entered into a Note Purchase Agreement (as amended, the "2022 Note Purchase Agreement" and collectively with the 2019 Note Purchase Agreement, the "Note Purchase Agreements"). (Balber Decl. Ex. 1-F). Pursuant to those Note Purchase Agreements, GWA issued three notes to JSI (the "Notes"). (Balber Decl. Exs. 1-C, 1-D, 1-G).**

8.      Mr. Weiss is not personally a party to any of these agreements and did not guaranty any of the Weiss Companies' obligations. Weiss Decl. ¶ 7.

**RESPONSE 8: Disputed. It is not clear which "agreements" or "obligations" Weiss is referencing in paragraph 8. However, pursuant to a February 12, 2024 forbearance**

agreement (the "Forbearance Agreement"), the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). And Weiss, in turn, guaranteed "the performance of the agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).

**C.    The Working Relationship Between the Weiss Companies and Jefferies**

9.    Beginning in 2018, Jefferies and the Weiss Companies worked cooperatively to market the Weiss Companies, including to Jefferies clients. Dillabough Decl. ¶ 7.

**RESPONSE 9: Not disputed, but irrelevant. The assertions in paragraph 9 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Whether Jefferies and the Weiss Companies worked cooperatively at any point in the past to market the Weiss Companies is immaterial and irrelevant to this dispute.**

10.    Over the years, the Weiss Companies paid down a portion of the amounts owed to Jefferies under the Strategic Relationship Agreement and to JSI under the promissory notes, but the amounts continued to accrue. The parties operated under the assumption that GWA would pay these amounts down as cash became available. Weiss Decl. ¶ 8; Dillabough Decl. ¶ 6.

**RESPONSE 10: Not disputed that amounts owed to Plaintiffs under the Strategic Relationship Agreement and Notes have "continued to accrue." Disputed, however, that "[t]he parties operated under the assumption that GWA would pay these amounts down as cash became available."**

*First*, that assertion is improper because it does not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). The parties' "assumptions" are subjective beliefs and not fact.

*Second*, that assertion is belied by the language of the Strategic Relationship Agreement and Note Purchase Agreements, which contain merger clauses disclaiming any unwritten understandings between the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14).

11.     The financial condition of the Weiss Companies was fully disclosed to Jefferies, and the Weiss Companies regularly provided Jefferies with financial records and projections. Weiss Decl. ¶ 9.

**RESPONSE 11:  It is not clear what Weiss means by "financial condition" or by the term "fully disclosed" in paragraph 11. It is undisputed that the Weiss Companies provided certain disclosures to the Plaintiffs pursuant to the agreements between the parties. (*See, e.g.*, Dillabough Decl. Ex. 3 § 2(a)). To the extent Weiss is implying that the disclosure of financial information somehow provides a defense to the claims in this action, disputed. The assertion that the Weiss Companies "fully disclosed" their financial condition is improper, because whether something is "fully disclosed" is subjective, and not a material fact "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). In any event, the Weiss Companies' disclosures of financial information to the Plaintiffs are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

12.     In November 2023, Mr. Weiss began having discussions with a potential new strategic partner (the "Strategic Partner"). Weiss Decl. ¶ 10; Dillabough Decl. ¶ 8.

**RESPONSE 12:  Not disputed, but irrelevant. The assertions in paragraph 12 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Discussions between Weiss and a potential new strategic partner are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

13.     Mr. Weiss promptly informed Jefferies's CEO, Richard Handler, and co- presidents Brian Friedman and Nick Daraviras, about these discussions. Weiss Decl. ¶ 11; Dillabough Decl.¶ 9.

**RESPONSE 13:  Not disputed, but irrelevant. The assertions in paragraph 13 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Discussions between Weiss and a potential new strategic partner, along with any notice Weiss provided to other members of the Weiss Companies, are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

14.     Jefferies initially expressed support for the proposed transaction. Weiss Decl. ¶ 11; Dillabough Decl. ¶ 9.

**RESPONSE 14:  Disputed. It is not clear what Weiss means by "the proposed transaction" in paragraph 14 and, in turn, Plaintiffs cannot fully respond to this assertion. In any event, the assertions in paragraph 14 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any proposed transaction with a potential new strategic partner, assuming that is what Weiss is referring to, is immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

12715517-1

**D.**    **Negotiations with the Strategic Partner and the Forbearance Agreement**

15.    On February 1, 2024, Jefferies sent the Weiss Companies a draft Forbearance Agreement (the "Draft Forbearance Agreement"). Weiss Decl. ¶ 13; Dillabough Decl. ¶ 11; Dillabough Decl. Ex. 1

**RESPONSE 15:  Not disputed.**

16.    This draft prohibited the Weiss Companies from paying "any bonus compensation or other compensation or other payment in excess of base salaries to any of their employees . . . in respect of any period" unless Jefferies agreed in its "sole and absolute discretion." Dillabough Decl., Ex. 1 § 2(b).

**RESPONSE 16:  Not disputed.**

17.    In exchange, JSI offered not to seek relief under title 11 of the bankruptcy code or take any other enforcement action for at most five business days. Dillabough Decl., Ex. 1 § 3.

**RESPONSE 17:  Not disputed.**

18.    Mr. Dillabough, general counsel to the Weiss Companies, informed Jefferies' representative Mr. Daraviras that the Weiss Companies could not agree to this provision and that the Weiss Companies had to maintain control over the payment of bonuses. Dillabough Decl. ¶ 12.

**RESPONSE 18:  Disputed.**

**The assertions in paragraph 18 that "the Weiss Companies had to maintain control over the payment of bonuses" is improperly argumentative and a legal conclusion and should therefore be disregarded. *Epstein v. Kemper Ins. Cos.*, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002). These assertions are also improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." Whether the Weiss Companies communicated to Plaintiffs the necessity of the "Weiss Companies . . .**

8

maintain[ing] control over the payment of bonuses" is immaterial and irrelevant to this matter, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

In any event, Plaintiffs also dispute these assertions. Dillabough did not inform anyone at the Plaintiffs that "the Weiss Companies had to maintain control over the payment of bonuses."

Instead, on February 8, 2024, Nicholas Daraviras sent an email to Michael Edwards ("Edwards"), a Deputy Chief Investment Officer at WMSA, Dillabough, and Weiss. That email requested, in part, that the Weiss team: "confirm that the management team at Weiss has not undertaken any fraudulent conveyance or other bad act contrary to [the Plaintiffs'] rights and the protection of [the Plaintiffs'] interests, including the transfer of any value out of OGI or any other Weiss entity or making any bonus or other payments to employees or other owners or related parties, and will not do so while Weiss is insolvent unless we are paid what is due to us but we need this to be evidenced in writing and legally enforceable." (Mot. to Convert Decl. ¶ 20).[4]

Dillabough responded to that email stating "I can assure you that we are operating the business in the normal course. As we all agreed, it is in all of our interests not to disrupt the teams in order to preserve the value of the organization. George is meeting with [a multi-fund manager] at 3pm to try to work through some (hopefully) final hurdles." (*Id.* ¶ 21).

Yet, far from operating in the "normal course," the Weiss Companies distributed approximately $30 million in bonuses and employee compensation that same day. (*Id.* ¶ 22).

---

[4] "Mot. to Convert Decl." refers to the Decl. of Nicholas Daraviras in Support of Jefferies Strategic Investments, LLC And Leucadia Asset Management Holdings LLC Motion for Conversion of the Debtors' Cases to Chapter 7 Pursuant To 11 U.S.C. § 1112(B), In re Weiss Multi-Strategy Advisers LLC, No. 24-10743 (MG) (Bankr. S.D.N.Y.) (ECF No. 20-3).

19.    Mr. Dillabough and another representative of the Weiss Companies advised Mr. Daraviras that paying the bonuses was necessary for the Weiss Companies to survive and for the potential pending deal with the Strategic Partner to progress. Dillabough Decl. ¶ 12; see Weiss Decl. ¶ 14.

**RESPONSE 19:  Disputed.**

**The assertions in paragraph 19 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any potential bonuses paid, or pending deal with a Strategic Partner are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**In any event, Dillabough did not inform anyone at the Plaintiffs "that paying the bonuses was necessary for the Weiss Companies to survive and for the potential pending deal with the Strategic Partner to progress."**

**Instead, on February 8, 2024, Nicholas Daraviras sent an email to Edwards, Dillabough, and Weiss. That email requested that Weiss and his team: "confirm that the management team at Weiss has not undertaken any fraudulent conveyance or other bad act contrary to [the Plaintiffs'] rights and the protection of [the Plaintiffs'] interests, including the transfer of any value out of OGI or any other Weiss entity or making any bonus or other payments to employees or other owners or related parties, and will not do so while Weiss is insolvent unless we are paid what is due to us but we need this to be evidenced in writing and legally enforceable." (Mot. to Convert Decl. ¶ 20).**

**Dillabough responded to that email stating "I can assure you that we are operating the business in the normal course. As we all agreed, it is in all of our interests not to disrupt**

the teams in order to preserve the value of the organization. George is meeting with [a multi-fund manager] at 3pm to try to work through some (hopefully) final hurdles." (*Id.* ¶ 21).

Yet, far from operating in the "normal course," the Weiss Companies distributed approximately $30 million in bonuses and employee compensation that same day. (*Id.* ¶ 22).

20.    Mr. Dillabough also was concerned that delegating to a creditor this decision concerning the retention of the Weiss Companies' employees and compliance with its contractual commitments to the portfolio managers could breach the Weiss Companies' duties to their clients. Dillabough Decl. ¶ 12.

**RESPONSE 20:  Disputed.**

The assertions in paragraph 20 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Dillabough's subjective "concerns" over delegation are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

In any event, Dillabough did not convey those "concerns" to the Plaintiffs. Instead, on February 8, 2024, Nicholas Daraviras sent an email to Edwards, Dillabough, and Weiss. That email requested that Weiss and his team: "confirm that the management team at Weiss has not undertaken any fraudulent conveyance or other bad act contrary to [the Plaintiffs'] rights and the protection of [the Plaintiffs'] interests, including the transfer of any value out of OGI or any other Weiss entity or making any bonus or other payments to employees or other owners or related parties, and will not do so while Weiss is insolvent unless we are paid what is due to us but we need this to be evidenced in writing and legally enforceable." (Mot. to Convert Decl. ¶ 20).

Dillabough responded to that email stating "I can assure you that we are operating the business in the normal course. As we all agreed, it is in all of our interests not to disrupt the teams in order to preserve the value of the organization. George is meeting with [a multi-fund manager] at 3pm to try to work through some (hopefully) final hurdles." (*Id.* ¶ 21).

Yet, far from operating in the "normal course," the Weiss Companies distributed approximately $30 million in bonuses and employee compensation that same day. (*Id.* ¶ 22).

21.    During the week of February 5, 2024, Jefferies threatened to seek a temporary restraining order from a court, including in an email to Mr. Dillabough, on February 8, 2024. Dillabough Decl. ¶ 13; Weiss Decl. ¶ 15.

**RESPONSE 21: Disputed.**

The assertions in paragraph 21 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). That "Jefferies" advised Weiss that it was considering seeking a temporary restraining order due to the conduct of Weiss and the Weiss Companies is immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

In any event, the assertion is misleading to the extent it suggests that the Plaintiffs lacked a legal basis for seeking a temporary restraining order. Indeed, in early 2024, the Plaintiffs learned that the Weiss Companies were intending to pay, at the end of February 2024, approximately $30 million in bonuses and employee compensation, comprised of $2.7 million in "management fees," $8 million in staff and management bonuses, and $19.6 million in "strategy payouts," despite being hopelessly insolvent and owing the Plaintiffs nearly $100 million. (Mot. to Convert Decl. ¶ 16). The Weiss Companies, however, represented that that

12

they would not make those payments until the end of February 2024. (Mot. to Convert Decl. ¶¶ 16–22). Concerned that the Weiss Companies would deplete what little assets they had to pay back the obligations owed to the Plaintiffs, Plaintiffs considered seeking a temporary restraining order from a court. Ultimately, Plaintiffs could not seek that relief, as, in direct violation of their prior representations, the Weiss Companies surreptitiously made the bonus payments on February 8, 2024, mooting any potential motion. (*Id.* ¶¶ 16–22).

22.     The email again demanded that the Weiss Companies not pay bonuses, including bonuses that the Weiss Companies were contractually committed to pay to its portfolio managers, even though Mr. Dillabough had just explained that failing to pay these bonuses would destroy the firm and would jeopardize the negotiations with the potential Strategic Partner. Dillabough Decl. ¶ 13; Weiss Decl. ¶ 14.

**RESPONSE 22:  Disputed.**

The assertions in paragraph 22 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Any purported "demands" made by Plaintiffs are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

In any event, the cited email does not state that "failing to pay these bonuses would destroy the firm and would jeopardize the negotiations with the potential Strategic Partner."

Instead, on February 8, 2024, Daraviras sent an email to Edwards, Dillabough, and Weiss. That email stated: "confirm that the management team at Weiss has not undertaken any fraudulent conveyance or other bad act contrary to [the Plaintiffs'] rights and the protection of [the Plaintiffs'] interests, including the transfer of any value out of OGI or any

other Weiss entity or making any bonus or other payments to employees or other owners or related parties, and will not do so while Weiss is insolvent unless we are paid what is due to us but we need this to be evidenced in writing and legally enforceable." (Mot. to Convert Decl. ¶ 20).

Dillabough responded to that email stating "I can assure you that we are operating the business in the normal course. As we all agreed, it is in all of our interests not to disrupt the teams in order to preserve the value of the organization. George is meeting with [a multi-fund manager] at 3pm to try to work through some (hopefully) final hurdles." (*Id.* ¶ 21).

Yet, far from operating in the "normal course," the Weiss Companies distributed approximately $30 million in bonuses and employee compensation that same day. (*Id.* ¶ 22).

23.     Mr. Weiss and Mr. Dillabough both viewed these threats as bullying tactics and an effort to gain leverage in connection with the negotiations with the Strategic Partner. Dillabough Decl. ¶ 14; Weiss Decl. ¶ 15.

**RESPONSE 23:  Not disputed, but irrelevant. The assertions in paragraph 23 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." Weiss and Dillabough's "views" about any "threats" are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**E.    The Superbowl Sunday Ultimatum**

24.     On February 11, 2024, Jefferies was told that the Weiss Companies had paid the bonuses due. Dillabough Decl. ¶ 15.

**RESPONSE 24:  Not disputed, but irrelevant. The assertions in paragraph 24 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." When the Weiss Companies told the Plaintiffs they had**

14

**improperly paid out bonuses is immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

25.    On February 11, 2024, Jefferies CEO, Richard Handler, called Mr. Weiss and accused him of committing securities fraud in "stealing" Jefferies' money. Mr. Handler also said that there would be a public news article that would destroy Mr. Weiss's reputation and the reputations of key Weiss employees. Weiss Decl. ¶ 17.

**RESPONSE 25:  Disputed. The assertions in paragraph 25 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**Moreover, in direct contrast to Weiss's current contention, each of the Strategic Relationship Agreement, Note Purchase Agreements, and Forbearance Agreement contain express merger clauses disclaiming any unwritten understandings or conversations between the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14; Balber Decl. Ex. 1-F § 14; Dillabough Decl. Ex. 3 § 10(g)).**

**Thus, to the extent Weiss is implying that he signed the Forbearance Agreement as a result of the statements referred to in paragraph 25, such implication is denied.**

26.    Mr. Handler further threatened that unless Defendant signed a forthcoming revised forbearance agreement, Jefferies would sue Mr. Weiss and employees of the Weiss Companies. Mr. Handler did not mention a personal guarantee. Weiss Decl. ¶ 17.

**RESPONSE 26:  Disputed. The assertions in paragraph 26 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be**

tried." Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

Moreover, in direct contrast to Weiss's current contention, each of the Strategic Relationship Agreement, Note Purchase Agreements, and Forbearance Agreement contain express merger clauses disclaiming any unwritten understandings or conversations between the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14; Balber Decl. Ex. 1-F § 14; Dillabough Decl. Ex. 3 § 10(g)). Thus, to the extent Weiss is implying that he signed the Forbearance Agreement as a result of the statements referred to in paragraph 26, such implication is denied.

27.    On February 11, 2024, Jefferies' outside counsel, Scott Balber, arranged a call between Mr. Weiss, Mr. Dillabough, Mr. Daraviras, and others. During that call, Mr. Daraviras and Mr. Balber railed against Mr. Weiss and Mr. Dillabough. Weiss Decl. ¶ 18; Dillabough Decl. ¶ 15.

RESPONSE 27:  Disputed. The assertions in paragraph 27 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

Moreover, in direct contrast to Weiss's current contention, each of the Strategic Relationship Agreement, Note Purchase Agreements, and Forbearance Agreement contain express merger clauses disclaiming any unwritten understandings or conversations between the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14;

**Balber Decl. Ex. 1-F § 14; Dillabough Decl. Ex. 3 § 10(g)). Thus, to the extent Weiss is implying that he signed the Forbearance Agreement as a result of the phone call referred to in paragraph 27, such implication is denied.**

28.    They reiterated Mr. Handler's threat to ruin the reputations of everyone involved in a public litigation to be filed the following morning unless the Weiss Companies signed a new forbearance agreement they would send over later that evening. Weiss Decl. ¶ 18; Dillabough Decl. ¶ 15.

**RESPONSE 28:  Disputed. The assertions in paragraph 28 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**Moreover, in direct contrast to Weiss's current contention, each of the Strategic Relationship Agreement, Note Purchase Agreements, and Forbearance Agreement contain express merger clauses disclaiming any unwritten understandings or conversations between the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14; Balber Decl. Ex. 1-F § 14; Dillabough Decl. Ex. 3 § 10(g)).**

**Thus, to the extent Weiss is implying that he signed the Forbearance Agreement as a result of the statements referred to in paragraph 28, such implication is denied.**

29.    Plaintiffs also threatened to claw back compensation payments to employees, freeze the Weiss Companies' bank accounts and ruin Mr. Weiss's reputation in the industry. Weiss Decl. ¶ 18; Dillabough Decl. ¶ 15.

12715517-1

**RESPONSE 29:  Disputed. The assertions in paragraph 29 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**Moreover, in direct contrast to Weiss's current contention, each of the Strategic Relationship Agreement, Note Purchase Agreements, and Forbearance Agreement contain express merger clauses disclaiming any unwritten understandings or conversations between the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14; Balber Decl. Ex. 1-F § 14; Dillabough Decl. Ex. 3 § 10(g)). Thus, to the extent Weiss is implying that he signed the Forbearance Agreement as a result of the statements referred to in paragraph 29, such implication is denied.**

30.    At no point did anyone on the February 11, 2024 call arranged by Mr. Balber discuss Mr. Weiss personally guaranteeing any amounts owed to Jefferies. Weiss Decl. ¶ 18; Dillabough Decl. ¶ 16.

**RESPONSE 30:  Disputed. The assertions in paragraph 30 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**Moreover, in direct contrast to Weiss's current contention, each of the Strategic Relationship Agreement, Note Purchase Agreements, and Forbearance Agreement contain express merger clauses disclaiming any unwritten understandings or conversations between**

the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14; Balber Decl. Ex. 1-F § 14; Dillabough Decl. Ex. 3 § 10(g)). Thus, to the extent Weiss is implying that he signed the Forbearance Agreement as a result of the phone call referred to in paragraph 30, such implication is denied.

31.     On February 12, 2024, at 2:10 am and 2:20 am, Plaintiffs sent a revised Forbearance Agreement to the Weiss Companies and reminded them of the deadline to sign "by 7 am today, Monday, Feb 12" or face litigation. Dillabough Decl. ¶ 17; Dillabough Decl., Ex. 2.

**RESPONSE 31:  Not disputed.**

32.     The Weiss Companies believed that Jefferies' threats would lead to the immediate demise of the Weiss Companies. Dillabough Decl. ¶ 24.

**RESPONSE 32:  Not disputed, but irrelevant. The assertions in paragraph 32 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' "beliefs" are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

33.     Before this point, only GWA and WMSA had contractual obligations to Jefferies— none of the remaining entities nor Mr. Weiss had any contractual obligations to Jefferies. *See* Dillabough Decl. ¶ 22; *see also* Dillabough Decl., Ex. 3 Recitals.

**RESPONSE 33:  Not disputed, but irrelevant. The assertions in paragraph 33 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Whether any parties other than GWA and WMSA "had contractual obligations to" the Plaintiffs before Weiss and**

Plaintiffs entered into the Forbearance Agreement is immaterial and irrelevant to this dispute, which turns only on Weiss's obligations under the Forbearance Agreement.

34.    There was no discussion or negotiation concerning the terms of the draft forbearance agreement. Jefferies sent the draft and demanded that Weiss sign it as written. Dillabough Decl. ¶ 17; Weiss Decl. ¶ 20.

**RESPONSE 34:  Disputed.**

The assertions in paragraph 34 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

In any event, the cited evidence does not support Plaintiffs' assertion. Instead, the Weiss and Dillabough declarations make clear that Weiss and the Weiss Companies refused to sign the Forbearance Agreement until they had negotiated an agreement acceptable to them. For example, Weiss attests that on February 1, 2024, [Plaintiffs] emailed [his] team a draft 'forbearance agreement,'" which he and his companies "refused to sign . . . ." (Weiss Decl. ¶¶ 13–14).[5] Then, as Dillabough attests, "[o]n February 11, 2024, Superbowl Sunday, [he and Weiss] had a call with [representatives for Plaintiffs including] outside and in-house counsel . . . ." (Dillabough Decl. ¶ 11). The outcome of that call was a revised forbearance agreement, which Dillabough "reviewed." (*See id.* ¶ 18). Dillabough then "deleted . . . statements" from that agreement. (*Id.*). Under Dillabough's advice, Weiss then agreed to the

---

[5] "Weiss Decl." refers to the Declaration of George Weiss (ECF No. 27).

"revised version of the forbearance agreement" by signing it and delivering it to the Plaintiffs. (*Id.* ¶ 24, Ex. 3; Weiss Decl. ¶ 19).

**F.    The Terms of the Forbearance Agreement**

35.    On February 12, 2024, at 4 am, the Weiss Companies and Mr. Weiss, under threat of imminent public destruction, signed a modified version of the forbearance agreement that Jefferies had sent. Weiss Decl. ¶ 22; Dillabough Decl. ¶ 24; Dillabough Decl., Ex. 2.

**RESPONSE 35: Disputed in part. Plaintiffs do not dispute that the Weiss Companies and Weiss signed the Forbearance Agreement. (Dillabough Decl. Ex. 3). Plaintiffs deny Weiss's speculation regarding the imminent "public destruction" of the Weiss Companies, which is not a "fact," and, in any event, is immaterial. Accordingly, it is not a material fact "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b).**

36.    Mr. Weiss signed a version of the Forbearance Agreement that the Weiss Companies edited to remove two admissions Jefferies sought from Mr. Weiss and the Weiss Companies – specifically, that the bonus payments were made "in contravention of the statements made by the Weiss" Companies. Dillabough Decl. ¶¶ 18, 24; Dillabough Decl., Ex. 4.

**RESPONSE 36: Not disputed.**

37.    This version of the Forbearance Agreement has three categories of parties: the Weiss Companies; Mr. Weiss himself; and Jefferies. *See* Dillabough Decl. ¶ 24; Dillabough Decl., Ex. 3.

**RESPONSE 37: Disputed. The cited evidence does not support Plaintiffs' assertion. Nothing in the Forbearance Agreement denotes "categories" of parties. (*See* Dillabough Decl. Ex. 3). Undisputed that Weiss, the Weiss Companies, and Plaintiffs were parties to the Forbearance Agreement. (*Id.*).**

21

38.    Mr. Weiss was only a party to "Sections 5(a), 9, and 10(c)." Dillabough Decl., Ex. 3 Preamble, Signatures.

**RESPONSE 38:  Not disputed, but irrelevant. The assertions in paragraph 38 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Whether Weiss was a party to certain sections of the Forbearance Agreement other than his personal guarantee in section 9 is immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under the guarantee contained in section 9 of the Forbearance Agreement.**

1)    1)    **The Weiss Companies' Three Primary Obligations**

39.    Pursuant to the Forbearance Agreement, the Weiss Companies purported to undertake three primary obligations. Dillabough Decl., Ex. 3 §§ 2-4.

**RESPONSE 39:  Disputed. The cited evidence does not support Weiss's assertion that the Weiss Companies purported to undertake "three primary obligations." (***See* **Dillabough Decl. Ex. 3). Nothing in the Forbearance Agreement states which of the Weiss Companies' obligations were "primary."**

40.    First, Section 2 contains the "Weiss [Companies] Agreements," which generally required the Weiss Companies to provide specific information to Jefferies no later than 5:00 pm on February 13. Dillabough Decl. ¶ 20; Dillabough Decl., Ex. 3 § 2.

**RESPONSE 40: Disputed. The cited evidence does not support Plaintiffs' assertion that Section 2 "generally required the Weiss Companies to provide specific information to Jefferies no later than 5:00 pm on February 13." Rather Section 2 states, in full:**

(a)    To the extent they have not done so prior to the execution of this Agreement, the Weiss Parties agree to deliver the following information to the Jefferies Parties no later than 5:00 p.m. on February 13, 2024:

(i)      A schedule of bonus payments made to each employee during 2024 including (A) the name of the recipient employee, (B) the aggregate amounts paid to such recipient employee, and (C) the date or dates on which such bonus payments were made to such employee.

(ii)     Schedules of assets and liabilities of each of GWA, WMSF, OGI, WSPO, WMSA and each of their subsidiaries as of each of January 31, 2024 and February 9, 2024.

(iii)    Copies of statements from each brokerage, futures, commodities, custodial, bank, deposit or similar account held by any of the entities referred to in clause (ii) above.

(iv)     The name and address of each entity referred to in clause (ii) above and of each bank or brokerage firm where the accounts referred to in clause (iii) above are held.

(v)      A schedule of each client account managed by WMSA or its affiliates (the "Weiss Client Accounts"), including the amount of any accrued but unpaid fees or allocations owed to WMSA from each Weiss Client Account.

(vi)     The operative and offering documents of each Weiss Client Account, including each Private Placement Memorandum, Offering Memorandum, Limited Partnership Agreement, Limited Liability Company Agreement, Memorandum and Articles of Association, Investment Management Agreement and all similar documents.

(vii)    Copies of every invoice for accrued but unpaid fees or allocation that have been sent to any Weiss Client.

(b)     The Weiss Parties agree to provide promptly, and in any event within 24 hours of such request, any other information requested by the Jefferies Parties related to the Weiss Parties' and any of their subsidiaries' respective financial operations or financial conditions, the Past Due Obligations or the representations or obligations set forth in this Agreement.

(c)     The Weiss Parties hereby agree that none of them will (i) pay, grant or transfer (directly or indirectly) to any other person or entity an aggregate amount in excess of $10,000 on any day, except for payments made in the course of normal course trading consistent with past practices (e.g., payments to prime and executing brokers, payments against delivery and payments to ISDA counterparties), (ii) take any action or fail to take any action that may result in OGI's net assets being reduced or diminished in any respect other than permitting normal course trading consistent with past practices or (iii) take any other action or fail to take any action that would be reasonably expected to reduce the net asset value of the Weiss Parties or

23

their subsidiaries, in each case without the prior written consent of the Jefferies Parties, which may be granted or withheld in their sole and absolute discretion.

**(Dillabough Decl. Ex. 3 § 2).**

41.    The "Weiss [Companies] Agreements" also include that they would not make any payment, grant or transfer in excess of $10,000 "except for payments made in the course of normal trading consistent with past practices" "without the prior written consent of [Jefferies], which may be granted or withheld in their sole and absolute discretion." Dillabough Decl. ¶ 20; Dillabough Decl., Ex. 3 § 2(c).

**RESPONSE 41:  Not disputed.**

42.    Second, in Section 3 of the Forbearance Agreement, the Weiss Companies, other than GWA and definitionally excluding Mr. Weiss, purported to guaranty "the prompt and complete payment and performance by GWA and each other Weiss [Company] when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations . . . [under] any Note Purchase Agreement, any Note, the [Strategic Relationship] Agreement [and] this Agreement. . . ." Dillabough Decl., Ex. 3 § 3(a); see

Dillabough Decl. ¶ 22.

**RESPONSE 42:  Disputed. The cited evidence misleadingly omits portions of Section 3 of the Forbearance Agreement, which states, in full:**

> **(a)    Guaranty of Obligations. Each Weiss Party (other than GWA) hereby irrevocably and unconditionally guarantees to each of JSI and LAM Holdings (collectively, the "Beneficiaries") and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations (as herein defined). This guaranty shall remain in full force and effect until the Guaranteed Obligations are paid in full, notwithstanding any increase in the amount of the Guaranteed Obligations or any modification or amendment of**

24

> **any instrument governing the Guaranteed Obligations. As used herein, the term "Guaranteed Obligations" shall mean all the obligations of GWA and each other Weiss Party arising under any Note Purchase Agreement, the Notes, the SR Agreement and this Agreement, and any loss, damage, penalty, action, judgment, suit, cost, expense, disbursement, liability, claim or other obligation, incurred by or behalf of any Beneficiary (including but not limited to reasonable out- of-pocket attorneys' fees and costs) arising out or, relating to or in connection with any Note Purchase Agreement, any Note, the SR Agreement, this Agreement or the transaction contemplated thereby.**

**(Dillabough Decl. Ex. 3 § 3(a)).**

43.    Section 3 turned each of WMSF, OGI, and WSPO into guarantors for the notes and the SR Agreement. *See* Dillabough Decl. ¶ 22; Dillabough Decl., Ex. 3 § 3(a).

**RESPONSE 43: Disputed. The cited evidence misleadingly omits the complete section, which states, in full:**

> **(a)    Guaranty of Obligations. Each Weiss Party (other than GWA) hereby irrevocably and unconditionally guarantees to each of JSI and LAM Holdings (collectively, the "Beneficiaries") and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations (as herein defined). This guaranty shall remain in full force and effect until the Guaranteed Obligations are paid in full, notwithstanding any increase in the amount of the Guaranteed Obligations or any modification or amendment of any instrument governing the Guaranteed Obligations. As used herein, the term "Guaranteed Obligations" shall mean all the obligations of GWA and each other Weiss Party arising under any Note Purchase Agreement, the Notes, the SR Agreement and this Agreement, and any loss, damage, penalty, action, judgment, suit, cost, expense, disbursement, liability, claim or other obligation, incurred by or behalf of any Beneficiary (including but not limited to reasonable out- of-pocket attorneys' fees and costs) arising out or, relating to or in connection with any Note Purchase Agreement, any Note, the SR Agreement, this Agreement or the transaction contemplated thereby.**

12715517-1

**(Dillabough Decl. Ex. 3 § 3(a)).**

44.    Section 3 was clear that the "guaranty [was] an irrevocable, absolute, and continuing guaranty of the full and punctual payment and performance and not a guaranty of collection." Dillabough Decl., Ex. 3 § 3(b).

**RESPONSE 44:  Not disputed.**

45.    Third, the Weiss Companies agreed to grant Jefferies a security interest in all of their assets. Dillabough Decl., Ex. 3 § 4(a).

**RESPONSE 45:  Not disputed.**

46.    Section 5 of the Forbearance Agreement, the "Representations," set forth several representations from the Weiss Companies, including, among others, representations that they were authorized to enter the agreements, that no default of the underlying agreements had occurred, and that the financial statements were correct. Dillabough Decl., Ex. 3 § 5.

**RESPONSE 46: Disputed. The Forbearance Agreement specifically acknowledged that GWA was in default under the Notes, stating: "Each party agrees that pursuant to the terms of the Note Purchase Agreements, the Notes and the Redemption Notice, GWA is past due with respect to the following payment obligations to JSI (each calculated as of January 15, 2024): (i) $23,650,410.10 on the Note dated December 3, 2019, (ii) $27,457,310.08 on the Note dated January 13, 2020 and (iii) $3,420,395.60 on the Note dated September 21, 2022 (collectively, the "Past Due Obligations"). Each party further agrees that the Past Due Obligations are owed without defense, set-off or counter claim, and are past due." (Dillabough Decl. Ex. 3 § 1).**

2)    **Mr. Weiss's Limited Obligations**

47.    The Forbearance Agreement provides that Mr. Weiss was only a party "for purposes of Section 5(a), 9, and 10(c)." Dillabough Decl., Ex. 3 Preamble, Signatures.

26

**RESPONSE 47:  Not disputed, but irrelevant. The assertions in paragraph 47 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Whether Weiss was a party to certain sections of the Forbearance Agreement other than his personal guarantee in section 9 is immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under the guarantee contained in section 9 of the Forbearance Agreement.**

48.     Section 5(a) is a limited representation that the contract is enforceable, subject to "equitable principles relating to enforceability." Dillabough Decl., Ex. 3 § 5(a).

**RESPONSE 48:  Disputed. The cited evidence misleadingly fails to quote the entirety of Section 5(a), which states, in full:**

> **Each Weiss Party and Weiss hereby represents and warrants that (x) this Agreement has been duly executed and delivered by such Weiss Party and Weiss and (y) this Agreement is the legal, valid and binding obligation of such Weiss Party and Weiss, and is enforceable against each such Weiss Party and Weiss, in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and by equitable principles relating to enforceability.**

**(Dillabough Decl. Ex. 3 § 5(a)).**

49.     Section 10(c) is a purported acknowledgement that the agreement was supported by "reasonably equivalent value." Dillabough Decl., Ex. 3 § 10(c).

**RESPONSE 49:  Disputed. The cited evidence misleadingly fails to quote the entirety of Section 10(c), which states in full:**

> **Each Weiss Party and Weiss acknowledges and agrees that it is receiving a direct benefit from the transactions contemplated by this Agreement, and the terms of this Agreement, including the guaranty provided herein and the security interests granted herein, constitute reasonably equivalent value for the benefit it is receiving from entering into this Agreement. Each Weiss Party and Weiss agrees that it shall not, nor shall it cause,**

**directly or indirectly, any person controlled by, or under common control with, it, to take any action inconsistent with the terms of this Agreement. Each party represents and warrants that it has full power and authority to enter into and perform this Agreement, and that the person executing this Agreement on behalf of that party has been properly authorized and empowered to enter into this Agreement and to bind that party hereto.**

**(Dillabough Decl. Ex. 3 § 10(c)).**

50.    Section 9 provides:

**Weiss unconditionally and irrevocably personally guarantees to the Jefferies Entities the accuracy of the representations made by, and the performance of the agreements of, the Weiss [Companies] hereunder. Weiss further agrees that he shall take all actions within his control, including by exercising all of his voting, governance management and other rights and powers with respect to each of the other Weiss [Companies], any of their subsidiaries and any of his personal or his family's trusts to cause such persons to comply with the terms of this agreement. Dillabough Decl., Ex. 3 § 9.**

**RESPONSE 50:  Not disputed.**

51.    The reference to the "agreements of[] the Weiss [Companies] hereunder" in Section 9 is a direct reference to Section 2, the "Weiss [Companies] Agreements," which required Mr. Weiss to use his authority to ensure the performance of those agreements by the Weiss Companies. Dillabough Decl., Ex. 3 § 2.

**RESPONSE 51:  Disputed. The assertion is improperly argumentative and a legal conclusion and should therefore be disregarded. *Epstein*, 210 F. Supp. 2d at 314. In any event, the statement is also not supported by the evidence. Under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the**

28

agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).

52.    Nowhere in the agreement does Mr. Weiss guarantee any payment, much less "the full and punctual payment and performance" guaranteed by Weiss Companies. Dillabough Decl., Ex. 3 §§ 3(b), 9.

**RESPONSE 52: Disputed. The assertion is improperly argumentative and a legal conclusion and should therefore be disregarded. *Epstein*, 210 F. Supp. 2d at 314. In any event, the statement is also not supported by the evidence. Under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).**

53.    There is no provision in the Forbearance Agreement pursuant to which Mr. Weiss personally guaranteed payment of over $50 million in notes or note purchase agreements. Dillabough Decl. ¶ 25; see Dillabough Decl., Ex. 3.

**RESPONSE 53: Disputed. The assertion is improperly argumentative and a legal conclusion and should therefore be disregarded. *Epstein*, 210 F. Supp. 2d at 314. In any event, the statement is also not supported by the evidence. Under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM**

Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).

54.     There is also no provision in the Forbearance Agreement pursuant to which Mr. Weiss personally guaranteed payment of over $50 million allegedly due under the Strategic Relationship Agreement. Dillabough Decl. ¶ 25; see Dillabough Decl., Ex. 3.

**RESPONSE 54:  Disputed. The assertion is improperly argumentative and a legal conclusion and should therefore be disregarded. *Epstein*, 210 F. Supp. 2d at 314. In any event, the statement is also not supported by the evidence. Under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).**

55.     At no point prior to the initiation of this lawsuit did Jefferies ever discuss with Mr. Weiss a $100 million guaranty of the Weiss Companies' corporate debts or assert that Section 9 could be understood to include a personal payment guarantee. Weiss Decl. ¶ 31

**RESPONSE 55:  Disputed. The assertions in paragraph 55 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute because the Forbearance Agreement contains an express merger clause disclaiming any unwritten understandings or conversations between the parties. (Dillabough Decl. Ex. 3 § 10(g)).**

**Moreover, under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (***Id.*** § 9).**

  3) **JSI's Sole Obligation Under the Forbearance Agreement.**

56.  JSI had a single obligation under the Forbearance Agreement: it simply agreed to forbear from commencing an action to recover under the notes against the Weiss Companies for no more than two business days. Dillabough Decl., Ex. 3 § 6.

**RESPONSE 56: Disputed. Plaintiffs misleadingly omit portions of Section 6 of the Forbearance Agreement, which states in full:**

> **In exchange for the Weiss Parties agreeing to and complying with the terms of this Agreement, JSI agrees to (a) forbear from seeking relief or exercising any remedies under title 11 of the United State Code (the "Bankruptcy Code"), including, but not limited to, commencing an involuntary case against GWA under sections 301 or 303 of the Bankruptcy Code, as well as initiating or causing the initiation of an assignment for the benefit of creditors proceeding, a receivership or other similar insolvency proceeding and (b) forbear from filing an Enforcement Action,**

31

> **in each case, for the period (the "Forbearance Period")
> beginning on the date hereof until the earlier of (x) two Business
> Days after such date or (y) the occurrence of any Forbearance
> Default, except that the Forbearance Period will be
> automatically extended by an additional one Business Day at the
> conclusion of the Forbearance Period unless the Jefferies Parties
> give written notice of a termination of the Forbearance Period
> to the Weiss Parties on or prior to the conclusion of the
> Forbearance Period. (For the avoidance of doubt, the
> Forbearance Period shall automatically terminate upon the
> occurrence of a Forbearance Default.) For the purposes hereof,
> "Forbearance Default" shall mean the occurrence of any of the
> events described on Exhibit A attached hereto and "Business
> Day" shall have the meaning given to such term in the SR
> Agreement."**

**(Dillabough Decl. Ex. 3 § 6).**

     57.    JSI did not agree to forego suit against Mr. Weiss or any Weiss Companies'

employees for any period. Dillabough Decl., Ex. 3 § 6.

**RESPONSE 57: Disputed.  Weiss  misleadingly  omits  portions  of  Section  6  of  the**

**Forbearance Agreement, which states in full:**

> **In exchange for the Weiss Parties agreeing to and complying
> with the terms of this Agreement, JSI agrees to (a) forbear from
> seeking relief or exercising any remedies under title 11 of the
> United State Code (the "Bankruptcy Code"), including, but not
> limited to, commencing an involuntary case against GWA under
> sections 301 or 303 of the Bankruptcy Code, as well as initiating
> or causing the initiation of an assignment for the benefit of
> creditors proceeding, a receivership or other similar insolvency
> proceeding and (b) forbear from filing an Enforcement Action,
> in each case, for the period (the "Forbearance Period")
> beginning on the date hereof until the earlier of (x) two Business
> Days after such date or (y) the occurrence of any Forbearance
> Default, except that the Forbearance Period will be
> automatically extended by an additional one Business Day at the
> conclusion of the Forbearance Period unless the Jefferies Parties
> give written notice of a termination of the Forbearance Period
> to the Weiss Parties on or prior to the conclusion of the
> Forbearance Period. (For the avoidance of doubt, the
> Forbearance Period shall automatically terminate upon the
> occurrence of a Forbearance Default.) For the purposes hereof,
> "Forbearance Default" shall mean the occurrence of any of the**

> events described on Exhibit A attached hereto and "Business
> Day" shall have the meaning given to such term in the SR
> Agreement."

**(Dillabough Decl. Ex. 3 § 6).**

58.     Leucadia had no obligations whatsoever under the Forbearance Agreement. *See*
Dillabough Decl., Ex. 3.

**RESPONSE 58:  Disputed. In the Forbearance Agreement, LAM Holdings agreed to submit
to jurisdiction in the New York courts and litigate any cases under New York Law.
(Dillabough Decl. Ex. 3 § 9(h)).**

**G.     Jefferies Rejects the "Unilaterally Modified" Forbearance Agreement**

59.     At 8:53 am on February 12, 2024, Jefferies' outside attorney, Mr. Balber, wrote a
letter to the Weiss Companies stating that the Weiss Companies' edits to the Forbearance
Agreement were not acceptable. Dillabough Decl. ¶ 27; Dillabough Decl., Ex. 5.

**RESPONSE 59:  Disputed. The letter from Plaintiffs' outside attorney does not state that the
edits to the Forbearance agreement "were not acceptable." Instead, the letter states that the
Weiss "unilaterally modified portions of the draft Forbearance Agreement, including by
deleting the Weiss Parties' acknowledgement that they had previously stated that the bonus
payments would not be made until the second half of February 2024 . . . ." (Dillabough Decl.
Ex. 5). The letter then notes that Plaintiffs "expect[ed] the Weiss Parties to abide by the
representations made to the Jefferies Parties in the unilaterally modified Forbearance
Agreement." (*Id.*).**

60.     Mr. Balber explained, "At 2:20 a.m. this morning, the Jefferies Parties provided
you with a draft Forbearance Agreement, pursuant to which they offered to temporarily forego
commencing any Enforcement Action against the Weiss [Companies] during the Forbearance
Period. As part of that offer, the Jefferies Parties required that: the Weiss [Companies] admit that

they had made statements to the Jefferies Parties that they would not make certain bonus payments under the second half of February 2024 . . . [and] admit that they had paid the bonuses on February 8, 2024." Dillabough Decl., Ex. 5 (emphasis added).

**RESPONSE 60:  Not disputed.**

61.    As a result of the Weiss Companies' deletion of the required admissions, Jefferies made clear that there was no agreement, but nonetheless demanded that, "in the meantime," the Weiss Companies comply with their representations and the agreement to produce financial records. Dillabough Decl., Ex. 5.

**RESPONSE 61:  Disputed. The letter does not state that "there was no agreement." Instead, the letter states that the Weiss "unilaterally modified portions of the draft Forbearance Agreement, including by deleting the Weiss Parties' acknowledgement that they had previously stated that the bonus payments would not be made until the second half of February 2024 . . . ." (Dillabough Decl. Ex. 5). The letter then notes that Plaintiffs "expect[ed] the Weiss Parties to abide by the representations made to the Jefferies Parties in the unilaterally modified Forbearance Agreement." (*Id.*).**

62.    The letter also noted that the "Jefferies Parties reserve[d] all of their rights to bring claims and pursue remedies arising from the Weiss [Companies'] misconduct." Dillabough Decl., Ex. 5.

**RESPONSE 62:  Not disputed.**

63.    In other words, Jefferies informed the Weiss Companies that it was not bound by its sole obligation not to bring a claim to enforce the notes. Dillabough Decl. Ex. 5; Dillabough Decl. Ex. 3 § 6.

**RESPONSE 63:  Disputed.**

This assertion is improperly argumentative and a legal conclusion and should therefore be disregarded. *Epstein*, 210 F. Supp. 2d at 314. In any event, the assertion is not supported by the evidence. The letter from Plaintiffs' outside attorney does not state that Plaintiffs were "not bound by [their] sole obligation not to bring a claim to enforce the notes." Instead, the letter states that Weiss "unilaterally modified portions of the draft Forbearance Agreement, including by deleting the Weiss Parties' acknowledgement that they had previously stated that the bonus payments would not be made until the second half of February 2024 . . . ." (Dillabough Decl. Ex. 5). The letter then notes that Plaintiffs "expect[ed] the Weiss Parties to abide by the representations made to the Jefferies Parties in the unilaterally modified Forbearance Agreement." (*Id.*).

The assertion also misleadingly ignores the objective steps Plaintiffs took reflecting that they accepted the Forbearance Agreement as modified.

For instance, under the Forbearance Agreement, the Plaintiffs were required to forbear from bringing suit until the "earlier of (x) two Business Days after such date or (y) the occurrence of any Forbearance Default." (Dillabough Decl. Ex. 3 § 6). Plaintiffs did just that, only notifying Weiss that they were considering exercising their rights five days after entering into the Forbearance Agreement. (*See* Dillabough Decl. Ex. 6).

Similarly, consistent with the Forbearance Agreement, on February 13, 2024, just one day after entering into the Forbearance Agreement, JSI filed a UCC Financing Statement with the New York Department of State, recording the security interests granted in the Forbearance Agreement. (Balber Decl. Ex. 1 ¶ 22; Ex. 1-J).

64.    Jefferies never signed the Forbearance Agreement. Dillabough Decl. ¶ 28.

**RESPONSE 64:  Not disputed, but irrelevant. The assertions in paragraph 64 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Whether or not Plaintiffs signed the Forbearance Agreement is immaterial and irrelevant to this dispute, given the ample evidence the Plaintiffs otherwise agreed to the Forbearance Agreement.**

**For instance, under the Forbearance Agreement, the Plaintiffs were required to forbear from bringing suit until the "earlier of (x) two Business Days after such date or (y) the occurrence of any Forbearance Default." (Dillabough Decl. Ex. 3 § 6). Plaintiffs did just that, only notifying Weiss that they were considering exercising their rights five days after entering into the Forbearance Agreement. (***See*** Dillabough Decl. Ex. 6).**

**Similarly, consistent with the Forbearance Agreement, on February 13, 2024, just one day after entering into the Forbearance Agreement, JSI filed a UCC Financing Statement with the New York Department of State, recording the security interests granted in the Forbearance Agreement. (Balber Decl. Ex. 1 ¶ 22; Ex. 1-J).**

65.    During the week of February 12, in the hopes that Jefferies would refocus on negotiations with the Strategic Partner, the Weiss Companies transmitted the information requested in the Forbearance Agreement — most of which Jefferies already possessed. Dillabough Decl. ¶ 28.

**RESPONSE 65:  Not disputed, but irrelevant. The assertions in paragraph 65 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' "hopes" are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

66.    The Weiss Companies did not comply with certain provisions of the purported forbearance agreement, such as setting up account control agreements, since Jefferies never accepted or signed the modified Forbearance Agreement that Mr. Dillabough had sent them. Dillabough Decl. ¶ 28.

**RESPONSE 66:  Not disputed, but irrelevant. The assertions in paragraph 66 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' additional breaches of the Forbearance Agreement are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

67.    On February 15, 2024, GWA repaid $3 million owed under the notes. Dillabough Decl. ¶ 29.

**RESPONSE 67:  Not disputed.**

68.    Both the Weiss Companies and Jefferies refocused on the transaction with the Strategic Partner, exchanging numerous term sheets and discussing what amount Jefferies would accept to be bought out of its position. Dillabough Decl. ¶ 29.

**RESPONSE 68:  Not disputed, but irrelevant. The assertions in paragraph 68 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' negotiations with the Strategic Partner are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

69.    The negotiations with the Strategic Partner included paying Jefferies a $30 million payment from the Strategic Partner, and additional consideration of approximately $12 million

from the Weiss Companies, in full satisfaction of the amounts owed to Jefferies. Weiss Decl. ¶ 25; Dillabough Decl. ¶ 8.

**RESPONSE 69:  Disputed.**

The assertions in paragraph 69 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' negotiations with the Strategic Partner are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

In any event, Plaintiffs were not aware of any offer of a "$30 million payment." Instead, as of February 23, 2024, Weiss sent Nicholas Daraviras an email indicating that the strategic partner proposed "$25-30mm for Weiss to repay Leucadia and obtain FULL RELEASE from Leucadia of any future obligations" but that "Leucadia treatment" was still not "specified" and was a "next step." (Suppl. Mot. to Convert Decl. Ex. A).[6] Daraviras responded on February 26, 2024, proposing terms which were acceptable to Plaintiffs. These included "$30MM cash from" the strategic partner. (Suppl. Mot. to Convert Decl. Ex. B). Weiss rejected that proposal highlighting that "he did]n't care how much he owe[d]" Plaintiffs. (*Id.*). Within the next two days, Daraviras was told that the proposed deal between the Weiss Companies and the strategic partner had fallen through because the strategic partner had concerns regarding certain portfolio managers associated with the Weiss Companies. (Suppl. Mot. to Convert Decl. ¶ 11).

---

[6] "Suppl. Mot. to Convert Decl." refers to the Suppl. Decl. of Nicholas Daraviras in Support of Jefferies Strategic Investments, LLC And Leucadia Asset Management Holdings LLC Motion for Conversion of the Debtors' Cases to Chapter 7 Pursuant To 11 U.S.C. § 1112(B), *In re Weiss Multi-Strategy Advisers LLC*, No. 24-10743 (MG) (Bankr. S.D.N.Y.) (ECF No. 46-3). References to "Suppl. Mot. to Convert Decl. Ex.   " refer to the exhibits to the Suppl. Mot. to Convert Decl.

38

**H.    The Weiss Companies Shut Down and Jefferies
Ramps Up Threats of Litigation to Maximize Its Payment**

70.    On February 17, five days after rejecting the "unilaterally modified Forbearance Agreement," Mr. Daraviras emailed Mr. Dillabough a draft complaint (the "February Draft Complaint"). Dillabough Decl. ¶ 30; Dillabough Decl., Ex. 6; Weiss Decl. ¶ 26.

**RESPONSE 70: Not disputed that, on February 17, 2024, "Mr. Daraviras emailed Mr. Dillabough a draft complaint," but that fact is irrelevant.**

**The assertions in paragraph 70 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any action contemplated by the Plaintiffs after the Forbearance Agreement's "Forbearance Period" expired are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**Disputed that the Plaintiffs "reject[ed] the 'unilaterally modified Forbearance Agreement.'" Plaintiffs did no such thing. Under the Forbearance Agreement, the Plaintiffs were required to forbear from bringing suit until the "earlier of (x) two Business Days after such date or (y) the occurrence of any Forbearance Default." (Dillabough Decl. Ex. 3 § 6). Plaintiffs did just that, only notifying Weiss that they were considering exercising their rights five days after entering into the Forbearance Agreement. (*See* Dillabough Decl. Ex. 6).**

**Similarly, consistent with the Forbearance Agreement, on February 13, 2024, just one day after entering into the Forbearance Agreement, JSI filed a UCC Financing Statement with the New York Department of State, recording the security interests granted in the Forbearance Agreement. (Balber Decl. Ex. 1 ¶ 22; Ex. 1-J).**

71.    The February Draft Complaint was a threat to sue Mr. Weiss, GWA, WMSA, and 79 other employees of the Company personally. Dillabough Decl. ¶ 30; Dillabough Decl., Ex. 6; Weiss Decl. ¶ 26.

**RESPONSE 71:  Not disputed, but irrelevant. The assertions in paragraph 71 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." Any action contemplated by the Plaintiffs after the Forbearance Agreement's "Forbearance Period" expired are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

72.    The February Draft Complaint does not reference the Forbearance Agreement. *See* Dillabough Decl. Ex. 6.

**RESPONSE 72:  Not disputed, but irrelevant. The assertions in paragraph 72 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Whether the "February Draft Complaint" references the Forbearance Agreement is immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint that was filed in this action.**

73.    The February Draft Complaint does not allege that Mr. Weiss guaranteed the corporate debts owed to Jefferies. *See* Dillabough Decl., Ex. 6.

**RESPONSE 73:  Not disputed, but irrelevant. The assertions in paragraph 73 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Whether the "February Draft Complaint" alleges that Weiss guaranteed the corporate debts owed to Plaintiffs is immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint that was filed in this action.**

12715517-1

74.    After transmitting the February Draft Complaint, Jefferies rejected the $30 million offer made by the Strategic Partner and demanded $50 million in cash. Weiss Decl. ¶ 28; Dillabough Decl. ¶ 31.

**RESPONSE 74:  Disputed.**

**The assertions in paragraph 74 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."**

***See*** **S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' negotiations with the Strategic Partner are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**In any event, Plaintiffs did not reject any "$30 million payment." Instead, as of February 23, 2024, Weiss sent Nicholas Daraviras an email indicating that the strategic partner proposed "$25-30mm for Weiss to repay Leucadia and obtain FULL RELEASE from Leucadia of any future obligations" but that "Leucadia treatment" was still not "specified" and was a "next step." (Suppl. Mot. to Convert Decl. Ex. A). Daraviras responded on February 26, 2024, proposing terms which were acceptable to Plaintiffs. These included "$30MM cash from" the strategic partner. (Suppl. Mot. to Convert Decl. Ex. B). Weiss rejected that proposal highlighting that "he did]n't care how much he owe[d]" Plaintiffs. (*Id.*). Within the next two days, Daraviras was told that the proposed deal between the Weiss Companies and the strategic partner had fallen through because the strategic partner had concerns regarding certain portfolio managers associated with the Weiss Companies. (Suppl. Mot. to Convert Decl. ¶ 11). At no point did the Plaintiffs reject the proposal offered by the strategic partner. (*Id.* ¶¶ 4–6, 12).**

41

75.     On February 28, 2024, the Strategic Partner informed Mr. Weiss that it would not agree to the transaction at the level that Jefferies was demanding. Weiss Decl. ¶ 29; Dillabough Decl. ¶ 31.

**RESPONSE 75:  Disputed.**

**The assertions in paragraph 75 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' negotiations with the Strategic Partner are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**In any event, Plaintiffs were informed that the proposed deal between the Weiss Companies and the strategic partner had fallen through because the strategic partner had concerns regarding certain portfolio managers associated with the Weiss Companies, and not because "it would not agree to the transaction at the level that [Plaintiffs were] demanding." (Suppl. Mot. to Convert Decl. ¶ 11).**

76.     On March 26, 2024, Jefferies, through counsel, Mr. Balber, sent a second draft complaint (the "March Draft Complaint"). Dillabough Decl. ¶ 32; Dillabough Decl., Ex. 7; Weiss Decl. ¶ 30.

**RESPONSE 76:  Not disputed, but irrelevant. The assertions in paragraph 76 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Whether the Plaintiffs "sent a second draft complaint" to Weiss is immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint filed in this action.**

77.     The March Draft Complaint dropped the 79 employees from the suit, and alleged that Mr. Weiss and "his close cronies" abused their position and treated the companies as their "personal piggy bank." *See* Dillabough Decl., Ex. 7 ¶ 1.

**RESPONSE 77:  Not disputed, but irrelevant. The assertions in paragraph 77 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Whether the "March Draft Complaint dropped the 79 employees from the suit, and alleged that Mr. Weiss and 'his close cronies' abused their position and treated the companies as their 'personal piggy bank'" is immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint filed in this action.**

78.     The March Draft Complaint does not allege that Mr. Weiss personally guaranteed the corporate debts owed to Jefferies. Dillabough Decl., Ex. 7 ¶¶ 70-78.

**RESPONSE 78:  Not disputed, but irrelevant. The assertions in paragraph 78 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Whether the "March Draft Complaint . . . allege[s] that . . . Weiss personally guaranteed the corporate debts owed to" Plaintiffs is immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint filed in this action.**

79.     The sole allegation regarding Mr. Weiss's breach of the Forbearance Agreement was that he "fail[ed] to take all actions within his control" to prevent the Weiss Companies from making the March 1 payments to vendors. Dillabough Decl., Ex. 7 ¶¶ 76, 106-09.

**RESPONSE 79:  Not disputed, but irrelevant. The assertions in paragraph 79 are improper because they do not contain any material facts "as to which it is contended that there exists**

a genuine issue to be tried." *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any allegations in draft complaints not before the Court are immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint filed in this action.**

80.    The Demand for Relief summarizes Jefferies' understanding that Mr. Weiss could only be found liable for a breach of the Weiss Party Agreements, not for a Section 3 guaranty:

> WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against defendants as follows:
>
> (a)    On the First Cause of Action, a judgment in JSI's favor and against GWA, WMSA, WMSF, OGI, and WSPO for money damages in an amount to be determined at trial, but believed to be not less than $49,832,562.00, representing the outstanding principal and interest owed to JSI under the Notes;
>
> (b)    On the Second Cause of Action, a judgment in LAM Holdings' favor and against GWA, WMSA, WMSF, OGI, and WSPO for money damages in an amount to be determined at trial, but believed to be not less than $50,597,604.00, representing all outstanding principal and interest owed to LAM Holdings under the Strategic Relationship Agreement as of December 31, 2023;
>
> (c)    On the Third and Fourth Causes of Action, a judgment in Plaintiffs' favor and against the Insiders voiding the voidable transfers set forth above;
>
> (d)    On the Fifth Cause of Action, a judgment in JSI's and LAM Holdings' favor and against GWA, WMSA, WMSF, OGI, WSPO, and George Weiss for money damages in an amount to be determined at trial, but believed to be not less than $470,370.98, representing the amounts transferred by GWA and WMSA in breach of the February Forbearance Agreement on March 1, 2024;

Dillabough Decl., Ex. 7, Demand for Relief (emphasis added).

**RESPONSE 80: Disputed. Plaintiffs understood, and currently contend, that Weiss can be liable for failing to perform under his guarantee of any of the Weiss Companies' obligations, including their payment obligations. Under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the agreements**

of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).

Moreover, any allegations in draft complaints not before the Court are immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint filed in this action.

81.     At no point before, during or after the signing of the Forbearance Agreement did anyone communicate to Mr. Weiss that Mr. Weiss might be personally responsible for the entire amount owed. Weiss Decl. ¶¶ 3, 21, 23, 31.

**RESPONSE 81: Disputed. Under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).**

\*     \*     \*

**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS**

82.     On or about May 1, 2018, LAM Holding LLC and GWA entered into the Strategic Relationship Agreement. (Balber Decl. Ex. 1-A).

Response:     Undisputed.

83.     On or about October 18, 2018, LAM Holding LLC assigned all of its rights under the Strategic Relationship Agreement to LAM Holdings, pursuant to an Assignment and Assumption Agreement. (Dillabough Decl. Ex. 3 at 1; Balber Decl. Ex. 6 ¶ 26).

Response:    Discovery has not occurred in this case and so Mr. Weiss cannot confirm or deny the facts in this paragraph. Mr. Weiss confirms, however, that the cited paragraphs of the Forbearance Agreement and the Declaration of Pierce Archer states LAM Holding LLC assigned its rights under the Strategic Relationship Agreement to Jefferies Asset Management Holdings LLC and that Jefferies Asset Management Holdings LLC later changed its name to Leucadia Asset Management Holdings LLC.

84.    On or about December 3, 2019, GWA, WMSA, and JFG Funding LLC, entered into the 2019 Note Purchase Agreement. (Balber Decl. Ex. 1-B).

Response:    Undisputed.

85.    On December 1, 2021, JFG Funding LLC and JSI entered into an Assignment and Assumption Agreement. (Balber Decl. Ex. 1-E).

Response:    Undisputed.

86.    On or about September 21, 2022, GWA, WMSA, and JSI entered into the 2022 Note Purchase Agreement. (Balber Decl. Ex. 1-F).

Response:    Undisputed.

87.    The Forbearance Agreement contains a broad merger clause which provides that:

> All agreements, covenants, representations and warranties, express or implied, oral and written, of the parties hereto concerning the subject matter hereof, are contained herein. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party hereto to any other concerning the subject matter hereof. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter hereto are merged herein.

(Dillabough Decl. Ex. 3 § 10(g)).

Response:    Disputed.  Undisputed that the quoted text is found in Section 10(g) of the Forbearance Agreement, but the description of the merger clause as "broad" is improperly argumentative.

88.    On February 13, 2024, JSI filed a UCC Financing Statement with the New York Department of State. (Balber Decl. Ex. 1 ¶ 22; Ex. 1-J).

Response:    Undisputed that Balber Decl. Ex. 1-J reflects a UCC Financing Statement, allegedly filed on February 13, 2024, listing the Debtor as WMSF (and no other Weiss Company).

89.    On April 29, 2024, GWA, WMSA, WSPO, and OGI filed voluntary petitions for relief pursuant to Chapter 11 of the United States Bankruptcy Code. (Balber Decl. Exs. 2–5).

Response:    Disputed to the extent that no voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code for WMSA was attached as an exhibit to the Balber Decl. Exhibit 2 is not a voluntary petition for relief pursuant to Chapter 11 of any of GWA, WMSA, WSPO, or OGI. Balber Decl. Ex. 2 is a voluntary petition for relief of WMSF, dated June 19, 2024. Otherwise, undisputed.

90.    On or about June 11, 2024, WMSA filed a List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (the "WMSA Statement"). The WMSA Statement reflects that WMSA owes LAM Holdings $52,473,259.00." (Balber Decl. Ex. 7).

Response:    Disputed. Balber Decl. Ex. 7 only shows that LAM Holdings had a disputed claim of $52,473,259.00.

91.    Those amounts are owed to LAM Holdings pursuant to the Strategic Relationship Agreement. (See Balber Decl. Ex. 1-A, Balber Decl. Ex. 7).

Response:    Disputed. Balber Decl. Ex. 7 only shows that LAM Holdings had a disputed claim to WMSA's assets, it does not identify the origin of said claim.

92.    The WMSA Statement further reflects that WMSA owes JSI $43,190,924.00. (Balber Decl. Ex. 7).

Response:    Disputed. Balber Decl. Exhibit 7 only shows that JSI had a disputed claim of $43,190,924.00.

93.    Those amounts are owed to JSI under the Notes. (See Balber Decl. Exs. 1-C, 1-D, 1-G; Balber Decl. Ex. 7).

Response:    Disputed. Balber Decl. Ex. 7 only shows that JSI had a disputed claim to WMSA's assets, it does not identify the origin of said claim.

94.    On or about June 11, 2024, GWA filed a List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (the "GWA Statement"). The GWA Statement reflects that GWA owes LAM Holdings $52,473,259.00. (Balber Decl. Ex. 8).

Response:    Disputed. Balber Decl. Ex. 8 only shows that LAM Holdings had a disputed claim of $52,473,259.00.

95.    Those amounts are owed to LAM Holdings pursuant to the Strategic Relationship Agreement. (*See* Balber Decl. Ex. 1-A, Balber Decl. Ex. 8).

Response:    Disputed. Balber Decl. Ex. 8 only shows that LAM Holdings had a disputed claim to GWA's assets, it does not identify the origin of said claim.

96.    The GWA Statement further reflects that GWA owes JSI $43,190,924.00. (Balber Decl. Ex. 8).

Response:    Disputed. Balber Decl. Ex. 8 only shows that JSI had a disputed claim of $43,190,924.00.

97.    Those amounts are owed to JSI under the Notes. (*See* Balber Decl. Exs. 1-C, 1-D, 1-G; Balber Decl. Ex. 8).

Response:    Disputed. Balber Decl. Ex. 8 only shows that JSI had a disputed claim to GWA's assets, it does not identify the origin of said claim.

98.    On or about June 11 2024, OGI filed a List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (the "OGI Statement"). The OGI Statement reflects that OGI owes LAM Holdings $52,473,259.00. (Balber Decl. Ex. 9).

Response:    Disputed. Balber Decl. Ex. 9 only shows that LAM Holdings had a disputed claim of $52,473,259.00.

99.    Those amounts are owed to LAM Holdings pursuant to the Strategic Relationship Agreement. (*See* Balber Decl. Ex. 1-A, Balber Decl. Ex. 9).

Response:    Disputed. Balber Decl. Ex. 9 only shows that LAM Holdings had a disputed claim to OGI's assets, it does not identify the origin of said claim.

100.    The OGI Statement further reflects that OGI owes JSI $43,190,924.00. (Balber Decl. Ex. 9).

Response:    Disputed. Balber Decl. Ex. 9 only shows that JSI had a disputed claim of $43,190,924.00.

101.    Those amounts are owed to JSI under the Notes. (*See* Balber Decl. Exs. 1-C, 1-D, 1-G; Balber Decl. Ex. 9).

Response:    Disputed. Balber Decl. Ex. 9 only shows that JSI had a disputed claim to OGI's assets, it does not identify the origin of said claim.

102.    On or about June 11, 2024, WSPO filed a List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (the "WSPO Statement"). The WSPO Statement reflects that WSPO owes LAM Holdings $52,473,259.00. (Balber Decl. Ex. 10).

Response:    Disputed. Balber Decl. Ex. 10 only shows that LAM Holdings had a disputed claim of $52,473,259.00.

103.    Those amounts are owed to LAM Holdings pursuant to the Strategic Relationship Agreement. (*See* Balber Decl. Ex. 1-A, Balber Decl. Ex. 10).

Response:    Disputed. Balber Decl. Ex. 10 only shows that LAM Holdings had a disputed claim to WSPO's assets, it does not identify the origin of said claim.

104.    The WSPO Statement further reflects that WSPO owes JSI $43,190,924.00. (Balber Decl. Ex. 10).

Response:    Disputed. Balber Decl. Ex. 10 only shows that JSI had a disputed claim of $43,190,924.00.

105.    Those amounts are owed to JSI under the Notes. (*See* Balber Decl. Exs. 1-C, 1-D, 1-G; Balber Decl. Ex. 10).

Response:    Disputed. Balber Decl. Ex. 10 only shows that JSI had a disputed claim to WSPO's assets, it does not identify the origin of said claim.

106.    On June 19, 2024, WMSF filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code. (Balber Decl. Ex. 11).

Response:     Undisputed, however, Mr. Weiss notes that WMSF's voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code is Balber Decl. Ex. 2, not Balber Decl. Ex. 11.

107.    On or about June 28, 2024, WMSF filed the Global Notes, Methodology and Specific Disclosures Regarding WMSF's Schedules of Assets and Liabilities and Statement of Financial Affairs (the "WMSF Statement"). The WMSF Statement reflects that WMSF owes LAM Holdings $52,473,259.00. (Balber Decl. Ex. 12).

Response:     Disputed. Balber Decl. Ex. 12 only shows that LAM Holdings had a disputed claim of $52,473,259.00.

108.    Those amounts are owed to LAM Holdings pursuant to the Strategic Relationship Agreement. (*See* Balber Decl. Ex. 1-A, Balber Decl. Ex. 12).

Response:     Disputed. Balber Decl. Ex. 12 only shows that LAM Holdings had a disputed claim to WMSF's assets, it does not identify the origin of said claim.

109.    The WMSF Statement further reflects that WMSF owes JSI $43,190,924.00. (Balber Decl. Ex. 12).

Response:     Disputed. Balber Decl. Ex. 12 only shows that JSI had a disputed claim of $43,190,924.00.

110.    Those amounts are owed to JSI under the Notes. (*See* Balber Decl. Exs. 1-C, 1-D, 1-G; Balber Decl. Ex. 12).

Response:     Disputed. Balber Decl. Ex. 10 only shows that JSI had a disputed claim to WMSF's assets, it does not identify the origin of said claim.

111.    On April 29, 2024, GWA, WMSA, WSPO, and OGI commenced an adversary proceeding against the Jefferies Parties captioned *GWA, LLC et al v. Jefferies Strategic Investments, LLC et al.*, No. 24-01350 (MG). (Balber Decl. Ex. 13).

Response:     Undisputed.

112.    On June 25, 2024, the Weiss Companies filed an amended complaint in the Adversary Proceeding. (Balber Decl. Ex. 14).

Response:    Undisputed.

113.    In the amended complaint in the Adversary Proceeding, the Weiss Companies "demand[ed] judgment holding that the Amended Forbearance Agreement [and, in turn, the personal guarantee contained therein] is null and void, and unenforceable" reasoning that there was not a "meeting of the minds" because Plaintiffs "never executed and returned the Amended Forbearance Agreement," but instead "indicated that they did not agree with certain of the modified terms." (Balber Decl. Ex 14 ¶¶ 120, 123).

Response:    Disputed.  The referenced paragraphs do not reference the personal guarantee nor do they state that there was not a "meeting of the minds," but rather states that the Forbearance Agreement is null and void because (a) the Weiss Companies were coerced under duress to execute it; (b) Jefferies never signed the agreement; (c) was without consideration; and (d) Jefferies did not intend to comply with the Forbearance Agreement.

114.    On July 16, 2024, Plaintiffs moved to dismiss the Weiss Companies' amended complaint in part. (*See* Balber Decl. Ex. 15).

Response:    Undisputed.

115.    On August 6, 2024, the Weiss Companies filed an opposition to the Plaintiffs' motion to dismiss. (*See* Balber Decl. Ex. 16).

Response:    Undisputed.

116.    On September 11, 2024, the Bankruptcy Court held a hearing on the Plaintiffs' (defendants in the adversary proceeding) motion to dismiss. (Balber Decl. Ex. 17).

Response:    Undisputed.

117.    Weiss's personal counsel, who is also representing Weiss in this matter, appeared at the hearing on the motion to dismiss. (*Id.* 45:5–15).

Response:    Undisputed that counsel to Mr. Weiss, spoke briefly at the hearing on the motion to dismiss to answer two questions from the Court: counsel listed certain cases as request from Counsel for the Weiss Companies and explained the procedural posture of the instant matter.

A-1081

Dated: New York, New York
December 4, 2024

        KAPLAN RICE LLP

        By:   */s/ Howard Kaplan*
              Howard Kaplan
              Michelle Rice
              142 West 57th Street
              Suite 4A
              New York, New York 10019
              (212) 235-0300

        OLSHAN FROME WOLOSKY LLP

        By:   */s/ Brian A. Katz*
              Brian A. Katz
              Daniel M. Stone
              1325 Avenue of the Americas
              New York, New York 10019
              (212) 451-2300

        *Attorneys for George Weiss*

12715517-1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC, | Case No. 1:24-cv-04369-AKH |
| Plaintiffs, | |
| -against- | |
| GEORGE WEISS, | |
| Defendant. | |

**JEFFERIES STRATEGIC INVESTMENTS, LLC**
**AND LEUCADIA ASSET MANAGEMENT HOLDINGS LLC'S REPLY**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................ii

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT .......................................................................................................3

    I.    The Forbearance Agreement is Enforceable Against Weiss.........................3

        A.    Weiss is Collaterally Estopped from Disputing
                the Enforceability of the Forbearance Agreement............................3

        B.    The Evidence Establishes Plaintiffs'
                Acceptance of the Forbearance Agreement ......................................5

    II.    Weiss Personally Guaranteed His Companies' Payment Obligations.........8

        A.    Weiss is Collaterally Estopped
                from Disputing His Payment Obligation .........................................8

        B.    The Guarantee Requires Payment as a Matter of Law .................15

    III.    Weiss's Boilerplate Affirmative Defenses Fail to Raise an Issue of Fact .................18

CONCLUSION....................................................................................................21

A-1084

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*,
    578 F. Supp. 3d 467 (S.D.N.Y. 2022) ................................................................. 5, 6

*Am. Trading Co. v. Fish*,
    42 N.Y.2d 20 (1977) ............................................................................................ 15, 17

*Asesores y Consejeros Aconsec CIA, S.A. v. Glob. Emerging Mkts. N. Am., Inc.*,
    841 F. Supp. 2d 762 (S.D.N.Y. 2012) .................................................................. 7

*Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*,
    310 F. Supp. 2d 556 (S.D.N.Y. 2003) .................................................................. 18

*Brooklyn Union Gas Co. v. Exxon Mobil Corp.*,
    478 F. Supp. 3d 417 (E.D.N.Y. 2020) .................................................................. 19

*Cerny v. Rayburn*,
    972 F. Supp. 2d 308 (E.D.N.Y. 2013) .................................................................. 9

*Cestaro v. Prohaska*,
    681 F. Supp. 3d 121 (S.D.N.Y. 2023) .................................................................. 18

*EDP Med. Comput. Sys., Inc. v. U.S.*,
    2005 WL 3117433  (E.D.N.Y. 2005) .................................................................... 13, 14

*Eldor Contracting Corp. v. Cnty. of Nassau*,
    272 A.D.2d 509 (2d Dep't 2000) .......................................................................... 7

*Fernicola v. Specific Real Prop. in Possession,*
    *Custody, Control of Healthcare Underwriters Mut. Ins. Co.*,
    2001 WL 1658257 (S.D.N.Y. Dec. 26, 2001) ...................................................... 5

*Gache v. Hill Realty Assocs., LLC*,
    2014 WL 5048336 (S.D.N.Y. 2014) ..................................................................... 13, 14

*GWA, LLC v. Jefferies Strategic Inv., LLC (In re Weiss Multi-Strategy Advisers LLC)*,
    2024 WL 4276161 (Bankr. S.D.N.Y. Sept. 24, 2024) ........................................ *passim*

*Hickerson v. City of N.Y.*,
    146 F.3d 99 (2d Cir. 1998) ................................................................................... 13

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*,
    655 F.3d 136 (2d Cir. 2011) ................................................................................. 20

*Katchen v. Landy*,
    382 U.S. 323 (1966) ............................................................................................... 13

*LaFleur v. Whitman*,
    300 F.3d 256 (2d Cir. 2002) ................................................................................ 10

*Legal Recovery Assocs. LLC v. Brenes L. Grp., P.C.*,
    2023 WL 2253138 (S.D.N.Y. Feb. 13, 2023) ..................................................... 19

*Lenzi v. L.L. Bean, Inc.*,
    2023 WL 8237484 (W.D.N.Y. Nov. 28, 2023) ................................................... 18

*Mathias v. Jacobs*,
    167 F. Supp. 2d 606 (S.D.N.Y. 2001) ................................................................ 21

*Merch. Cash & Cap., LLC v. Haute Soc'y Fashion, Inc.*,
    2017 WL 2912452 (E.D.N.Y. July 6, 2017) ................................................. 15, 17

*Montana v. United States*,
    440 U.S. 147 (1979) ............................................................................................... 9

*Muscatello v. Artco Chem. Inc.*,
    251 A.D.2d 882 (3d Dep't 1998) .......................................................................... 6

*Nat. Sch. Rep. Servs., Inc. v. Nat. Sch. of Cal., Ltd.*,
    924 F. Supp. 21 (S.D.N.Y. 1996) ....................................................................... 20

*Nycal Corp. v. Inoco PLC*,
    968 F. Supp. 147 (S.D.N.Y. 1997) ..................................................................... 11

*O'Toole v. McTaggart (In re Trinsum Group, Inc.)*,
    467 B.R. 734 (Bankr. S.D.N.Y. 2012) ................................................................ 12

*Quadrant Structured Prod. Co. v. Vertin*,
    23 N.Y.3d 549 (2014) .......................................................................................... 17

*Republic of Ecuador v. Chevron Corp.*,
    638 F.3d 384 (2d Cir. 2011) .................................................................................. 3

*Richards v. Jefferson Cnty.*,
    517 U.S. 793 (1996) ............................................................................................. 14

*Roche Diagnostics GmbH v. Enzo Biochem, Inc.*,
    992 F. Supp. 2d 213 (S.D.N.Y. 2013) ................................................................ 15

*Savignano v. Play*,
    210 A.D.3d 1228 (3d Dep't 2022) ........................................................................ 7

*Sterling Investor Servs., Inc. v. 1155 Nobo Assocs., LLC*,
    30 A.D.3d 579 (2d Dep't 2006) .......................................................................... 17

*Stern v. Marshall*,
    564 U.S. 462 (2011) ............................................................................................ 12

*Superior Funding Corp. v. Big Apple Cap. Corp.*,
    738 F. Supp. 1468 (S.D.N.Y. 1990) ................................................................... 15

*Taub v. Hershkowitz (In re Taub)*,
    421 B.R. 93 (Bankr. E.D.N.Y. 2009) ................................................................. 14

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ........................................................................................... 14

*Tucker Leasing Cap. Corp. v. Pizzuti Dev., Inc.*,
    1992 WL 554186 (E.D.N.Y. Jan. 7, 1992) ........................................................ 18

*TufAmerica, Inc. v. Codigo Music LLC*,
    162 F. Supp. 3d 295 (S.D.N.Y. 2016) ............................................................... 21

*U.S. Bank N.A. v. Perlmutter*
*(In re S. Side House, LLC)*,
    470 B.R. 659 (Bankr. E.D.N.Y. 2012) ................................................................. 1

*U.S. Tr. Co. of N.Y. v. Sec. Planners, Inc.*,
    238 A.D.2d 114 (1st Dep't 1997) ...................................................................... 16

*VNB N.Y. Corp. v Chatham Partners, LLC*,
    125 A.D.3d 517 (1st Dep't 2015) ...................................................................... 16

*Wang v. Pataki*,
    396 F. Supp. 2d 446 (S.D.N.Y. 2005) ................................................................. 5

*Winters v. Lavine*,
    574 F.2d 46 (2d Cir. 1978) ................................................................................. 11

*Wu v. Lin (In re Qiao Lin)*,
    576 B.R. 32 (Bankr. E.D.N.Y. 2017) ................................................................ 5, 9

*Yeiser v. GMAC Mortg. Corp.*,
    535 F. Supp. 2d 413 (S.D.N.Y. 2008) ............................................................... 10

*Zherka v. City of N.Y.*,
    459 F. App'x 10 (2d Cir. 2012) ......................................................................... 4, 9

Plaintiffs, by and through their undersigned counsel, respectfully submit this reply memorandum of law in support of their motion for summary judgment (ECF No. 29; the "Motion") against defendant George Weiss.[1]

## PRELIMINARY STATEMENT

Weiss fails to set forth any genuine issue of material fact that would preclude summary judgment. The following facts established by Plaintiffs are undisputed:

(i)      Weiss accepted and signed the Forbearance Agreement, pursuant to which he "unconditionally and irrevocably personally guarantee[d] . . . the performance of the agreements of, the [George Weiss Companies]" under the Forbearance Agreement (*Cf.* Weiss CSUF ¶ 26);[2]

(ii)     at least $95,664,183.00 is due and owing by the George Weiss Companies under their agreements with Plaintiffs (Weiss CSUF ¶¶ 28–48); and

(iii)    Weiss has not paid to Plaintiffs any of the amounts owed (Weiss CSUF ¶¶ 28–48).

Weiss nowhere contests these facts and therefore, as a matter of law, Plaintiffs have made a *prima facie* showing that they are entitled to summary judgment against Weiss on their breach of guarantee claim. (*See generally* Opening Brief at 7). Thus, Weiss bears the burden to establish—through the submission of admissible evidence—that there is at least a triable issue of fact that could support some *bona fide* defense. (*Id.* at 11 (citing *U.S. Bank N.A. v. Perlmutter (In re S. Side House, LLC)*, 470 B.R. 659, 677 (Bankr. E.D.N.Y. 2012))). Weiss has failed to do so.

---

[1]      Capitalized terms not otherwise defined herein have the meanings set forth in Plaintiffs' memorandum of law in support of motion for summary judgment (ECF No. 32; the "Opening Brief").

[2]      "Weiss CSUF" refers to the Defendant Weiss's Response to Jefferies Local Rule 56.1 Statement (ECF No. 34).

1

Instead, Weiss's Opposition raises three arguments, not one of which meets his burden.[3]

*First*, Weiss contends that he has introduced sufficient evidence to establish that Plaintiffs—who are seeking to enforce the Forbearance Agreement—"rejected" that same agreement. However, the record unequivocally shows, and the Bankruptcy Court already held, that Plaintiffs accepted the Forbearance Agreement through their objective actions, including by filing U.C.C. financing statements which perfected security interests granted to them in the Forbearance Agreement. Weiss is bound by the Forbearance Agreement as a matter of law.

*Second*, Weiss argues that the Forbearance Agreement does not contain a "payment guarantee." However, under well-settled New York law, a personal guarantee of "performance"—like the one here—extends to the performance of any underlying payment obligation. For that very reason, the Bankruptcy Court rejected Weiss and the George Weiss Companies' prior attempts to raise this identical argument as well. There is no genuine issue of material fact as to whether Weiss guaranteed the payment obligations of the George Weiss Companies.

*Third*, Weiss cites—without specificity—to ten boilerplate and factually unsupported affirmative defenses, and asserts that they create an issue of fact. (ECF No. 21 at 10–11). But setting aside that these affirmative defenses were inadequately pleaded (and in turn, cannot serve as a basis for denying Plaintiffs' summary judgment motion), Weiss also does not proffer any admissible evidence that would give rise to a genuine issue of material fact.

Accordingly, this Court should grant summary judgment in favor of Plaintiffs.

---

[3]    "Opposition" or "Opp." refers to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 33).

A-1089

## ARGUMENT

### I.    The Forbearance Agreement is Enforceable Against Weiss

It is not disputed that Weiss accepted and signed the Forbearance Agreement that Plaintiffs seek to enforce against him. (CSUF ¶ 35).[4]  Nevertheless, Weiss claims that summary judgment should be denied, futilely arguing that because Plaintiffs did not sign the Forbearance Agreement, Plaintiffs have "not established the existence of a mutually-agreed upon enforceable contract." (Opp. at 13).  This argument fails for two distinct reasons.

#### A.    Weiss is Collaterally Estopped from Disputing the Enforceability of the Forbearance Agreement

The doctrine of collateral estoppel applies whenever "'(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'"  (Opp. at 15 (quoting, *inter alia*, *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011))).

Each of these elements are clearly met with respect to the Bankruptcy Court's decision regarding the enforceability of the Forbearance Agreement.

*First*, despite Weiss's uncited contention that "the Bankruptcy Court 'did not decide . . . whether the Forbearance Agreement is enforceable'" (Opp. at 15), the identical issue was raised before, and decided by, the Bankruptcy Court.   Specifically, in an adversary proceeding commenced by the George Weiss Companies against Plaintiffs, the companies argued that the Forbearance Agreement "is null and void, and unenforceable" because Plaintiffs:  (i) "never execut[ed] and return[ed] the . . . Forbearance Agreement," and (ii) sent a letter indicating that

---

[4]    "CSUF" refers to the Plaintiffs' Responses to Defendant George Weiss's Statement of Material Facts Pursuant to Local Rule 56.1 (ECF No. 36).

they "did not agree with certain" of the terms contained therein (CSUF ¶ 113), and further "indicated that they had no intention of complying" with the Forbearance Agreement (Balber Decl. Ex. 14 ¶ 120).[5]  That is *identical* to Weiss's current contention, in which Weiss argues that the Forbearance Agreement is not an "enforceable contract" because:  (i) it is "unsigned"; and (ii) Plaintiffs sent a letter which purportedly "rejected" the Forbearance Agreement "because it did not contain certain 'required' admissions from . . .Weiss."  (Opp. at 14; CSUF ¶ 60).

*Second*, the issue was "actually litigated and decided in the previous proceeding" because the Bankruptcy Court expressly considered and rejected Weiss's argument.  Specifically, the Bankruptcy Court held that—because the Weiss Companies admitted (as Weiss does here) that Plaintiffs:  (i) "filed UCC-1 financing statements to perfect the security interests granted under the" Forbearance Agreement; and (ii) refrained from bringing suit until "after they fulfilled their agreement to forbear"—Plaintiffs' "'objective' actions" showed "that they intended to be bound by the" Forbearance Agreement.  *GWA, LLC v. Jefferies Strategic Inv., LLC (In re Weiss Multi-Strategy Advisers LLC)*, 2024 WL 4276161, at *24–25 (Bankr. S.D.N.Y. Sept. 24, 2024) (internal quotations omitted).   And because "[t]he issues presented [before the Bankruptcy Court] are substantially the same as those presented" here, Weiss is precluded from raising them again. *Zherka v. City of N.Y.*, 459 F. App'x 10, 13 (2d Cir. 2012).

*Third*, Weiss had a "full and fair opportunity" to litigate this issue.  Weiss's Opposition does not even contest his opportunity to litigate this issue.  (*See* Opp. at 14–15).  Nor could Weiss do so, as he admits that both his personal counsel—as well as counsel to the George Weiss Companies that he controls—appeared and argued before the Bankruptcy Court.  (Weiss CSUF ¶¶ 54–58).  He therefore had a full and fair opportunity to litigate the issue. *See Wang v. Pataki*,

---

[5]    "Balber Decl." refers to the Declaration of Scott S. Balber (ECF No. 30).  References to "Ex. __" refer to the exhibits to the Balber Decl.

4

396 F. Supp. 2d 446, 455 (S.D.N.Y. 2005) (precluding relitigating issue in later case where the defendant's principal made an appearance in prior case); *Fernicola v. Specific Real Prop. in Possession, Custody, Control of Healthcare Underwriters Mut. Ins. Co.*, 2001 WL 1658257, at *4 (S.D.N.Y. Dec. 26, 2001) (precluding corporate officer from relitigating issue decided in litigation against the company he managed).

*Fourth*, the issue was necessarily decided because the George Weiss Companies indisputably made this specific argument, which was then expressly rejected by the Bankruptcy Court. (*See* Weiss CSUF ¶¶ 53, 55–56, 58); *Wu v. Lin (In re Qiao Lin)*, 576 B.R. 32, 55 (Bankr. E.D.N.Y. 2017) (issue is "necessarily decided" when the point "was placed in issue and decided").

In sum, Weiss and his companies already litigated their contention that Plaintiffs did not accept the Forbearance Agreement. The Bankruptcy Court's decision on that issue precludes Weiss's arguments to the contrary in opposing this Motion.

**B.    The Evidence Establishes Plaintiffs' Acceptance of the Forbearance Agreement**

Even if this Court were to credit Weiss's disavowal of the the Bankruptcy Court's decision, Plaintiffs' motion should nonetheless be granted.

On summary judgment, "[w]hen determining whether the parties intended to be bound," courts look to the "written instruments" and "other evidence about intent." *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 497 (S.D.N.Y. 2022). "[W]hen there are no competing inferences [regarding intent] to be drawn, that is to say when there are no questions of fact, a court may find that the parties entered into an enforceable contract." *Id.* To determine whether such inferences exist, "the court looks not to the[ ] [parties'] after-the-fact professed subjective intent, but their objective intent as manifested by their expressed words and deeds at the time of contracting. When the parties' expressions and conduct would lead a reasonable person to

5

conclude that they intended to reach a binding agreement, the agreement is enforceable." *Id.* (internal quotations omitted) (citations omitted).

Here, the evidence uniformly and unequivocally shows that Plaintiffs: (i) fully complied with the Forbearance Agreement's obligation to forbear from bringing suit against GWA following its execution (*see* CSUF ¶ 70); and (ii) promptly filed UCC-1 financing statements against certain of the parties to the Forbearance Agreement, in an effort to perfect the security interests granted under the Forbearance Agreement (*see* Balber Decl. Ex. 1 ¶ 22; Ex. 1-J). As a matter of law, that evidence establishes that the Parties' actions would lead a reasonable person to conclude that they intended to reach a binding agreement. *See GWA, LLC*, 2024 WL 4276161, at *24–25.

Nonetheless, Weiss raises two arguments in a vain attempt to cast doubt on Plaintiffs' acceptance of the Forbearance Agreement.

*First*, Weiss notes that Plaintiffs did not sign the Forbearance Agreement. (Opp. at 14). That argument fails as a matter of law. New York law is clear that an agreement need not be signed in order to be binding and enforceable. *See Muscatello v. Artco Chem. Inc.*, 251 A.D.2d 882, 883 (3d Dep't 1998) ("The absence of a signature by the party seeking to enforce the agreement is without legal significance."). Instead, all that is required is that a party's "conduct would lead a reasonable person to conclude that they intended to reach a binding agreement, the agreement is enforceable." *Alessi Equip.*, 578 F. Supp. 3d at 497.

Here, the undisputed evidence shows that:

(i)    Plaintiffs sent Weiss the execution copy of the Forbearance Agreement which Weiss edited, accepted, and signed (*see* CSUF ¶ 35);

(ii)     Plaintiffs sent Weiss and his companies a letter noting they "expect[ed] the Weiss Parties to abide by the representations made to the Jefferies Parties in the unilaterally modified Forbearance Agreement" (Dillabough Decl. Ex. 5 at 6);[6]

(iii)    Plaintiffs fully complied with their obligation to forbear from bringing suit against GWA (*see* CSUF ¶ 70);

(iv)    Plaintiffs promptly filed UCC-1 financing statements against certain of the parties to the Forbearance Agreement, in an effort to perfect the security interests granted under the Forbearance Agreement (*see* Balber Decl. Ex. 1 ¶ 22; Ex. 1-J); and

(v)     Weiss and the George Weiss Companies fully complied with their obligations to provide Plaintiffs with financial information as required by the Forbearance Agreement (*see* CSUF ¶ 65).

Those "objective manifestations of the intent" would lead a reasonable person to conclude that Plaintiffs "accepted [the Forbearance A]greement . . . ," even as modified by Weiss. *See Asesores y Consejeros Aconsec CIA, S.A. v. Glob. Emerging Mkts. N. Am., Inc.*, 841 F. Supp. 2d 762, 766 (S.D.N.Y. 2012).

*Second*, referencing a letter sent by Plaintiffs' counsel immediately following Weiss's execution of the Forbearance Agreement, Weiss argues that Plaintiffs "rejected" the agreement. (Opp. at 14). However, the letter referenced by Weiss nowhere states that Plaintiffs "rejected" the Forbearance Agreement. To the contrary, Plaintiffs' counsel expressly stated that Plaintiffs "expect[ed] the Weiss Parties to abide by the representations made to the Jefferies Parties in the . . . Forbearance Agreement." (*Id.*). Regardless, following the sending of the letter, Plaintiffs proceeded to fully comply with the terms of the Forbearance Agreement, which is all that is necessary to establish "acceptance." *Savignano v. Play*, 210 A.D.3d 1228, 1231 (3d Dep't 2022) (party accepted counteroffer by proceeding with conduct contemplated by agreement); *Eldor*

---

[6]    "Dillabough Decl." refers to the Declaration of Jeffrey Dillabough (ECF No. 28). References to "Ex. __" refer to the exhibits to the Dillabough Decl.

*Contracting Corp. v. Cnty. of Nassau*, 272 A.D.2d 509 (2d Dep't 2000) (performance in response to counteroffer constituted acceptance).

Plaintiffs have established that their objective conduct demonstrated their agreement to the terms of the Forbearance Agreement as a matter of law.

## II.    Weiss Personally Guaranteed His Companies' Payment Obligations

Weiss also attempts to escape liability by positing that Plaintiffs "ha[ve] failed to show that the Forbearance Agreement contains an unambiguous payment guarantee." (Opp. at 13). But in so arguing, Weiss largely ignores both: (i) the Bankruptcy Court's prior decision rejecting this identical argument; and (ii) the plain text of the guarantee. For either reason, Weiss's argument should be rejected and summary judgment entered in favor of Plaintiffs.

### A.    Weiss is Collaterally Estopped from Disputing His Payment Obligation

As noted above, collateral estoppel applies where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided . . . ; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a . . . final judgment on the merits." (*See* Opp. at 15 (citation omitted)). In the Opposition, Weiss attempts to challenge Plaintiffs' showing on this issue by misrepresenting both the facts and the law. But none of Weiss's maneuvering can change the indisputable fact that Weiss appeared before the Bankruptcy Court, that he and his companies raised the exact argument that he is advancing here, and that they both lost on this issue.

#### i.    The Issues Are Identical

Weiss argues that an "identical issue" was not decided by the Bankruptcy Court because the Bankruptcy Court's decision addressed Plaintiffs' motion to dismiss preference and fraudulent conveyance claims asserted against them, as opposed to Plaintiffs' own claims. (Opp. at 15–16).

Weiss's argument fundamentally misunderstands the law of collateral estoppel.

8

As the Supreme Court explained in *Montana v. United States*, 440 U.S. 147, 153 (1979), "[u]nder collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive ***in subsequent suits based on a different cause of action* . . .**" (citations omitted) (emphasis added). Accordingly, it is irrelevant that the issue here (whether Weiss's guarantee constitutes a payment guarantee) was decided in the context of a separately asserted cause of action against Plaintiffs. *See, e.g.*, *Zherka*, 459 Fed. App'x at 13 ("The doctrine of collateral estoppel developed to address precisely this situation, where a party seeks to repeatedly litigate the same . . . under different causes of action . . . ."); *Wu*, 576 B.R. at 54 (determination of a party's "willfulness" binding in later action brought under different cause of action). Instead, all that is required is that "'the issues presented in [the earlier litigation] are substantially the same as those presented by [the later] action.'" *Zherka*, 459 Fed. App'x at 13. This means that the "the legal standards governing [the issues'] resolution [must not be] significantly different." *Cerny v. Rayburn*, 972 F. Supp. 2d 308, 316 (E.D.N.Y. 2013).

The issue here is not only "substantially the same" as one of the issues addressed by the Bankruptcy Court, it is 100% identical: whether Weiss's guarantee is "solely a performance guarantee [or] a payment guarantee." *Compare GWA, LLC*, 2024 WL 4276161, at *28 *with* (Opp. § III (titled: "JEFFERIES FAILS TO DEMONSTRATE THAT THE FORBEARANCE AGREEMENT CONTAINS A PERSONAL PAYMENT GUARANTEE")).

       *ii.    The Issue Was Necessarily Decided*

Weiss also claims that Bankruptcy Court's finding about the meaning of the personal guarantee was "not necessary," since it arose in the context of the George Weiss Companies' claims against Plaintiffs. (Opp. at 16–17).

9

However, Weiss ignores the arguments that he and his companies advanced which made it necessary for the Bankruptcy Court to address this issue. Specifically, Weiss and his companies briefed the issue in opposing Plaintiffs' motion to dismiss, arguing that "Weiss . . . agreed to provide, at most, a guarantee of 'performance of the agreements of the [George Weiss Companies] . . . . He did not guarantee any payments by the [George Weiss Companies]." At the hearing on the motion to dismiss, Weiss and his companies further argued that the "Forbearance Agreement [could be] avoided notwithstanding George Weiss's guarantee because his guarantee was only a 'performance guarantee of obligations of these parties under the [Forbearance Agreement], not of the obligations under the loans or any other monies that are owed.'" *GWA, LLC*, 2024 WL 4276161, at *27. Accordingly, to determine whether or not to dismiss those claims, the Bankruptcy Court necessarily addressed Weiss's interpretation of the guarantee. *See LaFleur v. Whitman*, 300 F.3d 256, 273 (2d Cir. 2002) (issue was necessarily decided where court "rejected petitioner's . . . contention" in order to support its conclusion); *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 425 (S.D.N.Y. 2008) (collateral estoppel "requires only that" a material "issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding").

The analysis above is the beginning and the end of this issue. But, to avoid the inevitable, Weiss advances four separate meritless arguments.

*First*, Weiss makes the inaccurate assertion that the Bankruptcy Court did not grant Plaintiffs' motion to dismiss "based on any findings that Section 9 is a payment guarantee." (*See* Opp. at 17). Weiss's argument is belied by the decision of the Bankruptcy Court itself, which specifically granted the motion to dismiss, in part, because Weiss's personal guarantee *was* a payment guarantee. *See GWA, LLC*, 2024 WL 4276161, at *27 (granting motion to dismiss claim

to avoid the entire Forbearance Agreement and rejecting argument that the "Forbearance Agreement [could be] avoided . . . because [Weiss's] guarantee was only a 'performance guarantee of obligations . . . under the [Forbearance Agreement], not of the obligations under the loans or any other monies that are owed.'").

*Second*, citing to Section 27 of the Restatement (Second) of Judgments, Weiss argues that because the Bankruptcy Court had alternate grounds for dismissing the George Weiss Companies' avoidance claims (including because a guarantee, like Weiss's, is not an obligation subject to avoidance), collateral estoppel does not apply.  (Opp. at 17).  However, under binding Second Circuit law, "where the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment.'"  *Winters v. Lavine*, 574 F.2d 46, 67 (2d Cir. 1978); *Nycal Corp. v. Inoco PLC*, 968 F. Supp. 147, 151 (S.D.N.Y. 1997) ("[I]f a court decided a case on two grounds, each is a good estoppel.").  Accordingly, Courts in the Second Circuit have roundly rejected Weiss's argument as a matter of law.  *See Nycal Corp.*, 968 F. Supp. at 151 (noting that citations to Section 27 of the Restatement have "met with little success in this Circuit," because the "general rule in this Circuit is that 'if a court decided a case on two grounds, each is a good estoppel.'"  (citations omitted)).

*Third*, the Bankruptcy Court expressly held that "a strict construction of the . . . Forbearance Agreement, [] in Weiss's favor, makes clear that Weiss's performance guarantee was also a guarantee of payment."  *GWA, LLC*, 2024 WL 4276161, at *28.  Weiss attempts to circumvent this clear holding by pointing to "the bankruptcy court's statement" that it was not deciding the motion to dismiss filed by Weiss in this action when it granted the motion to dismiss that was pending before it.  (Opp. at 16–17).  Weiss's observation is entirely irrelevant.  Of course,

the Bankruptcy Court was not deciding a motion pending before another court (*i.e.*, this Court). However, the Bankruptcy did conclusively and undeniably interpret the meaning of Weiss's guarantee contained in the Forbearance Agreement and Weiss is now precluded from challenging that interpretation.

*Fourth*, citing to *Stern v. Marshall*, 564 U.S. 462, 475–76 (2011), Weiss argues that the Bankruptcy Court lacked the authority to interpret the guarantee, and that, therefore, its decision is entitled to no preclusive effect. (Opp. at 18). But *Stern* does not hold—as Weiss implies—that a Bankruptcy Court lacks the authority to interpret a contractual guarantee, such that collateral estoppel may not attach. 564 U.S. at 475–76. Instead, the Court in *Stern* held that a bankruptcy court lacked jurisdiction to hear a state law counterclaim that "in no way derived from or depende[d] upon bankruptcy law," but instead "exist[ed] without regard to any bankruptcy proceeding." *Id.* at 499.

Here, the Bankruptcy Court was not deciding an isolated or independent state law claim "without regard to any bankruptcy proceeding." Instead, in assessing claims asserted by the George Weiss Companies under the Bankruptcy Code, the Bankruptcy Court was required to address a contractual issue. *GWA*, 2024 WL 4276161, at *28 n.20. That is perfectly consistent with the authority vested in the Bankruptcy Court. *See O'Toole v. McTaggart (In re Trinsum Group, Inc.)*, 467 B.R. 734, 738 (Bankr. S.D.N.Y. 2012) ("[B]oth before and after *Stern v. Marshall*, it is clear that the bankruptcy court may handle all pretrial proceedings, including the entry of an interlocutory order dismissing fewer than all of the claims in an adversary complaint, as occurred in this case.").

Unsurprisingly then, Weiss fails to cite to even a single case to support his apparent proposition that a Bankruptcy Court's interpretation of a contract is not entitled to collateral

estoppel.  That is because the authority is overwhelming that "[t]he normal rules of *res judicata* and collateral estoppel apply to the decisions of bankruptcy courts."  *Katchen v. Landy*, 382 U.S. 323, 334 (1966); *EDP Med. Comput. Sys., Inc. v. U.S.*, 2005 WL 3117433, at *6–7  (E.D.N.Y. 2005) (bankruptcy Court determination precluded later District Court decision); *Gache v. Hill Realty Assocs., LLC*, 2014 WL 5048336, at *7 (S.D.N.Y. 2014) (same).

iii.    *Weiss Had a Full and Fair Opportunity to Litigate the Issue*

Despite the indisputable fact that both Weiss and the George Weiss Companies (which are under his control) made the identical arguments that Weiss raises in opposition to Plaintiffs' Motion (*see* Opening Brief at 9), Weiss shamelessly asserts he did "not ha[ve] ***any*** opportunity to litigate the issues raised in this case."  (Opp. at 18).

Factually, Weiss's position is contradicted by the memoranda that the George Weiss Companies submitted, as well as the transcript of the hearing at which Weiss's counsel appeared in the Bankruptcy Court proceedings, all of which demonstrate that Weiss had the opportunity to—and did—litigate the meaning of his personal guarantee.  (Weiss CSUF ¶¶ 53, 55–56, 58).

Weiss's position also fails on the law.  Weiss concedes that to determine whether he had an opportunity to litigate this issue, the Court should consider:  (i) "'the nature of the forum and the importance of the claim in the prior litigation,'[(ii)] the incentive and initiative to litigate and the actual extent of litigation, and [(iii)] the competence and expertise of counsel."  (Opp. at 18 (quoting *Hickerson v. City of N.Y.*, 146 F.3d 99, 109 (2d Cir. 1998))).

Yet inexplicably, Weiss's Opposition barely analyses any of these factors at all.  Weiss does not dispute the "importance of the claim in the prior litigation."  (*Cf.* Opp. at 19), that the George Weiss Companies had every "incentive" to litigate these issues, or the competence and experience of the George Weiss Companies' counsel.  (*Cf.* Opp. at 19–21).  Instead, without

13

citation, Weiss complains that the "nature of the forum"—a Bankruptcy Court proceeding—counsels against collateral estoppel. (Opp. At 19). Yet as noted above, contrary to Weiss's position, Courts routinely apply collateral estoppel to the decisions of the Bankruptcy Court. *See, e.g.*, *EDP Med. Comput. Sys., Inc.*, 2005 WL 3117433, at *6–7 (bankruptcy Court determination precluded later District Court decision); *Gache*, 2014 WL 5048336, at *7 (same).

        *iv.*    Taylor v. Sturgell *Does Not Support Weiss's Argument*

Finally, citing to *Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008), Weiss claims that he should not be bound by the Bankruptcy Court's decision because he did not personally appear in those proceedings. (Opp. at 21–22).

The record defeats Weiss's contention. Weiss admits that his personal counsel appeared at the Bankruptcy Proceeding hearing where this issue was addressed, and that counsel even argued on Weiss's behalf. (Weiss CSUF ¶¶ 57–58). An attorney acts as an agent to its client when appearing at a hearing and, in turn, Weiss's attorney's appearance satisfies any requirement that Weiss have participated in the prior proceedings. *Cf. Taub v. Hershkowitz (In re Taub),* 421 B.R. 93, 104 (Bankr. E.D.N.Y. 2009) ("It is axiomatic that an attorney of record has authority to represent the person for whom he or she appears, and is presumed to be authorized to take actions necessary to conduct the litigation").

Weiss is also wrong on the law. *Taylor* is clear that "there is an exception when it can be said that there is 'privity' between a party to the second case and a party who is bound by an earlier judgment." *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996); *Taylor*, 553 U.S. at 898 n.8 ("The substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity.'"). And, as noted above, a "guarantor[] of payment of a corporate debt" is "in privity with the corporate borrower," especially where, as here, "such guarantor[ is] controlling

shareholder[], executive officer[] and director[]" of the corporate borrower.  *Superior Funding Corp. v. Big Apple Cap. Corp.*, 738 F. Supp. 1468, 1470 (S.D.N.Y. 1990).  (CSUF ¶ 1; Weiss CSUF ¶¶ 1–8 (noting that Weiss is the founder, manager, and chief executive of the George Weiss Companies)).  Weiss cites no contrary authority.

In short:  there is no debate that Weiss and his Companies participated in the Bankruptcy Court proceedings, and that the issue of whether his personal guarantee was a "payment guarantee" was both litigated and decided.  This is a textbook case of collateral estoppel, and Weiss is not entitled to a second bite at this apple.

### B.    The Guarantee Requires Payment as a Matter of Law

Weiss's argument that his guarantee did not cover payment also fails as a matter of contract law.  "Under New York law, the first step in assessing a contract claim is to determine 'whether the contract is unambiguous with respect to the question disputed by the parties.'"  *See Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 217 (S.D.N.Y. 2013) (citations omitted).  That is a question of law for the court, "[and s]ummary judgment is appropriate if the terms of the contract are unambiguous."  *Id.* (citations omitted).

The guarantee in the Forbearance Agreement unambiguously provides:  "***Weiss unconditionally and irrevocably personally guarantees*** to the [Plaintiffs] the accuracy of the representations made by, and ***the performance of the agreements of, the [George Weiss Companies] hereunder***."  (Weiss CSUF ¶ 26 (emphasis added)).  As the Bankruptcy Court already explained, and despite Weiss's wishes to the contrary, where a party "guarantee[s] performance of the terms and conditions of the agreement," which terms and conditions "require[] payment . . . , the guarantee must be interpreted as including payment according to and as provided in the agreement."  *Am. Trading Co. v. Fish*, 42 N.Y.2d 20, 27–28 (1977); *see also Merch. Cash & Cap., LLC v. Haute Soc'y Fashion, Inc.*, 2017 WL 2912452, at *3 (E.D.N.Y. July 6, 2017) (personal

15

guarantee of performance included a guarantee of payment despite the lack of explicit language providing for payment because "it would [otherwise] be challenging to prescribe some other meaningful purpose the Guaranty was intended to serve").

In his Opposition, Weiss raises three arguments to avoid summary judgment.

*First*, Weiss attempts to distinguish *Am. Trading* on the basis that the guarantee in that case applied to "**all** the terms and conditions of this agreement" (Opp. at 23), while the guarantee he issued applies to "the performance of the agreements of" the George Weiss Companies. (Weiss CSUF ¶ 26).

However, Weiss cites no law to support his apparent position that in order for a guarantee to apply to "all" of the obligations set forth in an agreement, the word "all" must be specifically utilized. To the contrary, because Weiss's guarantee "unconditionally" applies to the "agreements of" the Weiss Companies, without limitation, that agreement is unlimited. *See U.S. Tr. Co. of N.Y. v. Sec. Planners, Inc.*, 238 A.D.2d 114, 114 (1st Dep't 1997) (reversing denial of plaintiffs' summary judgment motion finding that, notwithstanding the defendants' understanding that "the guaranty [was] limited to a particular sum, far less than the amount sought," summary judgment was appropriate because "[t]he guaranty contains no such limitation"); *VNB N.Y. Corp. v Chatham Partners, LLC*, 125 A.D.3d 517, 518 (1st Dep't 2015) ("Defendants' contention that the document they signed had the limited purpose of guaranteeing the lender's obligation to pay the expenses and costs related to preparation for the closing of the loan in the event the closing did not take place is belied by the fact that the guaranty is unconditional and not so limited by its terms.").

*Second*, Weiss argues that his guarantee applies only to the "Weiss Companies Agreements" set forth in Sections 2 and 5 of the Forbearance Agreement, and not the payment obligation set forth in Section 3. (Opp. at 22).

However, the phrase "Weiss [Companies] Agreements" is not used in Weiss's personal guarantee. Instead, in Weiss's guarantee, he personally guaranteed "***the representations made by***, and ***the performance of the agreements of***, the [George Weiss Companies]." (Weiss CSUF ¶ 26 (emphasis added)). Under well-established New York case law, those "agreements" *included* the George Weiss Companies' agreement to pay the debts owed to Plaintiffs by GWA. *See Am. Trading*, 42 N.Y.2d at 27 (performance obligations include an obligation to pay); *Merch. Cash & Cap.*, 2017 WL 2912452, at *3 (personal guarantee of performance required payment).

Had the parties intended to limit the guarantee to obligations set forth in a particular section of the Forbearance Agreement (such as Section 2), they would have said so. (*See, e.g.*, Dillabough Ex. 3 §§ 4(b) ("Each Weiss Party represents, warrants, and covenants that the security interest granted herein, and until expiration of the security interests as provided in *Section 4(a)* . . . ." (emphasis added)), 4(e) (referencing Section 2(a)(iii)), 10 (referencing Section 8). Indeed, where Weiss—who was at all times advised by counsel—disagreed with the language in the forbearance agreement he deleted that language from the version he signed. (Dillabough Decl. ¶ 18; Weiss Decl. ¶ 19).[7] Weiss chose not to similarly limit or delete his personal guarantee. *See Quadrant Structured Prod. Co. v. Vertin*, 23 N.Y.3d 549, 560 (2014) ("[I]f parties to a contract omit terms . . . the inescapable conclusion is that the parties intended the omission."); *Sterling Investor Servs., Inc. v. 1155 Nobo Assocs., LLC*, 30 A.D.3d 579, 581 (2d Dep't 2006) ("Under accepted canons of contract construction, when certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional").

*Third*, Weiss appeals to a variety of extrinsic evidence, which he claims supports his interpretation of the guarantee. (Opp. at 25–26). However, as set forth above—and as held by the

---

[7] "Weiss Decl." refers to the Declaration of George Weiss (ECF No. 27). References to "Ex. __" refer to the exhibits to the Weiss Decl.

Bankruptcy Court—the meaning of Weiss's guarantee is unambiguous.  (*See* Arg. § II(B), *supra*);

*GWA, LLC*, 2024 WL 4276161, at *28.  Accordingly, Weiss's reference to extrinsic evidence is

improper and wholly unavailing.  *See Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp.

2d 556, 562 (S.D.N.Y. 2003) ("Under New York law, 'if a contract is unambiguous, courts are

required to give effect to the contract as written and may not consider extrinsic evidence to alter

or interpret its meaning.'"); *see also Cestaro v. Prohaska*, 681 F. Supp. 3d 121, 125 (S.D.N.Y.

2023) ("[C]onclusory contradiction of undisputed evidence in a self-serving affidavit, unsupported

by other evidence, is not by itself sufficient to create a genuine dispute of material fact."); *Lenzi v.

L.L. Bean, Inc.*, 2023 WL 8237484, at *3 (W.D.N.Y. Nov. 28, 2023) (similar).

Moreover, the Forbearance Agreement contains a clear, unambiguous and unavoidable

merger clause that provides:

> All agreements, covenants, representations and warranties, express
> or implied, oral and written, of the parties hereto concerning the
> subject matter hereof, are contained herein.  No other agreements,
> covenants, representations or warranties, express or implied, oral or
> written, have been made by any party hereto to any other concerning
> the subject matter hereof.   All prior and contemporaneous
> conversations, negotiations, possible and alleged agreements,
> representations, covenants and warranties concerning the subject
> matter hereto are merged herein.

(CSUF ¶ 87).  That clause independently precludes the Court from considering the extraneous

evidence upon which Weiss now seeks to rely.  *Tucker Leasing Cap. Corp. v. Pizzuti Dev., Inc.*,

1992 WL 554186, at *9 (E.D.N.Y. Jan. 7, 1992) (merger clause precluded consideration of the

parties' "understanding" or any "larger context" to vary "the contract's plain and clear meaning").

### III.    Weiss's Boilerplate Affirmative Defenses Fail to Raise an Issue of Fact

Weiss's final gambit to avoid his payment obligation is to argue that his single-sentence,

boilerplate affirmative defenses preclude summary judgment.  (Opp. at 26–28).  Again, Weiss

misses the mark.

While Weiss is correct that "[m]otions to strike affirmative defenses are generally disfavored" (Opp. at 27), that does not mean he is absolved of the requirement to plead some facts in support of his defenses.  *See, e.g.*, *Legal Recovery Assocs. LLC v. Brenes L. Grp., P.C.*, 2023 WL 2253138, at *2, *12 (S.D.N.Y. Feb. 13, 2023) (affirmative defense of "undue influence and duress" stricken because it lacked "any supporting factual allegations"), *report and recommendation adopted*, 2023 WL 2266534 (S.D.N.Y. Feb. 28, 2023).

Here, Weiss does not dispute that each of his affirmative defenses is pled with purely conclusory statements.  Indeed, there is not a single fact averred to in the affirmative defenses at all.  (*See generally* ECF No. 21 at 10–11).  That alone should be dispositive.  *See Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 478 F. Supp. 3d 417, 432 (E.D.N.Y. 2020) (dismissing defenses that were "bald, conclusory, and factually unsupported assertions").[8]

Weiss separately asserts—in a footnote—that "[t]he declarations submitted in support of . . . Weiss's Motion for Summary Judgment demonstrate that, at a minimum, there exist material facts regarding . . . Weiss's affirmative defenses." (Opp. at 28 n.8).  While Weiss does not identify which affirmative defense the declarations would supposedly support, it appears that this argument relates to his "duress" defense.  (*Id.*).

---

[8]    Weiss attempts to absolve himself of his responsibility to plead his affirmative defenses by claiming that the Bankruptcy Court "h[eld] that Jefferies' alleged wrongful threats against Mr. Weiss constituted duress and that . . . the Forbearance Agreement lacked consideration."  (Opp. at 27).  Nothing could be farther from the truth.  While the Bankruptcy Court did not dismiss all of the George Weiss Companies' claims against Plaintiffs for failure to adequately plead duress or consideration, it did not decide them on the merits.  *See GWA*, 2024 WL 4276161, at *22, *24.  Rather, the Bankruptcy Court noted that it was "dubious whether the Debtors can successfully establish that their free will was actually precluded.  These are highly sophisticated parties represented by competent and similarly sophisticated counsel, and the notion that they were forced into entering an agreement they would not otherwise have entered seems highly improbable."  *Id.* at *22.

Even a cursory review of Weiss's submissions makes clear that he has failed to proffer evidence to support such a defense at the summary judgment phase.  In particular, to raise a genuine issue of material fact regarding the affirmative defense of duress, Weiss must "show that its agreement was procured by means of (1) a wrongful threat that (2) precluded the exercise of its free will." *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011).

Weiss does not—because he cannot—provide any evidence suggesting that his free will was precluded by Plaintiffs' alleged "bullying."  Instead, the Weiss and Dillabough declarations reflect the opposite:  that Weiss and the George Weiss Companies repeatedly exercised their free will by refusing to sign drafts of the Forbearance Agreement until they negotiated its terms to their liking.

Specifically, Weiss attests that "on February 1, 2024, [Plaintiffs] emailed [his] team a draft 'forbearance agreement,'" which he and his companies "refused to sign . . . ." (Weiss Decl. ¶¶ 13–14).  Then, as Dillabough attests, "[o]n February 11, 2024, Superbowl Sunday, [he and Weiss] had a call with [representatives for Plaintiffs including] outside and in-house counsel . . . ." (Dillabough Decl. ¶ 15).  The outcome of that call was a revised forbearance agreement, which Dillabough "reviewed."  (*See id.* ¶ 18).  Dillabough then "deleted . . . statements" from that agreement.  (*Id.*).  Pursuant to Dillabough's advice, Weiss then agreed to the "revised version of the forbearance agreement" by signing it and delivering it to the Plaintiffs.  (*Id.* ¶ 24, Ex. 3; Weiss Decl. ¶ 22).

That Weiss—a sophisticated businessman with 46 years' worth of experience managing hedge funds—was indisputably counselled by lawyers, and capable of revising the very document that he now claims to have been compelled to sign, is fundamentally incompatible with any claim of duress.  *Nat. Sch. Rep. Servs., Inc. v. Nat. Sch. of Cal., Ltd.*, 924 F. Supp. 21, 24 (S.D.N.Y.

1996) (finding allegations of duress implausible where the defendants "were represented by counsel," even where agreement was not subject to negotiation); *Mathias v. Jacobs*, 167 F. Supp. 2d 606, 614 (S.D.N.Y. 2001) (rejecting duress defense where, among other things, the parties were "experienced businessmen" who had been represented by counsel during negotiations).

Meanwhile, Weiss makes no effort to support any of his remaining defenses at all. "[W]here the non-movant 'fails to introduce any evidence sufficient to support an essential element of a defense, the court may properly grant summary judgment dismissing such a defense as a matter of law.'" *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 334 (S.D.N.Y. 2016). That is precisely the case here and, in turn, Weiss's other pleaded affirmative defenses provide no basis for denying this summary judgment motion.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should follow the Bankruptcy Court's findings of law and grant Plaintiffs' motion for summary judgment.

Dated:  New York, New York
        December 4, 2024

Respectfully submitted,

HERBERT SMITH FREEHILLS
 NEW YORK LLP
By: /s/ *Scott S. Balber*
    Scott S. Balber
    Michael P. Jones
    Daniel Gomez
200 Park Avenue
New York, New York 10166
Tel: (917) 542-7810
Fax: (917) 542-7601
Email:    Scott.Balber@hsf.com
          Michael.Jones@hsf.com
          Daniel.Gomez@hsf.com

*Attorneys for Plaintiffs*
*Jefferies Strategic Investments, LLC and*
*Leucadia Asset Management Holdings LLC*

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

JEFFERIES STRATEGIC INVESTMENTS, LLC :
and LEUCADIA ASSET MANAGEMENT :
HOLDINGS LLC, :
                                        :

                     Plaintiffs, :

     -against- :

GEORGE WEISS, :
                                          :

                 Defendant. :

------------------------------------------------------------ X

**OPINION AND ORDER
GRANTING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

24 Civ. 4369 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Plaintiffs Jefferies Strategic Investments, LLC ("JSI") and Leucadia Asset Management

Holdings LLC ("Leucadia") move for summary judgment against Defendant George Weiss,

arguing that he is personally liable for a guarantee contained in a forbearance agreement

executed between the parties. Simultaneously, Defendant moves for summary judgment against

Plaintiffs, contending that this case should be dismissed. For the reasons that follow, I grant

Plaintiffs' motion for summary judgment, and I deny Defendant's cross-motion.

<b>BACKGROUND</b>

      Defendant George Weiss is the founder of a constellation of hedge funds, known

collectively as the "Weiss Companies." Defendant's Statement of Undisputed Facts ("Def.

SUF") ¶¶ 1-2. On May 1, 2018, Plaintiff Leucadia entered into a Strategic Relationship

Agreement (the "SRA") with the Weiss Companies, in which it agreed to provide financing

through promissory notes. *Id.* ¶¶ 6-7. In December 2019 and September 2022, Plaintiff JSI

agreed to purchase $53 million in notes issued by the Weiss Companies under two note purchase

agreements (the "NPAs"). ECF No. 31, ¶¶ 14-21.

1

The Weiss Companies did not pay their obligations. To postpone the debt, on February 12, 2024, Defendant signed a forbearance agreement (the "Forbearance Agreement"), in both his personal capacity, and on behalf of the Weiss Companies. Def. SUF ¶¶ 35-38; ECF No. 28-3. The Forbearance Agreement provides that the Weiss Companies, with the exception of GWA, LLC, "irrevocably and unconditionally guarantees to [Plaintiffs] . . . the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . of the Guaranteed Obligations," which is defined to encompass obligations "arising under any Note Purchase Agreement, the Notes, the SR Agreement, and this Agreement." ECF No. 28-3, § 3(a). And while the Forbearance Agreement provides that Defendant George Weiss is a party "for purposes of Section 5(a), 9 and 10(c) hereof," Section 9 states that he "unconditionally and irrevocably personally guarantees to the Jefferies Entities the accuracy of the representations made by, and the performance of the agreements of, the Weiss Parties hereunder." *Id.* § 9.[1]

After signing the Forbearance Agreement, the Weiss Companies failed to make payment of the monies owed under the SRA, notes, and NPAs. On April 29, 2024, the Weiss Companies filed for bankruptcy under Chapter 11 of the Bankruptcy Code. *See In re Weiss Multi-Strategy*

---

[1] Section 5(a) of the Forbearance Agreement provides that:
  Each Weiss Party and Weiss hereby represents and warrants that (x) this Agreement has been duly executed and delivered by such Weiss Party and Weiss and (y) this Agreement is the legal, valid and binding obligation of such Weiss Party and Weiss, and is enforceable against each such Weiss Party and Weiss, in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and by equitable principles relating to enforceability.

Section 10(c) of the Forbearance Agreement provides that:
  Each Weiss Party and Weiss acknowledges and agrees that it is receiving a direct benefit from the transactions contemplated by this Agreement, and the terms of this Agreement, including the guaranty provided herein and the security interests granted herein, constitute reasonably equivalent value for the benefit it is receiving from entering into this Agreement. Each Weiss Party and Weiss agrees that it shall not, nor shall it cause, directly or indirectly, any person controlled by, or under common control with, it, to take any action inconsistent with the terms of this Agreement. Each party represents and warrants that it has full power and authority to enter into and perform this Agreement, and that the person executing this Agreement on behalf of that party has been properly authorized and empowered to enter into this Agreement and to bind that party hereto.

*Advisers LLC*, 24 BK 10743 (MG) (Bankr. S.D.N.Y.). Simultaneously, in relation to this

bankruptcy case, the Weiss Companies filed an adversary proceeding against Plaintiffs. *See*

*GWA, LLC, et al. v. Jefferies Strategic Investments, LLC, et al.*, 24 AP 1350 (MG) (Bankr.

S.D.N.Y.). The Weiss Companies sought to hold the Forbearance Agreement unenforceable as a

preferential transfer, and contended that Defendant did not commit to guaranteeing any payment

owed by the Weiss Companies to Plaintiffs under the Forbearance Agreement. *Id.* at Dkts. 20-21.

The bankruptcy court rejected this argument, holding that "a strict construction of the 2024

Forbearance Agreement, even in Weiss's favor, makes clear that Weiss's performance guarantee

was also a guarantee of payment." *GWA, LLC v. Jefferies Strategic Investments, LLC*, 664 B.R.

492, 531 (Bankr. S.D.N.Y. 2024).

On May 6, 2024, Plaintiffs filed suit against Defendant in New York state court, seeking

to enforce the Forbearance Agreement as to Defendant's guarantee of payment for the SRA,

notes, and NPAs. ECF No. 1. Defendant removed the action to this Court on June 7, 2024. *Id.* At

the initial pre-trial conference, on October 11, 2024, I permitted the parties to cross-file motions

for summary judgment on the issue of Defendant's liability for his guarantee. *See* ECF No. 20.

**LEGAL STANDARD**

Summary judgment may be granted only when there "is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson

v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering cross-motions for summary

judgment, "the court must evaluate each party's motion on its own merits, taking care in each

instance to draw all reasonable inferences against the party whose motion is under

3

consideration." *Bronx Household of Faith v. Board of Educ.*, 492 F.3d 89, 96 (2d Cir. 2007) (citation omitted).

## DISCUSSION

Viewing the evidence in the light most favorable to Defendant, I hold that the Forbearance Agreement included a personal payment guarantee by Defendant to Plaintiffs of the Weiss Companies' corporate debt, and that it is valid and enforceable as to Defendant.

### A. Payment Guarantee

Defendant contends he did not personally guarantee payment of the Weiss Companies' debt to Plaintiffs under the terms of the Forbearance Agreement. I disagree.

Under New York law, a "guaranty is a contract," and in conducting interpretation, courts "look first to the words the parties used." *Louis Dreyfus Energy Corp. v. MG Ref. & Mktg., Inc.*, 2 N.Y.3d 495, 500 (N.Y. 2004). When determining the meaning of contractual language, courts must consider the entirety of the contract and interpret all of its provisions in harmony. *Bombay Realty Corp. v. Magna Carta, Inc.*, 100 N.Y.2d 124, 127 (N.Y. 2003). Further, "a contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 30 N.Y.3d 572, 581 (N.Y. 2017) (citation omitted).

Applying these principles of contract interpretation, and viewing the evidence in the light most favorable to Defendant, I hold that Defendant's performance guarantee contained within the Forbearance Agreement was also a personal payment guarantee. Here, under the clear, unambiguous text of the Forbearance Agreement, Defendant "unconditionally and irrevocably personally guarantee[d] to" Plaintiffs "the accuracy of the representations made by, and *the performance of the agreements of, the Weiss Parties hereunder.*" ECF No. 28-3, § 9 (emphasis

4

added). The "agreements of the Weiss Parties hereunder" plainly includes their guarantee to make "prompt and complete payment and performance . . . of the Guaranteed Obligations," which, in turn, is defined to encompass obligations "arising under any Note Purchase Agreement, the Notes, the SR Agreement, and this Agreement." ECF No. 28-3, § 3(a). Thus, reading the contract in harmony, in its entirety, to give effect to each of its provisions, I conclude that Defendant's performance guarantee of the Weiss Companies' agreements with Plaintiffs is also a payment guarantee by Defendant personally as to the SRA, notes, and NPAs. *See, e.g., Am. Trading Co. v. Fish*, 42 N.Y.2d 20, 27-28 (N.Y. 1977) ("Since defendant guaranteed performance of the terms and conditions of the agreement, which in this respect required payment by means of trade acceptances, the guarantee must be interpreted as including payment according to and as provided in the agreement."); *Merchant Cash & Capital, LLC v. Haute Soc'y Fashion, Inc.*, 16 Civ. 2696 (ILG), 2017 WL 2912452, at *3 (E.D.N.Y. July 6, 2017) (construing personal performance guarantee of contractual terms as personal guarantee of payment); *Prof'l Merch. Advance Capital, LLC v. McEachern*, 13 Civ. 7323 (JS), 2015 WL 8665447, at *3 (E.D.N.Y. Dec. 11, 2015) (same).

"[W]here, as here, a creditor seeks summary judgment upon a written guaranty, the creditor need prove no more than an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee." *HSH Nordbank AG v. Street*, 421 F. App'x 70, 72 (2d Cir. 2011) (quoting *Kensington House Co. v. Oram*, 293 A.D.2d 304, 305 (N.Y. App. Div. 1st Dep't 2002)). Here, Plaintiffs have proven all three elements, and thus, they have established their *prima facie* entitlement to summary judgment against Defendant as to his guarantee.

**B. Defenses**

In his answer, Defendant pleads various affirmative defenses to the validity and enforcement of the Forbearance Agreement. *See* ECF No. 21. But they all lack merit. Accordingly, viewing the evidence in the light most favorable to Defendant, I hold that the Forbearance Agreement is a valid and enforceable contract as to Defendant. *See Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade*, 98 A.D.3d 403, 404 (N.Y. App. Div. 1st Dep't 2012), *aff'd* 20 N.Y.3d 1082 (N.Y. 2013) ("To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound.").

Defendant's contentions that the Forbearance Agreement lacked consideration as to his guarantee fail. Consideration "consists of either a benefit to the promisor or a detriment to the promisee," including a forbearance by a party. *Weiner v. McGraw-Hill*, 57 N.Y.2d 458, 464 (N.Y. 1982). "Under New York law, forbearance of any length can constitute valid consideration." *MM Ariz. Holdings LLC v. Bonanno*, 658 F. Supp. 2d 589, 593 (S.D.N.Y. 2009). The fact that in the Forbearance Agreement, Defendant served as a guarantor to his hedge funds' debts does not change the outcome here since "a benefit flowing to a third person or legal entity constitutes a sufficient consideration for the promise of another." *Mencher v. Weiss*, 306 N.Y. 1, 8 (N.Y. 1953); *see also Sun Oil Co. v. Heller*, 248 N.Y. 28, 32-33 (N.Y. 1928) (guarantee in exchange for consideration provided to a third party constitutes consideration as to the guarantor himself).

Nor do his arguments that the Forbearance Agreement lacked mutual assent pass muster. "To form a binding contract under New York law . . . there must be a 'meeting of the minds,'" or, in other words, "an objective manifestation of mutual assent, through either words or conduct,

6

to the essential terms comprising the agreement." *Wu v. Uber Techs.*, 2024 WL 4874383, at *5 (N.Y. Nov. 25, 2024). "Under New York law, a contract need not be signed by either or both parties in order to be enforceable." *Asesores y Consejeros Aconsec CIA, S.A. v. Global Emerging Mkts. N. Am., Inc.*, 841 F. Supp. 2d 762, 766 (S.D.N.Y. 2012). Rather, courts must consider:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Here, the fact that only Defendant signed the Forbearance Agreement—both on his personal behalf, as well as on behalf of the various Weiss Companies—and Plaintiffs did not, does not constitute a lack of mutual assent. Indeed, there is no language in the Forbearance Agreement that explicitly requires full execution before the contract takes effect. Moreover, Plaintiffs performed their obligations under the Forbearance Agreement, there were no material disputes between the parties as to the terms of the contract, and Plaintiffs took objective actions to evince their intent to be bound by filing a financing statement to perfect the security interest granted under the Forbearance Agreement. *See* ECF No. 30-1, at 131.

Finally, Defendant argues that the Forbearance Agreement is voidable as to him because Plaintiffs' CEO and outside counsel allegedly called him, accused him of committing securities fraud, stated "there would be a public news article that would destroy [Defendant's] reputation," and threatened to sue Defendant personally, if he did not sign the Forbearance Agreement. Def. SUF ¶¶ 24-29; ECF No. 27 ¶¶17-18 (Def. Decl.). "A contract may be voided on the ground of economic duress where the complaining party was compelled to agree to its terms by means of a wrongful threat which precluded the exercise of its free will." *Muller Constr. Co. v. N.Y. Tel. Co.*, 40 N.Y.2d 955, 956 (N.Y. 1976). This doctrine is "reserved for extreme and extraordinary

cases," *Adler v. Lehman Bros. Holdings*, 855 F.3d 459, 477 (2d Cir. 2017), and seldom applies to

negotiated agreements between sophisticated parties. *See Davis & Assocs. v. Health Mgmt.*

*Servs.*, 168 F. Supp. 2d 109, 114 (S.D.N.Y. 2001). Under New York law, a threat to sue for

outstanding debt if a party does not agree to sign a contract does not constitute economic duress.

*Friends Lumber v. Cornell Dev. Corp.*, 243 A.D.2d 886, 888 (N.Y. App. Div. 3d Dep't 1997).

Nor do "threats to smear [a party's] reputation" constitute economic duress. *Finserv Computer*

*Corp. v. Bibliographic Retrieval Services, Inc.*, 125 A.D.2d 765, 767 (N.Y. App. Div. 3d Dep't

1986). Here, Defendant is a sophisticated and experienced businessman, *see* ECF No. 27 ¶¶ 4-5,

and was represented by counsel in reviewing and executing the Forbearance Agreement, *see* ECF

No. 28 ¶¶ 18, 24 (Defendant's attorney reviewed the draft Forbearance Agreement and deleted

provisions thereof). *See Nat'l Sch. Reporting Servs. v. Nat'l Schs.*, 924 F. Supp. 21, 24 (S.D.N.Y.

1996) (rejecting duress argument where parties were represented by counsel, even though

counsel did not negotiate the terms of the contract). Viewing the evidence in the light most

favorable to Defendant, I cannot say that Plaintiffs' alleged conduct constitutes duress.

The remaining affirmative defenses listed in boilerplate fashion in Defendant's Answer—

failure to state a cause of action upon which relief may be granted, Plaintiffs' "inequitable

conduct," "breaches of any of the purported agreement," failure to mitigate damages, "unclean

hands," and equitable estoppel—are purely conclusory and lack any factual basis, let alone

sufficient specificity to provide notice to Plaintiffs. *See GEOMC Co. v. Calmare Therapeutics*

*Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (applying *Twombly*'s plausibility standard to the pleading of

affirmative defenses). Accordingly, I strike Defendant's First, Fifth, Sixth, Seventh, Eight, and

Ninth Affirmative Defenses. *See Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 478 F. Supp. 3d

417, 435 (E.D.N.Y. 2020) (striking affirmative defenses where defendant failed to plead them

with sufficient specificity to provide plaintiff notice); *Trs. of the N.Y. City Dist. Council v. MCF Assocs.*, 530 F. Supp. 3d 460, 468 (S.D.N.Y. 2021) (same). I also strike Defendant's Tenth Affirmative Defense, which is not an affirmative defense, but rather a reservation of rights "to modify or supplement these affirmative defenses." *See* Fed. R. Civ. P. 12(f).

CONCLUSION

Based on the foregoing, I grant Plaintiffs' motion for summary judgment and deny Defendant's cross-motion.

The Clerk of Court shall enter final judgment in favor of Plaintiffs and tax costs. She shall also terminate ECF Nos. 24 and 29, and close this case.

SO ORDERED.

Dated:    March 12, 2025
          New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

A-1117

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
JEFFERIES STRATEGIC INVESTMENTS, LLC
and LEUCADIA ASSET MANAGEMENT
HOLDINGS LLC,

                         Plaintiffs,

       -against-                               24 **CIVIL** 4369 (AKH)

                                              **JUDGMENT**

GEORGE WEISS,

                         Defendant.
-------------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Opinion and Order dated March 12, 2025, Plaintiffs' motion for summary

judgment is granted and Defendant's cross-motion is denied. Final judgment is entered in favor

of Plaintiffs; accordingly, the case is closed.

**Dated:** New York, New York

       March 12, 2025

                                   **TAMMI M HELLWIG**
                              _____
                                     **Clerk of Court**

      **BY:**               K. Mango
                                _____
                                     **Deputy Clerk**

A-1118



**United States District Court**
**Southern District of New York**

Tammi M. Hellwig
*Clerk of Court*

Dear Litigant:

Enclosed is a copy of the judgment entered in your case. If you disagree with a judgment or final order of the district court, you may appeal to the United States Court of Appeals for the Second Circuit. To start this process, file a "Notice of Appeal" with this Court's Pro Se Intake Unit.

You must file your notice of appeal in this Court within 30 days after the judgment or order that you wish to appeal is entered on the Court's docket, or, if the United States or its officer or agency is a party, within 60 days after entry of the judgment or order. If you are unable to file your notice of appeal within the required time, you may make a motion for extension of time, but you must do so within 60 days from the date of entry of the judgment, or within 90 days if the United States or its officer or agency is a party, and you must show excusable neglect or good cause for your inability to file the notice of appeal by the deadline.

Please note that the notice of appeal is a *one-page* document containing your name, a description of the final order or judgment (or part thereof) being appealed, and the name of the court to which the appeal is taken (the Second Circuit) – *it does not* include your reasons or grounds for the appeal. Once your appeal is processed by the district court, your notice of appeal will be sent to the Court of Appeals and a Court of Appeals docket number will be assigned to your case. At that point, all further questions regarding your appeal must be directed to that court.

The filing fee for a notice of appeal is $605 payable in cash, by bank check, certified check, or money order, to "Clerk of Court, S.D.N.Y." *No personal checks are accepted.* Please see District Court fee schedule at https://www.nysd.uscourts.gov/programs/fees. If you are unable to pay the $605 filing fee, complete the "Motion to Proceed *in Forma Pauperis* on Appeal" form and submit it with your notice of appeal to the Pro Se Intake Unit. If the district court denies your motion to proceed *in forma pauperis* on appeal, or has certified under 28 U.S.C. § 1915(a)(3) that an appeal would not be taken in good faith, you may file a motion in the Court of Appeals for leave to appeal *in forma pauperis*, but you must do so within 30 days after service of the district court order that stated that you could not proceed *in forma pauperis* on appeal.

For additional issues regarding the time for filing a notice of appeal, see Federal Rule of Appellate Procedure 4(a). There are many other steps to beginning and proceeding with your appeal, but they are governed by the rules of the Second Circuit Court of Appeals and the Federal Rules of Appellate Procedure. For more information, visit the Second Circuit Court of Appeals website at **http://www.ca2.uscourts.gov/.**

THE DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312

THE CHARLES L. BRIEANT, JR.
UNITED STATES COURTHOUSE
300 QUARROPAS STREET
WHITE PLAINS, NY 10601-4150

Rev. 12/4/24

A-1119

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (    )(    )

**NOTICE OF APPEAL**

Notice is hereby given that the following parties: _____

_____
(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the    ☐ judgment    ☐ order    entered on: _____
(date that judgment or order was entered on docket)

that: _____

_____
(If the appeal is from an order, provide a brief description above of the decision in the order.)

_____
Dated

_____
Signature[*]

_____
Name (Last, First, MI)

_____
Address          City          State          Zip Code

_____
Telephone Number          E-mail Address (if available)

_____

[*] Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case.  Fed. R. App. P. 3(c)(2).  Attach additional sheets of paper as necessary.

Rev. 12/23/13

A-1120

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

_____

_____     _____CV_____ (      )(      )

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-     **MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL**

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

I move under Rule 4(a)(5) of the Federal Rules of Appellate Procedure for an extension of time

to file a notice of appeal in this action. I would like to appeal the judgment

entered in this action on _____ but did not file a notice of appeal within the required

                       date

time period because:

_____

_____

_____

(Explain here the excusable neglect or good cause that led to your failure to file a timely notice of appeal.)

_____     _____

Dated:     Signature

_____

Name (Last, First, MI)

_____     City     _____     State     _____     Zip Code

Address

_____     _____

Telephone Number     E-mail Address (if available)

Rev. 3/27/15

A-1121

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (      )(      )

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

I move under Federal Rule of Appellate Procedure 24(a)(1) for leave to proceed *in forma pauperis* on appeal. This motion is supported by the attached affidavit.

_____
Dated

_____
Name (Last, First, MI)

_____
Signature

_____
Address                    City

_____
State                    Zip Code

_____
Telephone Number

_____
E-mail Address (if available)

Rev. 12/23/13

A-1122

## Application to Appeal In Forma Pauperis

_____**v.** _____     Appeal No. _____

District Court or Agency No. _____

| Affidavit in Support of Motion | Instructions |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.) <br><br> Signed: _____ | Complete all questions in this application and then sign it. Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number. <br><br> Date: _____ |

My issues on appeal are: (<u>required</u>):



1.     *For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | <u>Spouse</u> | You | <u>Spouse</u> |
| Employment | $ | $ | $ | $ |
| Self-employment | $ | $ | $ | $ |
| Income from real property (such as rental income) | $ | $ | $ | $ |

- 1 -

12/01/2013 SCC

| | | | | |
|---|---|---|---|---|
| Interest and dividends | $ | $ | $ | $ |
| Gifts | $ | $ | $ | $ |
| Alimony | $ | $ | $ | $ |
| Child support | $ | $ | $ | $ |
| Retirement (such as social security, pensions, annuities, insurance) | $ | $ | $ | $ |
| Disability (such as social security, insurance payments) | $ | $ | $ | $ |
| Unemployment payments | $ | $ | $ | $ |
| Public-assistance (such as welfare) | $ | $ | $ | $ |
| Other (specify): | $ | $ | $ | $ |
| **Total monthly income:** | **$ 0** | **$ 0** | **$ 0** | **$ 0** |

2.    *List your employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

3.    *List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

A-1124

4.    *How much cash do you and your spouse have? $_____*

*Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

***If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts.  If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.***

5.    *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.*

| Home | Other real estate | Motor vehicle #1 |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| | | Make and year: |
| | | Model: |
| | | Registration #: |

| Motor vehicle #2 | Other assets | Other assets |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| Make and year: | | |
| Model: | | |
| Registration #: | | |

- 3 -

6.    *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |

7.    *State the persons who rely on you or your spouse for support.*

| Name [or, if a minor (i.e., underage), initials only] | Relationship | Age |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

8.    *Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

|  | **You** | **Your Spouse** |
|---|---|---|
| Rent or home-mortgage payment (including lot rented for mobile home)<br>    Are real estate taxes included?    ☐ Yes  ☐ No<br>    Is property insurance included?    ☐ Yes  ☐ No | $ | $ |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ | $ |
| Home maintenance (repairs and upkeep) | $ | $ |
| Food | $ | $ |
| Clothing | $ | $ |
| Laundry and dry-cleaning | $ | $ |
| Medical and dental expenses | $ | $ |

| | | |
|---|---|---|
| Transportation (not including motor vehicle payments) | $ | $ |
| Recreation, entertainment, newspapers, magazines, etc. | $ | $ |
| Insurance (not deducted from wages or included in mortgage payments) | | |
|     Homeowner's or renter's: | $ | $ |
|     Life: | $ | $ |
|     Health: | $ | $ |
|     Motor vehicle: | $ | $ |
|     Other: | $ | $ |
| Taxes (not deducted from wages or included in mortgage payments) (specify): | $ | $ |
| Installment payments | | |
|     Motor Vehicle: | $ | $ |
|     Credit card (name): | $ | $ |
|     Department store (name): | $ | $ |
|     Other: | $ | $ |
| Alimony, maintenance, and support paid to others | $ | $ |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $ | $ |
| Other (specify): | $ | $ |
| **Total monthly expenses:** | **$ 0** | **$ 0** |

9.    *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*

☐ Yes    ☐ No    If yes, describe on an attached sheet.

10.    *Have you spent — or will you be spending —any money for expenses or attorney fees in connection with this lawsuit?* ☐ Yes ☐ No

*If yes, how much?* $ _____

- 5 -

A-1127

11. *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*

12. *Identify the city and state of your legal residence.*

City _____ State _____

Your daytime phone number: _____

Your age: _____ Your years of schooling: _____

Last four digits of your social-security number: _____

Print     Save     Reset Form

- 6 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFERIES STRATEGIC INVESTMENTS,
LLC and LEUCADIA ASSET
MANAGEMENT HOLDINGS LLC,

       Plaintiffs,

   -against-

GEORGE WEISS,

       Defendant.

Case No. 1:24-cv-04369 (AH)

**ORAL ARGUMENT REQUESTED**

---

### NOTICE OF DEFENDANT GEORGE WEISS'S MOTION FOR RECONSIDERATION AND/OR TO AMEND AND ALTER THE JUDGMENT

**PLEASE TAKE NOTICE** that, pursuant to S.D.N.Y. Local Rule 6.3 and Rule 59(e) of the Federal Rules of Civil Procedure, and upon the accompanying Memorandum of Law, dated March 26, 2025, defendant George Weiss, by his undersigned attorneys, will move the Court before the Honorable Alvin Hellerstein at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, Courtroom 14D, at a date and time to be determined by the Court, for an order granting reconsideration of and/or amending and altering the order and judgment entered by this Court on March 12, 2025 granting Plaintiffs' motion for summary judgment and denying his motion for summary judgment (ECF Nos. 41-42), and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
   March 26, 2025

         Respectfully submitted,

         KAPLAN RICE LLP

12833525-1

A-1129

By:     /s/ Howard Kaplan
       Howard Kaplan
       Michelle Rice
       142 West 57th Street
       Suite 4A
       New York, New York 10019
       (212) 235-0300

OLSHAN FROME WOLOSKY LLP

By:     /s/ Brian A. Katz
       Brian A. Katz
       Daniel M. Stone
       1325 Avenue of the Americas
       New York, New York 10019
       (212) 451-2300

*Attorneys for George Weiss*

12833525-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC,

                                    Plaintiffs,

            -against-

GEORGE WEISS,

                                    Defendant.

Case No. 1:24-cv-04369 (AKH)

---

**DEFENDANT GEORGE WEISS'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR RECONSIDERATION AND/OR TO AMEND AND ALTER THE JUDGMENT**

A-1131

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................1

FACTUAL BACKGROUND ...................................................................3

I.      THE ORDER ................................................................................3

II.     THE PARTIES FAIL TO AGREE ON TERMS .............................4

        A.     The Debt ...........................................................................4

        B.     Jefferies' Offer of Forbearance ......................................4

        C.     Weiss's Counterproposal of Forbearance........................4

        D.     Jefferies Categorically Rejects Weiss's Counterproposal and No Agreement is Reached ...........................................................................5

ARGUMENT .........................................................................................6

I.      LEGAL STANDARD ...................................................................6

II.     THE COURT OVERLOOKED JEFFERIES' REJECTION OF WEISS'S "UNILATERALLY MODIFIED FORBEARANCE AGREEMENT".............6

CONCLUSION .....................................................................................11

12824606-16

Table of Authorities

Page

CASES

*Abu Dhabi Com. Bank v. Morgan Stanley & Co.*,
  888 F. Supp. 2d 478 (S.D.N.Y. 2012), *aff'd sub nom., Pa. Pub. Sch. Emps.'s*
  *Ret. Sys. v. Morgan Stanley & Co.,* 772 F.3d 111 (2d Cir. 2014)..................................2

*Adler v. Payward, Inc.*,
  No. 18-cv-8100, 2024 WL 1138941 (S.D.N.Y. Mar. 14, 2024)..............................11

*Bowers v. Andrew Weir Shipping, Ltd.*,
  817 F. Supp. 4 (S.D.N.Y. 1993), *aff'd,* 27 F.3d 800 (2d Cir. 1994)....................6

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016)...................................................................9

*Catala v. Joombas Co. Ltd.*,
  18 Civ. 8401, 2021 WL 2012379 (S.D.N.Y. May 20, 2021)..................................6

*Columbia Malting Co. v. Clausen-Flanagan Corp.*,
  3 F.2d 547 (2d Cir. 1924)...........................................................7

*Eisemann v. Greene*,
  204 F.3d 393 (2d Cir. 2000).........................................................6

*F. W. Berk & Co. v. Derecktor*,
  301 N.Y. 110 (1950).................................................................8

*Gram v. Mutual Life Ins. Co of New York*,
  300 N.Y. 375 (1950).................................................................7

*Greystone P'ships Grp., Inc. v. Koninklijke Luchtvaart Maatschappij N.V.*,
  815 F. Supp. 745 (S.D.N.Y. 1993) ..................................................9

*Haller v. Usman*,
  24 Civ. 977, 2025 WL 605572 (S.D.N.Y. Feb. 25, 2025)...........................7, 9

*Homayouni v. Paribas*,
  241 A.D.2d 375 (1st Dept 1997)......................................................8

*IBM Corp. v. Johnson*,
  629 F. Supp. 2d 321 (S.D.N.Y.), *aff'd,* 355 F. App'x 454 (2d Cir. 2009)............10

*In re Am. Realty Cap. Props., Inc. Litig.*,
  No. 15 Civ. 307, 2019 WL 13084739 (S.D.N.Y. May 20, 2019)........................1

Table of Authorities
(continued)

Page

*Kolchins v. Evolution Mkts., Inc.*,
128 A.D.3d 47 (1st Dep't 2015), *aff'd,* 31 N.Y.3d 100 (2018) ................................................7

*Kruger v. Virgin Atl. Airways, Ltd.*,
No. 11-CV-2954, 2013 WL 6795251 (E.D.N.Y. Dec. 23, 2013), *aff'd,* 578 F.
App'x 51 (2d Cir. 2014) ..............................................................................................6

*Krumme v. WestPoint Stevens Inc.*,
143 F.3d 71 (2d Cir. 1998) ...............................................................................2, 7, 8

*Ladau v. Hillier Grp., Inc.*,
No. 02 Civ.4703, 2004 WL 691520 (S.D.N.Y. Mar. 31, 2004) ................................8

*Lamda Sols. Corp. v. HSBC Bank USA, N.A.*,
574 F. Supp. 3d 205 (S.D.N.Y. 2021) ......................................................................7

*Medrite Care, LLC v. Medrite 243 LLC*,
20-cv-3456, 2020 WL 3962010 (S.D.N.Y. July 13, 2020) ........................................8

*Minneapolis & St. L. Ry. Co. v. Columbus Rolling-Mill Co.*,
119 U.S. 149 (1886) ..................................................................................................2

*Poel v. Brunswick-Balke-Collender Co.*,
216 N.Y. 310 (1915) .........................................................................................2, 7, 8

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) .....................................................................................7

*Sullivan v. Ruvoldt*,
16 Civ. 583, 2017 WL 1157150 (S.D.N.Y. Mar. 27, 2017) .....................................7

*Tradeways Inc. v. Chrysler Corp.*,
342 F.2d 350 (2d Cir. 1965) .....................................................................................9

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
16 Civ. 6110, 17 Civ. 5832, 2019 WL 316001 (S.D.N.Y. Jan. 24, 2019) .............1, 6

OTHER AUTHORITIES

S.D.N.Y. Local Rule 6.3 ..................................................................................................1, 6

22 N.Y. Jur. 2d Contracts § 40 ...........................................................................................9

Fed. R. Civ. P. 59(e) .......................................................................................................1, 6

Defendant George Weiss, by his undersigned counsel, respectfully submits this memorandum of law in support of his motion for reconsideration and/or to amend and alter the judgment pursuant to Rule 59(e) and Local Rule 6.3.

### PRELIMINARY STATEMENT

Weiss brings this motion to correct manifest injustice and misapprehension of law based on key overlooked evidence in the Court's March 12 order granting Jefferies' motion for summary judgment (the "Order"). More specifically, the Order fails to mention – much less address or consider – Weiss's primary argument: That the so-called Forbearance Agreement was unenforceable for *failure of mutual assent* between the parties because there was no offer and acceptance (not a failure of consideration, as the Order wrongly holds). In doing so, the Order overlooked and failed to consider critical evidence – a letter from Jefferies' counsel that rejected Weiss's final offer of forbearance[1] – that established that no contract was ever formed. *See Zuma Press, Inc. v. Getty Images (US), Inc.*, 16 Civ. 6110, 17 Civ. 5832, 2019 WL 316001, at *2 (S.D.N.Y. Jan. 24, 2019) (Hellerstein, J.) (granting motion for reconsideration and withdrawing summary judgment where Court overlooked email raising fact issue); *In re Am. Realty Cap. Props., Inc. Litig.*, No. 15 Civ. 307, 2019 WL 13084739 (S.D.N.Y. May 20, 2019) (Hellerstein, J.) (granting reconsideration of summary judgment where an element of a defense was not met). As set forth more fully below, the Order warrants reconsideration and amendment to correct these oversights and prevent wrongful imposition of severe financial distress on Weiss.

Under long-settled New York law, which was not addressed in the Order, there is no binding personal guaranty from Weiss because *there was a failure of mutual agreement to any*

---

[1]    Dillabough Decl., Ex. 5 (ECF No. 28-5).

*forbearance agreement*.[2]  Put simply, Jefferies, by letter from its outside counsel, unequivocally rejected Weiss's February 12, 2024, *final* counterproposal on forbearance (the "Rejection Letter").[3]  Once Jefferies rejected Weiss's counteroffer, it was extinguished, and no agreement was ever formed between the parties.  Indeed, for centuries, New York courts have unfailingly held that assent to proposed contract terms must be "unambiguous and unequivocal" in order for an agreement to be formed.  *See, e.g.*, *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 83 (2d Cir. 1998) (citing *Poel v. Brunswick-Balke-Collender Co.*, 216 N.Y. 310, 319 (1915)).

The Rejection Letter is fatal to Jefferies' claims, and it was not addressed or considered by the Court.  *Minneapolis & St. L. Ry. Co. v. Columbus Rolling-Mill Co.*, 119 U.S. 149, 151 (1886) ("The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it."); *Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 888 F. Supp. 2d 478, 487-88 (S.D.N.Y. 2012) (granting motion for reconsideration where Court overlooked evidence which created material issue of fact in determining a motion for summary judgment), *aff'd sub nom., Pa. Pub. Sch. Emps.'s Ret. Sys. v. Morgan Stanley & Co.,* 772 F.3d 111 (2d Cir. 2014).  At a minimum, the effect of the Rejection Letter raises issues of fact with regard to mutual assent that cannot be resolved at summary judgment.[4]  Weiss brings this motion to correct that oversight and so that his

---

[2]      The Order also erred in holding Weiss agreed to backstop tens of millions of dollars in corporate debts he was not otherwise obligated to repay in exchange for Jefferies agreeing to a mere *two days* of forbearance on collection efforts against the insolvent corporate obligors.  The Order misapprehended the distinction between a guaranty of corporate performance on financial controls and a guaranty of payment for the debts themselves.  This issue also raises, at a minimum, factual considerations that cannot be resolved at summary judgment.

[3]      Dillabough Decl., Ex. 5 (ECF No. 28-5).

[4]      While the Order focused on Jefferies' failure to sign the so-called Forbearance Agreement, Weiss did not claim such a failure independently vitiates the prospect of a binding agreement.  Instead, Weiss highlighted Jefferies' failure to sign the proposed agreement – or any other agreement – as further evidence that Jefferies rejected Weiss's counterproposal in the Rejection Letter (and Weiss understood as much).  Further, even if the Court found the Letter ambiguous

2

principal basis for opposing Jefferies' motion for summary judgment, and Weiss's primary basis for summary judgment, may be properly considered.

## FACTUAL BACKGROUND[5]

### I.    THE ORDER

On March 12, 2025, the Court entered the Order.  The Order interpreted the so-called "Forbearance Agreement" to include a personal guarantee from Weiss of corporate debts from investment vehicles founded by Weiss (the "Weiss Companies" or "Funds").  Order at 4-5.[6]  The Order granted summary judgment on Jefferies' claim that Weiss personally guaranteed payment of tens of millions of dollars of corporate debt in exchange for a two day forbearance from specified litigation.  *Id.* at 1-2, 4-5.  The Order ruled that the multi-million dollar guarantee, for which Weiss received less than a peppercorn, is embodied, not in a guarantee of payment, but in a guarantee of the "accuracy of the representations made by, and the performance of the agreements of, the [Funds] hereunder."[7]  *Id.*  While Weiss disagrees with the conclusions reached in the Order and reserves the right to appeal those, this motion focuses on the Order's failure to address Weiss's core argument that the parties never agreed to any specific forbearance agreement, which is

_____

(which it is not), that necessarily raises factual issues inappropriate for resolution on summary judgment.

[5]    The facts are drawn from Weiss's Memorandum of Law in Support of his Motion for Summary Judgment (ECF No. 26) ("Weiss SJ"), his Reply Memorandum of Law (ECF No. 38) ("Weiss SJ Reply"), the Weiss Declaration (ECF No. 27), the Dillabough Declaration (ECF No. 28) and the undisputed facts in Plaintiffs' Counterstatement of Undisputed Fact (ECF No. 36) ("PCUF").  Unless otherwise defined, capitalized terms herein are as defined in Weiss's memoranda of law.

[6]    The Court also determined Weiss's affirmative defenses of lack of consideration, lack of mutual assent, and duress lacked merit.  In so holding, the Order found that Dillabough was Weiss's attorney even though Dillabough testified that he never acted as Weiss's personal counsel.  *Compare* Order at 8 *with* Dillabough Decl. ¶ 1.  Finally, it struck Weiss's remaining affirmative defenses as conclusory without leave to replead.  Order at 8-9.

[7]    Both Weiss and Dillabough testified they understood "performance" referred to ministerial items and organizational agreements, not the payment of tens of millions of dollars.  Weiss Decl. ¶¶ 3, 21, 23-25; Dillabough Decl. ¶¶ 4, 23, 25-25.

3

dispositive of the issues in this case in Weiss's favor, or at least raises factual issues inappropriate for resolution at summary judgment.

## II.    THE PARTIES FAIL TO AGREE ON TERMS

### A.    The Debt

At the start of 2024, pursuant to two separate sets of agreements, the Funds owed Jefferies millions of dollars.  Weiss SJ at 3.  As the Funds looked to replace Jefferies as their financier, Jefferies began a high-stakes pressure campaign against Weiss to force him to repay those corporate debts, to which Weiss was not a party.  *Id.* at 4-5.

### B.    Jefferies' Offer of Forbearance

On February 12, 2024, Jefferies offered to forbear – *for two days' time* – on certain debt collection and enforcement actions if the Funds agreed to certain capital controls, reporting requirements, and to collectively guarantee the amounts owed to Jefferies.  *Id.* at 6-7.  In the back of the agreement, Jefferies also buried a so-called guaranty from Weiss that he would agree to guaranty the Funds would abide by these restrictions.  *Id.* at 8.  Jefferies also demanded that Weiss and the Funds admit they had made misrepresentations to Jefferies regarding the timing of certain bonus payments to Fund employees, which Jefferies maintained were improper.  *Id.* at 6.  In exchange, Jefferies offered to forbear for two days from bringing an "Enforcement Action," which included a lawsuit stemming from the alleged misrepresentations.  *Id.* at 9; Dillabough Decl. Ex. 3 § 6, Recitals; Weiss SJ Reply at 6.

### C.    Weiss's Counterproposal of Forbearance

Weiss did not agree to Jefferies' offered forbearance agreement.  Instead, he made a counterproposal.  Weiss SJ at 6, 9-10, 15.  Weiss struck the admissions Jefferies insisted on – that Weiss and the Funds had misrepresented the timing of the Funds' employee bonuses and improperly paid those with monies Jefferies claimed it was owed.  Dillabough Decl. Ex. 4,

4

Recitals.  By doing so, Weiss's counteroffer proposed to alter the scope of Jefferies' forbearance offer.  *Id.*

> **D.**    <u>Jefferies Categorically Rejects Weiss's Counterproposal and No Agreement is Reached</u>

On February 12, 2024, Jefferies unequivocally rejected Weiss's offer of forbearance by the Rejection Letter.  Weiss SJ at 9.  The Rejection Letter categorically rejected Weiss's counteroffer in several ways.

*First*, the Rejection Letter explained that Weiss "unilaterally" modified Jefferies' offer of forbearance by eliminating clauses containing factual admissions by Weiss and the Funds – admissions deemed "<u>required</u>" by Jefferies – that Weiss and the Funds had misapplied funds to pay employee bonuses.  *Id.* at 10; Rejection Letter at 5-6.

*Second*, Jefferies advised Weiss that Jefferies would not agree to forbear from any Enforcement Action, and instead "reserve[d] all of their rights to bring claims and pursue remedies arising from the Weiss Parties' misconduct."  Weiss SJ at 10; Weiss SJ Reply at 5-6; Rejection Letter at 6.

*Third*, the Rejection Letter made clear that, notwithstanding the fact Jefferies had rejected Weiss's counteroffer, Jefferies "expected" the Funds to "abide by representations" they had allegedly made (as opposed to maintaining that Weiss was bound by the agreement as a matter of contract).

*Fourth*, Jefferies demanded Weiss immediately provide financial information to Jefferies on an accelerated timetable (indeed, a day earlier than what would have been required under the draft forbearance agreement Jefferies proposed).  Weiss SJ at 10; Weiss SJ Reply at 6-7, 6 n.5; Rejection Letter at 6.

12824606-16

Jefferies never signed any forbearance agreement – neither its proposal nor Weiss's counterproposal. Weiss SJ at 10. Jefferies has never provided the Court with a fully executed version of any forbearance agreement. Indeed, Jefferies has never clearly identified which version, if any, of any forbearance agreement it claims is enforceable. And Jefferies never advised Weiss, or anyone else, that it had accepted the terms of Weiss's counterproposal, or any other proposal, of forbearance.

## ARGUMENT

### I.    LEGAL STANDARD

Reconsideration should be granted "where the movant demonstrates that the judgment is based upon manifest errors of law or fact." *Bowers v. Andrew Weir Shipping, Ltd.*, 817 F. Supp. 4, 5 (S.D.N.Y. 1993), *aff'd,* 27 F.3d 800 (2d Cir. 1994).[8] Reconsideration is properly granted where "a court has overlooked 'controlling decisions or factual matters that were put before it on the underlying motion' and which, if examined, might reasonably have led to a different result." *Catala v. Joombas Co. Ltd.*, 18 Civ. 8401, 2021 WL 2012379, at *2 (S.D.N.Y. May 20, 2021) (citing *Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000)); *see also Zuma Press, Inc.*, 2019 WL 316001, at *2 (Hellerstein, J.) (where prior order overlooked a key email, granting motion for reconsideration and reversing grant of summary judgment). As set forth below, such relief is appropriate and essential here.

### II.    THE COURT OVERLOOKED JEFFERIES' REJECTION OF WEISS'S "UNILATERALLY MODIFIED FORBEARANCE AGREEMENT"

The Order overlooked controlling legal decisions and key factual matters in granting summary judgment for Plaintiffs.

---

[8]    "The standards for a motion for reconsideration [under] Rule 59(e) and Local Rule 6.3 are identical." *Kruger v. Virgin Atl. Airways, Ltd.*, No. 11-CV-2954, 2013 WL 6795251, at *1 (E.D.N.Y. Dec. 23, 2013), *aff'd,* 578 F. App'x 51 (2d Cir. 2014).

6

Here, the Court overlooked the critical issue of contract formation. It is axiomatic that "[t]o form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (citation omitted). A century of authority holds that "[u]nder New York law, an acceptance must comply with the terms of the offer and be *clear, unambiguous and unequivocal*." *Krumme*, 143 F.3d at 83 (emphasis added).[9] Although Weiss offered evidence in his motion for summary judgment that Jefferies never accepted the terms of forbearance Weiss proposed, the Court never considered that argument or the evidence in support thereof. Weiss SJ at 14-16.

It is undisputed that Jefferies made the Funds and Weiss an offer of forbearance at 2:20 a.m. on February 12, 2024. PCUF ¶¶ 31. Weiss rejected Jefferies' offer and made a counteroffer at 4:00 a.m. on February 12, 2024 – deleting certain provisions Jefferies had insisted on. *Id.* ¶¶ 35-36; Weiss SJ at 14-16. Weiss's counteroffer changed the scope of JSI's offered forbearance by deleting the material factual admissions of misappropriation that Jefferies deemed "required" terms. Weiss SJ Reply at 6-7; *see Haller v. Usman*, 24 Civ. 977, 2025 WL 605572, at *4 (S.D.N.Y. Feb. 25, 2025) ("Under New York law, a term is essential if it seriously affects the rights and obligations of the parties.") (citations omitted). "A proposal to accept the offer if modified or an

---

[9]    *See also, e.g.*, *Poel*, 216 N.Y. at 319 (An "acceptance subject to other terms and conditions was equivalent to an absolute rejection of the offer made by the plaintiffs."); *Gram v. Mutual Life Ins. Co of New York*, 300 N.Y. 375, 382 (1950) ("It is a fundamental rule of contract law that an acceptance must comply with the terms of the offer."); *Columbia Malting Co. v. Clausen-Flanagan Corp.*, 3 F.2d 547, 549 (2d Cir. 1924) ("It is elementary that an acceptance must be unequivocal. It must not change, add to, or qualify the terms of the offer."); *Kolchins v. Evolution Mkts., Inc.*, 128 A.D.3d 47, 59-60 (1st Dep't 2015) (In general, "in order for an acceptance to be effective, it must comply with the terms of the offer and be clear, unambiguous and unequivocal."), *aff'd*, 31 N.Y.3d 100 (2018); *Sullivan v. Ruvoldt*, 16 Civ. 583, 2017 WL 1157150, at *6 (S.D.N.Y. Mar. 27, 2017) (equivocal responses insufficient to form contract under New York law); *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 214 (S.D.N.Y. 2021) ("As a general rule, in order for an acceptance to be effective, it must comply with the terms of the offer and be clear, unambiguous and unequivocal.").

12824606-16

acceptance subject to other terms and conditions [is] equivalent to an absolute rejection of the offer." *Krumme*, 143 F.3d at 83.[10] By Jefferies' own words, Weiss's failure to agree to the "required" admissions of wrongful conduct was tantamount to a deal breaker.

As a legal matter, after receiving Weiss's counteroffer, the ball was in Jefferies' court: it could either "accept the offer made . . . or it could reject the offer. There was no middle course." *Poel*, 216 N.Y. at 319.

Jefferies chose to clearly and unambiguously *reject* Weiss's counteroffer in the Rejection Letter. As Weiss argued in his moving papers, the Rejection Letter treated Weiss's unilateral modifications as a rejection and counteroffer. Weiss SJ at 14-16; Weiss SJ Reply at 4-6.

Jefferies emphasized that the provisions Weiss struck were "required" features of Jefferies' offer, acknowledging that Weiss's acceptance of those terms was essential to the parties reaching an agreement. Weiss SJ at 10, 15-16; Weiss SJ Reply at 6-7. Accordingly, Jefferies advised Weiss that, as it was rejecting Weiss's counteroffer, Jefferies would not agree to forbear. Instead, Jefferies "reserve[d] *all of their rights* to bring claims and pursue remedies arising from the Weiss Parties' misconduct." Rejection Letter at 6 (emphasis added); Weiss SJ at 16; Weiss SJ Reply at 6-7.

Moreover, the Rejection Letter explicitly advised Weiss that "meanwhile" – *i.e.*, even though there was no agreement on forbearance – Jefferies "expect[ed]" Weiss and the Funds to

---

[10]    *See also, e.g.*, *F. W. Berk & Co. v. Derecktor*, 301 N.Y. 110, 112-13 (1950) (where acceptance was "subject to" additional terms, it was a rejection of the original offer); *Medrite Care, LLC v. Medrite 243 LLC*, 20-cv-3456, 2020 WL 3962010, at *2 (S.D.N.Y. July 13, 2020) ("a purported acceptance that modifies the terms of the offer 'is equivalent to a rejection and counteroffer.'") (citation omitted); *Ladau v. Hillier Grp., Inc.*, No. 02 Civ.4703, 2004 WL 691520, at *3 (S.D.N.Y. Mar. 31, 2004) ("an acceptance that is conditioned on terms at variance with those in the offer operates as a counteroffer and terminates the original offer.") (citation omitted); *Homayouni v. Paribas*, 241 A.D.2d 375, 376 (1st Dept 1997) ("qualified response operates as a rejection and termination of—and substitution for—the initially offered terms").

8

12824606-16

abide by certain representations even in the absence of an agreement (while accelerating its demand for certain financial documents from the timetable proposed in Jefferies' offer of forbearance). Rejection Letter at 6; Weiss SJ at 10, 16; Weiss SJ Reply at 6-7, 6 n.5.

Jefferies' unmistakable rejection extinguished Weiss's counteroffer and excluded the possibility of accepting that counteroffer through performance. "As every first-year law student learns, the recipient's rejection of an offer leaves the matter as if no offer had ever been made." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016) (internal quotations omitted).[11] In other words, Weiss's "unilaterally modified Forbearance Agreement" extinguished Jefferies' original proposal, and Jefferies' Rejection Letter extinguished Weiss's counteroffer. Rejection Letter at 6. As a result, both offers had been extinguished, leaving nothing for Jefferies to accept through performance or otherwise. The evidence in support of these arguments was presented at summary judgment but not considered.

While the Order emphasized the fact that Jefferies filed a single UCC financing statement on February 13, the Order did not grapple with the fact that this financing statement was filed after Jefferies sent the Rejection Letter on February 12. Order at 7; Weiss SJ at 10; Weiss SJ Reply at 7-8, 7 n.6; *see, e.g.*, *Greystone*, 815 F. Supp. at 753 ("A rejection extinguishes an offer and renders any subsequent acceptance of the offer inoperative."). Moreover, the financing statement does not mention the forbearance agreement and the Funds never consented its filing. Balber Decl. Ex. A-

---

[11]     *See also, e.g.*, *Tradeways Inc. v. Chrysler Corp.*, 342 F.2d 350, 354 (2d Cir. 1965) ("A communicated rejection of an offer causes it to become a nullity."); *Haller*, 2025 WL 605572, at *7 (rejection "extinguishes the original offer."); *Greystone P'ships Grp., Inc. v. Koninklijke Luchtvaart Maatschappij N.V.*, 815 F. Supp. 745, 753 (S.D.N.Y. 1993) ("A rejection extinguishes an offer and renders any subsequent acceptance of the offer inoperative."); 22 N.Y. Jur. 2d Contracts § 40 ("An offer is terminated by rejection and cannot thereafter be accepted so as to create a contract.").

9

J (ECF No. 30-1).  In no other way did the parties act in accordance with Weiss's counteroffered agreement (Weiss never suggested he understood that Jefferies accepted his counteroffer).

At a minimum, the Rejection Letter was not an "unequivocal" acceptance of Weiss's counteroffer.  Even under a tortured reading of the Rejection Letter as an "ambiguous acceptance," Weiss's and the Funds' reaction to the Rejection Letter would "control[] whether the parties entered into a contract."  *IBM Corp. v. Johnson*, 629 F. Supp. 2d 321, 330 (S.D.N.Y.), *aff'd,* 355 F. App'x 454 (2d Cir. 2009).  The undisputed evidence is that neither Weiss nor the Funds reacted as though the Forbearance Agreement was valid.  PCUF ¶¶ 65-66.  No contract was formed by their reaction either.  *See* Dillabough Decl. ¶ 28 (noting that the Funds did not comply with the account control agreements because Jefferies never accepted the counteroffer).

In this regard, the Court misconstrued Weiss's arguments regarding Jefferies' failure to sign or provide consideration.  Order at 6-7.  Weiss did not argue that Jefferies' failure to countersign Weiss's counteroffer independently prevented the formation of a contract.  Instead, Weiss argued that the lack of a signed agreement from Jefferies is *merely further support that Jefferies never provided Weiss with unequivocal assent*.  Weiss SJ Reply at 7-8 ("Had Jefferies wished to enforce the Forbearance Agreement, as 'unilaterally modified' they should have signed and agreed.  Instead, they did the opposite.").

Likewise, Weiss argued that Jefferies' Rejection Letter, which explicitly "reserved the right to bring all claims" eliminated the consideration that had been offered by Jefferies.  Weiss SJ at 15-16; Weiss SJ Reply at 6.  The fact that Jefferies did not sue during the two days following Weiss's counteroffer means nothing because Jefferies had no obligation to sue during those two days.  Weiss SJ Reply at 6 (Jefferies "had the option, not the obligation, to litigate.").

10

A-1144

And even if the Court were inclined to find the Rejection Letter ambiguous, and that further ambiguous actions were taken by the Funds implying the contract existed, that would only raise issues of triable fact precluding an award of summary judgment. *See, e.g.*, *Adler v. Payward, Inc.*, No. 18-cv-8100, 2024 WL 1138941, at *3 (S.D.N.Y. Mar. 14, 2024) (dispute over contract formation and contract terms create fact issues precluding summary judgment). As Dillabough's declaration makes clear, there are more than sufficient issues of fact to preclude summary judgment. Dillabough Decl. ¶¶ 18, 27-28.

## CONCLUSION

Weiss respectfully requests that the Court amend or alter its March 12, 2025, Order and enter an order denying Plaintiffs' motion for summary judgment and granting Defendant's motion for summary judgment.

Dated: New York, New York
      March 26, 2025

                KAPLAN RICE LLP

                By:   */s/Howard Kaplan*
                     Howard Kaplan
                     Michelle Rice
                     142 West 57th Street
                     Suite 4A
                     New York, New York 10019
                     (212) 235-0300

                OLSHAN FROME WOLOSKY LLP

                By:   */s/ Brian A. Katz*
                     Brian A. Katz
                     Daniel M. Stone
                     1325 Avenue of the Americas
                     New York, New York 10019
                     (212) 451-2300

                *Attorneys for George Weiss*

11

12824606-16

**Local Rule 7.1 Certificate of Compliance**

I, Daniel M. Stone, hereby certify that Defendant George Weiss's Memorandum of Law in Support of His Motion for Reconsideration and/or to Amend and Alter the Judgment complies with the word count limitation of Local Rules 6.3 and 7.1.  The memorandum contains a total of 3,489 words, excluding the caption, any index, table of contest, table of authorities, signature blocks, or any required certificates.  I relied upon the word count of the word-processing program used to prepare the document.


/s/ Daniel M. Stone
Daniel M. Stone

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC, | Case No. 1:24-cv-04369-AKH |
| Plaintiffs, | |
| -against- | |
| GEORGE WEISS, | |
| Defendant. | |

## NOTICE OF PLAINTIFFS' MOTION TO CORRECT OMISSION IN JUDGMENT

**PLEASE TAKE NOTICE** that, upon: (i) the accompanying memorandum of law in support of their motion to enter a corrected judgment specifying the precise amount owed; (ii) the judgment entered in this action (ECF No. 42, the "Judgment"); and (iii) all prior pleadings and proceedings in this action, the plaintiffs, by and through their undersigned counsel, will move this Court, pursuant to Fed. R. Civ. P. 60(a), for entry of an order correcting the Judgment, such that it shall specify the precise amount owed thereunder (exclusive of post-judgment interest). Plaintiffs' proposed corrected-judgment is attached to this notice of motion as **Exhibit A**. Plaintiffs' calculation of the amount owed under the judgment is attached to this notice of motion as **Exhibit B**.

Plaintiffs' motion shall be heard before the Honorable Alvin K. Hellerstein at the Daniel Patrick Moynihan Courthouse, at 500 Pearl St., New York, New York 10007, Courtroom 14D, at a time to be determined by the Court.

Dated:  New York, New York
March 26, 2025

Respectfully submitted,

HERBERT SMITH FREEHILLS
  NEW YORK LLP
By: /s/ *Scott S. Balber*
    Scott S. Balber
    Michael P. Jones
    Daniel Gomez
200 Park Avenue
New York, New York 10166
Tel: (917) 542-7810
Fax: (917) 542-7601
Email:    Scott.Balber@hsf.com
          Michael.Jones@hsf.com
          Daniel.Gomez@hsf.com

*Attorneys for Plaintiffs*
*Jefferies Strategic Investments, LLC and*
*Leucadia Asset Management Holdings LLC*

2

Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC, | Case No. 1:24-cv-04369-AKH |
| Plaintiffs, | |
| -against- | **[PROPOSED] CORRECTED JUDGMENT** |
| GEORGE WEISS, | |
| Defendant. | |

It is hereby **ORDERED, ADJUDGED AND DECREED**:

That for the reasons stated in the Court's Opinion and Order dated March 12, 2025, Plaintiffs' motion for summary judgment is granted and Defendant's cross-motion is denied.

Final judgment is entered in favor of Plaintiffs and against Defendant in the sum of $113,493,250.

Plaintiffs are entitled to post-judgment interest at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding.

The case is closed.

Dated:   New York, New York
         March __, 2025

By: _____
         Clerk of Court

Exhibit B

**Plaintiffs' Calculation of Pre-Judgment Interest and
Total Amounts Owed Under Judgment Through March 12, 2025**

| Amounts Owed and/or Paid Under Strategic Relationship Agreement | Amount | Source |
|---|---|---|
| 2020 GWA Rev Share due to LAM (principal only) | $7,576,366 | ECF No. 30-1, Ex. K at 1 |
| 2021 GWA Rev Share due to LAM (principal only) | $17,495,574 | ECF No. 30-1, Ex. K at 1 |
| 2022 GWA Rev Share due to LAM (principal only) | $7,899,752 | ECF No. 30-1, Ex. K at 1 |
| 2023 GWA Rev Share due to LAM (principal only) | $10,797,305 | ECF No. 30-1, Ex. K at 1 |
| $1,000,000 Payment from Weiss in 2023 | $(1,000,000) | ECF No. 30-1, Ex. K at 1 |
| **Principal Owed** | **$42,768,996** | |
| | | |
| Interest Through 12/31/2023 | $6,855,241 | ECF No. 30-1, Ex. K at 1 |
| Interest From 12/31/23 to 3/24/2025 | $6,831,907 | *See* ECF No. 30-1, Ex. K at 1; Annex 1, *infra*. |
| **Total Interest Through 3/12/2025** | **$13,687,148** | |
| | | |
| **Total Owed Under Strategic Relationship Agreement Through 3/12/2025** | **$56,456,144** | |

| Amounts Owed and/or Paid Under Notes | Amount | Source |
|---|---|---|
| Principal Owed | $53,000,000 | ECF No. 30-1 ¶¶ 9, 12 |
| Paydown Through 12/31/2023 | $(21,000,000) | ECF No. 30-1, Ex. K at 2 |
| Interest/Return through 12/31/2023 | $22,223,111 | ECF No. 30-1, Ex. K at 2–3 |
| **Total Owed Through 12/31/2023** | **$54,223,111** | |
| | | |
| 2023 IMA Offset | $(2,581,878) | ECF No. 30-1, Ex. K at 4 |
| $3,000,000 Payment from Weiss in 2024 | $(3,000,000) | ECF No. 30-1, Ex. K at 4 |
| Interest from 12/31/2023 to 3/12/2025 | $8,395,873 | ECF No. 30-1, Ex. K at 4; Annexes 2–4, *infra*. |
| **Total Owed Under Notes Through 3/12/2025** | **$57,037,106** | |
| | | |
| **Grand total of amounts due from Weiss from Note and Receivable** | **$113,493,250** | |

A-1152

## Annex 1

### Incremental Interest due from GWA to LAM from 12/31/23 to 3/24/2025 Under Strategic Relationship Agreement[1]

| Date | Principal | Prime | +2% | Rate | Days | Interest | Addition | Ending |
|---|---|---|---|---|---|---|---|---|
| Dec. 2023 | | | | | | | | 49,624,238[2] |
| Jan. 2024 | 49,624,238.00 | 8.50% | 2% | 10.50% | 31 | 442,539.44 | 3,557,465.00 | 53,624,242.44 |
| Feb. 2024 | 53,624,242.44 | 8.50% | 2% | 10.50% | 29 | 447,358.41 | - | 54,071,600.84 |
| Mar. 2024 | 54,071,600.84 | 8.50% | 2% | 10.50% | 31 | 482,200.17 | - | 54,553,801.01 |
| Apr. 2024 | 54,553,801.01 | 8.50% | 2% | 10.50% | 30 | 470,806.78 | - | 55,024,607.79 |
| May 2024 | 55,024,607.79 | 8.50% | 2% | 10.50% | 31 | 490,698.90 | - | 55,515,306.69 |
| June 2024 | 55,515,306.69 | 8.50% | 2% | 10.50% | 30 | 479,104.70 | - | 55,994,411.39 |
| July 2024 | 55,994,411.39 | 8.50% | 2% | 10.50% | 31 | 499,347.42 | - | 56,493,758.81 |
| Aug. 2024 | 56,493,758.81 | 8.50% | 2% | 10.50% | 31 | 503,800.51 | - | 56,997,559.32 |
| Sept. 2024 (Until Sept. 19) | 56,997,559.32 | 8.50% | 2% | 10.50% | 19 | 311,534.61 | - | 57,309,093.92 |
| Sept. 2024 (After Sept. 19) | 57,309,093.92 | 8.00% | 2% | 10.00% | 11 | 172,712.34 | - | 57,481,806.26 |
| Oct. 2024 | 57,481,806.26 | 8.00% | 2% | 10.00% | 31 | 488,201.64 | - | 57,970,007.90 |
| Nov. 2024 (Until Nov. 8) | 57,970,007.90 | 8.00% | 2% | 10.00% | 8 | 127,057.55 | - | 58,097,065.45 |
| Nov. 2024 (After Nov. 8) | 58,097,065.45 | 7.75% | 2% | 9.75% | 22 | 341,419.74 | - | 58,438,485.19 |
| Dec. 2024 | 58,438,485.19 | 7.75% | 2% | 9.75% | 19 | 296,595.33 | - | 58,735,080.52 |
| Dec. 2024 | 58,735,080.52 | 7.50% | 2% | 9.50% | 12 | 183,446.55 | - | 58,918,527.07 |
| Jan. 2025 | 58,918,527.07 | 7.50% | 2% | 9.50% | 31 | 475,383.73 | - | 59,393,910.80 |
| Feb. 2025 | 59,393,910.80 | 7.50% | 2% | 9.50% | 28 | 432,843.30 | - | 59,826,754.10 |
| Mar. 2025 (Until Mar. 12) | 59,826,754.10 | 7.50% | 2% | 9.50% | 12 | 186,856.16 | - | 60,013,610.26 |
| **Total** | | | | | 437 | 6,831,907.26 | | 60,013,610 |

[1]   Under the Strategic Relationship Agreement, interest is calculated "at the annual rate of [the Wall Street Journal] Prime Rate plus two percent (2%), compounded monthly, until such time as such payment is paid in full to payee." (ECF No. 30-1 ¶ 6, Ex. A § 1(f)).

[2]   $49,624,238, is the sum of the principal ($42,768,996), and interest through 12/31/2023 ($6,855,241) owed under the Strategic Relationship Agreement. (*See* ECF No. 30-1, Ex. K at 1).

2

**Annex 2**

**Default Interest from 12/31/2023 to 3/12/2025 on First Note**

| Date | Principal | Prime | +5% | Rate | Days | Interest | Add/Subtraction | Ending |
|---|---|---|---|---|---|---|---|---|
| Dec. 2023 | | | | | | | | 23,518,120.67[3] |
| Jan. 2024 | 23,518,120.67 | 8.50% | 5% | 13.50% | 30 | 264,578.86 | | 23,782,699.53 |
| Feb. 2024 | 23,782,699.53 | 8.50% | 5% | 13.50% | 11 | 98,103.64 | (2,581,878.24)[4] | 21,298,924.93 |
| Feb. 2024 | 21,298,924.93 | 8.50% | 5% | 13.50% | 3 | 23,961.29 | (3,000,000.00)[5] | 18,322,886.22 |
| Feb. 2024 | 18,322,886.22 | 8.50% | 5% | 13.50% | 16 | 109,937.32 | | 18,432,823.54 |
| Mar. 2024 | 18,432,823.54 | 8.50% | 5% | 13.50% | 30 | 207,369.26 | | 18,640,192.80 |
| Apr. 2024 | 18,640,192.80 | 8.50% | 5% | 13.50% | 30 | 209,702.17 | | 18,849,894.97 |
| May 2024 | 18,849,894.97 | 8.50% | 5% | 13.50% | 30 | 212,061.32 | | 19,061,956.29 |
| June 2024 | 19,061,956.29 | 8.50% | 5% | 13.50% | 30 | 214,447.01 | | 19,276,403.30 |
| July 2024 | 19,276,403.30 | 8.50% | 5% | 13.50% | 30 | 216,859.54 | | 19,493,262.83 |
| Aug. 2024 | 19,493,262.83 | 8.50% | 5% | 13.50% | 30 | 219,299.21 | | 19,712,562.04 |
| Sept. 2024 (Until Sept. 19) | 19,712,562.04 | 8.50% | 5% | 13.50% | 19 | 140,452.00 | | 19,853,014.04 |
| Sept. 2024 (After Sept. 19) | 19,853,014.04 | 8.00% | 5% | 13.00% | 11 | 78,860.58 | | 19,931,874.63 |
| Oct. 2024 | 19,931,874.63 | 8.00% | 5% | 13.00% | 30 | 215,928.64 | | 20,147,803.27 |
| Nov. 2024 (Until Nov. 8) | 20,147,803.27 | 8.00% | 5% | 13.00% | 8 | 58,204.77 | | 20,206,008.03 |
| Nov. 2024 (After Nov. 8) | 20,206,008.03 | 7.75% | 5% | 12.75% | 22 | 157,438.48 | | 20,363,446.51 |
| Dec. 2024 | 20,363,446.51 | 7.75% | 5% | 12.75% | 19 | 137,029.03 | | 20,500,475.54 |
| Dec. 2024 | 20,500,475.54 | 7.50% | 5% | 12.50% | 11 | 78,300.43 | | 20,578,775.97 |
| Jan. 2025 | 20,578,775.97 | 7.50% | 5% | 12.50% | 30 | 214,362.25 | | 20,793,138.22 |
| Feb. 2025 | 20,793,138.22 | 7.50% | 5% | 12.50% | 30 | 216,595.19 | | 21,009,733.41 |
| Mar. 2025 (Until Mar. 12) | 21,009,733.41 | 7.50% | 5% | 12.50% | 12 | 87,540.56 | | 21,097,273.96 |
| **Total** | | | | | **432** | **3,161,031.53** | | **21,097,273.96** |

---

3   (*See* ECF No. 30-1, Ex. K at 2).
4   $2,581,878.24 reduction in obligations pursuant to February 12, 2024 Forbearance Agreement.
5   $3,000,000.00 payment made on February 15, 2024.

A-1154

**Annex 3**

**Default Interest from 12/31/2023 to 3/12/2025 on Second Note**

| Date | Principal | Prime | +5% | Rate | Days | Interest | Add/Subtraction | Ending |
|---|---|---|---|---|---|---|---|---|
| Dec. 2023 | | | | | | | | 27,303,726.61[6] |
| Jan. 2024 | 27,303,726.61 | 8.50% | 5% | 13.50% | 30 | 307,166.92 | | 27,610,893.54 |
| Feb. 2024 | 27,610,893.54 | 8.50% | 5% | 13.50% | 11 | 113,894.94 | | 27,724,788.47 |
| Feb. 2024 | 27,724,788.47 | 8.50% | 5% | 13.50% | 3 | 31,190.39 | | 27,755,978.86 |
| Feb. 2024 | 27,755,978.86 | 8.50% | 5% | 13.50% | 16 | 166,535.87 | | 27,922,514.73 |
| Mar. 2024 | 27,922,514.73 | 8.50% | 5% | 13.50% | 30 | 314,128.29 | | 28,236,643.02 |
| Apr. 2024 | 28,236,643.02 | 8.50% | 5% | 13.50% | 30 | 317,662.23 | | 28,554,305.26 |
| May 2024 | 28,554,305.26 | 8.50% | 5% | 13.50% | 30 | 321,235.93 | | 28,875,541.19 |
| June 2024 | 28,875,541.19 | 8.50% | 5% | 13.50% | 30 | 324,849.84 | | 29,200,391.03 |
| July 2024 | 29,200,391.03 | 8.50% | 5% | 13.50% | 30 | 328,504.40 | | 29,528,895.43 |
| Aug. 2024 | 29,528,895.43 | 8.50% | 5% | 13.50% | 30 | 332,200.07 | | 29,861,095.50 |
| Sept. 2024 (Until Sept. 19) | 29,861,095.50 | 8.50% | 5% | 13.50% | 19 | 212,760.31 | | 30,073,855.81 |
| Sept. 2024 (After Sept. 19) | 30,073,855.81 | 8.00% | 5% | 13.00% | 11 | 119,460.04 | | 30,193,315.85 |
| Oct. 2024 | 30,193,315.85 | 8.00% | 5% | 13.00% | 30 | 327,094.26 | | 30,520,410.10 |
| Nov. 2024 (Until Nov. 8) | 30,520,410.10 | 8.00% | 5% | 13.00% | 8 | 88,170.07 | | 30,608,580.18 |
| Nov. 2024 (After Nov. 8) | 30,608,580.18 | 7.75% | 5% | 12.75% | 22 | 238,491.85 | | 30,847,072.03 |
| Dec. 2024 | 30,847,072.03 | 7.75% | 5% | 12.75% | 19 | 207,575.09 | | 31,054,647.12 |
| Dec. 2024 | 31,054,647.12 | 7.50% | 5% | 12.50% | 11 | 118,611.50 | | 31,173,258.62 |
| Jan. 2025 | 31,173,258.62 | 7.50% | 5% | 12.50% | 30 | 324,721.44 | | 31,497,980.06 |
| Feb. 2025 | 31,497,980.06 | 7.50% | 5% | 12.50% | 30 | 328,103.96 | | 31,826,084.02 |
| Mar. 2025 (Until Mar. 12) | 31,826,084.02 | 7.50% | 5% | 12.50% | 12 | 132,608.68 | | 31,958,692.71 |
| **Total** | | | | | 432 | 4,654,966.09 | | 31,958,692.71 |

4

---
[6]  (*See* ECF No. 30-1, Ex. K at 2).

A-1155

**Annex 4**

**Default Interest from 12/31/2023 to 3/12/2025 on Third Note**

| Date | Principal | Prime | +5% | Rate | Days | Interest | Add/Subtraction | Ending |
|------|-----------|-------|-----|------|------|----------|-----------------|--------|
| Dec. 2023 | | | | | | | | 3,401,263.49[7] |
| Jan. 2024 | 3,401,263.49 | 8.50% | 5% | 13.50% | 30 | 38,264.21 | | 3,439,527.70 |
| Feb. 2024 | 3,439,527.70 | 8.50% | 5% | 13.50% | 11 | 14,188.05 | | 3,453,715.76 |
| Feb. 2024 | 3,453,715.76 | 8.50% | 5% | 13.50% | 3 | 3,885.43 | | 3,457,601.19 |
| Feb. 2024 | 3,457,601.19 | 8.50% | 5% | 13.50% | 16 | 20,745.61 | | 3,478,346.79 |
| Mar. 2024 | 3,478,346.79 | 8.50% | 5% | 13.50% | 30 | 39,131.40 | | 3,517,478.20 |
| Apr. 2024 | 3,517,478.20 | 8.50% | 5% | 13.50% | 30 | 39,571.63 | | 3,557,049.82 |
| May 2024 | 3,557,049.82 | 8.50% | 5% | 13.50% | 30 | 40,016.81 | | 3,597,066.64 |
| June 2024 | 3,597,066.64 | 8.50% | 5% | 13.50% | 30 | 40,467.00 | | 3,637,533.64 |
| July 2024 | 3,637,533.64 | 8.50% | 5% | 13.50% | 30 | 40,922.25 | | 3,678,455.89 |
| Aug. 2024 | 3,678,455.89 | 8.50% | 5% | 13.50% | 30 | 41,382.63 | | 3,719,838.52 |
| Sept. 2024 (Until Sept. 19) | 3,719,838.52 | 8.50% | 5% | 13.50% | 19 | 26,503.85 | | 3,746,342.37 |
| Sept. 2024 (After Sept. 19) | 3,746,342.37 | 8.00% | 5% | 13.00% | 11 | 14,881.30 | | 3,761,223.67 |
| Oct. 2024 | 3,761,223.67 | 8.00% | 5% | 13.00% | 30 | 40,746.59 | | 3,801,970.26 |
| Nov. 2024 (Until Nov. 8) | 3,801,970.26 | 8.00% | 5% | 13.00% | 8 | 10,983.47 | | 3,812,953.73 |
| Nov. 2024 (After Nov. 8) | 3,812,953.73 | 7.75% | 5% | 12.75% | 22 | 29,709.26 | | 3,842,662.99 |
| Dec. 2024 | 3,842,662.99 | 7.75% | 5% | 12.75% | 19 | 25,857.92 | | 3,868,520.91 |
| Dec. 2024 | 3,868,520.91 | 7.50% | 5% | 12.50% | 11 | 14,775.60 | | 3,883,296.52 |
| Jan. 2025 | 3,883,296.52 | 7.50% | 5% | 12.50% | 30 | 40,451.01 | | 3,923,747.52 |
| Feb. 2025 | 3,923,747.52 | 7.50% | 5% | 12.50% | 30 | 40,872.37 | | 3,964,619.89 |
| Mar. 2025 (Until Mar. 12) | 3,964,619.89 | 7.50% | 5% | 12.50% | 12 | 16,519.25 | | 3,981,139.14 |
| **Total** | | | | | 432 | 579,875.65 | | 3,981,139.14 |

5

---
7   (*See* ECF No. 30-1, Ex. K at 3).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC, <br><br>               Plaintiffs, <br><br>     -against- <br><br> GEORGE WEISS, <br><br>            Defendant. | Case No. 1:24-cv-04369-AKH |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION TO CORRECT OMISSION IN JUDGMENT**

A-1157

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ii

BACKGROUND ..............................................................................................................1

ARGUMENT ...................................................................................................................1

i

A-1158

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cap. Const. Corp. of N.Y. v. Zaga,*
   2014 WL 2915882 (S.D.N.Y. June 26, 2014) ........................................................ 1, 2

*Dudley ex rel. Estate of Patton v. Penn–American Ins. Co.,*
   313 F.3d 662 (2d Cir. 2002) ............................................................................. 1

*NYCTL 1998-2 Trust v. Wagner,*
   61 A.D.3d 728 (2d Dep't 2009) .......................................................................... 2

*Schipani v. McLeod,*
   541 F.3d 158 (2d Cir. 2008) ............................................................................. 2

*Semtner v. Grp. Health Serv. of Ok., Inc.,*
   129 F.3d 1390 (10th Cir. 1997) ....................................................................... 1, 2

**Rules**

Fed. R. Civ. P. 60 ............................................................................................ 1

Pursuant to Fed. R. Civ. P. 60(a), plaintiffs Jefferies Strategic Investments, LLC and Leucadia Asset Management Holdings LLC (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to enter a corrected judgment specifying the precise amount owed, excluding post-judgment interest, under the judgment entered by the Clerk of the Court on March 12, 2025 (the "Judgment").

## BACKGROUND

In this action, Plaintiffs sought to enforce a personal guarantee issued by defendant George Weiss for debts owed by companies owned and/or controlled by Weiss.   (*See* ECF No. 1, Ex. A ¶¶ 80–85).   On their summary judgment motion, Plaintiffs established that Weiss personally guaranteed the principal and interest due under a "Strategic Relationship Agreement" and a series of "Notes" issued by Weiss's companies, which the parties agreed was at least $95,664,183.00 as of April 29, 2024.  (*See, e.g.*, ECF Nos. 30-7, 30-8, 30-9, 30-10, 30-12).

On March 12, 2025, the Court issued an order granting the Plaintiffs' motion for summary judgment in its entirety.  (ECF No. 41, the "Order").  The Clerk entered judgment that same day.  (ECF No. 42, the "Judgment").  However, the Judgment does not set forth the precise amount owed by Weiss.  (*Id.*).

## ARGUMENT

Under Fed. R. Civ. P. 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment . . . ."  "Correction of judgment is appropriate when the existing judgment fails to include a monetary award."  *Cap. Const. Corp. of N.Y. v. Zaga*, 2014 WL 2915882, at *1 (S.D.N.Y. June 26, 2014) (citing *Dudley ex rel. Estate of Patton v. Penn–American Ins. Co.*, 313 F.3d 662, 665 (2d Cir. 2002)); *see also Semtner v. Grp. Health Serv. of Ok., Inc.*, 129 F.3d 1390, 1392 (10th Cir. 1997) ("omission of the specific amount

1

A-1160

from the judgment may therefore be viewed as a clerical error correctable under Rule 60(a)"). "The amendment may include an award of pre-judgment interest." *Cap. Const. Corp.*, 2014 WL 2915882, at *1. And under New York law (which applies to both the guarantee and the underlying agreements from which Weiss's debts arose), "when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest . . . governs until payment of the principal or until the contract is merged in a judgment." *NYCTL 1998-2 Trust v. Wagner*, 61 A.D.3d 728, 729 (2d Dep't 2009) (citation and internal quotation marks omitted).[1]

The Judgment does not specify a precise monetary award, nor does it calculate the amount of pre-judgment interest that is owed. (*See* ECF No. 42). Accordingly, Plaintiffs request that the Court correct the judgment and enter a judgment specifying that Weiss owes Plaintiffs $113,493,250. A proposed judgment has been attached to Plaintiffs' Notice of Motion as Exhibit A. Plaintiffs' calculations of the specific amounts owed by Weiss are shown in Exhibit B to the Notice of Motion.

*[Remainder of Page Intentionally Blank – Signature Page Follows]*

---

[1]    State law governs the award of prejudgment interest. *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008).

Dated:  New York, New York          Respectfully submitted,
        March 26, 2025

                                    HERBERT SMITH FREEHILLS
                                      NEW YORK LLP
                                    By: /s/ *Scott S. Balber*
                                        Scott S. Balber
                                        Michael P. Jones
                                        Daniel Gomez
                                    200 Park Avenue
                                    New York, New York 10166
                                    Tel: (917) 542-7810
                                    Fax: (917) 542-7601
                                    Email:    Scott.Balber@hsf.com
                                              Michael.Jones@hsf.com
                                              Daniel.Gomez@hsf.com

                                    *Attorneys for Plaintiffs*
                                    *Jefferies Strategic Investments, LLC and*
                                    *Leucadia Asset Management Holdings LLC*

**ATTORNEY CERTIFICATION OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that the preceding Memorandum of Law in Support of Plaintiffs' Motion to Correct Omission in Judgment (the "Supporting Memo"), exclusive of the caption and signature block, contains 496 words, and therefore complies with the 8,750 word limitation that is applicable to memoranda of law. In determining the Supporting Memo's compliance, I relied on the word count function of the word processing system that was used to prepare the Supporting Memo.

Dated:      New York, New York
            March 26, 2025

                              */s/ Scott S. Balber*
                              Scott S. Balber

                              *Attorneys for Plaintiffs*
                              *Jefferies Strategic Investments, LLC and*
                              *Leucadia Asset Management Holdings LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC, | Case No. 1:24-cv-04369-AKH |
| Plaintiffs, | |
| -against- | |
| GEORGE WEISS, | |
| Defendant. | |

**JEFFERIES STRATEGIC INVESTMENTS, LLC AND LEUCADIA**
**ASSET MANAGEMENT HOLDINGS LLC'S MEMORANDUM OF LAW IN**
**OPPOSITION TO GEORGE WEISS'S MOTION FOR RECONSIDERATION**

### TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................................ii

PRELIMINARY STATEMENT .....................................................................................1

FACTS AND PROCEDURAL POSTURE .....................................................................2

    I.     Weiss Executes the Forbearance
          Agreement to Protect the George Weiss Companies ...................................2

    II.    Plaintiffs Agree to the Forbearance Agreement.............................................3

    III.   The George Weiss Companies Declare Bankruptcy
          and the Bankruptcy Court Rejects Weiss's Argument ..................................4

    IV.   The Court Grants Plaintiffs' Motion for Summary Judgment .......................5

ARGUMENT ...................................................................................................................5

    I.     Weiss is Not Entitled to Reconsideration .....................................................5

          A.    The Court Did Not Overlook Weiss's Argument..........................5

          B.    The Motion is an Improper Attempt to
                Relitigate Weiss's Previous Arguments ........................................8

    II.    Even if Reconsidered, Plaintiffs are Entitled to Summary Judgment...........9

CONCLUSION...............................................................................................................10

A-1165

## <u>TABLE OF AUTHORITIES</u>

**Cases**

**Page(s)**

*Campbell-Ewald Co. v. Gomez,*
    577 U.S. 153 (2016) .............................................................................................. 8

*CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz,*
    2019 WL 8165893 (S.D.N.Y. Oct. 9, 2019) ............................................................ 6

*Diaz v. Bellnier,*
    974 F. Supp. 2d 136 (E.D.N.Y. 2013) ................................................................... 7

*Fernicola v. Specific Real Prop. in Possession,*
    *Custody, Control of Healthcare Underwriters Mut. Ins. Co.,*
    2001 WL 1658257 (S.D.N.Y. Dec. 26, 2001) ....................................................... 10

*Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.,*
    34 F. Supp. 3d 321 (S.D.N.Y. 2014) ..................................................................... 9

*Greystone Partnerships Grp., Inc. v. Koninklijke Luchtvaart Maatschappij N.V.,*
    815 F. Supp. 745 (S.D.N.Y. 1993) ....................................................................... 8

*GWA, LLC v. Jefferies Strategic Invs., LLC,*
    664 B.R. 492 (Bankr. S.D.N.Y. 2024) ............................................................. 4, 10

*Khaldei v. Kaspiev,*
    2014 WL 3950707 (S.D.N.Y. Aug. 12, 2014) ....................................................... 8

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,*
    729 F.3d 99 (2d Cir. 2013) .................................................................................... 6

*Ladau v. Hillier Grp., Inc.,*
    2004 WL 691520 (S.D.N.Y. Mar. 31, 2004) ........................................................ 8

*Leviton Mfg. Co. v. Pass & Seymour, Inc.,*
    2019 WL 13236133 (E.D.N.Y. Apr. 17, 2019) ..................................................... 8

*Medcenter Holdings Inc. v. Web MD Health Corp.,*
    734 F. Supp. 3d 303 (S.D.N.Y. 2024) ................................................................... 6

*Merced Irrigation Dist. v. Barclays Bank PLC,*
    178 F. Supp. 3d 181 (S.D.N.Y. 2016) ................................................................... 6

*Minneapolis & St. L. Ry. Co. v. Columbus Rolling-Mill Co.,*
    119 U.S. 149 (1886) .............................................................................................. 8

*Moore v. T-Mobile USA, Inc.*,
    2013 WL 55799 (E.D.N.Y. Jan. 2, 2013) ................................................. 7

*Silverman v. Miranda*,
    2017 WL 1434411 (S.D.N.Y. Apr. 10, 2017) ........................................... 8

*Superior Funding Corp. v. Big Apple Cap. Corp.*,
    738 F. Supp. 1468 (S.D.N.Y. 1990) ....................................................... 10

*Trident Int'l Ltd. v. Am. Steamship Owners Mut. Protection and Indem. Assoc., Inc.*,
    2008 WL 11517608 (S.D.N.Y. June 11, 2008) ......................................... 6

*United States v. Ceana, Inc.*,
    422 F. Supp. 3d 678 (E.D.N.Y. 2016) ..................................................... 9

*United States v. N.Y.C. Transit Auth.*,
    2011 WL 4596155 (E.D.N.Y. Sept. 30, 2011) ......................................... 7

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
    2019 WL 316001 (S.D.N.Y. Jan. 24, 2019) ............................................. 7

Plaintiffs Jefferies Strategic Investments, LLC ("JSI") and Leucadia Asset Management Holdings LLC ("LAM Holdings," and with JSI, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to the motion for reconsideration (ECF No. 43; the "Motion") filed by defendant George Weiss ("Weiss").

## PRELIMINARY STATEMENT

The Motion is Weiss's third attempt to litigate the enforceability of a guarantee that he signed concerning more than $100 million that a group of companies bearing his name owed to Plaintiffs. Weiss does not dispute that this Court, as well as the United States Bankruptcy Court for the Southern District of New York in a related matter, determined that the uncontroverted evidence established that Plaintiffs accepted the guarantee as signed by Weiss and that he is bound by it. Instead, Weiss argues that this Court should reconsider its decision granting summary judgment in favor of Plaintiffs because he claims the Court "overlooked" evidence, which Weiss contends contradicts the Court's decision. (Memo at 7).[1] Weiss's Motion should be denied for three reasons.

*First*, the Court did not "overlook" any evidence or argument raised by Weiss. To the contrary, the Court's Opinion[2] specifically addressed Weiss's "arguments that the Forbearance Agreement lacked mutual assent," and determined that those arguments failed to "pass muster." (Opinion at 6–7).

---

[1]      "Memo" refers to Defendant George Weiss's Memorandum of Law in Support of his Motion for Reconsideration and/or to Amend and Alter the Judgment (ECF No. 44).

[2]      "Opinion" refers to the Court's Opinion and Order Granting Plaintiffs' Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment (ECF No. 41).

1

*Second*, Weiss may not use this Motion to relitigate an issue that he lost. But that is precisely what he has done, repeating dozens of pages of arguments from his summary judgment papers that the Court considered and rejected.

*Third*, even if the Court were to reconsider its opinion, Weiss's contentions fail as a matter of law. Because Plaintiffs are suing for breach of a guarantee, they were not required to establish that they "accepted" the guarantee. Regardless, the record unequivocally shows—as both this Court and the bankruptcy court have held—that Plaintiffs did accept Weiss's guarantee through their objective actions.

For any of these reasons, the Motion should be denied.

## FACTS AND PROCEDURAL POSTURE

### I.  Weiss Executes the Forbearance Agreement to Protect the George Weiss Companies

As of February 2024, GWA, LLC ("GWA")—a hedge fund company established and controlled by Weiss—both: (i) owed Plaintiffs over $100 million dollars; and (ii) was hopelessly insolvent. (*See* ECF No. 45, Ex. B; No. 36 ¶¶ 90–105, 107–110). Nonetheless, Weiss caused GWA to pay more than $30 million in bonuses, to employees, all of which could have been used to reduce the amounts owed to Plaintiffs. Unsurprisingly, Plaintiffs objected to GWA's conduct, and threatened to pursue litigation to claw back the bonus payments, as well as other remedies to enforce their rights against GWA. (*See, e.g.*, ECF No. 36 ¶¶ 26, 28, 29).

Nonetheless, Plaintiffs proposed to enter into a Forbearance Agreement in order to give Weiss time to find a solution. (*See id.* ¶ 31). Accordingly, on February 12, 2024, Plaintiffs provided Weiss with a draft "Forbearance Agreement." (*Id.*). In general, the draft Forbearance Agreement contemplated that Plaintiffs would agree to not pursue litigation for at least the next two business days, so long as: (i) a series of other companies controlled by Weiss (with GWA, the "George Weiss Companies") would guarantee the debt of GWA; (ii) Weiss, personally, would

2

guarantee the performance of all of the George Weiss Companies; and (iii) the George Weiss Companies would provide a series of financial information to Plaintiffs. (ECF No. 28-3).

Weiss—a sophisticated hedge fund manager advised by experienced counsel—reviewed the Forbearance Agreement, removed two "WHEREAS" clauses, and then signed it. (ECF No. 36 ¶¶ 35–36). Weiss did not delete or edit any other provision. (*See* ECF No. 28-4). He then returned the executed Forbearance Agreement to Plaintiffs. (*Id.*).

## II.    Plaintiffs Agree to the Forbearance Agreement

Plaintiffs immediately recognized that Weiss had attempted to manipulate the factual record by altering the "WHEREAS" clauses contained in the draft Forbearance Agreement. Accordingly, the same morning that they received the executed version of the Forbearance Agreement, Plaintiffs' counsel sent Weiss and his companies a letter (the "Letter"). (*See* ECF No. 28-5). At no point does the Letter state that Plaintiffs were rejecting the Forbearance Agreement. Instead, it simply acknowledged that Weiss had "unilaterally modified portions of the draft Forbearance Agreement, including by deleting the Weiss Parties' acknowledgement that they had previously stated that the bonus payments would not be made until the second half of February 2024 . . . ." (*Id.*). However, it also made clear that Plaintiffs were agreeing to the terms of the Forbearance Agreement, stating that Plaintiffs "expect[ed] the Weiss Parties to abide by the representations made to the Jefferies Parties in the unilaterally modified Forbearance Agreement." (*Id.*).

Following its execution, Plaintiffs fully complied with their obligations under the Forbearance Agreement. They did not bring, or threaten to bring, any actions against the George Weiss Companies within the two business days following its execution. (*See* ECF No. 36 ¶ 70). And, on February 13, 2024—one day after Weiss executed the Forbearance Agreement—JSI filed

a UCC Financing Statement with the New York Department of State, recording the security interests granted to it through the Forbearance Agreement.  (ECF No. 36 ¶ 88).

The George Weiss Companies, likewise, complied with the Forbearance Agreement after receiving the Letter.  Indeed, on the week of February 12, the George Weiss Companies sent Plaintiffs the information they were required to provide under the Forbearance Agreement.  (*See id.* ¶ 65).

### III.    The George Weiss Companies Declare Bankruptcy and the Bankruptcy Court Rejects Weiss's Argument

On April 29, 2024, Weiss caused the George Weiss Companies (but not himself) to file Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the Southern District of New York.  Simultaneously, he caused the George Weiss Companies to file an adversary proceeding against the Plaintiffs.  (ECF Doc. No. 36 ¶ 111).

In the adversary proceeding, the George Weiss Companies argued that Plaintiffs had rejected the Forbearance Agreement by sending the Letter.  (ECF Doc. No. 30-14 ¶ 120).  The Bankruptcy Court rejected that argument, holding—as a matter of law—that the Letter was insufficient "to support a plausible claim that the [Plaintiffs] did not intend to comply with the terms of the . . . Forbearance Agreement."  *GWA, LLC v. Jefferies Strategic Invs., LLC*, 664 B.R. 492, 526 (Bankr. S.D.N.Y. 2024).  Instead, the Bankruptcy Court found that Plaintiffs established their agreement to the terms of the Forbearance Agreement by taking "'objective' actions [that] show[ed] that they intended to be bound by the [] Forbearance Agreement," including by (i) "fil[ing] UCC-1 financing statements to perfect the security interests granted under the [] Forbearance Agreement"; and (ii) by refraining from bringing suit, or providing the George Weiss Companies with notice that they intended to bring suit, until after they fulfilled their agreement to forbear.  *Id.* at 527.

4

**IV.    The Court Grants Plaintiffs' Motion for Summary Judgment**

The Jefferies Entities subsequently brought this action and, on November 5, 2024, filed their motion for summary judgment.  (ECF No. 29).  In his briefing, Weiss argued extensively that, through the Letter, Plaintiffs "unequivocally rejected" the Forbearance Agreement.  (ECF No. 38 at 1; *see also* ECF No. 25 at 9–11, 13–16; ECF No. 26 ¶¶ 59–66; ECF No. 33 at 5–6, 13).

Plaintiffs rebutted that argument by demonstrating that:  (i) Weiss was collaterally estopped from raising that argument by the Bankruptcy Court's prior holding (*see, e.g.*, ECF No. 40 at 3–5); (i) Weiss was mischaracterizing the Letter (*see, e.g.*, ECF No. 37 at 13), and (iii) the Letter was "irrelevant because, after it was sent, Plaintiffs objectively manifested their intent to accept the Forbearance Agreement" (*id.*).

On March 12, 2025, the Court issued the Opinion granting the Jefferies Entities' motion for summary judgment in its entirety.  (*See generally* Opinion).  The Court expressly considered Weiss's "arguments that the Forbearance Agreement lacked mutual assent," and determined that those arguments failed to "pass muster."  (Opinion at 6–7).  The Court determined that "Plaintiffs took objective actions to evince their intent to be bound" to the Forbearance Agreement by "perform[ing] their obligations under the Forbearance Agreement," and "filing a financing statement to perfect the security interest granted under the Forbearance Agreement."  (*Id.* at 7).  This Motion followed.

## ARGUMENT

**I.    Weiss is Not Entitled to Reconsideration**

**A.    The Court Did Not Overlook Weiss's Argument**

The Motion should be denied because the Court specifically addressed the argument and evidence that Weiss now claims was ignored.

In the Second Circuit, "[a] motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotations omitted). The rule permitting reconsideration "must be narrowly construed and strictly applied so as to avoid duplicative rulings on previously considered issues." *Merced Irrigation Dist. v. Barclays Bank PLC*, 178 F. Supp. 3d 181, 183 (S.D.N.Y. 2016) (internal quotations omitted).

Weiss cites no new evidence or change of controlling law. Instead, he argues that because the Opinion does not specifically mention the Letter, it necessarily "overlooked the critical issue of contract formation." (Memo at 6–7). However, it is "impractical for a district court to enumerate every single fact and bit of minutiae it considers in reaching its conclusions." *Trident Int'l Ltd. v. Am. Steamship Owners Mut. Protection and Indem. Assoc., Inc.*, 2008 WL 11517608, at *2 (S.D.N.Y. June 11, 2008). Accordingly, a failure to cite evidence does not suggest that the Court "overlooked" relevant evidence. *Medcenter Holdings Inc. v. Web MD Health Corp.*, 734 F. Supp. 3d 303, 314 (S.D.N.Y. 2024) ("[W]hile a misstatement or mischaracterization of a fact may suggest the Court 'overlooked' relevant evidence, a failure to cite does not."); *see also CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz*, 2019 WL 8165893, at *1 (S.D.N.Y. Oct. 9, 2019) ("Far from 'overlooking'" a particular edit in a complaint which the Court did not specifically reference in its opinion, "the Court in fact considered them and found them to be insufficient.").

Here, the Court expressly considered Weiss's "arguments that the Forbearance Agreement lacked mutual assent," and determined that those arguments failed to "pass muster." (Opinion at 6–7). The Court therefore necessarily considered the evidence that Weiss put forward to support his argument that there was no mutual assent, including more than 15 pages of summary judgment

briefing that was focused on the Letter.  (S*ee* ECF No. 25 at 9–11, 13–16; ECF No. 26 ¶¶ 59–66; ECF No. 33 at 5–6, 13; ECF No. 38, Arg. § I(A) (making argument over 3 full pages)).  *See United States v. N.Y.C. Transit Auth.*, 2011 WL 4596155, at *1 (E.D.N.Y. Sept. 30, 2011) (rejecting petitioner's argument that the court overlooked undisputed facts in a previous order when the court "expressly rejected the very argument that the [petitioner] now reiterates" with respect to those facts); *see also Diaz v. Bellnier*, 974 F. Supp. 2d 136, 142 (E.D.N.Y. 2013) ("In order to succeed on a motion for reconsideration, a moving party must show that a court overlooked data or factual matters entirely—simply arguing that the discussion of those matters was inadequate will not suffice.").

Notwithstanding the above, Weiss relies heavily on *Zuma Press, Inc. v. Getty Images (US), Inc.*, 2019 WL 316001, at *1–2 (S.D.N.Y. Jan. 24, 2019) (Hellerstein, J.), to argue that reconsideration is appropriate here.  However, *Zuma* is plainly distinguishable.  In that case, the Court overlooked a single exhibit—out of hundreds referenced—that was referred to in the briefing in passing.  *Id.* at *2. Here, the Letter was not vaguely referenced:  it was the focus of over 15 pages of summary judgment briefing, including over 7 pages of briefing in Weiss's 19-page reply in support of his motion for summary judgment, and one of only nine exhibits submitted by Weiss. It is implausible to argue that the Court overlooked this evidence when ruling that Weiss's arguments were unsupportable.  *See Moore v. T-Mobile USA, Inc.*, 2013 WL 55799, at *2 (E.D.N.Y. Jan. 2, 2013) ("The fact that this Court did not find that this particular argument merited discussion should not be misconstrued as evidence that this Court overlooked this argument.").

**B.        The Motion is an Improper Attempt to
Relitigate Weiss's Previous Arguments**

Weiss's Motion should also be denied because it is a transparent attempt to relitigate his

arguments about the Letter.

"[A] movant may not use a reconsideration motion as an opportunity to repeat the same

old arguments *ad nauseam*."  *Khaldei v. Kaspiev*, 2014 WL 3950707, at *1 (S.D.N.Y. Aug. 12,

2014).  That is precisely what Weiss does in his Motion.  Indeed, Weiss repeatedly cites to his

previous arguments in his briefing, citing to his own summary judgment briefs *seventeen times* in

his six-page argument.   Unsurprisingly, therefore, the arguments in the Motion are wholly

duplicative of the arguments Weiss raised in summary judgment briefing, often, *verbatim* and

citing the *exact same cases*.  (*Compare, e.g.*, ECF No. 38 at 8 ("'[a]s every first-year law student

learns, the recipient's rejection of an offer leaves the matter as if no offer had ever been made.'

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016)"), *with* Motion at 9 (same); *compare*

ECF No. 38 at 8 (citing *Minneapolis & St. L. Ry. Co. v. Columbus Rolling-Mill Co.*, 119 U.S. 149,

151 (1886)), with Motion at 2 (citing identical case with nearly identical parenthetical)).[3]

Where a party uses a motion for reconsideration to merely rehash "arguments [that] were

extensively briefed in the parties' summary judgment papers," the motion is improper and must be

denied.  *Silverman v. Miranda*, 2017 WL 1434411, at *2 (S.D.N.Y. Apr. 10, 2017); *Leviton Mfg.*

*Co. v. Pass & Seymour, Inc.*, 2019 WL 13236133, at *1 (E.D.N.Y. Apr. 17, 2019) (motion for

---

[3]        *Compare also* ECF No. 33 at 14 (citing *Greystone Partnerships Grp., Inc. v. Koninklijke Luchtvaart Maatschappij N.V.*, 815 F. Supp. 745, 753 (S.D.N.Y. 1993) to argue that "Jefferies' rejection of the Weiss Companies' counteroffer extinguished it, and no further offers or agreements were made by Mr. Weiss.") *with* Motion at 9 (similar); ECF No. 25 at 15 (arguing that "Jefferies' letter makes clear that the Weiss Companies' removal of these admissions was a material change to the terms of the agreement, constituting a rejection and counteroffer by the Weiss Companies" and citing *Ladau v. Hillier Grp., Inc.*, 2004 WL 691520, at *3 (S.D.N.Y. Mar. 31, 2004) *with* Motion at 7–8, 8 n.10 (similar).

reconsideration denied where it "primarily rehashe[d] . . . an argument which the parties briefed extensively").

## II.    Even if Reconsidered, Plaintiffs are Entitled to Summary Judgment

Finally, if the Court were to reconsider Weiss's arguments that Plaintiffs did not accept the Forbearance Agreement, Weiss's Motion should nonetheless be denied for several reasons.

*First*, Weiss's argument improperly assumes that Plaintiffs were required to "accept" his guarantee.  (*See, e.g.*, ECF No. 38 at 4).  However, New York law imposes no such requirement.  Rather, guarantees need only be "executed" by the guarantor and the debtor.  *See Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*, 34 F. Supp. 3d 321, 325, 331 (S.D.N.Y. 2014) (granting summary judgment enforcing certain guarantees against the guarantor that were "executed" solely between the "[d]efendants [the guarantor and debtor]" that "guaranteed 'full and prompt payment'" of debts owed to the plaintiff); *United States v. Ceana, Inc.*, 422 F. Supp. 3d 678, 681 (E.D.N.Y. 2016) (granting summary judgment enforcing payment guarantees against the guarantor because "Plaintiff has established that *Defendants did indeed execute the unconditional guarantees*" and the related payment was due and outstanding (emphasis added)).  The Forbearance Agreement—and Weiss's personal guarantee—was executed by the debtors (*i.e.*, the George Weiss Companies) and its guarantor (*i.e.*, Weiss).  Its guarantees are therefore binding and enforceable.

*Second*, as set forth in Plaintiffs' opposition to Weiss's motion for summary judgment, Weiss is collaterally estopped from litigating Plaintiffs' acceptance of the Forbearance Agreement.  (*See* ECF No. 37 at 8–10).  In the Bankruptcy Court, Weiss, through his companies, argued that there was not a meeting of the minds because Plaintiffs sent the Letter, which "indicated that they did not agree with certain of the modified terms."  (ECF Doc. No. 30-14 ¶ 120 (emphasis added)).  The Bankruptcy Court held that allegation—accepted as true—insufficient "to support a plausible

claim that the [Plaintiffs] did not intend to comply with the terms of the . . . Forbearance Agreement." *GWA, LLC*, 664 B.R. at 526; *see also Fernicola v. Specific Real Prop. in Possession, Custody, Control of Healthcare Underwriters Mut. Ins. Co.*, 2001 WL 1658257, at *4–5 (S.D.N.Y. Dec. 26, 2001) (precluding corporate officer from relitigating issue decided in litigation against the company he led); *Superior Funding Corp. v. Big Apple Cap. Corp.*, 738 F. Supp. 1468, 1470–71 (S.D.N.Y. 1990) (determination of liability under contract collaterally estopped relitigating issues in action regarding guarantee).

    *Third*, Weiss's argument relies on a mischaracterization of the Letter.  Despite Weiss's labelling to the contrary, the Letter was not a "rejection."  Instead, the Letter states that Plaintiffs "expect[ed] the Weiss Parties to abide by the representations made to the Jefferies Parties in the unilaterally modified Forbearance Agreement . . . ."  (ECF No. 28-5 at 6).

## <u>CONCLUSION</u>

    For the foregoing reasons, the Court deny the Motion.

Dated:   New York, New York           Respectfully submitted,
         April 9, 2025
                                       HERBERT SMITH FREEHILLS
                                         NEW YORK LLP
                                       By: */s/ Scott S. Balber*
                                         Scott S. Balber
                                         Michael P. Jones
                                         Daniel Gomez
                                       200 Park Avenue
                                       New York, New York 10166
                                       Tel: (917) 542-7810
                                       Fax: (917) 542-7601
                                       Email:     Scott.Balber@hsf.com
                                                  Michael.Jones@hsf.com
                                                  Daniel.Gomez@hsf.com

                                       *Attorneys for Plaintiffs*
                                       *Jefferies Strategic Investments, LLC and*
                                       *Leucadia Asset Management Holdings LLC*

A-1177

**ATTORNEY CERTIFICATION OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1**

      Pursuant to Local Civil Rule 7.1(c), I hereby certify that the preceding Jefferies Strategic Investments, LLC and Leucadia Asset Management Holdings LLC's Memorandum of Law in Opposition to George Weiss's Motion for Reconsideration (the "Memo"), exclusive of the caption and signature block, contains 2,778 words, and therefore complies with the 8,750 word limitation that is applicable to memoranda of law.  In determining the Memo's compliance, I relied on the word count function of the word processing system that was used to prepare the Memo.

Dated:     New York, New York
          April 9, 2025

                                   */s/ Scott S. Balber*
                                   Scott S. Balber

                                   *Attorney for Plaintiffs*
                                   *Jefferies Strategic Investments, LLC and*
                                   *Leucadia Asset Management Holdings LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC,

                                    Plaintiffs,

            -against-

GEORGE WEISS,

                                    Defendant.

Case No. 1:24-cv-04369 (AKH)

---

**DEFENDANT GEORGE WEISS'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CORRECT OMISSION IN JUDGMENT**

A-1179

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................1

FACTUAL BACKGROUND ...................................................................2

ARGUMENT ..........................................................................................3

    I.    LEGAL STANDARD ............................................................3

    II.    JEFFERIES' PREMATURE MOTION SEEKS TO RECOVER FROM WEISS ON A DEBT THAT MAY BE SATISFIED IN PART UPON RESOLUTION OF THE BANKRUPTCY ............................................4

    III.    THE COURT SHOULD DENY JEFFERIES' REQUEST, MADE FOR THE FIRST TIME ON THIS MOTION, FOR TENS OF MILLIONS IN PREJUDGMENT INTEREST ...............................................5

    IV.    THE COURT SHOULD ALSO REJECT JEFFERIES' UNSUPPORTED AND DISPUTED DAMAGES CALCULATIONS ...............................6

CONCLUSION ........................................................................................8

Table of Authorities

Page

CASES

*Cap. Const. Corp. of New York v. Zaga*,
    No. 11-cv-8112, 2014 WL 2915882 (S.D.N.Y. June 26, 2014) ..................................7

*Hastad v. Hippos In Tanks, LLC*,
    No. 17-CV-2518, 2019 WL 1228076 (S.D.N.Y. Mar. 15, 2019) ..............................8

*Hodge ex rel. Skiff v. Hodge*,
    269 F.3d 155 (2d Cir. 2001)......................................................................................4

*Paddington Partners v. Bouchard*,
    34 F.3d 1132 (2d Cir. 1994).............................................................................4, 6, 7

*PAF-PAR LLC v. Silberberg*,
    118 A.D.3d 446 (1st Dep't 2014), *aff'd,* 27 N.Y.3d 930 (2016) ..............................5

OTHER AUTHORITIES

Fed. R. Civ. P. 56(d) ........................................................................................................8

Fed. R. Civ. P. 60(a) ............................................................................................ *passim*

12838493-9

Defendant George Weiss, by his undersigned counsel, respectfully submits this memorandum of law in opposition to the Motion to Correct Omission in Judgment by plaintiffs Jefferies Strategic Investments LLC and Leucadia Asset Management Holdings LLC ("Plaintiffs" or "Jefferies"), pursuant to Rule 60(a) of the Federal Rules of Civil Procedure (the "Motion").

## PRELIMINARY STATEMENT

Jefferies' motion should be denied. As an initial matter, Jefferies makes its motion notwithstanding the pendency of Weiss's own motion to amend the judgment, which overlooked key factual evidence and binding caselaw in holding that Weiss risked massive financial distress by personally guaranteeing tens of millions in corporate payments from insolvent hedge funds in exchange for two days of forbearance on collection. (ECF No. 44). Rather than amending the Judgment to include a monetary element, the Court should grant Weiss's motion and reconsider the judgment based on the overlooked facts. The Court should deny Jefferies' Motion for several additional reasons.

First, as the Court's March 12, 2025, order (the "Order") recognized, the primary debtors are in bankruptcy and, as a result, have not yet made payment on the underlying debt. (ECF No. 41). The Court cannot enter a judgment against Weiss personally for $113,493,250 without first allowing the bankruptcy process to play out and without permitting Weiss the due process to challenge Jefferies' inflated damages calculation.

Second, it is clear that no record exists to support the $113 million demanded by Jefferies. On summary judgment, Jefferies offered *zero* argument in support of a purported amount due, instead asserting that it was "undisputed" that the amounts at issue were $52,473,259.00 and $43,190,924.00, based entirely on a claim form submitted in the bankruptcy proceeding that itself noted that the claim was "disputed." Now, without any explanation (or even a declaration from anyone with supposed firsthand knowledge), Jefferies asserts that the judgment amount is actually

$113 million. Jefferies relies solely upon an internally-generated spreadsheet that was filed in the pending bankruptcy action, but which was never been provided to Weiss, was never supported by any evidence explaining its purported calculations, and was never tested through the adversarial process. *See* Balber Decl. Ex. 1-K (ECF No. 30-1) ("Exhibit K").[1]

For these reasons, as well as those argued below, the Court should deny Jefferies' Motion.

## **FACTUAL BACKGROUND**

On November 5, 2024, Jefferies moved for summary judgment. Plaintiffs' Mem. In Support of Mot. For Summary Judgment (ECF No. 32) ("Jefferies SJ Mot."). Although Jefferies strenuously argued that Weiss was personally liable under the forbearance agreement at issue, Jefferies declined to offer any argument (let alone supporting evidence) concerning its demand for – at the time – $54,473,259 and $43,190,924. *Id.* at 12. Indeed, as set forth in Jefferies Statement of Material Facts, the *only* alleged evidence supporting that number was the bankruptcy claims form, which expressly stated the amount was "Disputed." (ECF No. 31) ¶¶ 28-35. Attached to the Declaration of Nicholas Daraviras which was, in turn, attached to the Declaration of Scott Balber, Jefferies included a spreadsheet that had been submitted in the bankruptcy proceeding, but was never produced in discovery (as none ever occurred in this action) and has yet to be addressed in the bankruptcy proceeding.

In Weiss's response to the statement of material facts, Weiss "disputed" Jefferies purported calculations of these amounts, in part because Jefferies submitted no evidence supporting the assertion that those amounts were related to the agreements supposedly guaranteed by Weiss as opposed to from other sources. (ECF No. 34) ¶¶ 28-35.

---

[1]    Indeed, as set forth in Weiss's pending motion for reconsideration (ECF No. 44), the Court need not reach any of these issues and should instead rule that the parties never had a binding contract because Jefferies rejected Weiss's final counteroffer.

2

12838493-9

On March 12, 2025, the Court entered the Order, granting Plaintiffs' motion for summary judgment and denying Weiss's motion for summary judgment. Order (ECF No. 41). The Order held that Weiss provided a personal guarantee for personal debts but recognized that the corporate debtors are in bankruptcy. Order at 2-3. The Order did not include a determination of Weiss's monetary liability or discuss prejudgment interest. *Id.* at 9.

On March 26, 2025, Weiss moved for reconsideration of the Order because it failed to address the key fact that Jefferies had rejected Weiss's counteroffer of forbearance in its February 12, 2024, rejection letter. (ECF No. 44). As argued therein, Weiss did not accept Jefferies' offer of forbearance but instead removed certain terms "required" by Jefferies as his counteroffer. *Id.* at 4-5. Because Jefferies responded to Weiss's counteroffer with an unequivocal rejection, centuries of black letter law confirm that Weiss's offer was extinguished and no agreement between Weiss and Jefferies exists to enforce. *Id.* at 7-9.

Later on March 26, Jefferies filed the instant one-page motion pursuant to Rule 60(a), seeking the imposition of an entirely new and unsupported judgment of $113,493,250 against Weiss personally. (ECF Nos. 45-46). Now, Jefferies does not even rely on the bankruptcy claim form noting that the amount is "Disputed," but instead relies entirely on its own spreadsheet, without any explanation of the underlying calculations, and certainly no explanation of why the amount has so dramatically increased. *Id.*

## ARGUMENT

### I.    LEGAL STANDARD

Rule 60(a) of the Federal Rules of Civil Procedure provides, in relevant part, that a "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment." Fed. R. Civ. P. 60(a). A motion pursuant to Rule 60(a) is available "only to correct a judgment 'for the purpose of reflecting accurately a decision that the court actually

made.'"  *Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155, 158 (2d Cir. 2001).  By contrast, where a

judgment omits damages or prejudgment interest because the parties failed to address damages

and interest, the omission of damages and interest reflects the court's decision and Rule 60(a) does

not permit correction.  *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir. 1994)

(holding that failure to address prejudgment interest in moving papers prevented imposition of

prejudgment interest in response to Rule 60(a) motion).

## II.    JEFFERIES' PREMATURE MOTION SEEKS TO RECOVER FROM WEISS ON A DEBT THAT MAY BE SATISFIED IN PART UPON RESOLUTION OF THE BANKRUPTCY

The Court should reject Jefferies' cursory and unsupported attempt to cram down a new

$113 million judgment against Weiss personally through a supposed "correction" to the Judgment.

Jefferies' single-page request for more than one hundred million dollars from Weiss is an end-run

around the bankruptcy proceedings and does not accurately reflect the Court's decision, as

reflected in the Order.[2]

While Weiss disagrees with the Court's conclusion that he personally guaranteed almost

$100 million in corporate debts owed by certain affiliated funds, even under the Court's Order, his

liability would simply be "secondary" to the corporate debtors' obligations.  *See PAF-PAR LLC v.

Silberberg*, 118 A.D.3d 446 (1st Dep't 2014), *aff'd*, 27 N.Y.3d 930 (2016).  As the Order noted,

however, those corporate debtors are currently in bankruptcy.  Order at 2-3.  As a result, the amount

due and owing to the corporate entities is currently being adjudicated by the bankruptcy court –

indeed the sole factual basis Jefferies' provides for its damages argument comes not from this

litigation, but from an affidavit submitted in the bankruptcy proceeding itself.  *See* Plaintiffs'

---

[2]    In truth, the Court should reject Jefferies' motion entirely because the Court's Order overlooked Jefferies' rejection of Weiss's counteroffer of forbearance, and so no contract was formed.  *See* Weiss's Motion for Reconsideration (ECF No. 44).

Calculation of Pre-Judgment Interest (ECF No. 45), Ex. A (citing declaration submitted in *In re Weiss Multi-Strategy Advisers LLC* as sole support for its supposed judgment).  It is improper to rush a $113 million judgment against Weiss until that process is complete.

**III.    THE COURT SHOULD DENY JEFFERIES' REQUEST, MADE FOR THE FIRST TIME ON THIS MOTION, FOR TENS OF MILLIONS IN PREJUDGMENT INTEREST**

Jefferies' proposed order seeks an eye-popping judgment of $113,493,250, [Proposed] Corrected Judgment (ECF No. 45) at Ex. A, which includes Jefferies' calculation of outsized and unsupported prejudgment interest.  The approximately $15 million in interest that Jefferies apparently accrued between December 2023 and March 12, 2025, inflates Jefferies' supposed damages beyond what it mentioned (but did not argue in support of) in its summary judgment papers.  *See* Jefferies SJ Mot. at 2-3, 12; (ECF No. 45) at Ex. A.  Jefferies cannot offer new arguments in support of a supposed entitlement to prejudgment interest in a Rule 60(a) motion.

The failure to include pre-judgment interest can only be addressed by Rule 60(a) if "the absence of an award of pre-decision interest in a judgment" is not a reflection of "the actual intention of the court."  *Paddington*, 34 F.3d at 1140.  Here, Jefferies' summary judgment motion does not mention prejudgment interest or offer argument for any specific damages amount.  *See generally* Jefferies SJ Mot.  In such circumstances, "'the failure of [the] Judgment to award such interest is an accurate reflection of the court's decision' and hence can not be corrected under Rule 60(a)."  *Paddington*, 34 F.3d at 1140 (citation omitted).

Jefferies' reliance on *Capital Construction Corp. of New York v. Zaga* is misplaced. Motion at 1.  In that case, the decision the Court was correcting found that the Plaintiffs were entitled to contractual prejudgment interest.  *Cap. Constr. Corp. of New York v. Zaga*, No. 11-cv-8112, 2014 WL 2915882, at *1-2 (S.D.N.Y. June 26, 2014) (noting that the court's order, docket 26, included reference to the contractual rate of interest).  Here, by contrast, neither the Order *nor*

5

A-1186

*the Plaintiffs* have ever pointed to the specific contractual language entitling them to prejudgment interest higher than provided for by statute for amounts due under the purported guaranty. Jefferies' failure to seek contractual prejudgment interest or to provide a date from which prejudgment interest accrued "can not be corrected under Rule 60(a)." *Paddington*, 34 F.3d at 1140.

## IV.    THE COURT SHOULD ALSO REJECT JEFFERIES' UNSUPPORTED AND DISPUTED DAMAGES CALCULATIONS

Jefferies' motion for summary judgment failed to support its claim for prejudgment interest, and, indeed, contained no support for *any* specific monetary damages. *See generally* Jefferies SJ Mot. Jefferies' newly-asserted damages calculations are purportedly supported solely by Exhibit K of a declaration submitted in the bankruptcy proceedings – a document that was not cited in Jefferies' motion for summary judgment or the supporting papers. *See* Notice of Motion, Exhibit A. Exhibit K is ostensibly a Jefferies' created spreadsheet, whose inputs are unknown and which has not previously been provided to Weiss. Indeed, portions of the document are not legible because of the way the spreadsheet was formatted. Ex. K at 2. And the numbers that are legible do not tie out to the numbers now asserted by Jefferies. For example, Jefferies' proposed judgment "calculation" claims that the "2023 GWA Rev. Share" is $10,797,305. (ECF No. 45) at 6. Yet Exhibit K appears to show that the "2023 GWA Rev. Share" is $7,239,840 *less* $1,000,000 for a revenue share payment, or $6,239,840:

6

**GWA LLC**
**Interest on unpaid revenue sharing**

| | | |
|---|---|---|
| Book as of 12/31/2020 | $ | 8,133,028.00 |
| Adjustment after audited | $ | (556,662.50) |
| Adjusted Balance as of 12/31/2020 | $ | 7,576,365.50 |
| 2021 Revenue Share | $ | 17,495,573.50 |
| 2022 Revenue Share | $ | 7,899,752.00 |
| 2023 Revenue Share | $ | 7,239,840.00 |
| 2023 Revenue Share Payment | $ | (1,000,000.00) |
| Interest earned | $ | 6,855,240.54 |
| Balance | $ | 46,066,771.54 |

Exhibit K at 1.

Similarly, Exhibit K claims that the total revenue share as of December 2023 was $46,066,771.54, yet now Jefferies asserts that as of December 2023, it is entitled to $49,624,237 ($42,768,996 plus $6,855,241). *Compare* Ex. K *with* (ECF No. 45) at 6. Jefferies' submission provides no explanation for these differences.

These issues confirm that Jefferies' proposed damages must be tested through the adversarial process because they otherwise create an ambiguous record, preventing the Court from entering a monetary judgment – and certainly not a $113 million judgment. *See, e.g.*, *Hastad v. Hippos In Tanks, LLC*, No. 17-CV-2518, 2019 WL 1228076, at *5 (S.D.N.Y. Mar. 15, 2019) (granting summary judgment for liability on breach of contract claim while denying summary judgment as to damages). If the Court is not going to reconsider the evidence it overlooked in the Order, *see* (ECF No. 44), Weiss must be provided with the opportunity to analyze, test and provide the Court with accurate calculations.

Notably, Jefferies did not even rely on these supposed calculations in its motion for summary judgment – it instead relied solely on "disputed" notices of claims, and those notices were disputed by Weiss in his counterstatement of facts. *See* Jefferies SJ Mot. at 2-3; Weiss Counterstatement of Undisputed Fact (ECF No. 34) ¶¶ 28-48. To the extent Jefferies seeks to

7

A-1188

impose a monetary judgment against Weiss, he again requests that the Court provide him the opportunity to seek discovery concerning the damages asserted by Jefferies, which are based on Jefferies' unilaterally-created calculations, and based on facts and computations that have never been provided to Weiss. *See* Fed. R. Civ. P. 56(d); Weiss Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 33) at 28 n.8 (requesting the same). Jefferies cannot use this Rule 60(a) motion – intended solely to correct a "clerical error" – to circumvent the discovery and summary judgment processes by jamming through a disputed judgment amount.

Jefferies cannot, through a so-called Rule 60(a) motion, impose upon Weiss a new and untested assertion of damages. While the Court should first reconsider and reverse the Order because the parties never actually entered into a binding contract, at a minimum the Court should deny Jefferies' improper motion and delay its imposition of a money judgment until the close of the bankruptcy, or at least until Weiss is provided with limited discovery to challenge Jefferies' new damages calculations.

## <u>CONCLUSION</u>

Weiss respectfully requests that the Court deny Jefferies' motion.

Dated: New York, New York
       April 9, 2025

KAPLAN RICE LLP

By:   */s/Howard Kaplan*
      Howard Kaplan
      Michelle Rice
      142 West 57th Street
      Suite 4A
      New York, New York 10019
      (212) 235-0300

OLSHAN FROME WOLOSKY LLP

By:   */s/ Brian A. Katz*
      Brian A. Katz

8

Daniel M. Stone
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

*Attorneys for George Weiss*

12838493-9

A-1190

**<u>Local Rule 7.1 Certificate of Compliance</u>**

I, Brian A. Katz, hereby certify that the total of word count in this memorandum is 2,223 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.  I relied upon the word count of the word-processing program used to prepare the document.

*/s/ Brian A. Katz* _____
BRIAN A. KATZ

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC, | Case No. 1:24-cv-04369 (AKH) |
| Plaintiffs, | **Notice of Appeal** |
| -against- | |
| GEORGE WEISS, | |
| Defendant. | |

---

    **NOTICE IS HEREBY GIVEN** that defendant George Weiss, by his attorneys, Olshan

Frome Wolosky LLP, hereby appeals to the United States Court of Appeals for the Second Circuit

from the Opinion and Order ("Order") entered in the above-captioned action on March 12, 2025

(ECF No. 41), which granted plaintiffs Jefferies Strategic Investments LLC's and Leucadia Asset

Management Holdings LLC's motion for summary judgment and denied defendant George

Weiss's motion for summary judgment and the Judgment entered in the above captioned action on

March 12, 2025 (ECF No. 42).  Annexed hereto is a true and correct copy of the Order.

Dated: New York, New York
      April 10, 2025

                                    KAPLAN RICE LLP

                                    By:   */s/Howard Kaplan*
                                          Howard Kaplan
                                        Michelle Rice
                                        142 West 57th Street
                                        Suite 4A
                                        New York, New York 10019
                                        (212) 235-0300

                                    OLSHAN FROME WOLOSKY LLP

A-1192

By:   */s/ Brian A. Katz*
       Brian A. Katz
       Daniel M. Stone
       1325 Avenue of the Americas
       New York, New York 10019
       (212) 451-2300

       *Attorneys for George Weiss*

A-1193

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
JEFFERIES STRATEGIC INVESTMENTS, LLC    :
and LEUCADIA ASSET MANAGEMENT              :
HOLDINGS LLC,                                                :        **OPINION AND ORDER**
                                                                   :        **GRANTING PLAINTIFFS'**
                                        Plaintiffs,       :        **MOTION FOR SUMMARY**
                                                                   :        **JUDGMENT AND DENYING**
            -against-                                      :        **DEFENDANT'S MOTION FOR**
                                                                   :        **SUMMARY JUDGMENT**
GEORGE WEISS,                                         :
                                                                   :        24 Civ. 4369 (AKH)
                                        Defendant.       :
------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Plaintiffs Jefferies Strategic Investments, LLC ("JSI") and Leucadia Asset Management

Holdings LLC ("Leucadia") move for summary judgment against Defendant George Weiss,

arguing that he is personally liable for a guarantee contained in a forbearance agreement

executed between the parties. Simultaneously, Defendant moves for summary judgment against

Plaintiffs, contending that this case should be dismissed. For the reasons that follow, I grant

Plaintiffs' motion for summary judgment, and I deny Defendant's cross-motion.

## BACKGROUND

      Defendant George Weiss is the founder of a constellation of hedge funds, known

collectively as the "Weiss Companies." Defendant's Statement of Undisputed Facts ("Def.

SUF") ¶¶ 1-2. On May 1, 2018, Plaintiff Leucadia entered into a Strategic Relationship

Agreement (the "SRA") with the Weiss Companies, in which it agreed to provide financing

through promissory notes. *Id.* ¶¶ 6-7. In December 2019 and September 2022, Plaintiff JSI

agreed to purchase $53 million in notes issued by the Weiss Companies under two note purchase

agreements (the "NPAs"). ECF No. 31, ¶¶ 14-21.

1

The Weiss Companies did not pay their obligations. To postpone the debt, on February 12, 2024, Defendant signed a forbearance agreement (the "Forbearance Agreement"), in both his personal capacity, and on behalf of the Weiss Companies. Def. SUF ¶¶ 35-38; ECF No. 28-3. The Forbearance Agreement provides that the Weiss Companies, with the exception of GWA, LLC, "irrevocably and unconditionally guarantees to [Plaintiffs] . . . the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . of the Guaranteed Obligations," which is defined to encompass obligations "arising under any Note Purchase Agreement, the Notes, the SR Agreement, and this Agreement." ECF No. 28-3, § 3(a). And while the Forbearance Agreement provides that Defendant George Weiss is a party "for purposes of Section 5(a), 9 and 10(c) hereof," Section 9 states that he "unconditionally and irrevocably personally guarantees to the Jefferies Entities the accuracy of the representations made by, and the performance of the agreements of, the Weiss Parties hereunder." *Id.* § 9.[1]

After signing the Forbearance Agreement, the Weiss Companies failed to make payment of the monies owed under the SRA, notes, and NPAs. On April 29, 2024, the Weiss Companies filed for bankruptcy under Chapter 11 of the Bankruptcy Code. *See In re Weiss Multi-Strategy*

---

[1] Section 5(a) of the Forbearance Agreement provides that:
> Each Weiss Party and Weiss hereby represents and warrants that (x) this Agreement has been duly executed and delivered by such Weiss Party and Weiss and (y) this Agreement is the legal, valid and binding obligation of such Weiss Party and Weiss, and is enforceable against each such Weiss Party and Weiss, in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and by equitable principles relating to enforceability.

Section 10(c) of the Forbearance Agreement provides that:
> Each Weiss Party and Weiss acknowledges and agrees that it is receiving a direct benefit from the transactions contemplated by this Agreement, and the terms of this Agreement, including the guaranty provided herein and the security interests granted herein, constitute reasonably equivalent value for the benefit it is receiving from entering into this Agreement. Each Weiss Party and Weiss agrees that it shall not, nor shall it cause, directly or indirectly, any person controlled by, or under common control with, it, to take any action inconsistent with the terms of this Agreement. Each party represents and warrants that it has full power and authority to enter into and perform this Agreement, and that the person executing this Agreement on behalf of that party has been properly authorized and empowered to enter into this Agreement and to bind that party hereto.

*Advisers LLC*, 24 BK 10743 (MG) (Bankr. S.D.N.Y.). Simultaneously, in relation to this

bankruptcy case, the Weiss Companies filed an adversary proceeding against Plaintiffs. *See*

*GWA, LLC, et al. v. Jefferies Strategic Investments, LLC, et al.*, 24 AP 1350 (MG) (Bankr.

S.D.N.Y.). The Weiss Companies sought to hold the Forbearance Agreement unenforceable as a

preferential transfer, and contended that Defendant did not commit to guaranteeing any payment

owed by the Weiss Companies to Plaintiffs under the Forbearance Agreement. *Id.* at Dkts. 20-21.

The bankruptcy court rejected this argument, holding that "a strict construction of the 2024

Forbearance Agreement, even in Weiss's favor, makes clear that Weiss's performance guarantee

was also a guarantee of payment." *GWA, LLC v. Jefferies Strategic Investments, LLC*, 664 B.R.

492, 531 (Bankr. S.D.N.Y. 2024).

On May 6, 2024, Plaintiffs filed suit against Defendant in New York state court, seeking

to enforce the Forbearance Agreement as to Defendant's guarantee of payment for the SRA,

notes, and NPAs. ECF No. 1. Defendant removed the action to this Court on June 7, 2024. *Id.* At

the initial pre-trial conference, on October 11, 2024, I permitted the parties to cross-file motions

for summary judgment on the issue of Defendant's liability for his guarantee. *See* ECF No. 20.

## LEGAL STANDARD

Summary judgment may be granted only when there "is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering cross-motions for summary

judgment, "the court must evaluate each party's motion on its own merits, taking care in each

instance to draw all reasonable inferences against the party whose motion is under

A-1196

consideration." *Bronx Household of Faith v. Board of Educ.*, 492 F.3d 89, 96 (2d Cir. 2007) (citation omitted).

## DISCUSSION

Viewing the evidence in the light most favorable to Defendant, I hold that the Forbearance Agreement included a personal payment guarantee by Defendant to Plaintiffs of the Weiss Companies' corporate debt, and that it is valid and enforceable as to Defendant.

### A. Payment Guarantee

Defendant contends he did not personally guarantee payment of the Weiss Companies' debt to Plaintiffs under the terms of the Forbearance Agreement. I disagree.

Under New York law, a "guaranty is a contract," and in conducting interpretation, courts "look first to the words the parties used." *Louis Dreyfus Energy Corp. v. MG Ref. & Mktg., Inc.*, 2 N.Y.3d 495, 500 (N.Y. 2004). When determining the meaning of contractual language, courts must consider the entirety of the contract and interpret all of its provisions in harmony. *Bombay Realty Corp. v. Magna Carta, Inc.*, 100 N.Y.2d 124, 127 (N.Y. 2003). Further, "a contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 30 N.Y.3d 572, 581 (N.Y. 2017) (citation omitted).

Applying these principles of contract interpretation, and viewing the evidence in the light most favorable to Defendant, I hold that Defendant's performance guarantee contained within the Forbearance Agreement was also a personal payment guarantee. Here, under the clear, unambiguous text of the Forbearance Agreement, Defendant "unconditionally and irrevocably personally guarantee[d] to" Plaintiffs "the accuracy of the representations made by, and *the performance of the agreements of, the Weiss Parties hereunder.*" ECF No. 28-3, § 9 (emphasis

4

added). The "agreements of the Weiss Parties hereunder" plainly includes their guarantee to make "prompt and complete payment and performance . . . of the Guaranteed Obligations," which, in turn, is defined to encompass obligations "arising under any Note Purchase Agreement, the Notes, the SR Agreement, and this Agreement." ECF No. 28-3, § 3(a). Thus, reading the contract in harmony, in its entirety, to give effect to each of its provisions, I conclude that Defendant's performance guarantee of the Weiss Companies' agreements with Plaintiffs is also a payment guarantee by Defendant personally as to the SRA, notes, and NPAs. *See, e.g., Am. Trading Co. v. Fish*, 42 N.Y.2d 20, 27-28 (N.Y. 1977) ("Since defendant guaranteed performance of the terms and conditions of the agreement, which in this respect required payment by means of trade acceptances, the guarantee must be interpreted as including payment according to and as provided in the agreement."); *Merchant Cash & Capital, LLC v. Haute Soc'y Fashion, Inc.*, 16 Civ. 2696 (ILG), 2017 WL 2912452, at *3 (E.D.N.Y. July 6, 2017) (construing personal performance guarantee of contractual terms as personal guarantee of payment); *Prof'l Merch. Advance Capital, LLC v. McEachern*, 13 Civ. 7323 (JS), 2015 WL 8665447, at *3 (E.D.N.Y. Dec. 11, 2015) (same).

"[W]here, as here, a creditor seeks summary judgment upon a written guaranty, the creditor need prove no more than an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee." *HSH Nordbank AG v. Street*, 421 F. App'x 70, 72 (2d Cir. 2011) (quoting *Kensington House Co. v. Oram*, 293 A.D.2d 304, 305 (N.Y. App. Div. 1st Dep't 2002)). Here, Plaintiffs have proven all three elements, and thus, they have established their *prima facie* entitlement to summary judgment against Defendant as to his guarantee.

**B. Defenses**

In his answer, Defendant pleads various affirmative defenses to the validity and enforcement of the Forbearance Agreement. *See* ECF No. 21. But they all lack merit. Accordingly, viewing the evidence in the light most favorable to Defendant, I hold that the Forbearance Agreement is a valid and enforceable contract as to Defendant. *See Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade*, 98 A.D.3d 403, 404 (N.Y. App. Div. 1st Dep't 2012), *aff'd* 20 N.Y.3d 1082 (N.Y. 2013) ("To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound.").

Defendant's contentions that the Forbearance Agreement lacked consideration as to his guarantee fail. Consideration "consists of either a benefit to the promisor or a detriment to the promisee," including a forbearance by a party. *Weiner v. McGraw-Hill*, 57 N.Y.2d 458, 464 (N.Y. 1982). "Under New York law, forbearance of any length can constitute valid consideration." *MM Ariz. Holdings LLC v. Bonanno*, 658 F. Supp. 2d 589, 593 (S.D.N.Y. 2009). The fact that in the Forbearance Agreement, Defendant served as a guarantor to his hedge funds' debts does not change the outcome here since "a benefit flowing to a third person or legal entity constitutes a sufficient consideration for the promise of another." *Mencher v. Weiss*, 306 N.Y. 1, 8 (N.Y. 1953); *see also Sun Oil Co. v. Heller*, 248 N.Y. 28, 32-33 (N.Y. 1928) (guarantee in exchange for consideration provided to a third party constitutes consideration as to the guarantor himself).

Nor do his arguments that the Forbearance Agreement lacked mutual assent pass muster. "To form a binding contract under New York law . . . there must be a 'meeting of the minds,'" or, in other words, "an objective manifestation of mutual assent, through either words or conduct,

to the essential terms comprising the agreement." *Wu v. Uber Techs.*, 2024 WL 4874383, at *5

(N.Y. Nov. 25, 2024). "Under New York law, a contract need not be signed by either or both

parties in order to be enforceable." *Asesores y Consejeros Aconsec CIA, S.A. v. Global Emerging*

*Mkts. N. Am., Inc.*, 841 F. Supp. 2d 762, 766 (S.D.N.Y. 2012). Rather, courts must consider:

> (1) whether there has been an express reservation of the right not to be bound in the
> absence of a writing; (2) whether there has been partial performance of the contract; (3)
> whether all of the terms of the alleged contract have been agreed upon; and (4) whether
> the agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Here, the fact that

only Defendant signed the Forbearance Agreement—both on his personal behalf, as well as on

behalf of the various Weiss Companies—and Plaintiffs did not, does not constitute a lack of

mutual assent. Indeed, there is no language in the Forbearance Agreement that explicitly requires

full execution before the contract takes effect. Moreover, Plaintiffs performed their obligations

under the Forbearance Agreement, there were no material disputes between the parties as to the

terms of the contract, and Plaintiffs took objective actions to evince their intent to be bound by

filing a financing statement to perfect the security interest granted under the Forbearance

Agreement. *See* ECF No. 30-1, at 131.

Finally, Defendant argues that the Forbearance Agreement is voidable as to him because

Plaintiffs' CEO and outside counsel allegedly called him, accused him of committing securities

fraud, stated "there would be a public news article that would destroy [Defendant's] reputation,"

and threatened to sue Defendant personally, if he did not sign the Forbearance Agreement. Def.

SUF ¶¶ 24-29; ECF No. 27 ¶¶17-18 (Def. Decl.). "A contract may be voided on the ground of

economic duress where the complaining party was compelled to agree to its terms by means of a

wrongful threat which precluded the exercise of its free will." *Muller Constr. Co. v. N.Y. Tel.*

*Co.*, 40 N.Y.2d 955, 956 (N.Y. 1976). This doctrine is "reserved for extreme and extraordinary

cases," *Adler v. Lehman Bros. Holdings*, 855 F.3d 459, 477 (2d Cir. 2017), and seldom applies to negotiated agreements between sophisticated parties. *See Davis & Assocs. v. Health Mgmt. Servs.*, 168 F. Supp. 2d 109, 114 (S.D.N.Y. 2001). Under New York law, a threat to sue for outstanding debt if a party does not agree to sign a contract does not constitute economic duress. *Friends Lumber v. Cornell Dev. Corp.*, 243 A.D.2d 886, 888 (N.Y. App. Div. 3d Dep't 1997). Nor do "threats to smear [a party's] reputation" constitute economic duress. *Finserv Computer Corp. v. Bibliographic Retrieval Services, Inc.*, 125 A.D.2d 765, 767 (N.Y. App. Div. 3d Dep't 1986). Here, Defendant is a sophisticated and experienced businessman, *see* ECF No. 27 ¶¶ 4-5, and was represented by counsel in reviewing and executing the Forbearance Agreement, *see* ECF No. 28 ¶¶ 18, 24 (Defendant's attorney reviewed the draft Forbearance Agreement and deleted provisions thereof). *See Nat'l Sch. Reporting Servs. v. Nat'l Schs.*, 924 F. Supp. 21, 24 (S.D.N.Y. 1996) (rejecting duress argument where parties were represented by counsel, even though counsel did not negotiate the terms of the contract). Viewing the evidence in the light most favorable to Defendant, I cannot say that Plaintiffs' alleged conduct constitutes duress.

The remaining affirmative defenses listed in boilerplate fashion in Defendant's Answer—failure to state a cause of action upon which relief may be granted, Plaintiffs' "inequitable conduct," "breaches of any of the purported agreement," failure to mitigate damages, "unclean hands," and equitable estoppel—are purely conclusory and lack any factual basis, let alone sufficient specificity to provide notice to Plaintiffs. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (applying *Twombly*'s plausibility standard to the pleading of affirmative defenses). Accordingly, I strike Defendant's First, Fifth, Sixth, Seventh, Eight, and Ninth Affirmative Defenses. *See Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 478 F. Supp. 3d 417, 435 (E.D.N.Y. 2020) (striking affirmative defenses where defendant failed to plead them

with sufficient specificity to provide plaintiff notice); *Trs. of the N.Y. City Dist. Council v. MCF Assocs.*, 530 F. Supp. 3d 460, 468 (S.D.N.Y. 2021) (same). I also strike Defendant's Tenth Affirmative Defense, which is not an affirmative defense, but rather a reservation of rights "to modify or supplement these affirmative defenses." *See* Fed. R. Civ. P. 12(f).

## CONCLUSION

Based on the foregoing, I grant Plaintiffs' motion for summary judgment and deny Defendant's cross-motion.

The Clerk of Court shall enter final judgment in favor of Plaintiffs and tax costs. She shall also terminate ECF Nos. 24 and 29, and close this case.

SO ORDERED.

Dated:    March *12*, 2025
          New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

A-1202

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JEFFERIES STRATEGIC INVESTMENTS, LLC, and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC, | Case No. 1:24-cv-04369 (AKH) |
| Plaintiffs, | |
| -against- | |
| GEORGE WEISS, | |
| Defendant. | |

**DEFENDANT GEORGE WEISS'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR RECONSIDERATION AND/OR TO AMEND AND ALTER THE JUDGMENT**

A-1203

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ...........................................................................................................2

CONCLUSION ........................................................................................................7

12853294-9

Table of Authorities

Page

CASES

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016)................................................................................5

*Haller v. Usman*,
    No. 24 Civ. 977, 2025 WL 605572 (S.D.N.Y. Feb. 25, 2025).....................4

*Kelley v. Bryan Ins. Agency, Inc.*,
    176 A.D.3d 1042 (2d Dep't 2019) ...............................................................3

*Kolmar Americas Inc. v. Mycone Dental Supply Co.*,
    No. 21-cv-02361, 2021 WL 5054300 (S.D.N.Y. Nov. 1, 2021)................3

*Krumme v. WestPoint Stevens Inc.*,
    143 F.3d 71 (2d Cir. 1998)..................................................................3, 5

*Proctor v. LeClaire*,
    715 F.3d 402 (2d Cir. 2013)........................................................................6

*Rodriguez-Morales v. Joseph*,
    No. 24-CV-9767, 2025 WL 1056886 (S.D.N.Y. Apr. 7, 2025) .................6

*Simon v. Smith & Nephew, Inc.*,
    18 F. Supp. 3d 423 (S.D.N.Y. 2014)..........................................................6

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
    No. 16 Civ. 6110 (AKH), 2019 WL 316001 (S.D.N.Y. Jan. 24, 2019) ....................6

12853294-9

Defendant George Weiss, by his undersigned counsel, respectfully submits this memorandum of law in further support of his motion for reconsideration and/or to amend and alter the judgment pursuant to Rule 59(e) and Local Rule 6.3 (the "**Motion**").

<u>**PRELIMINARY STATEMENT**</u>

At the heart of this action lies a fundamental problem: it is a breach of contract action in search of a contract. As set forth in Weiss's moving memorandum, Jefferies' claim is undermined by two black-letter principles of New York law. First, a contract can only be formed through an offer and unequivocal acceptance – anything less, and no contract exists. Second, once a party rejects an offer, that offer is extinguished and cannot later be accepted. In its opposition, Jefferies confirms that is precisely what happened here when it sent its Rejection Letter to Weiss. Weiss respectfully submits the Court overlooked this key fact when rendering its prior decision.

In its opposition, Jefferies finally concedes Weiss's "unilaterally modified" draft forbearance agreement ("**Weiss's Counter-Proposal**") was a counteroffer that changed material terms of Jefferies' initial offer – which Weiss proposed in what Jefferies describes as an "attempt[] to manipulate the factual record." Opp. at 3. Thus, the <u>*only*</u> question remaining is "did Jefferies accept?" The undisputed record, manifested in the Rejection Letter[1] which the Order overlooked, is Jefferies rejected Weiss's Counter-Proposal. That is because Weiss's Counter-Proposal omitted, in Jefferies' words, "required" terms and, as a result, Jefferies would not bind itself to forbear pursuing any claims against Weiss. While Jefferies may have "expect[ed]" the Weiss Parties – <u>*not Weiss himself*</u> – would "abide" by their "representations" in the draft forbearance agreement, it never suggested the Weiss Parties were legally bound to do so – much less because Jefferies had not accepted Weiss's Counter-Proposal. Rejection Letter at 6. Moreover, Jefferies' Rejection

---

[1] Capitalized terms not otherwise defined refer to the terms defined in the Motion.

Letter contained new terms: demanding the Weiss Parties provide financial information on an accelerated timeline from what was proposed in Weiss's Counter-Proposal. Jefferies' Rejection Letter – refusing Weiss's modifications and containing new counteroffered terms – rejected Weiss's counteroffer and extinguished its terms.

Weiss's Counter-Proposal and Jefferies' Rejection Letter – both submitted to the Court in connection with the parties' underlying summary judgment motions – confirm Jefferies and Weiss never entered into a contract, much less one obligating Weiss to backstop $100 million dollars in corporate debt in exchange for *two days of forbearance*. And, without a contract, Weiss cannot be held liable for breach of contract. At a minimum, what Jefferies intended by the Rejection Letter presents an issue of fact that cannot be resolved on summary judgment. Weiss respectfully submits that the Court should grant this Motion and reconsider its Order.

## **ARGUMENT**

In opposition, Jefferies acknowledges for the first time that Weiss's Counter-Proposal included material changes to Jefferies' proposed forbearance agreement—according to Jefferies, Weiss had proposed these changes in an "attempt[] to manipulate the factual record." Opp. at 3. Jefferies also concedes that, in response to Weiss's proposed alterations, Jefferies' counsel sent the Rejection Letter which objected to Weiss's "unilaterally modified portions of the *draft* forbearance agreement." *Id.* at 3 (emphasis added). Jefferies' concession that Weiss did *not* accept Jefferies' proposed forbearance agreement as originally drafted simplifies this dispute: the Court need only determine whether Jefferies "unequivocally accepted" or "rejected" Weiss's counter-proposed forbearance agreement. Once properly considered, the Rejection Letter can only be an unequivocal rejection of Weiss's Counter-Proposal and establishes Jefferies and Weiss *never* agreed to a binding contract.

As an initial matter, Jefferies' opposition ignores that the Rejection Letter acknowledged Weiss's "unilateral modifi[cations]" of Jefferies' proposed forbearance agreement eliminated "**required**" terms (Rejection Letter at 5 (emphasis supplied)) – the necessary implication being that Jefferies refused to agree to Weiss's Counter-Proposal without those "required" terms. Similarly, Jefferies' explicit reservation of its rights in the Rejection Letter to "bring claims and pursue remedies" also reinforces that its Rejection Letter rejected Weiss's Counter-Proposal. That Jefferies was "free" to exercise its enforcement rights at any time squarely contradicts any notion that Jefferies had simultaneously agreed to forbear from asserting claims against Weiss. Stated differently, Jefferies was _not_ agreeing to forbear – as Weiss proposed in Weiss's Counter-Proposal. Rejection Letter at 6. These phrases alone, taken independently or in tandem, constitute a rejection of Weiss's Counter-Proposal. *See, e.g.*, *Kelley v. Bryan Ins. Agency, Inc.*, 176 A.D.3d 1042, 1045 (2d Dep't 2019) (plaintiff's insistence on original terms in response to defendant's counteroffer constituted rejection of counteroffer); *Kolmar Americas Inc. v. Mycone Dental Supply Co.*, No. 21-cv-02361, 2021 WL 5054300, at *6 (S.D.N.Y. Nov. 1, 2021) (even "[c]onditional acceptance operates as a rejection or, at most, a counteroffer.").

Nevertheless, Jefferies somehow argues its Rejection Letter was actually an unequivocal acceptance. Opp. at 10. But the Rejection Letter is rife with statements conveying Jefferies's rejection of Weiss's Counter-Proposal. It does not contain a single statement that can be interpreted as "unambiguous and unequivocal" acceptance of Weiss's Counter-Proposal as required under New York law. *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 83 (2d Cir. 1998). Jefferies is a sophisticated party. If it intended to accept Weiss's Counter-Proposal, it could have unequivocally accepted its terms in clear language or simply signed the proposal. It did neither.

12853294-9

Counsel has searched, and nowhere has New York law endorsed such a convoluted acceptance, which is why Jefferies provides no legal support for its post-hoc "black means white" interpretation of the Rejection Letter.

In multiple other respects, the Rejection Letter is a far cry from the legally-required, unequivocal acceptance, including:

First, Weiss's Counter-Proposal defined "Weiss Parties" *to exclude Weiss himself*. Dillabough Decl. Ex. 3 (ECF No. 28-3) at Preamble. *Thus, by its terms, the Rejection Letter did not ask or "expect" Weiss to abide by anything, contrary to Jefferies' suggestion*. *Id.* §§ 5(a), 9, 10(c).

Second, Jefferies' "expect[ation]" the Weiss Parties would abide by their representations is a far cry from instructing the Weiss Parties, again not Weiss himself, that they were contractually bound. An "expectation" is not legally binding and does not convey "unequivocal acceptance."

Third, by employing the phrase "[m]eanwhile," Jefferies acknowledged the parties' negotiations would continue but would insist on immediate compliance with the representations. Had Jefferies accepted Weiss's Counter-Proposal, the word would have no significance.

Finally, the Rejection Letter contained its own modifications to Weiss's Counter-Proposal, asking the Weiss Parties to provide financial information a day earlier than required under Weiss's Counter-Proposal. *Compare* Rejection Letter at 6 *with* Weiss's Counter-Proposal at § 2(a). Under New York law, Jefferies' proposed alteration to a material term of Weiss's Counter-Proposal constituted a rejection as a matter of law. *Haller v. Usman*, No. 24 Civ. 977, 2025 WL 605572, at *7 (S.D.N.Y. Feb. 25, 2025) (any "alteration amounts to Plaintiff's rejection of Defendants' offer, and consequently no contract was formed").

Jefferies' remaining arguments, each of which implicitly concedes Jefferies' rejection of Weiss's Counteroffer, are flatly wrong:

- Jefferies contends its filing of a single UCC financing statement unrelated to Weiss's Counter-Proposal and without any notice to Weiss was sufficient to create a contract.  Opp. at 3-4.  Jefferies is wrong for at least two reasons.  First, one party's so-called performance after rejection cannot create a binding contract.  *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016) ("As every first-year law student learns, the recipient's rejection of an offer 'leaves the matter as if no offer had ever been made.'").  Second, Jefferies' contention that Weiss also performed is hotly disputed.  Contrary to Jefferies' suggestion, the Weiss Parties did not provide all the financials Jefferies demanded in the Rejection Letter.  It is also undisputed the Weiss Parties never performed any substantive provisions of Weiss's Counter-Proposal, including granting Jefferies critical account controls.  *See* PCUF ¶ 66.

- Jefferies claims its acceptance of Weiss's Counter-Proposal was not required to create a binding obligation by Weiss.  Once again, Jefferies is wrong.  Weiss's Counter-Proposal was not a simple bilateral guarantee of debt.  It was a draft "Forbearance Agreement" requiring Jefferies to forbear on debt enforcement.  The agreement was binding and enforceable only if Jefferies, Weiss, and the Weiss Parties each unequivocally agreed to its terms.  *See, e.g.*, *Krumme*, 143 F.3d at 83 (contract formation requires "unambiguous and unequivocal" consent).[2]

---

[2]     This bizarre argument also fails to account for the fact even the original offer from Jefferies required Jefferies' signature and "accept[ance]."  Dillabough Decl. Ex. 4 (ECF No. 28-4) at Recitals, Signatures.

5

- Jefferies' refashioned collateral estoppel argument—that the Bankruptcy Court considered the Rejection Letter (Opp. at 9)—is offered for the first time in opposition to this motion for reconsideration and should be rejected for that reason alone. *See Simon v. Smith & Nephew, Inc.*, 18 F. Supp. 3d 423 (S.D.N.Y. 2014). This argument also fails because nowhere in the adversary proceeding – neither in the Complaint nor in the motion to dismiss briefing – did any party discuss, describe, or otherwise address the Rejection Letter's terms. *See* ECF No. 30-14 at ¶ 120; ECF No. 30-15 at 20. And collateral estoppel does not apply because Weiss was not a party to the bankruptcy proceeding. *See, e.g.*, *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (without a "full and fair opportunity to litigate the issue," a party "is not precluded from litigating it in a subsequent case.").

- Jefferies' contention that reconsideration should be denied because this motion seeks to litigate issues previously decided by this Court (Opp. at 8) is nonsense. The Motion is premised on evidence the Court overlooked, so the only appropriate arguments are necessarily those previously made by the parties. *See, e.g.*, *Rodriguez-Morales v. Joseph*, No. 24-CV-9767, 2025 WL 1056886, at *1 (S.D.N.Y. Apr. 7, 2025).

- Finally, while Jefferies claims it somehow knows precisely which documents the Court considered, that suggestion is dubious at best. Weiss respectfully submits the Court overlooked the Rejection letter which, when considered in context, requires denial of Jefferies' motion for summary judgment. *See Zuma Press, Inc. v. Getty Images (US), Inc.*, No. 16 Civ. 6110 (AKH), 2019 WL 316001, at *2

6

A-1211

(S.D.N.Y. Jan. 24, 2019) ("In my analysis, I did not see an e-mail" which altered

the outcome of a summary judgment order).

## **CONCLUSION**

Weiss respectfully requests that the Court grant this motion.

Dated: New York, New York
      April 16, 2025

          KAPLAN RICE LLP

          By:   */s/Howard Kaplan*
              Howard Kaplan
              Michelle Rice
              142 West 57th Street
              Suite 4A
              New York, New York 10019
              (212) 235-0300

          OLSHAN FROME WOLOSKY LLP

          By:   */s/ Brian A. Katz*
              Brian A. Katz
              Daniel M. Stone
              1325 Avenue of the Americas
              New York, New York 10019
              (212) 451-2300

          *Attorneys for George Weiss*

12853294-9

**<u>Local Rule 7.1 Certificate of Compliance</u>**

I, Brian A. Katz, hereby certify that the total of word count in this memorandum is 1,685 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates. I relied upon the word count of the word-processing program used to prepare the document.

*/s/ Brian A. Katz*
BRIAN A. KATZ

12853294-9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JEFFERIES STRATEGIC INVESTMENTS, LLC
and LEUCADIA ASSET MANAGEMENT
HOLDINGS LLC,

                  Plaintiffs,

        -against-

GEORGE WEISS,

                  Defendant.

Case No. 1:24-cv-04369-AKH

**REPLY IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION TO CORRECT OMISSION IN JUDGMENT**

A-1214

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................................1

ARGUMENT ................................................................................................................................2

I.     The Bankruptcy Proceedings Do Not Limit the
       Court's Authority to Determine What Weiss Owes ..............................................2

II.    Weiss's Unsupported Disagreement with Plaintiffs'
       Calculations Does Not Provide a Basis to Deny the Motion ..............................3

III.   Plaintiffs Are Entitled to an Award of Pre-Judgment Interest ............................6

CONCLUSION..............................................................................................................................6

i

A-1215

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Paddington Partners v. Bouchard*,
   34 F.3d 1132 (2d Cir. 1994) .................................................................................. 6

*Cao v. Landco H&L, Inc.*,
   2023 WL 11950930 (E.D.N.Y. Jan. 20, 2023) .......................................................... 4

*Credit Suisse First Bost. Mortg. Capital v. Cohn*,
   2004 WL 1871525 (S.D.N.Y. Aug. 19, 2004) .......................................................... 3

*NML Cap. v. Republic of Arg.*,
   17 N.Y. 3d 250 (2011) ............................................................................................ 6

*PAF-PAR LLC v. Silberberg*,
   118 A.D.3d 446 (1st Dep't 2014) .......................................................................... 3

*Schumacher v. White*,
   429 B.R. 400 (E.D.N.Y. 2010) .............................................................................. 3

*U.S. Bank N.A. v. Perlmutter (In re S. Side House, LLC)*,
   470 B.R. 659 (Bankr. E.D.N.Y. 2012) .................................................................. 2

*Valley Nat'l Bank v. Spitzer*,
   2011 WL 2084184 (Sup. Ct. Kings Cnty. May 26, 2011) .................................... 2, 3

**Statutes**

11 U.S.C. § 524(e) ...................................................................................................... 3

A-1216

Plaintiffs, by and through their undersigned counsel, respectfully submit this reply memorandum in further support of their motion (ECF No. 45, the "Motion") to correct the judgment entered on March 12, 2025 (ECF No. 42, the "Judgment") by specifying the precise amount owed thereunder.[1]

## PRELIMINARY STATEMENT

In their motion for summary judgment against George Weiss, Plaintiffs established both that: (i) Weiss personally guaranteed the debts that GWA, LLC ("GWA") and a series of corporate affiliates (with GWA, the "George Weiss Companies") owed to Plaintiffs; and (ii) as of April 29, 2024, $95,664,183.00 was owed to Plaintiffs, including interest owed under the relevant agreements. (*See, e.g.*, ECF Nos. 30-7, 30-8, 30-9, 30-10, 30-12). The Court granted that motion in its entirety, and the Clerk of the Court entered the Judgment in Plaintiffs' favor. The Judgment did not, however, specify the precise amounts owed by Weiss. Through the Motion, Plaintiffs ask the Court to specify the amounts owed under the Judgment, which is supported by a detailed calculation (with citations to relevant record evidence) in support thereof. (*See* Motion Ex. B). Weiss opposes the Motion on three meritless grounds.

*First*, Weiss contends—without support—that the Court should delay quantifying the Judgment until the bankruptcy cases of the primary debtors (the George Weiss Companies) are resolved. Of course, the purpose of a guarantee is to provide an alternative method for a creditor to recover when the primary debtor is unable to pay its debts. Unsurprisingly, the case law is clear

---

[1]     Capitalized terms not otherwise defined herein have the meanings set forth in Plaintiffs' memorandum of law in support of motion to correct omission in judgment (ECF No. 46).

1

A-1217

that the George Weiss Companies' bankruptcy proceedings have no bearing on this breach of guarantee action.

*Second*, Weiss claims that the record on summary judgment did not provide any basis upon which a specific monetary award could be entered. However, Plaintiffs did provide a precise calculation of the amount owed, supported by admissible evidence. Weiss did not challenge that calculation and, even in his opposition to this motion, does not identify any error in the calculations that have been submitted.

*Third*, Weiss argues that Plaintiffs did not request pre-judgment interest in their motion for summary judgment. That is demonstrably false, as Plaintiffs' supporting affirmation and damages calculations all included contractually provided pre-judgment interest.

Accordingly, the Motion should be granted and the Judgment should be amended to reflect that Weiss owes Plaintiffs $113,493,250, plus pre-judgment interest.

## ARGUMENT

**I.      The Bankruptcy Proceedings Do Not Limit
the Court's Authority to Determine What Weiss Owes**

Weiss's first argument is that it "is improper to rush" to quantify the judgment until his companies' bankruptcy process is "complete." (ECF No. 48, the "Opp." at 5).

However, a "non-debtor guarantor's liability is not modified by the bankruptcy process, and the creditor retains its rights against the non-debtor guarantor outside of the bankruptcy case." *U.S. Bank N.A. v. Perlmutter (In re S. Side House, LLC)*, 470 B.R. 659, 673 (Bankr. E.D.N.Y. 2012). This is because, "[a]s several courts have noted, a 'bankruptcy proceeding is meant to protect the debtor, not third-party guarantors.'" *Id.* (collecting cases). Accordingly, even "[w]here the [primary obligor] has entered bankruptcy . . . , the plaintiff is entitled to obtain compensation from defendant guarantor." *Valley Nat'l Bank v. Spitzer*, 2011 WL 2084184, at *4 (Sup. Ct. Kings

2

Cnty. May 26, 2011); *Schumacher v. White*, 429 B.R. 400, 408 (E.D.N.Y. 2010)*; see also* 11 U.S.C. § 524(e) ("discharge of a debt of the debtor does not affect the liability of any other entity . . . for[] such debt"); *Credit Suisse First Bost. Mortg. Capital v. Cohn*, 2004 WL 1871525, at *8 (S.D.N.Y. Aug. 19, 2004) (finding that a debtor's discharge did not affect the liability of a non-debtor guarantor). Plaintiffs are entitled to pursue the amounts owed by Weiss—a non-debtor guarantor—under the guarantee, notwithstanding his companies' bankruptcy.[2]

The sole case cited by Weiss, *PAF-PAR LLC v. Silberberg*, provides no support for Weiss's position. 118 A.D.3d 446, 446 (1st Dep't 2014), *aff'd*, 27 N.Y.3d 930 (2016) (*see* Opp. at 4–-5). In that case, the Court held that a plaintiff could not recover under a guarantee because the original debtor previously made "full payment of the . . . loan amount," and never actually defaulted. *PAF-PAR*, 118 A.D.3d at 446 ("[A] guarantor will be required to make payment only when the primary obligor has first defaulted.") (citation omitted). Here, it is undisputed that *none* of the debtors have made any payments to the Plaintiffs for the outstanding debts for which Weiss is also liable. (*See, e.g.*, ECF Nos. 30-7, 30-8, 30-9, 30-10, 30-12). Accordingly, Plaintiffs are entitled to enforce the Judgment now. *See, e.g., U.S. Bank N.A.*, 470 B.R. at 673, 681–2 (non-debtor guarantor held liable, including for nearly $4 million prejudgment interest at the default rate despite the debtor-primary obligor's bankruptcy).

## II. Weiss's Unsupported Disagreement with Plaintiffs' Calculations Does Not Provide a Basis to Deny the Motion

Weiss also argues that the Motion should be denied because Plaintiffs' motion for summary judgment "contained no support for any specific monetary damages." (Opp. at 6) (emphasis omitted).

---

[2] Plaintiffs do not contest that they are not entitled to recover the same amounts twice. However, they are not required to wait to begin enforcing their judgment.

3

That is demonstrably wrong.  Plaintiffs submitted the Declaration of Nicholas Daraviras (ECF No. 30-1) (the "Daraviras Declaration") in support of their motion for summary judgment. Exhibit K to the Daraviras Declaration included a calculation of the precise amounts owed to Plaintiffs by the George Weiss Companies.  (ECF No. 30-1 Ex. K).

Weiss attempts to argue—for the first time in opposition to this Motion—that there are errors in Plaintiffs' calculations.  Weiss could have presented these arguments, or contrary admissible evidence, when opposing Plaintiffs' motion for summary judgment.  He failed to do so, which precludes his efforts to relitigate the amount of his liability at this time.  *See, e.g.*, *Cao v. Landco H&L, Inc.*, 2023 WL 11950930, at *2 (E.D.N.Y. Jan. 20, 2023) (defendants' failure to submit "any . . . admissible evidence to contradict that presented by plaintiff" warranted granting summary judgment damages award in plaintiff's favor).

Regardless, Weiss's belated attempts to challenge Plaintiffs' calculations fall flat.  Weiss falsely claims that there is a discrepancy between the Daraviras Declaration's calculation of GWA's 2023 revenue sharing obligation ($7,239,840) and the Motion's calculation ($10,797,305). (Opp. at 6).  Not so.  As shown below, both Exhibit K to the Daraviras Declaration and Exhibit B to the Motion consistently state that the principal amount owed for GWA's 2023 revenue sharing obligation was $10,797,305.00.

**Daraviras Exhibit K Extract**

Revenue Share Fee payable to Jefferies  (formerly Leucadia)
January 1, 2023 thru December 31, 2023

|  | Total | Disregarded | Net | LAM Fee |
|---|---|---|---|---|
| OGI Associates LLC: |  |  |  |  |
| Rlz gain/(Loss) on investments | (5,258,465) |  | (5,258,465) | (946,524) |
| Gain/(Loss) on Derivatives | (1,308,884) |  | (1,308,884) | (235,599) |
| Net change in unrealized | 7,934,366 |  | 7,934,366 | 1,428,186 |
| Interest Income | 3,685,675 |  | 3,685,675 | 663,422 |
| Interest Expense | (3,573,924) |  | (3,573,924) | (643,306) |
| Dividend Income | 2,272,694 |  | 2,272,694 | 409,085 |
| Dividend Expense | (1,973,783) |  | (1,973,783) | (355,281) |
| Other Income |  |  | - | - |
| Professional fees & other expenses | (220,167) | 220,167 | - | - |
| Total OGI Associates | 1,557,512 | 220,167 | 1,777,679 | 319,982 |
| Interest and Other Income: |  |  |  |  |
| GWA, LLC | - |  | - | - |
| Weiss Multi-Strategy Advisers LLC | 836 |  | 836 | 151 |
| Weiss Multi-Strategy Funds LLC | 46 |  | 46 | 8 |
| Total Interest and Other Income | 882 | - | 882 | 159 |
| Management Fees per WMSA TB: |  |  |  |  |
| 18% fee | 35,093,993 |  | 35,093,993 | 6,316,919 |
| 15% fee - EG | 3,088,092 |  | 3,088,092 | 463,214 |
| subtotal of management fees | 38,182,085 | - | 38,182,085 | 6,780,132 |
| Crystallized incentive fee per WMSA TB: |  |  |  |  |
| 18% fee | 20,518,977 |  | 20,518,977 | 3,693,416 |
| 15% fee - EG | 24,105 |  | 24,105 | 3,616 |
| subtotal of crystallized incentive fee | 20,543,082 | - | 20,543,082 | 3,697,032 |
| Total Crystallized Fees | 58,725,166 | - | 58,725,166 | 10,477,164 |
| YTD - Total Revenue Sharing Fee | 60,283,560 | 220,167 | 60,503,727 | 10,797,305 |

**Motion Exhibit B Extract**

**Plaintiffs' Calculation of Pre-Judgment Interest and
Total Amounts Owed Under Judgment Through March 12, 2025**

| Amounts Owed and/or Paid Under Strategic Relationship Agreement | Amount | Source |
|---|---|---|
| 2020 GWA Rev Share due to LAM (principal only) | $7,576,366 | ECF No. 30-1, Ex. K at 1 |
| 2021 GWA Rev Share due to LAM (principal only) | $17,495,574 | ECF No. 30-1, Ex. K at 1 |
| 2022 GWA Rev Share due to LAM (principal only) | $7,899,752 | ECF No. 30-1, Ex. K at 1 |
| 2023 GWA Rev Share due to LAM (principal only) | $10,797,305 | ECF No. 30-1, Ex. K at 1 |
| $1,000,000 Payment from Weiss in 2023 | $(1,000,000) | ECF No. 30-1, Ex. K at 1 |
| **Principal Owed** | **$42,768,996** |  |

The approximately $7 million line item cited by Weiss was a typographical error included solely in the interest calculation appended to the Daraviras Declaration, and has been corrected in the Motion's supporting calculations.

5

Accordingly, this Court can calculate the interest owed based upon the specific, outstanding balance established on the summary judgment record, and enter a quantified judgment in Plaintiffs' favor.

## III.    Plaintiffs Are Entitled to an Award of Pre-Judgment Interest

Finally, Weiss argues that Plaintiffs' motion for summary judgment did "not mention prejudgment interest or offer argument for any specific damages amount." (Opp. at 5). As noted above, that is wrong. The Daraviras Declaration calculated the precise amounts owed to Plaintiffs by the George Weiss Companies, including contractually applicable interest. (*See, e.g.*, Daraviras Decl. ¶ 6 (describing contractual interest owed under strategic relationship agreement "until such time as such payment is paid in full"); *see also* ECF No. 30-1 Ex. K (calculations included interest)). Plaintiffs are entitled to pre-judgment interest at those contractually specified rates until the date of the Judgment. *See NML Cap. v. Republic of Arg.,* 17 N.Y. 3d 250, 258 (2011) ("[W]hen the principal on a loan is due on a date certain and the debtor fails to make payment, the interest rate in the contract will be used to calculate interest on unpaid principal from the date of maturity of the loan to the entry of judgment.") The sole case cited by Weiss on this issue—*Paddington Partners v. Bouchard* (*see* Opp. at 4–5)—declined to amend a judgment to include pre-judgment interest because there was no evidence or factual finding regarding "the dates from which such interest should run." 34 F.3d 1132, 1141 (2d Cir. 1994). In this case, however, Exhibit B to the Daraviras Declaration identifies the specific dates from which contractually specified interest has been accruing on all of the George Weiss Companies' outstanding debts and, in turn, permits the Court to calculate the precise amount of pre-judgment interest that is owed.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs request that the Court correct the judgment and specify that Weiss owes Plaintiffs $113,493,250, plus post-judgment interest provided by law.

6

A-1222

Dated:  New York, New York
         April 16, 2025

Respectfully submitted,

HERBERT SMITH FREEHILLS
  NEW YORK LLP
By: /s/ *Scott S. Balber*
    Scott S. Balber
    Michael P. Jones
    Daniel Gomez
200 Park Avenue
New York, New York 10166
Tel: (917) 542-7810
Fax: (917) 542-7601
Email:     Scott.Balber@hsf.com
           Michael.Jones@hsf.com
           Daniel.Gomez@hsf.com

*Attorneys for Plaintiffs*
*Jefferies Strategic Investments, LLC and*
*Leucadia Asset Management Holdings LLC*

**ATTORNEY CERTIFICATION OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1**

      Pursuant to Local Civil Rule 7.1(c), I hereby certify that the preceding Reply in Further Support of Plaintiffs' Motion to Correct Omission in Judgment (the "Supporting Memo"), exclusive of the caption and signature block, contains 1,470 words, and therefore complies with the 3,500 word limitation that is applicable to replies.  In determining the Supporting Memo's compliance, I relied on the word count function of the word processing system that was used to prepare the Supporting Memo.

Dated:      New York, New York
             April 16, 2025

                              */s/ Scott S. Balber*
                              Scott S. Balber

                              *Attorney for Plaintiffs*
                              *Jefferies Strategic Investments, LLC and*
                              *Leucadia Asset Management Holdings LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

JEFFERIES STRATEGIC INVESTMENTS, LLC :
and LEUCADIA ASSET MANAGEMENT :
HOLDINGS LLC, :

                        Plaintiffs, :

        -against- :

GEORGE WEISS, :

                   Defendant. :

-------------------------------------------------------------- X

**ORDER DENYING**
**DEFENDANT'S MOTION FOR**
**RECONSIDERATION**

24 Civ. 4369 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

    I deny Defendant's motion for reconsideration of my Opinion and Order of March 12, 2025, denying Defendant's motion for summary judgment and granting Plaintiffs' motion for summary judgment, ECF No. 41.

    "A motion for reconsideration is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." *In re Facebook Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 374 (S.D.N.Y. 2014). Moreover, "the standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 41 (2d Cir. 2012).

    Here, Defendant has failed to meet these strictures. Instead, he argues issues raised—and rejected—in his previous motion for summary judgment. As I held in my Opinion, "the Forbearance Agreement is a valid and enforceable contract as to Defendant" since "his arguments that the Forbearance Agreement lacked mutual assent" do not "pass muster." *Jefferies Strategic Invs. v. Weiss*, 24 Civ. 4369 (AKH), 2025 WL 786578, at *3 (S.D.N.Y. Mar. 12, 2025).

1

Under New York law, acceptance of a counteroffer, including through "acquiescent conduct," creates a binding contract between the parties. *See, e.g.*, *Eldor Contr. Corp. v. County of Nassau*, 272 A.D.2d 509, 509 (N.Y. App. Div. 2d Dep't 2000); *Daimon v. Fridman*, 5 A.D.3d 426, 427 (N.Y. App. Div. 2d Dep't 2004); *John William Costello Assocs. v. Std. Metals Corp.*, 99 AD.2d 227, 231 (N.Y. App. Div. 1st Dep't 1984). Here, Plaintiffs accepted Defendant's signed, revised version of the forbearance agreement, both in writing, *see* ECF No. 28-5, and through "acquiescent conduct" in fully complying with Plaintiffs' obligations to Defendant under the revised forbearance agreement and filing a UCC financing statement to record this security interest. *See* ECF Nos. 30-1, 36; *see also Jefferies Strategic Inv.*, 2025 WL 786578, at *3 (holding that a valid contract existed between the parties here for these reasons). Accordingly, the revised forbearance agreement constitutes a valid contract between the parties, and has the force of law. Thus, I deny Defendant's motion for reconsideration.

The Clerk of Court shall terminate ECF No. 43.

SO ORDERED.

Dated:     May 15 2025
          New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge

A-1226

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
JEFFERIES STRATEGIC INVESTMENTS, LLC  :
and LEUCADIA ASSET MANAGEMENT         :
HOLDINGS LLC,                         :      **ORDER GRANTING**
                                      :      **PLAINTIFFS' MOTION TO**
                    Plaintiffs,       :      **CORRECT JUDGMENT**
                                      :
         -against-                    :
                                      :      24 Civ. 4369 (AKH)
GEORGE WEISS,                         :
                                      :
                    Defendant.        :
--------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

I grant Plaintiffs' motion to correct my Opinion, and the Clerk's judgment, of March 12,

2025, ECF Nos. 41-42, as to specify the precise amount owed and prescribe interest.

Fed. R. Civ. P. 60(a) allows the Court to "correct a clerical mistake or a mistake arising

from oversight or omission whenever one is found in a judgment, order, or other part of the

record."[1] In other words, Rule 60(a) permits "changes that implement the result intended by the

court at the time the order was entered," but does not allow "changes that alter the original

meaning to correct a legal or factual error." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 150-

151 (2d Cir. 1999). "A motion under Rule 60(a) is available only to correct a judgment 'for the

purpose of reflecting accurately a decision that the court actually made.'" *Hodge v. Hodge*, 269

F.3d 155, 158 (2d Cir. 2001) (quoting *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995)).

---

[1] Although Fed. R. Civ. P. 60(a) provides that "after an appeal has been docketed in the appellate court and while it is pending," a court may not correct a judgment absent "the appellate court's leave," and on April 10, 2025, Defendant filed a notice of appeal, ECF No. 49, since the Second Circuit stayed this appeal pending the resolution of this motion, ECF No. 52, here, I may grant relief under Rule 60(a). *See Genetec, Inc. v. PROS, Inc.*, 20 Civ. 7959 (JLR), 2024 U.S. Dist. LEXIS 123110, at *4, n.1 (S.D.N.Y. July 11, 2024); *Cendant Mortg. Corp. v. Saxon Nat'l Mortg.*, 99 Civ. 3161 (ADS), 2006 U.S. Dist. LEXIS 116983, at *9 (E.D.N.Y. Jan. 26, 2006).

Here, Plaintiffs move for this Court to enter final judgment in a sum certain, and to set interest. Since my Opinion of March 12, 2025, granting Plaintiffs' motion for summary judgment and denying Defendant's motion for summary judgment, did not do so, but instead directed the Clerk to "enter final judgment in favor of Plaintiffs and tax costs," ECF No. 41, Plaintiffs' requested relief in their Rule 60(a) motion, to quantify my intent to award interest, is an appropriate motion. *See, e.g., Dudley v. Penn-America Ins. Co.*, 313 F.3d 662, 665 (2d Cir. 2002); *Capital Constr. Corp. v. Zaga*, 11 Civ. 8112 (PKC), 2014 U.S. Dist. LEXIS 87691, at *2-4 (S.D.N.Y. June 25, 2014). Additionally, since the underlying agreements provide for a specific rate of prejudgment interest—the Wall Street Journal Prime Rate, plus two percent, compounded monthly, until full payment is made, *see* ECF No. 30-1, at 3—that supersedes the statutory rate provided for under N.Y. C.P.L.R. § 5004(a). *See, e.g., NML Cap. v. Republic of Argentina*, 17 N.Y.3d 250, 258 (2011); *Citibank, N.A. v. Liebowitz*, 110 A.D.2d 615, 615 (N.Y. App. Div. 2d Dep't 1985). Computing this rate is onerous for the Clerk, and requires calculations by the parties and approval by the Court.

Plaintiffs' motion performs this calculation in a detained spreadsheet, and Defendant, in his opposition brief, ECF No. 48, has but a conclusory denial.[2] Thus, I overrule Defendant's objections, and adopt Plaintiffs' calculations. *See N.Y. Nat'l Bank v. Harris*, 182 A.D.2d 680, 680 (N.Y. App Div. 2d Dep't 1992); *Accu Line Contracting v. Aetna Casualty & Sur. Co.*, 207 A.D.2d 366, 367 (N.Y. App. Div. 2d Dep't 1994).

Finally, I reject Defendant's argument that it is premature to enter final judgment against him in light of the pending bankruptcy proceeding concerning his companies, since "a non-debtor guarantor's liability is not modified by the bankruptcy process, and the creditor retains its

---

[2] To the extent that Defendant points out a discrepancy in the spreadsheet, Plaintiffs' reply brief provides a satisfactory explanation. *See* ECF No. 51, at 7-8.

rights against the non-debtor guarantor outside of the bankruptcy case." *U.S. Bank, N.A. v. Perlmutter*, 470 B.R. 659, 673 (Bankr. E.D.N.Y. 2012). I previously denied Defendant's motion to stay the proceedings for similar reasons, ECF No. 19, and I do so again here.

Accordingly, the Clerk shall enter final judgment in favor of Plaintiffs, and against Defendant, in the sum of $113,493,250.00, which accounts for the principal guaranteed, plus pre-judgment interest. The Clerk shall also assess post-judgment interest at a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. *See* 28 U.S.C. § 1961(a).

The Clerk of Court shall terminate ECF No. 45.

SO ORDERED.

Dated:    May 16, 2025
          New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

JEFFERIES STRATEGIC INVESTMENTS, LLC :
and LEUCADIA ASSET MANAGEMENT
HOLDINGS LLC,                                         :       **AMENDED ORDER GRANTING**
                                                     :       **PLAINTIFFS' MOTION TO**
                                   Plaintiffs,        :       **CORRECT JUDGMENT**
                                                     :
          -against-                                  :
                                                     :       24 Civ. 4369 (AKH)
GEORGE WEISS,                                         :
                                                     :
                                   Defendant.        :
------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

     I grant Plaintiffs' motion to correct my Opinion, and the Clerk's judgment, of March 12,

2025, ECF Nos. 41-42, as to specify the precise amount owed and prescribe interest.

     Fed. R. Civ. P. 60(a) allows the Court to "correct a clerical mistake or a mistake arising

from oversight or omission whenever one is found in a judgment, order, or other part of the

record."[1] In other words, Rule 60(a) permits "changes that implement the result intended by the

court at the time the order was entered," but does not allow "changes that alter the original

meaning to correct a legal or factual error." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 150-

151 (2d Cir. 1999). "A motion under Rule 60(a) is available only to correct a judgment 'for the

purpose of reflecting accurately a decision that the court actually made.'" *Hodge v. Hodge*, 269

F.3d 155, 158 (2d Cir. 2001) (quoting *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995)).

---

[1] Although Fed. R. Civ. P. 60(a) provides that "after an appeal has been docketed in the appellate court and while it
is pending," a court may not correct a judgment absent "the appellate court's leave," and on April 10, 2025,
Defendant filed a notice of appeal, ECF No. 49, since the Second Circuit stayed this appeal pending the resolution of
this motion, ECF No. 52, here, I may grant relief under Rule 60(a). *See Genetec, Inc. v. PROS, Inc.*, 20 Civ. 7959
(JLR), 2024 U.S. Dist. LEXIS 123110, at *4, n.1 (S.D.N.Y. July 11, 2024); *Cendant Mortg. Corp. v. Saxon Nat'l
Mortg.*, 99 Civ. 3161 (ADS), 2006 U.S. Dist. LEXIS 116983, at *9 (E.D.N.Y. Jan. 26, 2006).

Here, Plaintiffs move for this Court to enter final judgment in a sum certain, and to set interest. Since my Opinion of March 12, 2025, granting Plaintiffs' motion for summary judgment and denying Defendant's motion for summary judgment, did not do so, but instead directed the Clerk to "enter final judgment in favor of Plaintiffs and tax costs," ECF No. 41, Plaintiffs' requested relief in their Rule 60(a) motion, to quantify my intent to award interest, is an appropriate motion. *See, e.g., Dudley v. Penn-America Ins. Co.*, 313 F.3d 662, 665 (2d Cir. 2002); *Capital Constr. Corp. v. Zaga*, 11 Civ. 8112 (PKC), 2014 U.S. Dist. LEXIS 87691, at *2-4 (S.D.N.Y. June 25, 2014). Additionally, since the underlying agreements provide for a specific rate of prejudgment interest—the Wall Street Journal Prime Rate, plus two percent, compounded monthly, until full payment is made, *see* ECF No. 30-1, at 3—that supersedes the statutory rate provided for under N.Y. C.P.L.R. § 5004(a). *See, e.g., NML Cap. v. Republic of Argentina*, 17 N.Y.3d 250, 258 (2011); *Citibank, N.A. v. Liebowitz*, 110 A.D.2d 615, 615 (N.Y. App. Div. 2d Dep't 1985). Computing this rate is onerous for the Clerk, and requires calculations by the parties and approval by the Court.

Plaintiffs' motion performs this calculation in a detained spreadsheet, and Defendant, in his opposition brief, ECF No. 48, has but a conclusory denial.[2] Thus, I overrule Defendant's objections, and adopt Plaintiffs' calculations. *See N.Y. Nat'l Bank v. Harris*, 182 A.D.2d 680, 680 (N.Y. App Div. 2d Dep't 1992); *Accu Line Contracting v. Aetna Casualty & Sur. Co.*, 207 A.D.2d 366, 367 (N.Y. App. Div. 2d Dep't 1994).

Finally, I reject Defendant's argument that it is premature to enter final judgment against him in light of the pending bankruptcy proceeding concerning his companies, since "a non-debtor guarantor's liability is not modified by the bankruptcy process, and the creditor retains its

---

[2] To the extent that Defendant points out a discrepancy in the spreadsheet, Plaintiffs' reply brief provides a satisfactory explanation. *See* ECF No. 51, at 7-8.

rights against the non-debtor guarantor outside of the bankruptcy case." *U.S. Bank, N.A. v.*

*Perlmutter*, 470 B.R. 659, 673 (Bankr. E.D.N.Y. 2012). I previously denied Defendant's motion

to stay the proceedings for similar reasons, ECF No. 19, and I do so again here.

Accordingly, the Clerk shall enter final judgment in favor of Plaintiffs, and against

Defendant, in the sum of $113,493,250.00 (which accounts for the principal guaranteed and pre-

judgment interest), and post-judgment interest at a rate equal to the weekly average one-year

constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve

System, for the calendar week preceding. *See* 28 U.S.C. § 1961(a).

The Clerk of Court shall terminate ECF No. 45.

SO ORDERED.

Dated:  May 20, 2025
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

A-1232

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
JEFFERIES STRATEGIC INVESTMENTS, LLC
and LEUCADIA ASSET MANAGEMENT
HOLDINGS LLC,

                                     Plaintiffs,

                  -against-                                       24 **CIVIL** 4369 (AKH)

                                                                  **CORRECTED JUDGMENT**

GEORGE WEISS,

                                     Defendant.
-------------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons

stated in the Court's Amended Order dated May 20, 2025, final judgment is entered in favor of

Plaintiffs, and against Defendant, in the sum of $113,493,250.00 (which accounts for the

principal guaranteed and prejudgment interest), and post-judgment interest at a rate equal to the

weekly average one-year constant maturity Treasury yield, as published by the Board of

Governors of the Federal Reserve System, for the calendar week preceding. See 28 U.S.C. §

196l(a).

**Dated:**  New York, New York

        May 21, 2025

                                                        **TAMMI M. HELLWIG**
                                        _____
                                                        **Clerk of Court**

                              **BY:**        K. Mango
                                        _____
                                                        **Deputy Clerk**



**United States District Court**
**Southern District of New York**

Tammi M. Hellwig
*Clerk of Court*

Dear Litigant:

Enclosed is a copy of the judgment entered in your case. If you disagree with a judgment or final order of the district court, you may appeal to the United States Court of Appeals for the Second Circuit. To start this process, file a "Notice of Appeal" with this Court's Pro Se Intake Unit.

You must file your notice of appeal in this Court within 30 days after the judgment or order that you wish to appeal is entered on the Court's docket, or, if the United States or its officer or agency is a party, within 60 days after entry of the judgment or order. If you are unable to file your notice of appeal within the required time, you may make a motion for extension of time, but you must do so within 60 days from the date of entry of the judgment, or within 90 days if the United States or its officer or agency is a party, and you must show excusable neglect or good cause for your inability to file the notice of appeal by the deadline.

Please note that the notice of appeal is a *one-page* document containing your name, a description of the final order or judgment (or part thereof) being appealed, and the name of the court to which the appeal is taken (the Second Circuit) – *it does not* include your reasons or grounds for the appeal. Once your appeal is processed by the district court, your notice of appeal will be sent to the Court of Appeals and a Court of Appeals docket number will be assigned to your case. At that point, all further questions regarding your appeal must be directed to that court.

The filing fee for a notice of appeal is $605 payable in cash, by bank check, certified check, or money order, to "Clerk of Court, S.D.N.Y." *No personal checks are accepted.* Please see District Court fee schedule at https://www.nysd.uscourts.gov/programs/fees. If you are unable to pay the $605 filing fee, complete the "Motion to Proceed *in Forma Pauperis* on Appeal" form and submit it with your notice of appeal to the Pro Se Intake Unit. If the district court denies your motion to proceed *in forma pauperis* on appeal, or has certified under 28 U.S.C. § 1915(a)(3) that an appeal would not be taken in good faith, you may file a motion in the Court of Appeals for leave to appeal *in forma pauperis*, but you must do so within 30 days after service of the district court order that stated that you could not proceed *in forma pauperis* on appeal.

For additional issues regarding the time for filing a notice of appeal, see Federal Rule of Appellate Procedure 4(a). There are many other steps to beginning and proceeding with your appeal, but they are governed by the rules of the Second Circuit Court of Appeals and the Federal Rules of Appellate Procedure. For more information, visit the Second Circuit Court of Appeals website at **http://www.ca2.uscourts.gov/.**

THE DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312

THE CHARLES L. BRIEANT, JR.
UNITED STATES COURTHOUSE
300 QUARROPAS STREET
WHITE PLAINS, NY 10601-4150

Rev. 12/4/24

A-1234

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (     )(     )

**NOTICE OF APPEAL**

Notice is hereby given that the following parties: _____

_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the   ☐ judgment   ☐ order   entered on: _____

that: _____

(date that judgment or order was entered on docket)

_____

(If the appeal is from an order, provide a brief description above of the decision in the order.)

_____        _____

Dated                                                    Signature*

_____

Name (Last, First, MI)

_____

Address                          City                    State              Zip Code

_____        _____

Telephone Number                                  E-mail Address (if available)

_____

* Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case.  Fed. R. App. P. 3(c)(2). Attach additional sheets of paper as necessary.

Rev. 12/23/13

A-1235

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____          _____CV_____ (      )(      )
(List the full name(s) of the plaintiff(s)/petitioner(s).)

                    -against-                     **MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL**

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)


I move under Rule 4(a)(5) of the Federal Rules of Appellate Procedure for an extension of time

to file a notice of appeal in this action. I would like to appeal the judgment

entered in this action on _____ but did not file a notice of appeal within the required
                              date

time period because:

_____

_____

_____
(Explain here the excusable neglect or good cause that led to your failure to file a timely notice of appeal.)


_____          _____
Dated:                                    Signature

_____
Name (Last, First, MI)

_____
Address                        City          State              Zip Code

_____          _____
Telephone Number                          E-mail Address (if available)


Rev. 3/27/15

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____            _____CV_____ (       )(       )

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-                                        **MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

I move under Federal Rule of Appellate Procedure 24(a)(1) for leave to proceed *in forma pauperis* on appeal. This motion is supported by the attached affidavit.

_____          _____
Dated                            Signature

_____
Name (Last, First, MI)

_____
Address                  City          State            Zip Code

_____          _____
Telephone Number                 E-mail Address (if available)

Rev. 12/23/13

A-1237

## Application to Appeal In Forma Pauperis

_____**v.** _____    Appeal No. _____

District Court or Agency No. _____

| **Affidavit in Support of Motion** | **Instructions** |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.)<br><br>Signed: _____ | Complete all questions in this application and then sign it.  Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number.<br><br>Date: _____ |

My issues on appeal are: (<u>required</u>):

1.    *For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | <u>Spouse</u> | You | <u>Spouse</u> |
| Employment | $ | $ | $ | $ |
| Self-employment | $ | $ | $ | $ |
| Income from real property (such as rental income) | $ | $ | $ | $ |

- 1 -

12/01/2013 SCC

| | | | | |
|---|---|---|---|---|
| Interest and dividends | $ | $ | $ | $ |
| Gifts | $ | $ | $ | $ |
| Alimony | $ | $ | $ | $ |
| Child support | $ | $ | $ | $ |
| Retirement (such as social security, pensions, annuities, insurance) | $ | $ | $ | $ |
| Disability (such as social security, insurance payments) | $ | $ | $ | $ |
| Unemployment payments | $ | $ | $ | $ |
| Public-assistance (such as welfare) | $ | $ | $ | $ |
| Other (specify): | $ | $ | $ | $ |
| **Total monthly income:** | **$ 0** | **$ 0** | **$ 0** | **$ 0** |

2. *List your employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

3. *List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

A-1239

4.    *How much cash do you and your spouse have?* $\$_____$

*Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

***If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.***

5.    *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.*

| Home | Other real estate | Motor vehicle #1 |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| | | Make and year: |
| | | Model: |
| | | Registration #: |

| Motor vehicle #2 | Other assets | Other assets |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| Make and year: | | |
| Model: | | |
| Registration #: | | |

- 3 -

6.    *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |

7.    *State the persons who rely on you or your spouse for support.*

| Name [or, if a minor (i.e., underage), initials only] | Relationship | Age |
|---|---|---|
| | | |
| | | |
| | | |

8.    *Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

| | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (including lot rented for mobile home)<br>    Are real estate taxes included?  ☐ Yes ☐ No<br>    Is property insurance included?  ☐ Yes ☐ No | $ | $ |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ | $ |
| Home maintenance (repairs and upkeep) | $ | $ |
| Food | $ | $ |
| Clothing | $ | $ |
| Laundry and dry-cleaning | $ | $ |
| Medical and dental expenses | $ | $ |

| | | |
|---|---|---|
| Transportation (not including motor vehicle payments) | $ | $ |
| Recreation, entertainment, newspapers, magazines, etc. | $ | $ |
| Insurance (not deducted from wages or included in mortgage payments) | | |
|    Homeowner's or renter's: | $ | $ |
|    Life: | $ | $ |
|    Health: | $ | $ |
|    Motor vehicle: | $ | $ |
|    Other: | $ | $ |
| Taxes (not deducted from wages or included in mortgage payments) (specify): | $ | $ |
| Installment payments | | |
|    Motor Vehicle: | $ | $ |
|    Credit card (name): | $ | $ |
|    Department store (name): | $ | $ |
|    Other: | $ | $ |
| Alimony, maintenance, and support paid to others | $ | $ |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $ | $ |
| Other (specify): | $ | $ |
| **Total monthly expenses:** | **$ 0** | **$ 0** |

9. *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*

   ☐ Yes     ☐ No     If yes, describe on an attached sheet.

10. *Have you spent — or will you be spending —any money for expenses or attorney fees in connection with this lawsuit?* ☐ Yes ☐ No

   *If yes, how much?* $ _____

- 5 -

11.     *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*

12.     *Identify the city and state of your legal residence.*

City _____    State _____

Your daytime phone number: _____

Your age: _____    Your years of schooling: _____

Last four digits of your social-security number: _____

Print    Save    Reset Form

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC, | Case No. 1:24-cv-04369 (AKH) |
| Plaintiffs, | **<u>Amended Notice of Appeal</u>** |
| -against- | |
| GEORGE WEISS, | |
| Defendant. | |

**AMENDED NOTICE IS HEREBY GIVEN** that defendant George Weiss, by his attorneys, Kaplan Rice LLP and Olshan Frome Wolosky LLP, hereby appeals to the United States Court of Appeals for the Second Circuit from (1) the Opinion and Order entered in the above-captioned action on March 12, 2025 (ECF No. 41), which granted plaintiffs Jefferies Strategic Investments LLC's and Leucadia Asset Management Holdings LLC's ("Plaintiffs") motion for summary judgment and denied defendant George Weiss's ("Defendant") motion for summary judgment (attached as Exhibit 1); (2) the Order entered in the above-captioned action on May 15, 2025 (ECF No. 53), which denied Defendant's motion for reconsideration (attached as Exhibit 2); (3) the Amended Order entered in the above-captioned action on May 20, 2025 (ECF No. 55), which granted Plaintiffs' motion to correct judgment (attached as Exhibit 3); and (4) the Corrected Judgment entered in the above captioned action on May 21, 2025 (ECF No. 56).

A-1244

Dated:  New York, New York
        May 22, 2025

                          KAPLAN RICE LLP

                          By:  _/s/Howard Kaplan_____
                                Howard Kaplan
                                Michelle Rice
                                142 West 57th Street
                                Suite 4A
                                New York, New York 10019
                                (212) 235-0300

                          OLSHAN FROME WOLOSKY LLP

                          By:  _/s/ Brian A. Katz_____
                                Brian A. Katz
                                Daniel M. Stone
                                1325 Avenue of the Americas
                                New York, New York 10019
                                (212) 451-2300

                          *Attorneys for George Weiss*

A-1245

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

JEFFERIES STRATEGIC INVESTMENTS, LLC :
and LEUCADIA ASSET MANAGEMENT :
HOLDINGS LLC, :                                 **OPINION AND ORDER**
                                    :           **GRANTING PLAINTIFFS'**
                  Plaintiffs, :                 **MOTION FOR SUMMARY**
                                    :           **JUDGMENT AND DENYING**
      -against-                     :           **DEFENDANT'S MOTION FOR**
                                    :           **SUMMARY JUDGMENT**
GEORGE WEISS, :
                                    :           24 Civ. 4369 (AKH)
                  Defendant. :

------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs Jefferies Strategic Investments, LLC ("JSI") and Leucadia Asset Management

Holdings LLC ("Leucadia") move for summary judgment against Defendant George Weiss,

arguing that he is personally liable for a guarantee contained in a forbearance agreement

executed between the parties. Simultaneously, Defendant moves for summary judgment against

Plaintiffs, contending that this case should be dismissed. For the reasons that follow, I grant

Plaintiffs' motion for summary judgment, and I deny Defendant's cross-motion.

## BACKGROUND

Defendant George Weiss is the founder of a constellation of hedge funds, known

collectively as the "Weiss Companies." Defendant's Statement of Undisputed Facts ("Def.

SUF") ¶¶ 1-2. On May 1, 2018, Plaintiff Leucadia entered into a Strategic Relationship

Agreement (the "SRA") with the Weiss Companies, in which it agreed to provide financing

through promissory notes. *Id.* ¶¶ 6-7. In December 2019 and September 2022, Plaintiff JSI

agreed to purchase $53 million in notes issued by the Weiss Companies under two note purchase

agreements (the "NPAs"). ECF No. 31, ¶¶ 14-21.

1

The Weiss Companies did not pay their obligations. To postpone the debt, on February 12, 2024, Defendant signed a forbearance agreement (the "Forbearance Agreement"), in both his personal capacity, and on behalf of the Weiss Companies. Def. SUF ¶¶ 35-38; ECF No. 28-3. The Forbearance Agreement provides that the Weiss Companies, with the exception of GWA, LLC, "irrevocably and unconditionally guarantees to [Plaintiffs] . . . the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . of the Guaranteed Obligations," which is defined to encompass obligations "arising under any Note Purchase Agreement, the Notes, the SR Agreement, and this Agreement." ECF No. 28-3, § 3(a). And while the Forbearance Agreement provides that Defendant George Weiss is a party "for purposes of Section 5(a), 9 and 10(c) hereof," Section 9 states that he "unconditionally and irrevocably personally guarantees to the Jefferies Entities the accuracy of the representations made by, and the performance of the agreements of, the Weiss Parties hereunder." *Id.* § 9.[1]

After signing the Forbearance Agreement, the Weiss Companies failed to make payment of the monies owed under the SRA, notes, and NPAs. On April 29, 2024, the Weiss Companies filed for bankruptcy under Chapter 11 of the Bankruptcy Code. *See In re Weiss Multi-Strategy*

---

[1] Section 5(a) of the Forbearance Agreement provides that:

> Each Weiss Party and Weiss hereby represents and warrants that (x) this Agreement has been duly executed and delivered by such Weiss Party and Weiss and (y) this Agreement is the legal, valid and binding obligation of such Weiss Party and Weiss, and is enforceable against each such Weiss Party and Weiss, in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and by equitable principles relating to enforceability.

Section 10(c) of the Forbearance Agreement provides that:

> Each Weiss Party and Weiss acknowledges and agrees that it is receiving a direct benefit from the transactions contemplated by this Agreement, and the terms of this Agreement, including the guaranty provided herein and the security interests granted herein, constitute reasonably equivalent value for the benefit it is receiving from entering into this Agreement. Each Weiss Party and Weiss agrees that it shall not, nor shall it cause, directly or indirectly, any person controlled by, or under common control with, it, to take any action inconsistent with the terms of this Agreement. Each party represents and warrants that it has full power and authority to enter into and perform this Agreement, and that the person executing this Agreement on behalf of that party has been properly authorized and empowered to enter into this Agreement and to bind that party hereto.

2

*Advisers LLC*, 24 BK 10743 (MG) (Bankr. S.D.N.Y.). Simultaneously, in relation to this bankruptcy case, the Weiss Companies filed an adversary proceeding against Plaintiffs. *See GWA, LLC, et al. v. Jefferies Strategic Investments, LLC, et al.*, 24 AP 1350 (MG) (Bankr. S.D.N.Y.). The Weiss Companies sought to hold the Forbearance Agreement unenforceable as a preferential transfer, and contended that Defendant did not commit to guaranteeing any payment owed by the Weiss Companies to Plaintiffs under the Forbearance Agreement. *Id.* at Dkts. 20-21. The bankruptcy court rejected this argument, holding that "a strict construction of the 2024 Forbearance Agreement, even in Weiss's favor, makes clear that Weiss's performance guarantee was also a guarantee of payment." *GWA, LLC v. Jefferies Strategic Investments, LLC*, 664 B.R. 492, 531 (Bankr. S.D.N.Y. 2024).

On May 6, 2024, Plaintiffs filed suit against Defendant in New York state court, seeking to enforce the Forbearance Agreement as to Defendant's guarantee of payment for the SRA, notes, and NPAs. ECF No. 1. Defendant removed the action to this Court on June 7, 2024. *Id.* At the initial pre-trial conference, on October 11, 2024, I permitted the parties to cross-file motions for summary judgment on the issue of Defendant's liability for his guarantee. *See* ECF No. 20.

## LEGAL STANDARD

Summary judgment may be granted only when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under

consideration." *Bronx Household of Faith v. Board of Educ.*, 492 F.3d 89, 96 (2d Cir. 2007) (citation omitted).

## DISCUSSION

Viewing the evidence in the light most favorable to Defendant, I hold that the Forbearance Agreement included a personal payment guarantee by Defendant to Plaintiffs of the Weiss Companies' corporate debt, and that it is valid and enforceable as to Defendant.

### A. Payment Guarantee

Defendant contends he did not personally guarantee payment of the Weiss Companies' debt to Plaintiffs under the terms of the Forbearance Agreement. I disagree.

Under New York law, a "guaranty is a contract," and in conducting interpretation, courts "look first to the words the parties used." *Louis Dreyfus Energy Corp. v. MG Ref. & Mktg., Inc.*, 2 N.Y.3d 495, 500 (N.Y. 2004). When determining the meaning of contractual language, courts must consider the entirety of the contract and interpret all of its provisions in harmony. *Bombay Realty Corp. v. Magna Carta, Inc.*, 100 N.Y.2d 124, 127 (N.Y. 2003). Further, "a contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 30 N.Y.3d 572, 581 (N.Y. 2017) (citation omitted).

Applying these principles of contract interpretation, and viewing the evidence in the light most favorable to Defendant, I hold that Defendant's performance guarantee contained within the Forbearance Agreement was also a personal payment guarantee. Here, under the clear, unambiguous text of the Forbearance Agreement, Defendant "unconditionally and irrevocably personally guarantee[d] to" Plaintiffs "the accuracy of the representations made by, and *the performance of the agreements of, the Weiss Parties hereunder.*" ECF No. 28-3, § 9 (emphasis

added). The "agreements of the Weiss Parties hereunder" plainly includes their guarantee to make "prompt and complete payment and performance . . . of the Guaranteed Obligations," which, in turn, is defined to encompass obligations "arising under any Note Purchase Agreement, the Notes, the SR Agreement, and this Agreement." ECF No. 28-3, § 3(a). Thus, reading the contract in harmony, in its entirety, to give effect to each of its provisions, I conclude that Defendant's performance guarantee of the Weiss Companies' agreements with Plaintiffs is also a payment guarantee by Defendant personally as to the SRA, notes, and NPAs. *See, e.g., Am. Trading Co. v. Fish*, 42 N.Y.2d 20, 27-28 (N.Y. 1977) ("Since defendant guaranteed performance of the terms and conditions of the agreement, which in this respect required payment by means of trade acceptances, the guarantee must be interpreted as including payment according to and as provided in the agreement."); *Merchant Cash & Capital, LLC v. Haute Soc'y Fashion, Inc.*, 16 Civ. 2696 (ILG), 2017 WL 2912452, at *3 (E.D.N.Y. July 6, 2017) (construing personal performance guarantee of contractual terms as personal guarantee of payment); *Prof'l Merch. Advance Capital, LLC v. McEachern*, 13 Civ. 7323 (JS), 2015 WL 8665447, at *3 (E.D.N.Y. Dec. 11, 2015) (same).

"[W]here, as here, a creditor seeks summary judgment upon a written guaranty, the creditor need prove no more than an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee." *HSH Nordbank AG v. Street*, 421 F. App'x 70, 72 (2d Cir. 2011) (quoting *Kensington House Co. v. Oram*, 293 A.D.2d 304, 305 (N.Y. App. Div. 1st Dep't 2002)). Here, Plaintiffs have proven all three elements, and thus, they have established their *prima facie* entitlement to summary judgment against Defendant as to his guarantee.

## B. Defenses

In his answer, Defendant pleads various affirmative defenses to the validity and enforcement of the Forbearance Agreement. *See* ECF No. 21. But they all lack merit. Accordingly, viewing the evidence in the light most favorable to Defendant, I hold that the Forbearance Agreement is a valid and enforceable contract as to Defendant. *See Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade*, 98 A.D.3d 403, 404 (N.Y. App. Div. 1st Dep't 2012), *aff'd* 20 N.Y.3d 1082 (N.Y. 2013) ("To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound.").

Defendant's contentions that the Forbearance Agreement lacked consideration as to his guarantee fail. Consideration "consists of either a benefit to the promisor or a detriment to the promisee," including a forbearance by a party. *Weiner v. McGraw-Hill*, 57 N.Y.2d 458, 464 (N.Y. 1982). "Under New York law, forbearance of any length can constitute valid consideration." *MM Ariz. Holdings LLC v. Bonanno*, 658 F. Supp. 2d 589, 593 (S.D.N.Y. 2009). The fact that in the Forbearance Agreement, Defendant served as a guarantor to his hedge funds' debts does not change the outcome here since "a benefit flowing to a third person or legal entity constitutes a sufficient consideration for the promise of another." *Mencher v. Weiss*, 306 N.Y. 1, 8 (N.Y. 1953); *see also Sun Oil Co. v. Heller*, 248 N.Y. 28, 32-33 (N.Y. 1928) (guarantee in exchange for consideration provided to a third party constitutes consideration as to the guarantor himself).

Nor do his arguments that the Forbearance Agreement lacked mutual assent pass muster. "To form a binding contract under New York law . . . there must be a 'meeting of the minds,'" or, in other words, "an objective manifestation of mutual assent, through either words or conduct,

to the essential terms comprising the agreement." *Wu v. Uber Techs.*, 2024 WL 4874383, at *5 (N.Y. Nov. 25, 2024). "Under New York law, a contract need not be signed by either or both parties in order to be enforceable." *Asesores y Consejeros Aconsec CIA, S.A. v. Global Emerging Mkts. N. Am., Inc.*, 841 F. Supp. 2d 762, 766 (S.D.N.Y. 2012). Rather, courts must consider:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Here, the fact that only Defendant signed the Forbearance Agreement—both on his personal behalf, as well as on behalf of the various Weiss Companies—and Plaintiffs did not, does not constitute a lack of mutual assent. Indeed, there is no language in the Forbearance Agreement that explicitly requires full execution before the contract takes effect. Moreover, Plaintiffs performed their obligations under the Forbearance Agreement, there were no material disputes between the parties as to the terms of the contract, and Plaintiffs took objective actions to evince their intent to be bound by filing a financing statement to perfect the security interest granted under the Forbearance Agreement. *See* ECF No. 30-1, at 131.

Finally, Defendant argues that the Forbearance Agreement is voidable as to him because Plaintiffs' CEO and outside counsel allegedly called him, accused him of committing securities fraud, stated "there would be a public news article that would destroy [Defendant's] reputation," and threatened to sue Defendant personally, if he did not sign the Forbearance Agreement. Def. SUF ¶¶ 24-29; ECF No. 27 ¶¶17-18 (Def. Decl.). "A contract may be voided on the ground of economic duress where the complaining party was compelled to agree to its terms by means of a wrongful threat which precluded the exercise of its free will." *Muller Constr. Co. v. N.Y. Tel. Co.*, 40 N.Y.2d 955, 956 (N.Y. 1976). This doctrine is "reserved for extreme and extraordinary

7

cases," *Adler v. Lehman Bros. Holdings*, 855 F.3d 459, 477 (2d Cir. 2017), and seldom applies to

negotiated agreements between sophisticated parties. *See Davis & Assocs. v. Health Mgmt.*

*Servs.*, 168 F. Supp. 2d 109, 114 (S.D.N.Y. 2001). Under New York law, a threat to sue for

outstanding debt if a party does not agree to sign a contract does not constitute economic duress.

*Friends Lumber v. Cornell Dev. Corp.*, 243 A.D.2d 886, 888 (N.Y. App. Div. 3d Dep't 1997).

Nor do "threats to smear [a party's] reputation" constitute economic duress. *Finserv Computer*

*Corp. v. Bibliographic Retrieval Services, Inc.*, 125 A.D.2d 765, 767 (N.Y. App. Div. 3d Dep't

1986). Here, Defendant is a sophisticated and experienced businessman, *see* ECF No. 27 ¶¶ 4-5,

and was represented by counsel in reviewing and executing the Forbearance Agreement, *see* ECF

No. 28 ¶¶ 18, 24 (Defendant's attorney reviewed the draft Forbearance Agreement and deleted

provisions thereof). *See Nat'l Sch. Reporting Servs. v. Nat'l Schs.*, 924 F. Supp. 21, 24 (S.D.N.Y.

1996) (rejecting duress argument where parties were represented by counsel, even though

counsel did not negotiate the terms of the contract). Viewing the evidence in the light most

favorable to Defendant, I cannot say that Plaintiffs' alleged conduct constitutes duress.

  The remaining affirmative defenses listed in boilerplate fashion in Defendant's Answer—

failure to state a cause of action upon which relief may be granted, Plaintiffs' "inequitable

conduct," "breaches of any of the purported agreement," failure to mitigate damages, "unclean

hands," and equitable estoppel—are purely conclusory and lack any factual basis, let alone

sufficient specificity to provide notice to Plaintiffs. *See GEOMC Co. v. Calmare Therapeutics*

*Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (applying *Twombly*'s plausibility standard to the pleading of

affirmative defenses). Accordingly, I strike Defendant's First, Fifth, Sixth, Seventh, Eight, and

Ninth Affirmative Defenses. *See Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 478 F. Supp. 3d

417, 435 (E.D.N.Y. 2020) (striking affirmative defenses where defendant failed to plead them

8

A-1253

with sufficient specificity to provide plaintiff notice); *Trs. of the N.Y. City Dist. Council v. MCF Assocs.*, 530 F. Supp. 3d 460, 468 (S.D.N.Y. 2021) (same). I also strike Defendant's Tenth Affirmative Defense, which is not an affirmative defense, but rather a reservation of rights "to modify or supplement these affirmative defenses." *See* Fed. R. Civ. P. 12(f).

## CONCLUSION

Based on the foregoing, I grant Plaintiffs' motion for summary judgment and deny Defendant's cross-motion.

The Clerk of Court shall enter final judgment in favor of Plaintiffs and tax costs. She shall also terminate ECF Nos. 24 and 29, and close this case.

SO ORDERED.

Dated:       March 12, 2025
             New York, New York

                                        ALVIN K. HELLERSTEIN
                                        United States District Judge

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

JEFFERIES STRATEGIC INVESTMENTS, LLC :
and LEUCADIA ASSET MANAGEMENT :
HOLDINGS LLC, :                                        **ORDER DENYING**
                                       :       **DEFENDANT'S MOTION FOR**
                        Plaintiffs,    :       **RECONSIDERATION**
                                           :

       -against-              :       24 Civ. 4369 (AKH)
                                           :

GEORGE WEISS,             :
                                         :

                       Defendant.   :

-------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

     I deny Defendant's motion for reconsideration of my Opinion and Order of March 12,

2025, denying Defendant's motion for summary judgment and granting Plaintiffs' motion for

summary judgment, ECF No. 41.

     "A motion for reconsideration is not a motion to reargue those issues already considered

when a party does not like the way the original motion was resolved." *In re Facebook Inc., IPO*

*Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 374 (S.D.N.Y. 2014). Moreover, "the standard for

granting a motion for reconsideration is strict, and reconsideration will generally be denied

unless the moving party can point to controlling decisions or data that the court overlooked."

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 41 (2d Cir. 2012).

     Here, Defendant has failed to meet these strictures. Instead, he argues issues raised—and

rejected—in his previous motion for summary judgment. As I held in my Opinion, "the

Forbearance Agreement is a valid and enforceable contract as to Defendant" since "his

arguments that the Forbearance Agreement lacked mutual assent" do not "pass muster." *Jefferies*

*Strategic Invs. v. Weiss*, 24 Civ. 4369 (AKH), 2025 WL 786578, at *3 (S.D.N.Y. Mar. 12, 2025).

1

Under New York law, acceptance of a counteroffer, including through "acquiescent conduct," creates a binding contract between the parties. *See, e.g.*, *Eldor Contr. Corp. v. County of Nassau*, 272 A.D.2d 509, 509 (N.Y. App. Div. 2d Dep't 2000); *Daimon v. Fridman*, 5 A.D.3d 426, 427 (N.Y. App. Div. 2d Dep't 2004); *John William Costello Assocs. v. Std. Metals Corp.*, 99 AD.2d 227, 231 (N.Y. App. Div. 1st Dep't 1984). Here, Plaintiffs accepted Defendant's signed, revised version of the forbearance agreement, both in writing, *see* ECF No. 28-5, and through "acquiescent conduct" in fully complying with Plaintiffs' obligations to Defendant under the revised forbearance agreement and filing a UCC financing statement to record this security interest. *See* ECF Nos. 30-1, 36; *see also Jefferies Strategic Inv.*, 2025 WL 786578, at *3 (holding that a valid contract existed between the parties here for these reasons). Accordingly, the revised forbearance agreement constitutes a valid contract between the parties, and has the force of law. Thus, I deny Defendant's motion for reconsideration.

The Clerk of Court shall terminate ECF No. 43.

SO ORDERED.

Dated:    May     2025
          New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

2

A-1256

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

JEFFERIES STRATEGIC INVESTMENTS, LLC :
and LEUCADIA ASSET MANAGEMENT
HOLDINGS LLC,                         :          **AMENDED ORDER GRANTING**
                                      :          **PLAINTIFFS' MOTION TO**
                    Plaintiffs,        :          **CORRECT JUDGMENT**
                                      :
        -against-                     :
                                      :          24 Civ. 4369 (AKH)
GEORGE WEISS,                          :
                                      :
                    Defendant.         :
------------------------------------------------------------ X

ALVIN K. HELLERSTEIN, U.S.D.J.:

I grant Plaintiffs' motion to correct my Opinion, and the Clerk's judgment, of March 12,

2025, ECF Nos. 41-42, as to specify the precise amount owed and prescribe interest.

Fed. R. Civ. P. 60(a) allows the Court to "correct a clerical mistake or a mistake arising

from oversight or omission whenever one is found in a judgment, order, or other part of the

record."[1] In other words, Rule 60(a) permits "changes that implement the result intended by the

court at the time the order was entered," but does not allow "changes that alter the original

meaning to correct a legal or factual error." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 150-

151 (2d Cir. 1999). "A motion under Rule 60(a) is available only to correct a judgment 'for the

purpose of reflecting accurately a decision that the court actually made.'" *Hodge v. Hodge*, 269

F.3d 155, 158 (2d Cir. 2001) (quoting *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995)).

---

[1] Although Fed. R. Civ. P. 60(a) provides that "after an appeal has been docketed in the appellate court and while it
is pending," a court may not correct a judgment absent "the appellate court's leave," and on April 10, 2025,
Defendant filed a notice of appeal, ECF No. 49, since the Second Circuit stayed this appeal pending the resolution of
this motion, ECF No. 52, here, I may grant relief under Rule 60(a). *See Genetec, Inc. v. PROS, Inc.*, 20 Civ. 7959
(JLR), 2024 U.S. Dist. LEXIS 123110, at *4, n.1 (S.D.N.Y. July 11, 2024); *Cendant Mortg. Corp. v. Saxon Nat'l
Mortg.*, 99 Civ. 3161 (ADS), 2006 U.S. Dist. LEXIS 116983, at *9 (E.D.N.Y. Jan. 26, 2006).

1

A-1257

Here, Plaintiffs move for this Court to enter final judgment in a sum certain, and to set

interest. Since my Opinion of March 12, 2025, granting Plaintiffs' motion for summary judgment

and denying Defendant's motion for summary judgment, did not do so, but instead directed the

Clerk to "enter final judgment in favor of Plaintiffs and tax costs," ECF No. 41, Plaintiffs'

requested relief in their Rule 60(a) motion, to quantify my intent to award interest, is an

appropriate motion. *See, e.g., Dudley v. Penn-America Ins. Co.*, 313 F.3d 662, 665 (2d Cir.

2002); *Capital Constr. Corp. v. Zaga*, 11 Civ. 8112 (PKC), 2014 U.S. Dist. LEXIS 87691, at \*2-

4 (S.D.N.Y. June 25, 2014). Additionally, since the underlying agreements provide for a specific

rate of prejudgment interest—the Wall Street Journal Prime Rate, plus two percent, compounded

monthly, until full payment is made, *see* ECF No. 30-1, at 3—that supersedes the statutory rate

provided for under N.Y. C.P.L.R. § 5004(a). *See, e.g., NML Cap. v. Republic of Argentina*, 17

N.Y.3d 250, 258 (2011); *Citibank, N.A. v. Liebowitz*, 110 A.D.2d 615, 615 (N.Y. App. Div. 2d

Dep't 1985). Computing this rate is onerous for the Clerk, and requires calculations by the

parties and approval by the Court.

    Plaintiffs' motion performs this calculation in a detained spreadsheet, and Defendant, in

his opposition brief, ECF No. 48, has but a conclusory denial.[2] Thus, I overrule Defendant's

objections, and adopt Plaintiffs' calculations. *See N.Y. Nat'l Bank v. Harris*, 182 A.D.2d 680,

680 (N.Y. App Div. 2d Dep't 1992); *Accu Line Contracting v. Aetna Casualty & Sur. Co.*, 207

A.D.2d 366, 367 (N.Y. App. Div. 2d Dep't 1994).

    Finally, I reject Defendant's argument that it is premature to enter final judgment against

him in light of the pending bankruptcy proceeding concerning his companies, since "a non-

debtor guarantor's liability is not modified by the bankruptcy process, and the creditor retains its

---

[2] To the extent that Defendant points out a discrepancy in the spreadsheet, Plaintiffs' reply brief provides a satisfactory explanation. *See* ECF No. 51, at 7-8.

2

A-1258

rights against the non-debtor guarantor outside of the bankruptcy case." *U.S. Bank, N.A. v. Perlmutter*, 470 B.R. 659, 673 (Bankr. E.D.N.Y. 2012). I previously denied Defendant's motion to stay the proceedings for similar reasons, ECF No. 19, and I do so again here.

Accordingly, the Clerk shall enter final judgment in favor of Plaintiffs, and against Defendant, in the sum of $113,493,250.00 (which accounts for the principal guaranteed and pre-judgment interest), and post-judgment interest at a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. *See* 28 U.S.C. § 1961(a).

The Clerk of Court shall terminate ECF No. 45.

SO ORDERED.

Dated:     May    , 2025
        New York, New York                 ALVIN K. HELLERSTEIN
                                         United States District Judge